**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF PAUL RUNDELL
IN SUPPORT OF THE DEBTORS' DIP ABL MOTION**

I, Paul Rundell, pursuant to section 1746 of title 28 of the United States Code hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Chief Restructuring Officer of Prospect Medical Holdings, Inc. (together with its debtor affiliates in the above captioned chapter 11 cases as debtors and debtors in possession, the "Debtors" and, the Debtors and their non-Debtor affiliates, collectively, the "Company" or "Prospect") and a Managing Director of Alvarez & Marsal North America, LLC ("A&M"), a turnaround management consulting firm. I have served as the Chief Restructuring Officer of the Debtors since January 11, 2025.

2.      As Chief Restructuring Officer of the Debtors, I am familiar with and knowledgeable about the Debtors' day-to-day operations, business and financial affairs, and books and records, as well as the circumstances leading to the commencement of these Chapter 11 Cases (as defined below). I submit this declaration (this "DIP ABL Declaration") in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition*

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

*ABL Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "<u>DIP ABL Motion</u>"),[2] filed contemporaneously herewith, which, among other things, seeks approval of a replacement ABL facility in the form of debtor-in-possession ABL financing (the "<u>DIP ABL Facility</u>").

3.        Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors, my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition, or from my discussions with the Debtors' advisors.  If called upon to testify, I would and could testify competently to the facts set forth in this Declaration.

## <u>THE DEBTORS REQUIRE IMMEDIATE<br>ACCESS TO POSTPETITION FINANCING</u>

4.        After extensive good faith and arm's-length negotiations, the Debtors secured a commitment from eCapital Healthcare Corp. to provide the DIP ABL Facility, which ensures continuing access to necessary cash collateral and $90 million in asset-based revolving loans for the Debtors' estates.  I believe that the DIP ABL Facility represents the best postpetition ABL financing option currently available to the Debtors.

5.        The Debtors' access to the DIP ABL Facility during these chapter 11 cases is critical not only to their restructuring efforts, but more importantly to their obligation to maintain the health and safety of their patients.  The Debtors operate 16 hospitals nationwide that serve

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the DIP ABL Motion.

approximately 2,500 patients daily and employ approximately 12,500 employees, of whom approximately 9,100 are physicians, nurse practitioners, physician assistants, or other providers essential for patient care.

6.      Continued access to ABL financing will send a strong message to the Debtors' patients, vendors, employees, affiliated physicians, and contract counterparties that operations are funded and the impact on the Debtors' businesses and operations will be minimized.  I believe that the DIP ABL Financing will ensure the Debtors have sufficient liquidity to operate their businesses, meet working capital requirements, provide high-quality and life-saving care to their patients, and administer their estates.  The Debtors intend to use the DIP ABL Financing for the payment of:  (a) prepetition amounts (including prepetition payments to certain critical vendors); (b) working capital and other general corporate needs; and (c) fees, costs, and expenses of the DIP ABL Facility on the terms and conditions described in the Interim Order and the DIP ABL Term Sheet.

7.      Without the incremental ABL financing anticipated to be provided under the DIP ABL Facility, the Debtors will (a) be forced to begin to shut down hospitals and wind down all operations in the near term, (b) be unable to satisfy critical obligations, including their outstanding and accrued obligations to employees, (c) and have no alternatives other than to wind down operations through state court processes or under chapter 7 of the Bankruptcy Code.  To effectuate this shut down, the Debtors would be forced to stop the intake of new patients and would be forced to transition their thousands of existing patients to other hospitals.  The Debtors would not have the liquidity to implement appropriate shut down procedures in the near term under applicable federal, state, and local regulatory requirements, which I believe would imperil patient safety and expose the Debtors to fines, sanctions, and criminal penalties.

8.      Further, I believe that in light of the Debtors' current financial condition, financing arrangements, capital structure, and the circumstances of the Chapter 11 Cases, the Debtors would be unable to obtain financing in respect of the DIP ABL Collateral from sources other than the DIP ABL Lender on terms more favorable than the DIP ABL Facility. I understand that the "creeping" roll-up upon entry of the Interim Order is a requirement of the DIP ABL Facility and, in my opinion, is the most efficient means of addressing the Existing eCapital Facility, as it will allow the Debtors to avoid negotiating with the Prepetition ABL Lender regarding further forms of adequate protection and stipulations regarding usage of the cash collateral.

9.      As of January 10, 2025, the Debtors had approximately $3.4 million of cash on hand. It is my understanding that, without postpetition financing, the Debtors will be unable to meet their next payroll cycle.

## CONCLUSION

10.     Failure to obtain access to the DIP ABL Financing will result in significant harm to the Debtors' patients and to its business.

11.     Accordingly, the relief requested in the Motion is necessary and in the best interests of the Debtors' estates and all parties in interest and, as such, should be approved.

*[Remainder of the page intentionally left blank]*

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: January 14, 2025

*/s/ Paul Rundell*
Paul Rundell
Chief Restructuring Officer