SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
Email: tom.califano@sidley.com
      rpatel@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: wcurtin@sidley.com
      pventer@sidley.com
      anne.wallice@sidley.com

SIDLEY AUSTIN LLP
James W. Ducayet (admitted *pro hac vice*)
Steven E. Sexton (admitted *pro hac vice*)
1 S. Dearborn St.
Chicago, Illinois 60603
Telephone: (312) 853-7621
Facsimile: (312) 853-7245
Email: jducayet@sidley.com
      ssexton@sidley.com

SIDLEY AUSTIN LLP
Jon Muenz (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5901
Facsimile: (212) 839-5637
Email: jmuenz@sidley.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 25-80002-sgj11** |
| **PROSPECT MEDICAL HOLDINGS,** | § | |
| **INC., et al.,**[1] | § | **(Chapter 11)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

**DEBTORS' OPPOSITION TO EMERGENCY MOTION TO COMPEL OF MEDICAL PROPERTIES TRUST AND CROSS-MOTION TO COMPEL**

Prospect Medical Holdings, Inc. ("Prospect") and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby respond to the Emergency Motion to

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

Compel of Medical Properties Trust, Inc. and certain affiliated companies ("MPT"), and cross-move to compel MPT to 1) produce Mr. Larry Portal for a deposition on February 10, 2025, as previously agreed between the parties and 2) substantially complete MPT's document production within one business day. In support of their response and cross-motion, the Debtors state as follows:

I.     **PRELIMINARY STATEMENT**

1. MPT's emergency motion should be denied. It is another example of MPT's strategy to generate needless costs and expenses to deplete the Debtors' resources while distracting from the Debtors' *truly* urgent efforts to stabilize their operations so that they may ensure the continuation of high-quality healthcare service to their patients.

2. What is before the Court is final approval of the DIP Facility, which as the Court heard previously was negotiated in a very tight window with Debtors' advisors taking the lead. As discussed further below, the Debtors have worked diligently during the past two weeks to respond to MPT's often-unreasonable discovery demands, and substantially completed its document production on Friday, January 31. The Debtors have produced thousands of documents on an expedited basis – from Debtors, their two financial advisors, and from Sidley – offered their investment banker and chief restructuring officer for depositions, and agreed to provide corporate representative testimony on over a dozen topics (including with respect to topics that are far afield from issues relating to the DIP hearing).

3. This is not enough for MPT. Without any legitimate showing of need, MPT also insists on an improper apex deposition of Debtors' chief executive officer, who was *not* involved at all in negotiating the DIP financing and merely approved it – along with the Debtors' full board – with the advice of the advisors who *are* being deposed. MPT further demands that the Debtors' advisors each sit for seven hour depositions.

2

4.  As to the length of the depositions, MPT's position ignores the expedited nature of these proceedings and misstates the Debtors' position. Three hours for each witness is more than enough time for these depositions, which should be focused on narrow DIP financing issues. But if that amount of time for some reason is *not* sufficient, the Debtors consistently have made clear that they will work with MPT to provide additional time if they truly have additional reasonable topics to cover. It is wasteful and unnecessary to force the Debtors' advisors each to block off full days for depositions when they are needed on critical business issues.

5.  There is also no basis to force the advisors to make themselves available on inconvenient dates. Incredibly, the Debtors agreed to make one advisor available *on the very day* MPT noticed that deposition (February 4). The other advisor is available the next day (February 5). MPT will have had access to all of the advisors' documents for several days in advance of each deposition. MPT's position is hypocritical given that it is now threatening to renege on its prior agreement to make Mr. Portal available for a deposition on February 10 and still has not produced all of Mr. Portal's relevant documents. Debtors' cross motion seeks to compel the immediate complete production of documents and of Mr. Portal's deposition on February 10 as previously agreed.

## II. BACKGROUND

6.  The Debtors, a significant provider of coordinated healthcare services, operate 16 acute and behavioral hospitals nationwide, serving approximately 2,500 patients daily. Some of the Debtors' hospitals are safety net hospitals, meaning they provide healthcare for individuals regardless of their insurance status or their ability to pay. These hospital facilities play a critical role in ensuring low-income individuals have access to quality healthcare services.

7.  Beginning on January 11, 2025, the Debtors filed Chapter 11 bankruptcy petitions in this Court. The Debtors requested—and this Court granted on an interim basis (Dkt. 101)—

access to DIP financing from JMB Capital Partners Lending, LLC ("JMB"). This financing is critical not only to the Debtors' restructuring efforts, but more importantly to their commitment to maintaining the health and safety of their patients by providing the necessary funding and flexibility to continue the day-to-day operations of its businesses and maintain quality patient care. As this Court knows, the Debtors' resources are tight. Wasteful, non-essential discovery not only bleeds Debtors of critical resources but also distracts professionals from maximizing critical planning and execution of value-maximizing transactions for the estate.

8. In the months preceding the Debtors' Chapter 11 filings, the Debtors solicited offers for interim bridge financing from both MPT and another of its creditors, Centerbridge. However, after Centerbridge put forth a financing proposal, MPT—one of the Debtors' long-term creditors— refused to consent to the financing. With Centerbridge's proposal falling through, the Debtors' only option was to seek protections of the Court and secure DIP financing from JMB. MPT objected to the DIP Facility, though this Court granted the Debtors' DIP Motion over MPT's objections on an interim basis (Dkt. 101). The Final DIP Hearing is scheduled with the Court on February 12, 2025. Targeted discovery of MPT and the basis of its objection to the DIP Facility, as well as the pre-petition efforts to obtain a DIP (including conditions sought to be imposed by MPT to avoid recharacterization claims, among others) is very relevant evidence Debtors anticipate presenting to the Court to explain how they got here, and why the Final DIP Facility should be approved.

9. In preparation for the Final DIP Hearing, the parties have engaged in expedited discovery. The Debtors have been responding diligently to MPT's often-unreasonable and time-consuming discovery demands with respect to both the production of documents and deposition testimony.

4

A.  Production of Documents

10. On January 16, 2025, shortly before the holiday weekend, MPT served its first request for the production of documents, requesting that the Debtors produce documents responsive to MPT's 12 requests within seven days. MPT requested the Debtors to collect, review, and produce documents from custodians at four different organizations: the Debtors, Sidley Austin LLP, Alvarez and Marsal ("A&M"), and Houlihan Lokey ("Houlihan"). That weekend, the Debtors immediately began their collection of documents from all four organizations using reasonable search terms.

11. On January 24, while collection and review of documents remained ongoing, the Debtors met and conferred with MPT regarding its request for the production of documents. The Debtors explained to MPT their document collection efforts, search terms, and the custodians from which they were collecting. In particular, the Debtors kept MPT apprised of their ongoing efforts to collect documents from A&M and Houlihan.

12. On January 25, MPT requested that the Debtors add new search terms across all existing custodians, as well as add an additional custodian. Despite the unnecessary time crunch created by MPT's late request, the Debtors agreed to most of the additional search terms, as well as to the addition of the new custodian.

13. On January 27, MPT served its second request for the production of documents to the Debtors, containing 12 additional requests for production.

14. That same day, the Debtors made their first production, which included 772 documents, totaling 6,980 pages. That production consisted of documents collected from relevant custodians at the Debtors and Sidley Austin.

15. On January 31, the Debtors substantially completed their production of documents in response to MPT's document requests. That production included responsive, non-privileged

5

documents from A&M and Houlihan, as well as additional documents from Sidley and Debtors that hit on the additional agreed-upon search terms. This production included 1,617 additional documents, totaling 8,995 additional pages. In total, the Debtors have produced 2,389 documents, across 12 custodians, from four different entities.[2]

16. The Debtors' productions have been in sharp contrast to MPT's meager and untimely productions in response to the Debtors' requests for production. On January 20, the Debtors served MPT with their first set of requests for production of documents. Unlike the Debtors, who shared with MPT on January 24 all of their custodians and search terms, MPT did not share its search terms and custodians with the Debtors until January 29—9 days after the Debtors initially served MPT with their first set of document requests. To date, MPT has produced only 822 documents, totaling 4,173 pages. Most of these documents are non-substantive or involve communications with Sidley Austin that the Debtors already possess. MPT's production remains incomplete, lacking many internal communications that the Debtors have long requested. Nor has MPT confirmed when it expects to substantially complete its document production, including its internal communications.

B. Deposition Notices

17. On January 27, 2025, MPT served the Debtors with deposition notices for Paul Rundell and Matthew Niemann, of A&M and Houlihan, respectively, noticing their testimony for February 3 and 4. MPT also served Rule 30(b)(6) depositions to the Debtors generally and to debtors Prospect Health Services RI, Inc. and Prospect Provider Group RI, LLC specifically, noticed for February 3 and 4, respectively.

---

[2] Confusingly, MPT, in its Motion, complains about the Debtors' supposed incomplete production of documents, despite filing its Motion many hours *after* the Debtors sent their final production.

18. On January 28, the Debtors informed MPT that Niemann and Rundell would each be available for their deposition for three hours, and that the Debtors were willing to discuss during or after the depositions whether additional time was needed. MPT refused to agree to any reasonable time limitations, but and still has not explained why the depositions need to be scheduled for initial periods longer than three hours.

19. On January 31, the Debtors served their responses and objections to MPT's Rule 30(b)(6) deposition notices, agreeing to produce a witness or witnesses in response to the majority of the deposition topics. The Debtors objected only to a few topics that had nothing whatsoever to do with the Final DIP Hearing or were plainly overbroad and therefore unreasonable topics for corporate testimony.

20. Separately, on January 28, the Debtors served their two—and only—deposition notices on MPT: a Rule 30(b)(6) deposition notice of MPT, and a notice of deposition of Mr. Portal, MPT's Senior Vice President and Senior Advisor to the CEO. Mr. Portal worked substantively with Houlihan on DIP financing matters and has led MPT's evaluation of Debtors' budget. In fact, Mr. Portal reviewed every pre-petition budget prepared by Debtors, and at his request the Debtors prepared various scenarios for an out of court budget; a Connecticut-only budget; a Connecticut/Pennsylvania-only budget; and an overall Chapter 11 budget. Mr. Portal also had been the direct point of contact with A&M and Houlihan. MPT agrees that Mr. Portal's deposition testimony is reasonable and necessary, having already agreed to and scheduled Mr. Portal's deposition for February 10, and MPT's 30(b)(6) representative testimony for that day too.

21. After Debtors noticed Mr. Portal's deposition, on January 29, MPT served an additional notice of deposition of Von Crockett (its now fifth deposition notice). MPT justified its notice on grounds that Mr. Crockett is a "board member and decision-maker" of some of the

Debtors, and in fact was "directly and personally involved" with the DIP Facility. MPT attached eight documents allegedly supporting its claim, but not one demonstrated that Mr. Crockett negotiated the DIP – he did not – and in fact multiple documents did not reference "DIP" at all and many were duplicate emails from the same email string. On January 29, in email correspondence to MPT, the Debtors objected to MPT's notice of deposition to Mr. Crockett. The Debtors explained that – unlike Mr. Portal's participation in Debtors' pre-petition negotiations with Debtors – Mr. Crockett had no involvement in the negotiation of the DIP Facility and relied primarily on the Debtors' advisors in approving the DIP Facility (along with the unanimous Board) and signing the DIP Facility documents. For this reason, Debtors explained that Mr. Crockett's deposition also would be duplicative of any testimony from Debtors' advisors.

22.    In retaliation, MPT rescinded its commitment to make available Mr. Portal for a deposition on February 10, stating that it would now need to "come back on the timing of Mr. Portal's deposition" and that it "reserve[s] all rights with respect to that deposition . . . in light of the Debtors' position regarding Mr. Crockett."

**III.    ARGUMENT**

A.    <u>The Court Should Not Compel Mr. Crockett's Deposition.</u>

23.    MPT's demand to depose Mr. Crockett, Debtors' Chief Executive Officer, is harassing, distracting, and wasteful. While Mr. Crockett sat on the board of some of the Debtor entities, he had no involvement whatsoever in the negotiation of the DIP Facility.

24.    MPT claims that it has "relevant emails" regarding Mr. Crockett's involvement with negotiation of the DIP. MPT Br. at 7 n.8. To the extent that they are the same emails that MPT previously identified for the Debtors, they are far from "relevant." As explained, of the eight documents MPT has pointed to as "relevant," six of those documents make only a passing reference to the term "DIP," and two do not even mention the phrase "DIP." Further, of those that

8

do make passing reference to "DIP," many are from the same email chain. Ironically, none of those eight documents refer to the actual DIP facility with JMB Capital, and instead refer to the proposed DIP that MPT ended up blocking, necessitating the entry into the JMB DIP in the first place.

25.    Mr. Crockett's mere attestation that entering into the DIP Facility was "advisable" is no basis to require his deposition. MPT Br. at 8. That "advice" came from the Debtors' advisors, Niemann and Rundell, who MPT is already deposing both individually and as Debtors' corporate representatives. Mr. Crockett simply has no knowledge that would not be cumulative of the testimony that will be provided by those advisors. It is for this reason that the Debtors did not call Mr. Crockett as a witness during the First Day Hearing, and why the Debtors will not call Mr. Crockett as a witness at the upcoming Final DIP Hearing, as Debtors have informed MPT. Forcing Debtors to engage in such wasteful and pointless discovery is not in the best interest of the Estates and will serve no valid purpose. *See Texas v. Google LLC*, 347 F.R.D. 490, 497 (E.D. Tex. 2024) (explaining that, with respect to depositions "[f]or high-ranking corporate executives, . . . [d]istrict courts may, and should, exercise discretion . . . to avoid oppression, inconvenience, and the imposition of unfair burdens on executives," including if there is "less-intrusive discovery"—such as other depositions—available).

B.    The Court Should Not Compel Unnecessarily Long and Inconveniently-Scheduled Depositions.

26.    "[T]he seven-hour limit for a deposition is not absolute." *Van Osten v. Home Depot, U.S.A.*, Inc., 2020 WL 6449204, at *7 (S.D. Cal. Nov. 3, 2020). Courts are permitted under Federal Rule of Civil Procedure 30(d) to limit the duration of a deposition. MPT has refused to agree to reasonable limits and therefore the Court should do so. The Debtors' priority is securing the safety of its patients and the resolution of its chapter 11 cases. The Debtors' advisors are working tirelessly in support of that priority and should not be required to allocate *a full day each*

9

to deposition testimony relating to narrow DIP financing issues – which the advisors will discuss in both their individual capacities and as corporate representatives of Debtors.

27. To be sure, DIP financing is critical to the Debtors' survival, and the Debtors do not dispute MPT's right to discovery regarding that financing given its impact on MPT's collateral. But MPT cannot be permitted to interfere with the work that matters merely because it seeks to obtain leverage over the Debtors and coerce its preferred outcome. Moreover, MPT was involved in pre-petition DIP negotiations, so it already has knowledge of those negotiations. There simply is no need for more than three hours of testimony to examine each of Debtors' advisors. Tellingly, MPT has not identified a legitimate basis why it cannot cover the noticed topics about the DIP Facility in that time – six hours total – and there is no reason their highly competent lawyers cannot be efficient during these depositions. More practically, the Debtors have agreed to provide more time for these depositions if such time is actually needed. But MPT chose to file a wasteful motion rather than proceed on that basis.

28. Nor should the Court compel the depositions to occur later than originally noticed or scheduled. The witnesses have busy schedules and have blocked out these dates for their depositions. One of the depositions is proceeding on the very day on which MPT noticed it. MPT has had the relevant documents for several days already (while delaying the production of its own documents). This is expedited litigation and is not a time for needless delay.

C. <u>This Court Should Compel MPT to Produce Mr. Portal for Deposition, as Previously Agreed, and to Substantially Complete its Production.</u>

29. MPT previously agreed to produce Mr. Portal for deposition on February 10, which the Debtors confirmed. After the Debtors objected to producing Mr. Crockett for a deposition,

10

however, MPT has walked back its agreement to produce Mr. Portal on February 10 with no stated basis other than the Debtors' objection with respect to Mr. Crockett.

30. Mr. Portal's testimony is plainly relevant to issues that will be raised at the Final DIP Hearing. As MPT's Senior Vice President and Senior Advisor to the CEO, Mr. Portal worked closely in the early stages of negotiations between the Debtors and MPT (and another secured creditor, Centerbridge) related to DIP financing. Further, Mr. Portal has personal knowledge of the Debtors' financials and MPT's evaluation of those financials. In addition, as explained, Mr. Portal reviewed every pre-petition budget prepared by Debtors, and at his request the Debtors prepared various scenarios for an out of court budget; a Connecticut-only budget; a Connecticut/Pennsylvania-only budget; and an overall Chapter 11 budget. Mr. Portal also had been the direct point of contact with A&M and Houlihan. This Court should compel MPT to adhere to its agreement and provide relevant and necessary testimony on February 10 as previously scheduled.

31. Additionally, MPT has complained about the timing of the Debtors' document productions. But the Debtors substantially completed their document production on January 31. MPT has refused to say when it will substantially complete its production. MPT should be compelled to produce those documents within one business day.

## IV. CONCLUSION

The Debtors respectfully request this Court to deny MPT's motion and grant the Debtors' cross-motion.

Dated: February 2, 2025

Respectfully submitted,

*/s/ Steven E. Sexton*
SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
Email: tom.califano@sidley.com
   rpatel@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: wcurtin@sidley.com
   pventer@sidley.com
   anne.wallice@sidley.com

SIDLEY AUSTIN LLP
James W. Ducayet (admitted *pro hac vice*)
Steven E. Sexton (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: jducayet@sidley.com
   ssexton@sidley.com

SIDLEY AUSTIN LLP
Jon Muenz (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5901
Facsimile: (212) 839-5637
Email: jmuenz@sidley.com

**CERTIFICATE OF SERVICE**

      I certify that on February 2, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Steven E. Sexton*
Steven E. Sexton

# **EXHIBIT A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-80002-sgj11 |
| **PROSPECT MEDICAL HOLDINGS,** | § | |
| **INC., et al.,**[3] | § | (Chapter 11) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

### ORDER COMPELLING MEDICAL PROPERTIES TRUST, INC. TO PRODUCE A WITNESS AND SUBSTANTIALLY COMPLETE DOCUMENT PRODUCTION

Upon consideration of the Debtors' Opposition to Emergency Motion to Compel of Medical Properties Trust and Cross-Motion to Compel (the "Cross-Motion"), it is hereby **ORDERED** that:

1. The Cross-Motion is GRANTED as set forth herein.

2. Medical Properties Trust, Inc. shall produce Mr. Portal for a deposition on February 10, 2025, and shall substantially complete its document production within one business day.

3. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

---

[3] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.