Mark Ralston
Fishman Jackson PLLC
4835 LBJ Freeway, Suite 475
Dallas, TX 75244
Telephone: 972.419-5544
Facsimile: 972.419-5501
E-mail: mralston@fishmanjackson.com

*Co-counsel for Cerner Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002-sgj11 |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CERNER CORPORATION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING AND AUTHORIZING (A) THE ASSET PURCHASE AGREEMENT AND THE PRIVATE SALE OF THE PENNSYLVANIA HOSPITALS FREE AND CLEAR OF INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) THE SETTLEMENT BY AND AMONG THE DEBTORS, THE PENNSYLVANIA ATTORNEY GENERAL, SAMUEL LEE, AND DAVID TOPPER, PURSUANT TO BANKRUPTCY RULE 9019; AND (II) GRANTING RELATED RELIEF**

Cerner Corporation ("Cerner"), creditor and contract counterparty in the above-captioned jointly administered Chapter 11 case, submits this limited objection and reservation of rights (the "Limited Objection") to the *Debtors' Emergency Motion for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and Among the Debtors, the Pennsylvania Attorney*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

*General, Samuel Lee, and David Topper, Pursuant to Bankruptcy Rule 9019; and (II) Granting Related Relief* [Doc. 332] (the "PA Sale Motion"), filed by Prospect Medical Holdings, Inc., *et al.* (the "Debtors").  In support of the Limited Objection, Cerner respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1134(b) and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. The Debtors commenced these bankruptcy cases under chapter 11 of the Bankruptcy Code on January 11, 2025 (the "Petition Date").  As of the Petition Date, the Debtors owned and/or were operating 16 hospitals in four states.

4. Cerner is a subsidiary of Oracle Corporation.  Prior to the Petition Date, debtor Prospect Medical Holdings, Inc. and Cerner were parties to an Amended and Restated Cerner Business Agreement dated December 15, 2017 (the "Prospect CBA").

5. Cerner is an electronic health record ("EHR") software company that provides large health systems (like the Debtors) with a comprehensive suite of licensed EHR software and associated services that allow the health systems to manage patient treatment, care, and billing across the entire continuum of care.  Healthcare providers use Cerner's integrated EHR and revenue cycle software platform to generate and maintain all relevant treatment and billing data for each and every patient seen in the health system (e.g., treatment records, reports, test results, referrals, prescriptions, charge capture, and billing to commercial, government, and individual payors).  Cerner enters into contracts (usually titled "Cerner Business Agreement" or "CBA") with health systems to outline the comprehensive suite of software and services Cerner will provide to

2

the health system. The CBA also typically includes agreements that provide for Cerner to furnish sublicenses for helpful third-party software solutions and support (such as products from Nuance and Experian) that health systems may use in conjunction with Cerner's provision of the EHR and revenue cycle platform.

6. The Prospect CBA is one large, comprehensive contract where Cerner agreed to implement and supply the Debtors with licensed EHR and revenue cycle software and services to coordinate and deliver patient care and manage back office financial functions across all of the Debtors' facilities using a single EHR platform. However, due to the Debtors' prepetition financial troubles, the Debtors were not able to "go live" at all facilities they own and operate. Particularly, only three facilities were able to "go live" under the Prospect CBA and only two of those facilities remain with the Debtors: Crozer-Chester Medical Center (Pennsylvania) and Waterbury Hospital (Connecticut). In addition, the Debtors' Coordinated Regional Care organization uses certain Cerner licensed software and services system-wide, such as Cerner's HDI platform, to manage value-based care contracts with multiple payors across the patient population that they serve in their health systems. Further, all of the Debtors' facilities and markets use transactional services supplied by Cerner through third party sublicenses to facilitate workflows that ensure accurate patient billing estimates, accurate claims, and more timely reimbursement.

7. Prior to the Petition Date, Cerner exercised the termination provisions under the Prospect CBA on or about February 6, 2024. In recognition of the fact that transferring from one EHR provider to another is a process that takes many months, if not years, the Prospect CBA contains a standard two-year post-termination transition period. During that period, Cerner is obligated to continue to supply licensed software and services, and the health system is obligated to continue to pay.

3

8. As of the Petition Date, Cerner and the Debtors were in the contractual post-termination transition period under the Prospect CBA, with the period to end March 8, 2026. At that time, the Debtors had gone years without making a contractual invoice payment to Cerner, making only sporadic payments pursuant to negotiated payment plans that the Debtors breached. However, given the contractual transition period obligations and Cerner's pre-petition initiation of arbitration to collect payment, Cerner continued (and continues) to supply services to the Debtors' facilities. Cerner has yet to be paid since the Chapter 11 filing.

9. The Debtors filed the PA Sale Motion on January 31, 2025. In the PA Sale Motion, the Debtors seek approval of an expedited private sale of Crozer Health, described by the Debtors as "four general acute care hospitals . . . several outpatient facilities and a comprehensive physician network of primary care and specialty practices" (collectively, the "Pennsylvania Hospitals) to an as-of-yet unnamed non-profit entity formed for this purpose and supported by the Commonwealth of Pennsylvania. PA Sale Motion, p. 6. The PA Sale Motion also seeks approval of a settlement with the Attorney General's Office for the Commonwealth of Pennsylvania and certain others involving releases in pending litigation related to the Pennsylvania Hospitals.

10. Neither the asset purchase agreement ("APA") for the sale of the Pennsylvania Hospitals nor the settlement agreement were filed with the PA Sale Motion.

11. The Debtors seek to sell the Pennsylvania Hospitals as operating entities – in fact, the desire to keep the Pennsylvania Hospitals open was the impetus for the sale and settlement at issue in the PA Sale Motion, as well as its emergency nature.

12. At the Debtors' request, the Court has scheduled an emergency hearing on the PA Sale Motion on February 6, 2025 at 2:30 p.m. CST.

CORE/0011920.0378/196064225.1

**LIMITED OBJECTION**

13. While Cerner does not, as a general matter, oppose the sale of the Pennsylvania Hospitals, Cerner files this Limited Objection to ensure that (a) the Debtors (and any other responsible party) will pay for Cerner licensed software and services in actual use at the Pennsylvania Hospitals; (b) that the Prospect CBA is not carved up into separate agreements without the consent of Cerner; and (c) that Cerner's consent is sought and required in the assignability of its intellectual property.

14. Cerner appreciates that the Debtors and its Pennsylvania purchasers are trying to keep open certain critical health care facilities in the Commonwealth of Pennsylvania. However, a review of the list of largest unsecured creditors shows that Cerner is one of the parties that has involuntarily financed the Debtors over the years. Under the supervision of this Court, Cerner seeks the certainty that it will be paid in full for the post-petition licensed software and services supplied. These licenses and services are critical to the operation of the Pennsylvania Hospitals, but that fact should not give the Debtors leave to ignore that payment obligation.

15. As mentioned above, replacing the licensed software and services provided under a Cerner Business Agreement is a process that can take many months, if not years, and Cerner's contractual obligations under the Prospect CBA will cease no later than March 8, 2026. Thus, during both (a) the sale closing period, *i.e.*, the months' long process when license transfers are sought; and (b) the post-sale period where the new owner will need to complete the transition off of the Cerner system, Cerner's licensed software and services likely will need to be used under some type of additional agreement with Cerner. Further, the sale will require Cerner and the Debtors to carve out the licensed software and services related to the Pennsylvania Hospitals from the Prospect CBA.

5

16. A debtor must assume a contract in its entirety. *See Matter of Thornhill Bros. Fitness, L.L.C.*, 85 F.4th 321, 325 (5th Cir. 2023) ("When it comes to *assuming* an executory contract, we have been clear that it's all or nothing: '[a]n executory contract must be assumed or rejected in its entirety.'") (quoting *Matter of Provider Meds, LLC*, 907 F.3d 845, 851 (5th Cir. 2018) (emphasis in original). The same is true for an assumption and assignment under Section 365(f) of the Bankruptcy Code. *See id.* at 326 ("…when a trustee relies on § 365(f) to assign an executory contract in bankruptcy, it must assign the contract in whole, not in part."). In other words, a debtor cannot cherry pick the portions of a contract that it wants to keep while ignoring the more burdensome aspects of that same agreement.

17. Here, the Prospect CBA is a single agreement with Cerner to supply licensed software and services to all of the Debtors' facilities. However, with the sale of just the Pennsylvania Hospitals, that portion of the Prospect CBA related solely to the Pennsylvania Hospitals must be segregated out in some fashion. Cerner is open to working with the Debtors on that process. That stated, it is clear that the Debtors cannot, without Cerner's consent, carve off portions of the single contract and offer them to the purchasers of the Pennsylvania Hospital. Cerner's consent is required.

18. The assignability of intellectual property licenses in bankruptcy proceedings turns largely on the general non-bankruptcy law rules that govern such assignments. Those courts that have considered the assignability of a nonexclusive patent license (like the one here) are uniform that a nonexclusive patent license is personal and non-assignable unless the license expressly provides for assignment or the patent owner authorizes the assignment. *See Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F. 3d 673, 679 (9th Cir. 1996).

6

19. Here, the Prospect CBA does not permit assignment. For these reasons, the Debtors would be prohibited from assigning the Prospect CBA to the Pennsylvania Hospital purchasers without Cerner's consent. 11 U.S.C. § 365(c)(1).

20. Finally, in instances where the non-debtor licensor would be forced to accept performance from someone other than the debtor, like the proposal here, assumption and assignment of a license requires Cerner's affirmative consent. *In re Mirant Corp.*, 440 F.3d 238, 248-49 (5th Cir. 2006).

21. Cerner has been working with the Debtors post-petition to address certain of these issues, including efforts to determine the scope of licensed software and services under the Prospect CBA in actual use by the Debtors, how those services will be billed and paid, and a procedure for the disposition of certain facilities using Cerner's licensed software and services. Cerner looks forward to continuing discussions with the Debtors and engaging in discussions with the purchaser of the Pennsylvania Hospitals.

## RESERVATION OF RIGHTS

22. Cerner reserves all rights under any contracts with the Debtors, including under the Prospect CBA, and to enforce the terms thereof.

23. Cerner reserves all rights regarding any transitional use, including under any final APA or transition services agreement from an as yet unknown buyer of the Pennsylvania Hospitals, pending Cerner's further review of and consent to the same.

24. Cerner reserves all rights, including the right to argue whether the Prospect CBA is subject to rejection, assumption, or assumption and assignment under Section 365 of the Bankruptcy Code as it relates to the Pennsylvania Hospitals.

25. In the event that the Prospect CBA is designated for assumption and assignment in connection with the sale of the Pennsylvania Hospitals, Cerner reserves all rights in connection with the cure amount necessary under Section 365(b) of the Bankruptcy Code to assume or assume and assign the Prospect CBA.

26. Cerner likewise reserves the right to demand adequate assurance of future performance by the as yet unknown assignee in the event that the Prospect CBA is designated for assumption and assignment in connection with the sale of the Pennsylvania Hospitals, as it is currently uncertain whether the buyer would be capable of performing under the terms of the contract.

27. Cerner reserves all rights to update this Objection and reservation of rights, including, but not limited to, in response to the filing of the APA.

WHEREFORE, Cerner respectfully requests that any order approving the sale of the Pennsylvania Hospitals reflect a reservation of rights of Cerner as set forth herein, and that the Court grant such other and further relief as it may deem just and appropriate under the circumstances.

###

Dated: February 5, 2025

Respectfully submitted,

/s/ *Mark H. Ralston*
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson PLLC
4835 LBJ Freeway, Suite 475
Dallas, TX 75244
E-mail: mralston@fishmanjackson.com
Tel: (972) 419-5544
Fax: (972) 419-5501

and

Darrell W. Clark, Esq. (admitted *pro hac vice*)
Tracey M. Ohm, Esq. (admitted *pro hac vice*)
Stinson LLP
1775 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
E-Mail: darrell.clark@stinson.com
E-Mail: tracey.ohm@stinson.com
Tel: (202) 346-6908; Fax: (202) 572-9948

*Counsel for Cerner Corporation*

CORE/0011920.0378/196064225.1

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of February, 2025, a true and correct copy of the foregoing *Limited Objection of Cerner Corporation to Debtors' Emergency Motion for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and Among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant to Bankruptcy Rule 9019; and (II) Granting Related Relief* was served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system and via first class mail, postage prepaid or electronic mail (as indicated), on the following parties:

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Attn. William E. Curtin (wcurtin@sidley.com)
Attn. Anne G. Wallice (anne.wallice@sidley.com)
Attn. Sean M. Nuernberger (sean.nuernberger@sidley.com)

Office of the United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75202
Attn. Elizabeth Ziegler Young (elizabeth.a.young@doj.gov)

PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Attn. Kristopher Hansen (krishansen@paulhastings.com)
Attn. Erez Gilad (erezgilad@paulhastings.com)
Attn. Gabriel Sasson (gabesasson@paulhastings.com)
Attn. Emily Kuznick (emilykuznick@paulhastings.com)
Attn. Matthew Friedrick (matthewfriedrick@paulhastings.com)

PAUL HASTINGS LLP
2001 Ross Avenue
Suite 2700
Dallas, Texas 75201
Attn. Charles Persons (charlespersons@paulhastings.com)

Pennsylvania Office of Attorney General
Strawberry Square Tower
15th Floor
Harrisburg, PA 17101
Attn. Melissa L. Van Eck (mvaneck@attorneygeneral.gov)

Pennsylvania Office of Attorney General
1600 Arch Street
Suite 300
Philadelphia, PA 19103
Attn. Christopher R. Momjian (crmomjian@attorneygeneral.gov)

STRADLEY RONON STEVENS & YOUNG, LLP,
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Attn. William Sasso (WSasso@stradley.com),
Attn. Thomas Xi (TIX@stradley.com)
Attn. Julie Murphy (Jmmurphy@stradley.com)

                                                                                                /s/ *Mark Ralston*
                                                                                                 Mark Ralston