IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered) |

### UNITED STATES' OBJECTION TO DEBTORS' MOTION TO SELL THE PENNSYLVANIA HOSPITALS FREE AND CLEAR OF INTERESTS

The United States of America (the "United States"), on behalf of the U.S. Department of Health and Human Services ("HHS") and Centers for Medicare & Medicaid Services ("CMS"), objects to the *Debtors' Emergency Motion for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant to Bankruptcy Rule 9019; and (II) Granting Related Relief* [Docket No. 332] (the "Sale Motion")[2] because it fails to comply with the applicable non-bankruptcy law. In support of this objection and reservation of rights, the United States avers as follows:

### INTRODUCTION

This Court cannot approve the sale of the Debtors' Pennsylvania hospitals unless

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Sale Motion.

the Purchaser (whose identity is unknown) accepts full successor liability under the Debtors' Medicare Part A Provider Agreements ("Medicare Provider Agreements"). If the Debtors seek to assign any Medicare Provider Agreement without satisfying this requirement of Medicare law and regulations,[3] the Court must deny the sale.

Medicare Provider Agreements, and the ability to bill Medicare and receive reimbursements under those agreements, may only be transferred through a regulatory process called a Change of Ownership ("CHOW"). Medicare law requires CMS's approval for a CHOW and subjects the proposed assignee to all participation conditions of the Medicare program under the existing agreement, including acceptance of liability for all previous overpayments and other debts owed to CMS (collectively, "CMS Obligations"). Additionally, since Medicare law prohibits another entity from using the provider's number or its privileges without an approved CHOW, the Debtors cannot simply assign the Medicare billing privileges associated with a Medicare Provider Agreement to the proposed assignee.

Accordingly, if the Court approves any sale that permits the Debtors to assign their Medicare Provider Agreements, the Purchaser must also accept the burdens associated with the agreements – including CMS' Obligations.

## BACKGROUND

1. On January 11, 2025 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors" or "Prospect") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

---

[3] The statutory and regulatory provisions governing the Medicare system are located at 42 U.S.C. § 1395, *et seq*. and 42 C.F.R. Chapter IV (collectively, the "Medicare Statute").

2. Prospect operates 16 acute and behavioral hospitals across California, Pennsylvania, Rhode Island and Connecticut. *See Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 41]. In Pennsylvania, the Debtors currently own and operate the following 4 hospitals: Crozer-Chester Medical Center ("CCMC"); Springfield Hospital; Taylor Hospital; and Delaware County Memorial Hospital ("DCMH"). *See id.*

3. Before the Petition Date, certain of the Debtors, including CCMS and DCMH, operated hospitals under Medicare Provider Agreements with CMS, acting as "providers" of hospital services under the Medicare Statute. As Medicare providers, these Debtors are statutorily obligated to maintain Medicare Provider Agreements in order to be reimbursed for services provided to Medicare beneficiaries. 42 U.S.C. § 1395cc; 42 C.F.R. § 400.202 (defining "provider"). All prospective Medicare Part A providers must be certified and deemed eligible as providers to enter into provider agreements. *See* 42 U.S.C. § 1395cc(j); 42 C.F.R. §§ 488.1, 488.3, 489.1, 489.2 and 489.10.

4. On January 31, 2025, the Debtors filed the Sale Motion seeking, among other things, an expedited private sale of the Pennsylvania Hospitals "free and clear of all liens, claims, and encumbrances" under section 363(f) of the Bankruptcy Code. Sale Motion, ¶ 8. The Sale Motion established a deadline of February 6, 2025, to object to the sale transaction of the Pennsylvania Hospitals.

5. On January 31, 2025, the Debtors also filed the *Notice of Emergency Hearing for February 6, 2025* [Docket No. 340], scheduling a hearing on the Sale Motion on an expedited basis for February 6, 2025.

6.  While the Debtors reference the "asset purchase agreement" throughout the Sale Motion, the Debtors have neither attached a copy of such agreement nor unveiled any material terms describing the contemplated sale transaction.[4] Likewise, while the Debtors are seeking entry of an order approving the sale, they did not attach or provide to the United States a copy of such order. Yet, the Debtors have provided only three (3) business days[5] to the creditors and other parties-in-interest to respond to the Sale Motion.

## ARGUMENT

**I.    The Medicare Provider Agreements May Not be Assigned Without All Benefits and Burdens.**

7.  This Court cannot approve the sale to the extent that the Debtors attempt to assign their Medicare Provider Agreements to the Purchaser without their burdens. To the extent the Debtors propose any assignment that would excuse the assignee from undergoing a CHOW and complying with the regulatory and financial burdens of a Medicare Provider Agreement, this Court must not approve the sale.

8.  Medicare is a federal health insurance program for elderly and disabled individuals. Congress entrusted the administration and operation of the Medicare program to the Secretary of HHS, who operates the Medicare program through CMS. *See* 42 U.S.C. § 1395, *et seq*.

9.  Medicare Provider Agreements define the legal and commercial relationship between CMS and a health care provider receiving Medicare payments. *See* 42 U.S.C. §§

---

[4] In addition to not having disclosed any of the terms of the Asset Purchase Agreement, the Debtors have failed to disclose the identity of and relationship with the "Purchaser" referenced in the Motion.

[5] The Debtors filed the Sale Motion at 8:53 p.m. on Friday, January 31, 2025.

4

1395cc, 1395f(a); *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993); *Mount Sinai Hospital of Greater Miami Inc. v. Weinberger*, 517 F.2d 329, 334, 337, 341 (5th Cir. 1975), *cert. denied*, 425 U.S. 935 (noting providers can only receive payments from the Medicare program after entering into agreements with the Secretary and holding that the Medicare Statute did not abrogate or limit the government's common-law right to seek recoupment for payments improperly made). CMS enters into a Medicare Provider Agreement with a health care provider only after it determines that the organization and its operations meet all conditions of Medicare participation.

10. A healthcare provider that enters into a Medicare Provider Agreement agrees to abide by the Medicare rules. A Medicare Provider Agreement is a very specific type of agreement created by the federal statute, 42 U.S.C. § 1395cc, whose governing terms are derived from the Medicare Statute. *See United States v. Vernon Home Health Care Agency, Inc.*, 21 F.3d 693, 695-96 (5th Cir. 1994); *Mem'l Hosp. v. Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983). Accordingly, Medicare rules and regulations define any rights associated with the Medicare Provider Agreement. In analyzing the Medicare Statute, "a bankruptcy court's inherent equitable powers cannot be used in a way that alters substantive rights defined under applicable nonbankruptcy law… [The court's e]quitable powers should not be used to interfere with this Congressional policy choice." *In re Slater Health Ctr., Inc.*, 398 F.3d 98, 104-05 (1st Cir. 2005) (referring to the payment adjustment system established by Medicare statutes); *see also United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 394-395 (D.C. Cir. 1997) (declining to apply the Bankruptcy Code to modify an explicit statutory scheme defining liability for particular services under Medicare).

11. When selling its assets, a Medicare health care provider may assign its Medicare Provider Agreement to the purchaser only on terms consistent with Medicare law and policy. 42 C.F.R. § 489.18(d). *See Vernon Home Health*, 21 F.3d at 695. Medicare law provides only one means for assigning a Medicare Provider Agreement: by CMS accepting and approving a CHOW to the new provider under Medicare regulations. 42 C.F.R. § 489.18. A valid CHOW causes the existing Medicare provider agreement to be assigned automatically to the new owner once that owner agrees to be subject to all statutory and regulatory requirements associated with the agreement. *See* 42 C.F.R. § 489.18(c); *Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc. (In re Raintree Healthcare Corp.)*, 431 F.3d 685, 688 (9th Cir. 2005); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994). The agreement remains subject to all statutory and regulatory terms under which it originally was issued, including the adjustment of payments to account for previous overpayments. *Vernon Home Health*, 21 F.3d at 696; *see also In re Charter Behavioral Health Systems, LLC*, 45 F. Appx. 150, 151 n.1 (3d Cir. 2002) ("If the new owner elects to take an assignment of the existing Medicare Provider Agreement, it receives an uninterrupted stream of Medicare payments but assumes successor liability for overpayments and civil monetary penalties asserted by the Government against the previous owner.") (citing 42 C.F.R. § 489.18(d); *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103-05 (8th Cir.2000); *Vernon*, 21 F.3d at 696.

12. If the new provider does not accept assignment of the Medicare Provider Agreement through the CHOW approval, the agreement terminates by operation of law. 42 C.F.R. § 489.13(c); CMS Publ. 100-08, Chapter 15 § 15.7.7.1.5. The new provider is treated as a new applicant to the Medicare program and can only receive payments for

covered services after CMS determines that the new provider meets Medicare enrollment and certification standards. 42 C.F.R. § 489.13(c); CMS Publ. 100-08, Chapter 15 § 15.7.7.1.5. ("If the Buyer rejects assignment of the provider agreement, the Buyer must file an initial application to participate in the Medicare program."); *see Mission Hosp. Regional Medical Ctr. V. Sebelius*, 819 F.3d 1112 (9th Cir. 2016) (recognizing that, where new owner refuses assignment, the provider agreement is terminated, and the hospital is considered a hospital new to the Medicare program that must undergo the certification and survey process).

13. A Medicare Provider Agreement cannot be transferred free and clear of the Debtor's obligations under the Medicare Statute. *Vernon Home Health*, 21 F.3d at 366. Nothing in the Bankruptcy Code gives a bankruptcy court the power to modify the terms of a Medicare Provider Agreement or the Medicare Statute. Instead, the Debtors' (and the Purchaser's) continued ability to receive payment on Medicare claims is defined and limited by the Medicare Statute. *See, e.g., In the Matter of Clawson Med., Rehab. And Pain Care Ctr., Inc.*, 12 B.R. 647, 653 (E.D. Mich. 1981) ("[T]he bankruptcy court's grant of jurisdiction does not include the power to shortcut the congressionally established procedures and interject itself into a [Medicare] dispute . . ."); *see also generally V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1034 (11th Cir. 1983) (the prospect of a provider's bankruptcy is not a basis to deviate from the statutory scheme).

14. Further, to the extent Debtors have any rights in its Medicare Provider Agreements, those rights are defined and strictly limited by the Medicare Statute and are not enhanced by Debtors' bankruptcy filing. Because the Debtors do not have the right to freely transfer their Medicare Provider Agreements outside of bankruptcy, they should not

be allowed to circumvent the Medicare Statute or the Medicare CHOW process to transform their limited rights into freely alienable property rights. *Mission Product Holdings, Inc. v. Tempnology*, LLC, 587 U.S. 370, 381 (2019) (citation omitted) (acknowledging "general bankruptcy rule" that "[t]he estate cannot possess anything more than the debtor itself did outside bankruptcy."); *c.f.* 11 U.S.C. § 541(d) (where debtor has limited interests in property, those limitations apply to the estate's interests).

15. Therefore, to the extent that the Debtors attempt to assign their Medicare Provider Agreements to the Purchaser, the Debtors may not transfer such Agreements free and clear of the Medicare Statute or CHOW process. Any liabilities under the Medicare Provider Agreements follow the agreements, and the assignee of the Medicare Provider Agreements becomes liable to CMS for any overpayments and penalties.

**II.    Reservation of Rights**

16. To comply with the February 6, 2025, objection deadline, the United States files this objection in an abundance of caution, though it has yet to receive or review an asset purchase agreement or the proposed sale order. The United States reserves all rights to supplement this Objection if and when the Debtors disclose the terms of any proposed sale, and to raise any other objections to any proposed sale at the hearing.

## CONCLUSION

17. For the foregoing reasons, the Court should only allow the transfer of the Medicare Provider Agreements if the Debtors and Purchaser adhere to federal law and comply with the CHOW process and the Medicare Statute.

Dated: February 5, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

*/s/ Jae Won Ha*
KIRK T. MANHARDT
MARY A. SCHMERGEL
JAE WON HA
United States Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 598-5383
Fax: (202) 514-9163
E-mail: jae.won.ha@usdoj.gov

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that on February 5, 2025, a true and correct copy of the foregoing was served via electronic means through transmission facilities from the Court upon those parties authorized to participate and access the Electronic Filing System in the above-captioned case.

Dated: February 5, 2025                              */s/ Jae Won Ha*
                                                     JAE WON HA