IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) ) | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | ) ) ) | Case No. 25-80002-sgj |
| Debtors. | ) ) | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF DEXT CAPITAL, LLC TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING AND AUTHORIZING (A) THE ASSET PURCHASE AGREEMENT AND PRIVATE SALE OF THE PENNSYLVANIA HOSPITALS FREE AND CLEAR OF INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) THE SETTLEMENT BY AND AMONG THE DEBTORS, THE PENNSYLVANIA ATTORNEY GENERAL, SAMUEL LEE, AND DAVID TOPPER, PURSUANT TO BANKRUPTCY RULE 9019; AND (II) GRANTING RELATED RELIEF**

*[Relates to Dkt No. 332]*

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Dext Capital, LLC (hereinafter "Dext Capital"), and files this its Limited Objection and Reservation of Rights ("Objection") as to *Debtors' Emergency Motion for Entry an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement By and Among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant to*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

*Bankruptcy Rule 9019; and (II) Granting Related Relief* [Dkt. No. 332]² (the "Sale Motion"), and in support thereof would respectfully show the Court the following:

## I.
## RELEVANT FACTS

1. Debtors initiated the current Chapter 11 bankruptcy petition in the Dallas Division of the Northern District of Texas on January 11, 2025 (the "Petition Date").

*Facts Concerning Dext Capital's Agreements with Debtors*

**(a) Master Lease Agreement Number 4596**

2. Prior to the Petition Date, on or about November 24, 2020, Debtor Alta Hospitals Systems, LLC ("Alta Hospitals Systems") executed and entered into Master Lease Agreement Number 4596 with Dext Capital. In conjunction, Debtor Prospect Medical Holdings, Inc. ("Prospect Medical Holdings") executed a Continuing Guaranty to Master Lease Agreement Number 4596, guaranteeing performance of all of Alta Hospitals Systems's obligations under Master Lease Agreement Number 4596. True and correct copies of Master Lease Agreement Number 4596 and the said Continuing Guaranty are collectively attached hereto and incorporated herein as Exhibit "A."

3. Subsequently, Alta Hospitals System executed and entered into Equipment Lease Schedule Number 100-0001492-002 dated July 18, 2022 to Master Lease Agreement 0004596 (collectively, with Master Lease Agreement Number 4596, "Lease #1"), whereby Alta Hospitals Systems leased certain hospital and medical equipment and software (the "Lease #1 Equipment"), which Alta Hospitals Systems utilizes in its business, including both administrative and substantive operations. In conjunction, Debtors Alta Los Angeles Hospitals, Inc. ("Alta Los Angeles") and Prospect Manchester Hospital, Inc. ("Prospect Manchester") each executed a Continuing

---

² All capitalized terms not otherwise defined herein shall have the same meaning as in the Sale Motion.

Guaranty to Master Lease Agreement Number 4596, guaranteeing performance of all of Alta Hospitals Systems's obligations under Master Lease Agreement Number 4596, including Schedule Number 100-0001492-002. True and correct copies of Schedule Number 100-0001492-002 and the said Continuing Guaranties are collectively attached hereto and incorporated herein as Exhibit "B."

4.  In an abundance of caution and without waiving any ownership rights, Alta Hospitals Systems also granted a first priority security interest in the Lease #1 Equipment to Dext Capital under Lease #1. Such security interest was duly perfected with respect to the Lease #1 Equipment by the filing of a UCC-1 financing statement with the California Secretary of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Lease #1 Equipment is attached hereto as Exhibit "C" and incorporated by reference herein as if fully set forth herein.

**(b) Master Lease Agreement 4597**

5.  Prior to the Petition Date, on or about November 24, 2020, Debtor Prospect Manchester executed and entered into Master Lease Agreement Number 4597 with Dext Capital. In conjunction, Debtor Prospect Medical Holdings executed a Continuing Guaranty to Master Lease Agreement Number 4597, guaranteeing performance of all of Prospect Manchester's obligations under Master Lease Agreement Number 4597. True and correct copies of Master Lease Agreement Number 4597 and the said Continuing Guaranty are collectively attached hereto and incorporated herein as Exhibit "D."

6.  Subsequently, Prospect Manchester executed and entered into Equipment Lease 100-0001487-003 dated March 9, 2022 to Master Lease Agreement 0004597 (collectively, with Master Lease Agreement Number 4597, "Lease #2"), whereby Prospect Manchester leased

certain hospital and medical equipment and software (the "Lease #2 Equipment"), which Prospect Manchester utilizes in its business, including both administrative and substantive operations. In conjunction, Debtors Alta Los Angeles Hospitals and Alta Hospitals Systems each executed a Continuing Guaranty to Master Lease Agreement Number 4597, guaranteeing performance of all of Prospect Manchester's obligations under Master Lease Agreement Number 4597, including Schedule 100-0001487-003. True and correct copies of Schedule 100-0001487-003 and the said Continuing Guaranties are collectively attached hereto and incorporated herein as Exhibit "E."

7.   In an abundance of caution and without waiving any ownership rights, Prospect Manchester also granted a first priority security interest in the Lease #2 Equipment to Dext Capital under Lease #2. Such security interest was duly perfected with respect to the Lease #2 Equipment by the filing of a UCC-1 financing statement with the California Secretary of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Lease #2 Equipment is attached hereto as Exhibit "F" and incorporated by reference herein as if fully set forth herein.

**(c) Master Lease Agreement 4601**

8.   Prior to the Petition Date, on or about November 24, 2020, Debtor Prospect CCMC, LLC ("Prospect CCMC") executed and entered into Master Lease Agreement Number 4601 with Dext Capital. In conjunction, Debtor Prospect Medical Holdings executed a Continuing Guaranty to Master Lease Agreement Number 4601, guaranteeing performance of all of Prospect CCMC's obligations under Master Lease Agreement Number 4601. True and correct copies of Master Lease Agreement Number 4601 and the said Continuing Guaranty are collectively attached hereto and incorporated herein as Exhibit "G."

9. Subsequently, Prospect CCMC executed and entered into Equipment Lease Schedule 100-0001486-004 dated March 9, 2022 to Master Lease Agreement 0004601 (collectively, with Master Lease Agreement Number 4601, "Lease #3"), whereby Prospect CCMC leased certain hospital and medical equipment and software (the "Lease #3 Equipment"), which Prospect CCMC utilizes in its business, including both administrative and substantive operations. In conjunction, Debtors Alta Los Angeles Hospitals and Alta Hospitals Systems each executed a Continuing Guaranty to Master Lease Agreement Number 4601, guaranteeing performance of all of Prospect CCMC's obligations under Master Lease Agreement Number 4601, including Schedule 100-0001486-004. True and correct copies of Schedule 100-0001486-004 and the said Continuing Guaranties are collectively attached hereto and incorporated herein as Exhibit "H."

10. In an abundance of caution and without waiving any ownership rights, Prospect CCMC also granted a first priority security interest in the Lease #3 Equipment to Dext Capital under Lease #3. Such security interest was duly perfected with respect to the Lease #3 Equipment by the filing of a UCC-1 financing statement with the Pennsylvania Department of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Lease #3 Equipment is attached hereto as Exhibit "I" and incorporated by reference herein as if fully set forth herein.

**(d) Short Form Rental Agreement No. 0010124682**

11. Prior to the Petition Date, on or about February 25, 2021, Debtor Southern California Healthcare System, Inc. ("Southern California Healthcare") entered into Short Form Rental Agreement Number 0010124682 ("Lease #4") with Flex Financial, a division of Stryker Sales Corporation ("Stryker"), for certain hospital and medical equipment and software (the "Lease

#4 Equipment"), which Southern California Healthcare utilizes in its business, including both administrative and substantive operations. A true and correct copy of Short Form Rental Agreement Number 0010124682 is attached hereto and incorporated herein as Exhibit "J."

12. On or about March 15, 2021, Stryker executed a letter agreement, whereby Stryker assigned to Dext Capital all of its right, title, and interest in and to Short Form Rental Agreement Number 0010124682 for good and valuable consideration. A true and correct copy of the said letter agreement is attached hereto as Exhibit "K."

13. In an abundance of caution and without waiving any ownership rights, Southern California Healthcare also granted a first priority security interest in the Lease #4 Equipment to Dext Capital under Lease #4. Such security interest was duly perfected with respect to the Lease #4 Equipment by the filing of a UCC-1 financing statement with the California Secretary of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Lease #4 Equipment is attached hereto as Exhibit "L" and incorporated by reference herein as if fully set forth herein.

(e) **Equipment Lease Agreement No. 100-0007400-001**

14. Prior to the Petition Date, Debtors Alta Los Angeles executed and entered into Equipment Lease Agreement Number 100-0007400-001 ("Lease #5") dated May 29, 2024 with Dext Capital, for certain hospital and medical equipment and software (the "Lease #5 Equipment"), which Alta Los Angeles utilizes in its business, including both administrative and substantive operations. In conjunction, on or about June 26, 2024, Debtors Prospect Medical Holdings and Alta Hospitals Systems each executed a Guaranty to, guaranteeing performance of all of Alta Los Angeles's obligations under Equipment Lease Agreement Number 100-0007400-001. True

and correct copies of Equipment Lease Agreement Number 100-0007400-001 and the said Guaranties are collectively attached hereto and incorporated herein as Exhibit "M."

15. In an abundance of caution and without waiving any ownership rights, Southern California Healthcare also granted a first priority security interest in the Lease #5 Equipment to Dext Capital under Lease #5. Such security interest was duly perfected with respect to the Lease #5 Equipment by the filing of a UCC-1 financing statement with the California Secretary of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Lease #5 Equipment is attached hereto as Exhibit "N" and incorporated by reference herein as if fully set forth herein.

16. Lease #1, Lease #2, Lease #3, Lease #4, and Lease #5 are referred herein, collectively, as the "Dext Capital Agreements." Additionally, the Lease #1 Equipment, Lease #2 Equipment, Lease #3 Equipment, Lease #4 Equipment, and Lease #5 Equipment are referred herein, collectively, as the "Dext Capital Equipment."

17. Pursuant to the Dext Capital Agreements, Dext Capital is the owner and lessor of the Dext Capital Equipment and continues to hold a perfected security interest in the Dext Capital Equipment via numerous filed UCC-1 Financing Statements. Dext Capital asserts that it remains the owner, lessor, secured party, and lienholder of the Dext Capital Equipment.

18. Debtors appear to have neither rejected or assumed and assigned the Dext Capital Agreements, but upon information and belief, the Debtors continue to use the Dext Capital Equipment in their ordinary course of business, both prior to and subsequent to the Petition Date. However, Dext Capital has not received adequate protection for the Debtors continued use of the Dext Capital Equipment.

19. Dext Capital provided the Dext Capital Equipment to the Debtors in good faith and with the reasonable expectation of timely payment in accordance with the terms of the Dext Capital Agreements.

20. The Dext Capital Equipment provided to Debtors is valuable and provides a material economic benefit to the Debtors' estates by enabling Debtors to continue operating their hospitals and generate revenue. Without the use of the Dext Capital Equipment, Debtors would not have been able to and could not continue even the most basic health care and administrative operations. In essence, without Dext Capital's provision of the Dext Capital Equipment, Debtors' operations at multiple facilities would have faced substantial operational difficulties, if not impossibility. Further, the Debtors' ability to utilize the Dext Capital Equipment from Dext Capital and operate their businesses enhances the value of the Debtors' estates.

*Facts Concerning Bankruptcy Proceedings to Date*

21. On January 31, 2025, the Debtors filed the Sale Motion, which seeks the authorization and approval of (i) the Debtors' entry into the APA and the expedited private sale of four general acute care hospitals, several outpatient facilities, and a physician network of primary care and specialty practices in Delaware County, Pennsylvania and known as Crozer Health (collectively, the "Pennsylvania Hospitals") to a non-profit entity formed to serve the health care needs of Delaware Country for this purpose (the "Purchaser"), and (ii) the Debtors' entry into the 9019 Settlement with the Pennsylvania AG, Samuel Lee, and David Topper, regarding certain mutual releases related to the Pennsylvania Litigation. Additionally, pursuant to the Sale Motion, the Debtors seek approval and authorization for (a) the sale of the Assets[3]

---

[3] The Sale Motion provides that the definition of Assets is "as defined in the APA." However, Dext Capital is unable to discern the true definition of Assets as used within the Sale Motion as the APA is not included with the filing of the Sale Motion as of the date of this Objection.

free and clear of all liens, claims, and encumbrances (collectively, the "Interests"), and (b) the procedures relating to assumption by the Debtors and assignment to the Purchaser of certain executory contracts and unexpired leases (the "Executory Contracts") free and clear of all Interests.

22. The date of the sale hearing for the Pennsylvania Hospitals and the sale objection deadlines have been set for February 6, 2025. Dext Capital Equipment is located at some, but not all, of the Pennsylvania Hospitals. Particularly, upon information and belief, Dext Capital Equipment is located at the Prospect CCMC, LLC d/b/a Crozer Chester Medical Center, among others. Although it is unclear from the Sale Motion whether the Dext Capital Equipment is included within the definition of the Assets proposed to be sold, Dext Capital files this Objection in the event that the Dext Capital Equipment is in fact included in the Assets proposed to be sold pursuant to the Sale Motion.

23. As of the date of filing this Objection, Dext Capital and the Dext Capital Agreements are not included in any cure notices, assumption notices, or rejection notices, nor is Dext Capital able to determine if they are included under the Executory Contracts. However, it appears as part of the sales of the Debtors' assets, including the sale of the Pennsylvania Hospitals, that the Debtors may seek to assume, assign, or reject the Dext Capital Agreements or abandon and permit the Purchaser or a third-party to use or dispose of the Dext Capital Equipment at the Pennsylvania Hospitals free and clear of all liens, claims, interest or other encumbrances. However, Dext Capital continues to hold an ownership interest, security interest, and lienholder interest in the Dext Capital Equipment.

## II.
## DEXT CAPITAL'S LIMITED OBJECTION

24. As an initial matter, Dext Capital does not generally object to a sale of the Pennsylvania Hospitals. However, Dext Capital's rights in the Dext Capital Equipment should not be affected by a final sale order that authorizes the sale of the Pennsylvania Hospitals and Assets unless Debtors provide Dext Capital proper assumption, cure, or rejection notice and Dext Capital is paid all amounts due and owing to Dext Capital or all amounts due and owing to Dext Capital under the Dext Capital Agreements are otherwise reserved and escrowed from the sale, until the Court has sufficient time to review the record related to the Dext Capital Equipment and fashion appropriate relief.

25. Dext Capital files this Objection in the event the Debtors seek to sell the Dext Capital Equipment as part of any pending sales of the Pennsylvania Hospitals or elect to assume and assign the Dext Capital Agreements in connection with any sale of the Pennsylvania Hospitals without properly assuming or rejecting the relevant Dext Capital Agreements. Additionally, Dext Capital files this Objection to assert its ownership, security interest, and lienholder rights in the Dext Capital Equipment in the event that the Debtors seek to abandon any Dext Capital Equipment located at the Pennsylvania Hospitals and permit the Purchaser or any third-party to use or dispose of such Dext Capital Equipment free and clear of all liens, claims, interests or other encumbrances without a proper assumption or rejection, including adequate assurance of performance by any assignee, payment of all amounts due and owing to Dext Capital, or other adequate protection pending payment. Dext Capital files this Objection to the Sale Motion and any applicable APA for the reasons set forth below.

26. *First*, as of the time of filing this Objection, it is unclear whether the Debtors intend to assume, assign, or reject the Dext Capital Agreements. Thus, Dext Capital objects to

the Sale Motion and APA in the event that the Debtors seek to assume, assign, or reject the Dext Capital Agreements without providing the proper cure notice or rejection notice, specifically identifying and listing all of the Dext Capital Agreements that the Debtors intent to assume in a cure notice.

27.     *Second*, in order to assume and/or assign the Dext Capital Agreements, the Debtors must cure, or provide adequate assurance that the Debtors will promptly cure, any default and outstanding amounts owed under the Dext Capital Agreements. *See* 11 U.S.C. § 365(b)(1) and (f)(2). The Dext Capital Agreements cannot be assumed and assigned without the Debtors providing a fair, adequate, and timely adequate assurance. Additionally, the Debtors have not produced any information to Dext Capital so that it may evaluate whether adequate assurance of future performance under the Dext Capital Agreements exists. Dext Capital expressly reserves its rights to amend, modify, or supplement this Objection based upon the Debtors' failure to provide adequate assurance in regards to the Dext Capital Agreements. As a condition precedent to the assumption and assignment of any of the Dext Capital Agreements, any order permitting an assumption and assignment of any of the Dext Capital Agreements must direct that the Debtors fully pay all amounts due and owing to Dext Capital.

28.     *Third*, Dext Capital objects to the Sale Motion and any applicable APA to the extent the Debtors intend to abandon any Dext Capital Equipment and the Purchaser or any third-party is permitted to use or dispose of any Dext Capital Equipment free and clear of all liens, claims, interest or other encumbrances without a proper cure or rejection notice, payment of all amounts due and owing to Dext Capital, or other adequate protection pending payment. In the event that any of the Dext Capital Equipment located at the Pennsylvania Hospitals is abandoned by Debtor, then Dext Capital retains all of its ownership, security interest, and

lienholder rights in all such Dext Capital Equipment. Additionally, in the event that any of the Dext Capital Equipment located at the Pennsylvania Hospitals is abandoned, Dext Capital retains its right to obtain possession of such Dext Capital Equipment prior to the Purchaser or any third-party using or disposing of such Dext Capital Equipment, and notice of such disposal should be provided to Dext Capital. Moreover, in the event that any of the Dext Capital Equipment located at the Pennsylvania Hospitals is abandoned, the Debtors should be required to identify and list all of the Dext Capital Agreements that involve any of the Dext Capital Equipment that is abandoned by the Debtors.

29. *Fourth*, Dext Capital objects to the Sale Motion and any applicable APA to the extent that any of the Dext Capital Agreements are assumed or rejected in piecemeal fashion and the Debtors' attempt to assume some parts of the Dext Capital Agreements and reject other parts. Section 365 of the bankruptcy code requires rental contracts be assumed in their *entirety*. 11 U.S.C. § 365. That is, either the entire contract must be assumed, or the entire contract must be rejected. Section 365 simply does not permit contracts to be assumed or rejected in piecemeal fashion, assuming some parts of a contract pertaining to part of the Dext Capital Equipment while rejecting other parts. *See* 11 U.S.C. § 365. As currently listed, it is unclear at best in the Sale Motion whether a portion of the Dext Capital Equipment under each of the Dext Capital Agreements is intended to be assumed or rejected or whether each of the Dext Capital Agreements is intended to be assumed. To the extent Debtors abandon or retain Dext Capital Equipment along with the sale of the Pennsylvania Hospitals, the Debtors must assume the entire Dext Capital Agreement to which such Dext Capital Equipment is subject to or reject the entire such Dext Capital Agreement.

30. For the foregoing reasons, Dext Capital objects on the limited basis to the

assumption and assignment of the Dext Capital Agreements and permitting the Purchaser or any third-party to use or dispose of any Dext Capital Equipment free and clear of all liens, claims, interest or other encumbrances upon the sale of the Pennsylvania Hospitals in derogation of Dext Capital's ownership, security interest, and lienholder rights without a proper cure or rejection notice, payment of all amounts due and owing to Dext Capital, or other adequate protection pending payment.

## III.
## DEXT CAPITAL'S RESERVATION OF RIGHTS

31. Dext Capital reserves the right to: (a) modify, supplement, or amend this Objection; (b) object to any sale transaction and assert any sale objection at any sale hearing or otherwise; (c) assert additional or future objections to Debtors' proposed assumption and/or assignment of any contract or lease between Dext Capital and Debtors; (d) object to any proposed cure costs due under any of the Dext Capital Agreements; (e) offset or recoup any amounts due to Dext Capital as permitted by contract and/or applicable law; and (f) seek allowance and payment of administrative expense claims with respect to any amounts that are currently, or will in the future be, owing to Dext Capital from the Debtors from and after the Petition Date.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
100 Throckmorton Street, Suite 700
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax

/s/ *Matthew D. Giadrosich*
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Matthew D. Giadrosich
State Bar I.D. 24074274
mdg@padfieldstout.com
Wesley W. McCutcheon
State Bar I.D. #24118945
wmccutcheon@padfieldstout.com

*Attorneys for Dext Capital, LLC*

## CERTIFICATE OF SERVICE

  I hereby certify that on February 6, 2025, a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notices. In addition, a true and correct copy of the foregoing document was served on the following parties (the "Notice Parties") in compliance with the Interim Order: the Debtors via certified mail at 3824 Hughes Avenue, Culver City, CA 90232, the proposed attorneys for the Debtors, Thomas R. Califano (tom.califano@sidley.com), William E. Curtin (wcurtin@sidley.com), Rakhee V. Patel (rpatel@sidley.com), Patrick Venter (pventer@sidley.com), and Anne G. Wallice (anne.wallice@sidley.com), attorneys for the DIP Lender, Robert M. Hirsh (Robert.hirsh@nortonrosefulbright.com), Kristian W. Gluck (Kristian.gluck@nortonrosefulbright.com), and James A. Copeland (james.copeland@nortonrosefulbright.com), the office of the United States Trustee, Elizabeth A. Young (Elizabeth.a.young@usdoj.com) and counsel to any official committee appointed in these Chapter 11 cases.

               /s/ *Matthew D. Giadrosich*
               Matthew D. Giadrosich