Mark Cronenwett (Bar No. 00787303)
Vivian Lopez (Bar No. 24129029)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2100 Ross Avenue, Suite 2000
Dallas, TX 75201
Phone: (214) 722-7100
mark.cronenwett@lewisbrisbois.com
vivian.lopez@lewisbrisbois.com

Scott D. Cousins (*admitted pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
500 Delaware Avenue
Suite 700
Wilmington, Delaware 19801
Phone: (302) 985-6000
scott.cousins@lewisbrisbois.com

*Attorneys for The Foundation of Delaware County (PA)*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered) |

## PRELIMINARY OBJECTION TO STIPULATION AND AGREED ORDER AUTHORIZING THE DEBTORS TO ENTER INTO THE RECEIVER AGREEMENT WITH THE COMMONWEALTH OF PENNSYLVANIA AND THE ATTORNEY GENERAL'S OFFICE FOR THE COMMONWEALTH OF PENNSYLVANIA

The Foundation of Delaware County (PA) ( the "**Foundation**"), by and through its counsel, hereby files this preliminary objection (the "**Objection**") to the Stipulation and Agreed Order Authorizing the Debtors to Enter into the Receiver Agreement with the Commonwealth of Pennsylvania and the Attorney General's Office for the Commonwealth of Pennsylvania [D.I. 429]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

(the "**Emergency Private Receiver Stipulation**").  In support thereof, the Foundation respectful states as follows:

## PRELIMINARY STATEMENT

This is an emergency of the Debtors own making.  As with these Chapter 11 Cases, the Debtor typically remains in possession of its assets and continues to operate the business as a "debtor in possession," subject to oversight by the bankruptcy court.  28 U.S.C. § 1334.  With the appointment of a Private Receiver, however, the Court will not have meaningful oversight over the Pennsylvania hospital Facilities (as defined in the Private Receiver Agreement).[2]  To be sure, should the Court grant the Emergency Private Receiver Stipulation, the continuation of healthcare service to the residents in and around Delaware County, Pennsylvania at the Debtors' hospitals in Delaware County Pennsylvania would be adversely affected, because unlike the Debtors (as debtors-in-possession), FTI Consulting, Inc. (the "**Private Receiver**") has no fiduciary duty to the creditors of the Debtors and can operate and winddown the Facilities, which constitute property of the Debtors' estates, outside of the ordinary course of business and without any Court supervision or approval.

For example, under the proposed order granting the Emergency Private Receiver Stipulation, the Private Receiver will have the *sole and absolute discretion*, the authority to:

- Manage the daily operations of the Pennsylvania Debtor Entities, including collection of any income, profits, rents and other revenues owed Pennsylvania Debtor Entities (Receiver Agreement at ¶ 9.d.);

---

[2]  *See* Form of Receiver Agreement Among the Commonwealth of Pennsylvania, the Attorney General's Office for the Commonwealth of Pennsylvania, and Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC (the "**Receiver Agreement**"), attached to the Emergency Private Receiver Stipulation as Exhibit A.

- Purchase inventory, operating supplies, equipment and other personal property as necessary in the Receiver's sole and absolute discretion to operate the Facilities (id. at ¶ 9.g.);

- Enter into, modify, amend, renew or cancel such leases, whether of real or personal property, tenancy agreements or contracts relating to the Facilities, under such terms and conditions as the Receiver may, in the Receiver's sole and absolute discretion, deem appropriate or desirable, provided that the Receiver may cooperate with the Pennsylvania Debtor Entities to reject leases in the Chapter 11 Cases (*id.* at ¶ 9.h.);

- Collect and receive any rents and profits, insurance payments, income or proceeds due to the Pennsylvania Debtor Entities (Id. at ¶ 9.j.);

- Make repairs and alterations to the Facilities (id. at ¶ 9.k.); and

- Do any lawful acts reasonably requested by the Commonwealth to protect the Facilities (*id.* at ¶ 9.m.).

Rather than a "controlled transition of the East Coast hospitals with the support of the regulators," Prospect Medical: First Day Presentation at p. 4,[3] entry of an order approving the Emergency Private Receiver Stipulation would cause chaos, particularly in the Delaware County hospitals impacted by the Emergency Private Receiver Stipulation and specifically for the "health and well-being and [the Debtors' commitment] to serving all patients, regardless of their ability to pay." Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings dated January 13, 2025 [D.I. 41] (the "**Rundell Declaration**") at ¶ 28.

Rather than protecting the health and welfare interests of the community, Prospect's Emergency Private Receiver Stipulation seeks only to grant to the Private Receiver powers that Prospect itself would otherwise have in the bankruptcy proceeding—*but, subject to the oversight*

---

[3] Prospect Medical: First Day Presentation (available at https://casedocs.omniagentsolutions.com/cmsvol2/pub_47535/b198b09d-7769-4fd8-a8d1-13f937c7b4bc_Prospect_First_Day_Hearing_Presentation.pdf) ("Prospect has one overarching goal that will be reiterated throughout today's proceedings and the course of these cases: patient safety.").

– 3 –

*and authority of this Court*. In sum, the Debtors have articulated no exigent circumstances that justify having the Emergency Private Receiver Stipulation heard on approximately 26 hours' notice.

## BACKGROUND

### A. The Foundation

1. The Foundation, formerly known as the Crozer-Keystone Community Foundation and successor-by-merger to Delco Memorial Foundation, is a non-profit, 501(c)(3), corporation formed under the laws of the Commonwealth of Pennsylvania. The Foundation is not responsible for health care services within the communities it serves. Rather, the Foundation is an independent community foundation, which partners with others to lead initiatives and programs that address the issues and challenges faced by Delaware County and its communities.

### B. The Prospect Asset Purchase Agreement

2. On January 8, 2016, CKHS, Inc. f/k/a Crozer-Keystone Health System ("**CKHS**"), Prospect Medical Holding, Inc. ("**Prospect Medical Holdings**"), and Prospect Crozer, LLC ("**Prospect Crozer**") entered into that certain Asset Purchase Agreement whereby CKHS sold its two duly-licensed hospitals: Delaware County Memorial Hospital and Crozer-Chester Medical Center (the "**Prospect APA**"). Crozer-Chester Medical Center is comprised of, and still is comprised of, four campuses: (1) Springfield Hospital; (2) Crozer-Chester Hospital; (3) Taylor Hospital; and (4) the Delaware County Community Hospital ("**DCMH**") (the four campuses of Crozer-Chester Medical Center and Prospect Crozer are, together, referred to herein as the "**Pennsylvania Hospitals**"). Historically, Crozer-Chester Hospital, Taylor Hospital, Springfield Hospital, and DCMH served some of the most underprivileged and underserved populations at the lower end of the economic ladder in Delaware County and Philadelphia, Pennsylvania.

3.      Pursuant to the Prospect APA, and as long as Prospect Medical Holdings and Prospect Crozer "own and operate one or more of the [Pennsylvania] Hospitals," Prospect APA at ¶ 11.15, these Debtors must "use commercially reasonable efforts to ensure that residents of Delaware County, Pennsylvania have access to a full range of healthcare services including primary, secondary and tertiary care, specialty and hospital-based services, and emergency and urgent care facilities necessary to support the needs of the community . . . ." *Id.*

4.      Moreover, the Debtors agreed that for a period of ten years they "shall not sell or close any of the licensed Hospitals, including any campus of a licensed Hospital providing inpatient acute care services as of the Effective Time . . . unless consented to by the Advisory Board and the Foundation in advance. Prospect APA at ¶ 11.16 (emphasis added). The Foundation has the right to enforce these provisions of the Prospect APA, and certain other rights thereunder.

5.      On September 21, 2022, without consent of the Foundation, Prospect Medical Holdings and Prospect Crozer announced that they would close DCMH within 60 days. According to the "Stabilization/Transformation Plan" presented by Prospect to the Pennsylvania Department of Health, DCMH would be converted into a "Behavioral Health Hospital," including a crisis care unit, inpatient psychiatric care, and detox and rehabilitation services, which would be subject to no supervision, restriction, or operational standards by the Foundation, all as required by the Prospect APA.[4]

---

[4] Under the Prospect APA, the Foundation was given the ability to enforce the right to these critical and life-sustaining medical services for the communities served by the Pennsylvania Hospitals. Prospect now seeks to strip away the Foundation's rights to protect members of the Delaware County community, without any due process. Money damages cannot adequately compensate the Foundation and the Delaware County community for Prospect's violations of the Prospect APA.

6. Following the steps by Prospect Medical Holdings and Prospect Crozer, in 2022 the Foundation sued these Debtors seeking an injunction to keep, at the very least, the continuation of emergency services at DCMH. Recognizing the Foundation's rights to enforce the Prospect APA, the trial court granted a preliminary injunction. *See CKHS, Inc. v. Prospect Med. Holdings, Inc.*, No. CV-2022-007161, Pa. C.P., at p. 6 (Dec. 2, 2022) ("The effect of our order would simply preserve the existing situation, *i.e.*, preserve the status quo and such harm as may be suffered by defendants by being required to maintain these services pending final hearing would be minimal."). Prospect appealed that order and, recently, the Pennsylvania Supreme Court reversed an intermediate appellate court which had sided with Prospect.[5] *See CKHS, Inc. v. Prospect Med. Holdings, Inc.*, 2025 Pa. LEXIS 88 (Pa. 2025) (reversing the Commonwealth Court, and finding that the record supported the trial court's decision to issue a preliminary injunction).

C. **The Foundation's Leasehold Interests in the Springfield Properties**

7. In addition to being able to enforce certain obligations of the Debtors under the Prospect APA, the Foundation, through various Foundation affiliates, holds certain leasehold interests in the Facilities.

---

[5] According to the Debtors, Prospect "attempted to transition Delaware County Memorial Hospital to meet community needs for providing behavioral health services . . . . However, the Pennsylvania AG and the Foundation for Delaware County filed suit, and the Commonwealth of Pennsylvania did not issue the necessary licenses for the transition." Emergency Sale Motion at ¶ 18; *see also* Rundell Declaration at ¶ 22, n.8. The Foundation's complaint did not seek to block Prospect's attempts to install a behavioral health center and services at the DCMH. Indeed, the Foundation never objected to the installation of the behavioral health center at DCMH, particularly since the hospital is a multi-storied, large building and campus which could have easily housed a behavioral care facility along with the emergency room. Rather, CKHS and the Foundation sought to enjoin Prospect from closing the hospital's emergency room by requiring it to maintain its then-current staffing and services.

*1.    The Springfield Hospital Property*

8.    One of the Debtors, Prospect CCMC, LLC ("**Prospect CCMC**"), is the subtenant of CKHS, Inc. f/k/a Crozer-Keystone Health System ("**CKHS**") in connection with the property designated as Unit B and C of Springfield Healthplex and located at 190 West Sproul Road, Springfield Pennsylvania (the "**Springfield Hospital**") pursuant to that certain written lease agreement dated October 7, 2009 (the "**Springfield Hospital Sublease**").  Prospect CCMC operated the Springfield Hospital, although due to the "COVID-19 pandemic and lack of volume, Springfield Hospital was placed in suspension for all in-patient services." Rundell Declaration at ¶ 22, n.7.  Currently, the "Springfield Hospital does have out-patient services . . . ." *Id.*

9.    The prime landlords with respect to the Springfield Hospital prime lease (the "**Springfield Hospital Prime Lease**") are ARHC CKSFDPA01, LLC, ARHC CKSFDPA03, LLC and ARHC CKSFDPA02, LLC (the "**Springfield Landlords**").  The Springfield Hospital Sublease has not been assumed or rejected, and Prospect CCMC remains in possession of the related property (the "**Springfield Hospital Property**") and continues to enjoy its full use and occupation.[6]

10.    The initial annual base rent for the Springfield Hospital Property is $4,400,000, plus additional amounts due under the Springfield Hospital Sublease including real estate taxes, and other obligations, which amount is not contingent, unliquidated, or disputed by the Debtors.

11.    Since the Petition Date, Prospect CCMC has continued to occupy and receive the benefits from the use of the Springfield Hospital Property.  Prospect CCMC, however, has not paid

---

[6] A portion of the Springfield Healthplex was subleased from CKHS, the tenant under the Springfield Hospital Prime Lease, to Prospect CCMC, and again, on November 8, 2019, from Prospect CCMC to Community YMCA of Eastern Delaware County.  *See* Agreed Order Approving Stipulation for Agreed Order Regarding Payment Pursuant to Sub-Sublease Agreement and Consent of Landlord to Sub-Sublease dated February 4, 2025 [D.I. 397].

base rent due under the Springfield Hospital Sublease for the months of October, November, December 2024, or January 2025 through the Petition Date, and postpetition rent from the Petition Date through the date of this Objection.

### 2. *The Primary Care Springfield Property*

12. Prospect CCMC is also the subtenant of CKHS in connection with the property located at 100 West Sproul Road, Springfield Pennsylvania (the "**Primary Care Springfield Property**") pursuant to that certain written lease agreement dated October 7, 2009 (the "**Primary Care Springfield Sublease**," and together with the Springfield Hospital Sublease, the "**Springfield Properties Subleases**"). Prospect CCMC operates the Primary Care Springfield Property.

13. The prime landlords with respect to the Primary Care Springfield prime lease (the "**Primary Care Springfield Prime Lease**") are the Springfield Landlords. The Primary Care Springfield Sublease has not been assumed or rejected, and Prospect CCMC remains in possession of the related property (the "**Primary Care Springfield Property**") and continues to enjoy its full use and occupation.

14. The initial annual base rent for the Primary Care Springfield Property is $1,020,000, plus additional amounts due under the Primary Care Springfield Sublease including real estate taxes, and other obligations, which amount is not contingent, unliquidated, or disputed by the Debtors.

15. Since the Petition Date, Prospect CCMC has continued to occupy and receive the benefits from the use of the Primary Care Springfield Property. Prospect CCMC, however, has not paid base rent due under the Primary Care Springfield Sublease for the months of October,

November and December 2024, or January 2025 through the Petition Date, and postpetition rent from the Petition Date through the date of this Objection.

### *3.  Certain Foundation Guaranties Related to the Springfield Properties*

16. In addition, the Foundation is also a guarantor of all lease obligations related to the Springfield Hospital Property and the Primary Care Springfield Property (together, the "**Springfield Properties**").

### D.  The Pennsylvania Attorney General's Complaint, Request for Preliminary Injunction and Request for the Appointment of a Private Receiver

17. On October 28, 2024, the Commonwealth of Pennsylvania filed a complaint against Prospect Medical Holdings, Prospect Crozer, Leonard Green and Partners, Samuel Lee and David Topper (the "**Commonwealth Complaint**").  The Commonwealth Complaint was filed in Court of Common Pleas of Delaware County (the "**Receivership Court**").

18. Pennsylvania's Commonwealth Complaint alleged a series of claims against the Prospect Defendants including Breach of Contract (Count I), Negligent Misrepresentation (Count II), Unjust Enrichment (Count III), Constructive Trust (Count IV), Breach of Fiduciary Duty (Count V), Revocation of Corporate Franchise and Appointment of Receiver (Count VI), and Funding to Support Transition to Nonprofit Successor (Count VII).[7]  In connection with Count VII, the Commonwealth sought an order directing the Prospect Defendants to "repay the imprudent and illegal dividends they have received which contributed to the financial demise of PROSPECT CROZER as alleged."  Commonwealth Complaint ¶ 119.

---

[7]  All of these claims were also brought by the Commonwealth against each of the Prospect Defendants other than Count I of the Commonwealth Complaint which was brought against only the Prospect D&O Defendants, Lee and Topper.

– 9 –

19. In the Commonwealth Complaint, the Pennsylvania Attorney General alleged that Prospect made distributions of at least $457 million in dividends to its investors and the Prospect Defendants through a $1.12 billion dollar loan secured by Prospect's properties owned in Pennsylvania, California and Connecticut.[8] The Commonwealth also alleged that Prospect entered into a sale-leaseback scheme related to its Pennsylvania real estate holdings where the new lease obligations contributed to Prospect's financial instability and resulted in the closing of its programs and two hospitals.[9] In fact, as a result of the sale-leaseback transaction, the hospitals were saddled with a $35,000,000.00 annual lease debt.

E. **The Prospect Chapter 11 Cases**

20. Beginning on January 11, 2025 (the "**Petition Date**"), Prospect Medical Holdings, Prospect Crozer, and their affiliated debtors (collectively, "**Prospect**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") with this Court, thereby commencing these chapter 11 cases (the "**Chapter 11 Cases**"). Prospect is operating its businesses and managing its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F. **The Emergency Private Receiver Stipulation**

21. The Emergency Private Receiver Stipulation provides, *inter alia*, that:

> all obligations of the Pennsylvania Debtor Entities as debtors in possession (including, but not limited to, all reporting requirements) shall remain obligations solely of the Pennsylvania Debtor Entities and shall not become obligations of the

---

[8] In fact, it has been widely reported that individual Prospect Defendant, Sam Lee, received a $90,000,000.00 bonus in connection with the $457,000,000.00 dividend extracted from the financially crippled hospital system. *See, e.g.*, Prospect Medical Holdings files for bankruptcy after owners took hundreds of millions in payouts (available at https://www.cbsnews.com/news/prospect-medical-holdings-bankruptcy-private-equity/ ).

[9] The Commonwealth Complaint impacted the Springfield Hospital and the Delaware County Memorial Hospital, as well as two other Prospect hospitals—one located in Ridley Park, Pennsylvania and a second located in Chester, Pennsylvania.

>Receiver. Additionally, the Receiver shall not have responsibility for any liens, interests or claims of the Debtors or their estate arising before the Receiver Appointment Date.

Emergency Private Receiver Stipulation at ¶ 2. As such, the Debtors are responsible for the payment of rent, real estate taxes, management fees, CAM charges and any other obligations provided for in the Springfield Properties Subleases, not the Private Receiver.

## LEGAL ARGUMENT

**A. The Entry of any Order Approving the Emergency Private Receiver Stipulation Would Violate the Foundation's Due Process Rights and Basic Notices of Fairness and Equity**

22. The Due Process Clause provides, "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Once due process is triggered, the question becomes what process is due.

23. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenbery v. U.S.*, 534 U.S. 161 (2002) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

24. Here, the Emergency Private Receiver Stipulation violates the Foundation's due process rights, and basic principles of fairness and equity. The Debtors have presented no exigencies that necessitate having the Emergency Private Receiver Stipulation granted (much less heard) on less than one day's notice. Indeed, a party's own delay is not an exigency that warrants shortening notice. *See In re Villareal*, 160 B.R. 786, 787 (Bankr. W.D. Tex. 1993) (holding that "cause" under Bankruptcy Rule 9006 is not shown when the cause for an expedited hearing is one of the movant's own making). *See also In re A.H. Coombs, LLC*, 2016 Bankr. LEXIS 4443 at \*7-

8 (Bankr. D. Utah, Dec. 22, 2016) ("Prejudice to the other parties involved could come in different forms. A party may be prejudiced by not having enough time to prepare for an unexpected hearing. Prejudice may also result if, as in this case, an expedited hearing may affect a party's redress in a hearing scheduled in due course.").

25. Accordingly, any order approving the Emergency Private Receiver Stipulation with such inadequate notice must be vacated as failing to provide the Foundation with basic due process. FED. R. BANKR. P. 9014(a) ("Reasonable notice and an opportunity to be heard must be given to the party against whom relief is sought."). *See also In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448-51 (9th Cir. 1985) (vacating bankruptcy court's section 363(c) cash collateral order as void under the Due Process Clause of the U.S. Constitution where affected party received one business day's notice of hearing and notice "provided insufficient information to permit [the party] adequately to prepare and present objections"); *In re Craven*, 70 B.R. 295, 297 (Bank. W.D. Mo. 1987).

    **B.** **The Entry of any Order Approving the Emergency Private Receiver Stipulation Would Violate The Foundation's Rights to Enforce the Prospect APA and its Rights as a Creditor of the Chapter 11 Debtors**

        *1.* *The Foundation's Contractual Rights under the Prospect APA*

26. The Foundation's rights to enforce the provisions of the Prospect APA that prohibit the Debtors from selling or closing the Facilities would be abrogated upon the entry of any order approving the Emergency Private Receiver Stipulation. Prospect APA at ¶ 11.16 (Prospect for a period of ten years "shall not sell or close any of the licensed Hospitals, including any campus of a licensed Hospital providing inpatient acute care services as of the Effective Time . . . unless consented to by the Advisory Board and the Foundation in advance."). These rights cannot be

– 12 –

abrogated without providing the Foundation with discovery and a full and fair opportunity to present its objections to the Court.

### 2. The Foundation has no Recourse Against the Private Receiver

27. These Chapter 11 Cases also provide a more structured and formalized process for reorganization with specific provisions for the treatment of different types of claims, such as secured, priority, administrative priority claims and general unsecured. Creditors in the Chapter 11 Cases benefit by filing a claim which is deemed valid unless an objection is filed. If an objection is filed, the determination and extent of the claims are controlled by the Court.

28. With respect to the treatment of Prospect's Springfield Properties Subleases, section 365 of the Bankruptcy Code requires Prospect perform under the terms of the lease agreements after filing the bankruptcy petition. 11 U.S.C. § 365(d). This includes the payment of rent, real estate taxes, management fees, CAM charges and any other obligations provided for in the lease documents related to Springfield Properties. The Private Receiver could avoid any such requirements because it is not the fiduciary in these cases—the Debtors are. *See* Emergency Private Receiver Stipulation at ¶ 2 ("the Receiver shall not have responsibility for any liens, interests or claims of the Debtors or their estate arising before the Receiver Appointment Date.").

29. Moreover, in a hypothetical private receivership case under Pennsylvania Law, the Foundation would have remedies against any private receiver since the receiver displaces the pre-receivership management and takes full control of the entity's assets and operations. *Wells Fargo Bank v. Parking Auth. of Scranton*, 95 A.3d 371 (2014). As a matter of law, the appointment of a receiver puts all the property subject to the receivership in the custody of the court. *Id*. at 375 (receiver is "the officer-the executive hand-of a court of equity," and its property is in *custodia legis*); *Snyder v. First Nat'l Bank*, 59 Pa. D. & C.2d 187, 191 (1973) (the property in the possession

of a receiver is in *custodia legis*, and the receiver's possession is the possession of the court for the benefit of those ultimately entitled).

> 3. *The Appointment of the Private Receiver Will Adversely Impact the Rights that the Foundation has in the Chapter 11 Cases*

30. By authorizing the Private Receiver to "[e]nter into, modify, amend, renew or cancel such leases, whether of real or personal property," Receiver Agreement at ¶ 9.h., the Court will fundamentally and adversely impact the Foundation's rights under the Bankruptcy Code, without any Court supervision or approval, by, *inter alia*:

- eliminating the Foundation's rights to enforce the current payment of rent (which, together with taxes, exposes the Foundation to a potential $30,000,000 liability);[10]

- eliminating the Foundation's right to enforce the Prospect APA to the detriment of the citizens who rely on the continued operation of the hospitals;

---

[10] Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) if this title.

11 U.S.C. § 365(d)(3). "The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms." *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 209 (3d Cir. 2001); *see also Augusta Mall P'ship v. Twigland Fashions, Inc. (In re Twigland Fashions)*, 198 B.R. 199, 200 (W.D. Tex. 1996) (citing *In re Pac.-Atl. Trading Co.*, 27 F.3d 401, 404 (9th Cir. 1994) ("The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the 60-day [now 120-day] period pending assumption or rejection [of the lease]."); *In re Appletree Markets, Inc.*, 139 B.R. 417, 421 (Bankr. S.D. Tex. 1992) ("The plain language of the statute is clear. Section 365(d)(3) provides for timely performance of all obligations of the debtor from and after the order for relief."); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 933 (Bankr. W.D. Tex. 1994). "The plain language of § 365(d)(3) is clear: the debtor-tenant must fully and timely perform its obligations under the lease." "Both the text and the intent of § 365(d)(3) are clear: commercial real property lessees must continue to perform after filing for bankruptcy." *In re CEC Entm't, Inc.*, 625 B.R. 344, 352 (Bankr. S.D. Tex. 2020).

- eliminating the Foundation's rights to enforce the current payment of real estate taxes;[11]

- eliminating the Foundation's rights to compel the Private Receiver to perform Prospect's lease obligations regarding the Springfield Properties;[12] and

- eliminating the Foundation's rights to recover late fees, interest, and attorneys' fees.[13]

31. In addition, the Foundation is entitled to adequate protection under sections 361 and 363(e) of the Bankruptcy Code due to Prospect's continuing use of the Springfield Properties. 11 U.S.C. §§ 361; 363(e). Accordingly, the Emergency Private Receiver Stipulation, if granted, would also eliminate the Foundation's rights to adequate protection in the form of immediate

---

[11]   *In re Metals USA, Inc.*, Nos. 01-42530-H4-11, 2004 Bankr. LEXIS 2662 (Bankr. S.D. Tex., Jan. 15, 2004).

[12]   "Unlike other creditors who could simply choose to stop doing business with the debtor post-petition, landlords were stuck with the debtor while it decided whether to assume or reject the lease, during which time the debtor was not paying rent and the landlord could not re-let the space." *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 497 (Bankr. N.D. Tex. 2011). Congress specifically chose to protect real property lessors because "[u]nlike other creditors who could simply choose to stop doing business with the debtor post-petition, landlords were stuck with the debtor while it decided whether to assume or reject the lease, during which time the debtor was not paying rent and the landlord could not re-let the space." *Id.* Thus, the clear intent of intent of section 365(d)(3) is "to assure that landlords not be compelled to furnish current services without being compensated on a current basis." *In re Food City, Inc.*, 95 B.R. 451, 455 (Bankr. W.D. Tex. 1988).

[13]   To the extent provided for in the lease agreements, attorneys' fees are recoverable as an administrative claim. *In re Pelican Pool & Ski Ctr., Inc.*, No. 05-22983 (DHS), 2009 WL 2244573, at *16 (D.N.J. July 27, 2009) (if the lease provides for attorney's fees and is enforceable under state law, "[t]he landlord is entitled to pre-rejection attorney's fees pursuant to section 365(d)(3) as a matter of law pending the court's determination of the reasonableness of such fees."); *see also In re MS Freight Distribution, Inc.*, 172 B.R. 976, 978-979 (Bankr. W.D. WA. 1994); *In re PacWest Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) (attorneys' fees for motion to compel payment of post-petition lease obligations); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453-455 (Bankr. S.D. Fla. 006); *see also Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (holding that "an otherwise enforceable contract allocating attorney's fees . . . is allowable in bankruptcy except where the Bankruptcy Code provides otherwise."). Section 19.5 of the Lease provides for attorney's fees.

payment of the obligations under the Springfield Properties Subleases pursuant to section 363(e) of the Bankruptcy Code.[14]

### C. If Granted, the Order Authorizing the Appointment of the Private Receiver Must Protect the Rights of the Foundation as Set Forth in the Bankruptcy Code

32. The Foundation identifies the current postpetition amounts currently due and owing to it by the Debtors as:

**Prospect Postpetition Rent**
**Springfield Properties Subleases**

| Item | Amount | Balance |
|---|---|---|
| Postpetition Rent (Jan. 11, 2025-Feb. 28, 2025) | $2,063,288.78 | |
| 2025 School & Municipal Taxes | $1,650,000.00 | |
| Total Postpetition | | $3,713,288.78 |

---

[14] Section 363(e) of the Bankruptcy Code provides, in pertinent part, that:

[A]t any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e). Real property lessors are entitled to seek adequate protection. *See, e.g., Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286-87 (5th Cir. 1986) (recognizing landlord's right to adequate protection); *P.J. Clarke's Restaurant*, 265 B.R. at 404 (noting that a "landlord's right to adequate protection seems to follow clearly from the language of § 363(e) . . . ."); *In re Ernst Home Ctr., Inc.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997) (real property lessors have the right to request adequate protection). Moreover, section 363(p)(1) places the burden of proving adequate protection on the Debtor.

– 16 –

33. Accordingly, the amount that the Debtors currently owe to the Foundation with respect to the Springfield Properties is no less than $3,713,288.78 for postpetition rent from the Petition Date through the date of this Objection (the "**Postpetition Rent**").[15]

34. To the extent that this Court is inclined to grant the Emergency Private Receiver Stipulation, that order must condition the entry of the Emergency Private Receiver Stipulation by directing the Debtors to:

> (a) pay the Cure Amount and any other outstanding amounts due and owing to the Foundation including the payment of rent, real estate taxes, management fees, CAM charges and any other obligations provided for in the lease documents related to Springfield Properties;
>
> (b) provide adequate protection in the form of Prospect's performance of its lease obligations regarding the Springfield Properties including the payment of includes the payment of rent, real estate taxes, management fees, CAM charges and any other obligations provided for in the Springfield Properties Subleases; and
>
> (c) require the Private Receiver to seek relief from this Court prior to seeking to "modify, amend, renew or cancel such leases, whether of real or personal property, tenancy agreements or contracts relating to the Facilities. . . ." (Receiver Agreement at ¶ 9.h.).

## CONCLUSION

**WHEREFORE,** the Foundation respectfully requests that the Court enter an order:

> (i) denying the Emergency Private Receiver Stipulation;
>
> (ii) alternatively, conditioning the approval of the Emergency Private Receiver Stipulation upon (a) the Debtors' payment of the Cure Amount and any other outstanding amounts due and owing to the Foundation, (b) provide adequate protection in the form of Prospect's performance of its lease obligations regarding the Springfield Properties including the payment of includes the payment of rent, real estate taxes, management fees, CAM charges and any other obligations provided for in the Springfield Properties Subleases, and (c) require the Private Receiver to seek relief from this Court prior to

---

[15] This Postpetition Rent does not necessarily reflect the actual Postpetition Rent—namely, the amount currently due and owing to the Foundation, or which may become due to the Foundation, or which may remain unpaid, as of the effective date of any assumption, or assumption and assignment of the Delaware County Subleases.

seeking to "modify, amend, renew or cancel such leases, whether of real or personal property, tenancy agreements or contracts relating to the Facilities"; and

(iii) granting such other and further relief to the Foundation as is just and proper.

Dated: February 6, 2025
Dallas, Texas

*/s/ Mark Cronenwett*
Mark Cronenwett (Texas Bar No. 00787303)
Vivian Lopez (Texas Bar No. 24129029)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2100 Ross Avenue, Suite 2000
Dallas, TX 75201
Phone: (214) 722-7100
E-Mail: mark.cronenwett@lewisbrisbois.com
vivian.lopez@lewisbrisbois.com

– and –

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Scott D. Cousins (*admitted pro hac vice*)
500 Delaware Avenue
Suite 700
Wilmington, Delaware 19801
(302) 985-6000
E-Mail: scott.cousins@lewisbrisbois.com

*Attorneys for The Foundation of Delaware County (PA)*

## **CERTIFICATE OF SERVICE**

I, Mark Cronenwett, hereby certify that on this 6th day of February, 2025, I caused a true and correct copy of the *Preliminary Objection to Stipulation and Agreed Order Authorizing the Debtors to Enter into the Receiver Agreement with the Commonwealth of Pennsylvania and the Attorney General's Office for the Commonwealth of Pennsylvania* to be served upon all parties set to receive notices via the Court's CM/ECF system and to the below service list via electronic mail.

**Prospect Medical Holdings Inc.**
Frank Saidara
3824 Hughes Ave.
Culver City, CA 90232
Email: frank.saidara@pmh.com

**Sidley Austin LLP**
Anne G. Wallice
Sean M. Nuernberger
Charlie B. Brownstein
787 Seventh Avenue
New York, NY 10019
Email: anne.wallice@sidley.com
Email: sean.nuernberger@sidley.com
Email: charlie.brownstein@sidley.com

Laurel D. Roglen
Erin L. Williams
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Email: roglenl@ballardspahr.com
Email: williamsone@ballardspahr.com

Matthew Friedrick
Erez E. Gilad
Emily Kuznick
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Email: matthewfriedrick@paulhastings.com
Email: erezgilad@paulhastings.com
Email: emilykuznick@paulhastings.com

William Sasso
Thomas Ix
Julie Murphy
**STRADLEY RONON STEVENS & YOUNG, LLP**
2005 Market Street, Ste. 2600
Philadelphia, PA 19103
Email: WSasso@stradley.com
Email: TIx@stradley.com
Email: Jmmurphy@stradley.com

**Office of the United States Trustee**
Elizabeth Young
1100 Commerce Street, Room 976
Dallas, TX 7524
Email: elizabeth.a.young@usdoj.gov

Amy K. Anderson
**JONES WALKER LLP**
5960 Berkshire Lane, 6th Floor
Dallas, TX 75225
Email: aanderson@joneswalker.com

Melissa L. Van Eck
Strawberry Square Tower, 15th Floor
Harrisburg, PA 17101
mvaneck@attorneygeneral.gov

Christopher Momjian
1600 Arch Street, Ste. 300
Philadelphia, PA 19103
crmomjian@attorneygeneral.gov

Charles Martin Persons, Jr.
**PAUL HASTINGS LLP**
2001 Ross Avenue, Ste. #700-168
Dallas, TX 75201
Email: charlespersons@paulhastings.com

Dated: February 6, 2025 */s/ Mark Cronenwett*
　　　　　　　　　　　　　　　Mark Cronenwett