

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 7, 2025**

_____
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

### STIPULATION AND AGREED ORDER AUTHORIZING THE DEBTORS TO ENTER INTO THE RECEIVER AGREEMENT WITH THE ATTORNEY GENERAL'S OFFICE FOR THE COMMONWEALTH OF PENNSYLVANIA

This stipulation and agreed order (this "Order")[2] is made and entered into by and among Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), and the Commonwealth of Pennsylvania (the "Commonwealth")

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Receiver Agreement or the Sale Motion (as defined below), as applicable.

through its Attorney General, David W. Sunday, Jr., (the "Pennsylvania AG" and together with the Debtors, the "Parties") as *parens patriae*. The Parties hereby stipulate and agree as follows:

## RECITALS

**WHEREAS,** beginning on January 11, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court");

**WHEREAS,** on February 3, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant to Bankruptcy Rule 9019; and (II) Granting Related Relief* [Docket No. 332] (the "Sale Motion"), seeking approval to, among other things, transfer the Pennsylvania Debtor Entities' (as defined in the Receiver Agreement) assets, including the Facilities (as defined in the Receiver Agreement), in light of the Pennsylvania Debtor Entities' unsustainable liquidity crisis;

**WHEREAS,** the Parties have been working tirelessly to find a consensual resolution regarding such expedited Transfer (as defined in the Receiver Agreement), and, specifically, to address certain operational and financial needs related to the Facilities (arising prior to the Transfer), that the Pennsylvania Debtor Entities are unable to meet in their current financial circumstances;

**WHEREAS**, the Parties have agreed to have FTI Consulting, Inc. assume the operation of the Facilities, pursuant to the provisions of applicable laws, regulations, and a receiver agreement, substantially in the form attached hereto as **Exhibit A** (the "Receiver Agreement"), in order to

2

eliminate uncertainty regarding the Facilities' finances and to ensure the continued provision of health services and other public and community benefits in the best interests of all stakeholders; and

**WHEREAS**, contemporaneously herewith, the Parties filed an agreed order (the "Receiver Order") in the United States District Court for the Eastern District of Pennsylvania, Case No. 2024-05823, authorizing the appointment of FTI Consulting, Inc. (the "Receiver") as the receiver over the Facilities.

**NOW, THEREFORE, IT IS IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED THAT**:

1. The Receiver Agreement, substantially in the form attached hereto as **Exhibit A**, including all other ancillary documents, and all of the terms and conditions thereof, and the Receiver appointment contemplated thereby, are hereby approved in all respects and the Debtors are authorized to enter into the Receiver Agreement.

2. The rights, duties and obligations of the Receiver from and after the date the Receiver is appointed (the "Receiver Appointment Date") are approved as set forth in the Receiver Agreement; provided, that all obligations of the Pennsylvania Debtor Entities as debtors in possession (including, but not limited to, all reporting requirements) shall remain obligations solely of the Pennsylvania Debtor Entities and shall not become obligations of the Receiver. Additionally, the Receiver shall not have responsibility for any liens, interests or claims of the Debtors or their estate arising before the Receiver Appointment Date.

3. Until further order of this Court, on the Receiver Appointment Date, the Pennsylvania Debtor Entities shall be placed in the control of the Receiver, and the Receiver shall operate the Facilities pursuant to the Receiver Agreement and the Receiver Order, and under the

supervision of this Court. For the avoidance of doubt, the Receiver shall be authorized to begin operating the Facilities immediately while entry of the Receiver Order is pending.

4. The automatic stay under Section 362 of the Bankruptcy Code shall not apply to the Receiver or its actions pursuant to this Order and the Receiver Agreement, including, without limitation, its continued operations of the Pennsylvania Debtor Entities.

5. The Receiver is excused from the requirement of complying with section 543(b) of the Bankruptcy Code.

6. The Receiver is not a mere continuation of the Debtors or their estate, and there is no continuity, no common identity, and no continuity of enterprise between the Receiver and the Debtors. The Receiver is not holding itself out to the public as a continuation of the Debtors. The Receiver is not a successor to the Debtors or the Debtors' estate by reason of any theory of law or equity, and the appointment of the Receiver does not amount to a consolidation, merger, or de facto merger of the Receiver or the Debtors.

7. Nothing in this Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.

8. Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**# # # END OF ORDER # # #**

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
Email: tom.califano@sidley.com
rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: wcurtin@sidley.com
pventer@sidley.com
anne.wallice@sidley.com

*Proposed Attorneys to the Debtors
and Debtors in Possession*

# **EXHIBIT A**

**Receiver Agreement**

**FORM OF RECEIVER AGREEMENT**

**AMONG**

**THE ATTORNEY GENERAL'S OFFICE FOR THE COMMONWEALTH OF PENNSYLVANIA**

**AND**

**Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC[1]**

This Receiver Agreement (the "Agreement") is by and among the Commonwealth of Pennsylvania (the "Commonwealth") through its Attorney General, David W. Sunday, Jr., (the "Pennsylvania AG") as *parens patriae*, and the Pennsylvania Debtor Entities, each as a debtor and debtor in possession in the voluntary cases commenced beginning on January 11, 2025, by each Pennsylvania Debtor Entity and certain of their affiliates in the United States Bankruptcy Court for the Northern District of Texas (the "Court"), which cases are being jointly administered under Case Number 25-80002 (SGJ) (the "Chapter 11 Cases").

**WHEREAS**, the Pennsylvania Debtor Entities are affiliates within the Prospect Medical Holdings, Inc.'s corporate structure, which includes other hospitals and provider entities operating nationwide (such non-Pennsylvania Debtor Entities, collectively, the "Non-Pennsylvania Debtor Entities" and, together with the Pennsylvania Debtor Entities, collectively, the "Debtors");

**WHEREAS**, the Pennsylvania AG and the Debtors have been working tirelessly to find a consensual resolution regarding an expedited transition of the Pennsylvania Debtor Entities' assets, including the Facilities and the interests in the Joint Ventures, (the "Transfer") in light of the Pennsylvania Debtor Entities' unsustainable liquidity crisis;

**WHEREAS**, the Pennsylvania Debtor Entities have certain operational and financial needs related to the Facilities arising prior to the Transfer, which they are unable to meet in their current financial circumstances;

**WHEREAS**, the Pennsylvania Debtor Entities have a legal obligation to continue to operate the Facilities until at least June ___, 2026;

---

[1] Collectively, these entities shall be referred to as the "Pennsylvania Debtor Entities." The Pennsylvania Debtor Entities own and operate The Springfield Hospital, The Taylor Hospital, The Delaware County Memorial Hospital, and The Crozer Chester Medical Center and provide various outpatient services (collectively, the "Facilities") in the area surrounding the Facilities. Certain of the Pennsylvania Debtor Entities own joint venture interests in Brinton Lake Management Company, LLC, Cyberknife Center of Philadelphia, LLC, Delaware Valley Sleep Management Company, LLC, Del-Val Equipment Leasing Company, LLC, Dialysis Access Centers, LLC, Grayhawk Home Care 1, LLC, Haverford Management Company, LLC, Tech Park Properties, Inc., University Technology Park, Inc., DCMH MOB Associates, and Springfield ASC, LLC (collectively, the "Joint Ventures").

**WHEREAS**, the Pennsylvania AG has retained FTI, Consulting, Inc. ("FTI") to act as a receiver;

**WHEREAS**, the Pennsylvania AG and the Pennsylvania Debtor Entities have agreed to have FTI (the "Receiver") assume the operation of the Facilities, pursuant to the provisions of applicable laws, regulations, and this Agreement (the "Receivership"), with such Receivership being effective as of the date of entry of the order appointing the Receiver in *Commonwealth of Pennsylvania v. Prospect Medical Holdings Inc., et al.*, No. 2024-05823, in the United States District Court for the Eastern District of Pennsylvania (the "Receivership Date");

**WHEREAS,** the Pennsylvania AG, the Pennsylvania Debtor Entities, and the Receiver recognize that eliminating uncertainty regarding the Facilities' finances and ensuring continued provision of health services and other public and community benefits they provide is in the best interests of all stakeholders; and

**NOW, THEREFORE,** in consideration of the mutual understandings and conditions described in this Agreement, the parties agree as follows:

### RECEIVERSHIP

1. The Receiver is appointed as receiver of the Facilities to commence its operations as Receiver on the Receivership Date. The Receiver accepts the appointment as Receiver of the Facilities. The Receiver shall manage operations and fund operations and liabilities of the Facilities from the Facilities' cash and accounts receivables and from the Payments (as defined below) as set forth in paragraph 6. The Receiver, via funds received from operations and the Commonwealth, may fund (a) working capital sums necessary to cover the Facilities' needs and expenses, (b) its obligations hereunder and in respect of the Receivership, and (c) to maintain the Facilities in good repair. Nothing contained in this Agreement shall make the Receiver responsible for any claims, obligations, liabilities, costs, or expenses howsoever arising or relating to any period prior to the Receivership Date hereof.

2. Except as herein provided, the duration of appointment of the Receiver as receiver of the Facilities shall be for a period of not more than [thirty (30) days] from the Receivership Date, subject to renewal or extension (the "Term of Receivership"). The Pennsylvania AG may, in its discretion and subject to written agreement with the Pennsylvania Debtor Entities, extend the duration of this Agreement until appointment of a new receiver acceptable to the Pennsylvania AG or the issuance of an operating certificate to a new established operator. Any such extensions shall be on the same terms and conditions a set forth herein or such other terms and conditions as may be agreed upon in writing by the parties.

3. The Pennsylvania Debtor Entities agree to promptly and diligently execute all documents necessary to transfer full control of the operations and finances of the Facilities to the Receiver.

4. The Pennsylvania Debtor Entities waive any rights they may have under applicable law or otherwise to terminate this Agreement or terminate the appointment of the Receiver as receiver except as expressly set forth in this Agreement, absent further order of the Court.

5. [Notwithstanding anything in this Agreement to the contrary, all accounts receivable from a period agreed to by the Pennsylvania Debtor Entities and the Pennsylvania AG forward shall, upon collection, be used by the Receiver for the benefit of the Facilities pursuant to the terms of this Agreement and consistent with all provisions of law. The pre-Receivership Date accounts receivable shall remain property of the Pennsylvania Debtor Entities' estate.][2]

6. [The Receiver shall operate the business conducted at the Facilities on and after the Receivership Date. The Receiver shall be liable for all post-Receivership accounts payable and other liabilities arising out of or relating to the operation of the business conducted at the Facilities during the Term of the Receivership. Notwithstanding the foregoing, any profit generated during the Receivership shall be retained by the Receiver, subject to the terms set forth in paragraph 7 of this Agreement.][3]

7. In the event of the expiration or termination of the Receivership, the Receiver shall execute and deliver such assignments, reassignments, conveyances, releases, and other documents as may be reasonably required to restore the parties to the *status quo ante* and to transfer the assets, liabilities, and operations of the Facilities, and divest itself of all incidents of ownership thereof to such person(s) or entities as the Pennsylvania Debtor Entities shall designate, subject to the approval of the Pennsylvania AG.

8. The Receiver shall not incur any obligation or make any borrowings secured by the Facilities or any part of the Facilities or the Pennsylvania Debtor Entities' assets, or undertake any transaction which would place an encumbrance upon the assets of the Facilities or the Pennsylvania Debtor Entities' assets during the Term of the Receivership without the prior written approval of the Pennsylvania Debtor Entities and approval of the Court in the Chapter 11 Cases.

9. The Receiver shall have powers, duties, rights, and obligations, including, but not limited to the following:

    a. [Identify and implement both short-term and long-term process improvement and control initiatives within the Facilities;

    b. Create tools to measure and monitor improvements;

    c. Maintain the records, books, accounts, and other documents of the Pennsylvania Debtor Entities;

---

[2] Subject to ongoing discussions among the parties.
[3] Subject to ongoing discussions among the parties.

3

    d.    Manage the daily operations of the Pennsylvania Debtor Entities, including collection of any income, profits, rents and other revenues owed Pennsylvania Debtor Entities;

    e.    Take any reasonable action to ensure that that the Pennsylvania Debtor Entities comply with all laws applicable to the operation of the Facilities as provided under the laws of the United States and the Commonwealth of Pennsylvania;

    f.    Engage the following individuals, including but not limited to, contractors, subcontractors, materialmen, architects, engineers, consultants, managers, guards, clerks, accountants, or other employees, agents, independent contractors or professionals as the Receiver may, in the Receiver's sole and absolute discretion, deem appropriate or desirable to implement and effectuate the rights and powers herein granted;

    g.    Purchase inventory, operating supplies, equipment and other personal property as necessary in the Receiver's sole and absolute discretion to operate the Facilities;

    h.    Enter into, modify, amend, renew or cancel such leases, whether of real or personal property, tenancy agreements or contracts relating to the Facilities, under such terms and conditions as the Receiver may, in the Receiver's sole and absolute discretion, deem appropriate or desirable, provided that the Receiver may cooperate with the Pennsylvania Debtor Entities to reject leases in the Chapter 11 Cases; provided, further, that this paragraph 9(h) is subject to section 365 of title 11 of the United States Code;

    i.    Enter into, modify, amend, terminate, or renew any contracts with employees, providers and vendors, provided that the Receiver may cooperate with the Pennsylvania Debtor Entities to reject such contracts in the Chapter 11 Cases; provided that this paragraph 9(i) is subject to section 365 of title 11 of the United States Code;

    j.    Collect and receive any rents and profits, insurance payments, income or proceeds due to the Pennsylvania Debtor Entities;

    k.    Make repairs and alterations to the Facilities;

    l.    Terminate lines of service or close facilities;

    m.    Do any lawful acts reasonably requested by the Pennsylvania AG to protect the Facilities; and

    n.    Assist management, if required, in the development of and implementation of cash management and working capital strategies, tactics and processes.]

10.    The Pennsylvania Debtor Entities shall retain all obligations related to their role as debtors in possession in the Chapter 11 Cases and all ongoing reporting obligations related thereto.

## **COOPERATION OBLIGATIONS**

11. The Pennsylvania AG and the Debtors recognize that there exists a mutuality of interests among and between them. Therefore, the parties acknowledge and agree that they shall cooperate with each other over the course of the Effective Period (as defined below) to fund and operate the Facilities and find a consensual resolution regarding the Transfer.

12. The Pennsylvania Debtor Entities shall take all commercially reasonable steps to add the Receiver as an additional insured or otherwise provide reasonably satisfactory insurance coverage.

13. The Pennsylvania AG shall have the right to audit the Pennsylvania Debtor Entities during the Term of Receivership. The Debtors shall cooperate with any such audit that may be initiated.

## **PAYMENTS**

14. Subject to the terms set forth herein, the Commonwealth is committing to $[•] million to the Receiver (the "Payments").

15. The Receiver hereby agrees to the following as conditions of receipt of the Payments:

    a. The Payments shall remain unencumbered and be used solely for the purposes of the Facilities' working capital, patient care and employee salaries in the Commonwealth. The Receiver shall be responsible for ensuring the exclusive use of funds for these purposes.

    b. The Payments shall not be used to (i) refinance or pay down any pre-existing debt, (ii) pay any amounts due to any lenders, agents, or attorneys or their professional fees, (iii) pay any amounts in non-hospital executive compensation, (iv) make any adequate protection payments to any secured creditor under the Bankruptcy Code, or (v) fund the operations of the non-Pennsylvania Debtor Entities.

    c. The Payments shall not serve as collateral for any preexisting debt or new debt incurred, shall not be considered "cash collateral" under Section 363 of the Bankruptcy Code, and shall remain unencumbered.

16. Upon providing five (5) calendar days' notice and without further order, (a) the Pennsylvania AG shall have the right to immediately terminate this Agreement if the Pennsylvania Debtor Entities violate any term or condition in this Agreement, unless cured, in the Pennsylvania AG's reasonable determination or (b) Pennsylvania Debtor Entities shall have the right to immediately terminate this Agreement if the Pennsylvania AG or the Receiver violate any term or condition in this Agreement, unless cured, in the Pennsylvania Debtor Entities' reasonable determination.

17. The Commonwealth is disbursing these Payments to the Receiver subject to (1) any necessary legislative appropriation or authorization; (2) all other state approvals; (3) all

5

other necessary federal approvals; and (4) all other requirements for full federal financial participation ("FFP") or other federal funding.

18. Notices necessary or required under this Agreement shall be sufficient if provided in writing or email to the parties at the addresses set forth below. Notice shall be sent to:

   If to the Pennsylvania AG:

   James A. Donahue, III
   First Deputy Attorney General
   Pennsylvania Office of Attorney General
   16th Floor Strawberry Square
   Harrisburg, PA 17120
   Email: jdonahue@attorneygeneral.gov

   Rosalind M. Karlin
   Senior Deputy Attorney General-Attorney-In-Charge
   Pennsylvania Office of Attorney General
   1600 Arch Street, Suite 300
   Philadelphia, PA  19103
   Email: rkarlin@attorneygeneral.gov

   If to Pennsylvania Debtor Entities:

   Prospect Medical Holdings, Inc.
   3415 South Sepulveda Boulevard, 9th Floor
   Los Angeles, CA 90034
   Attn:   General Counsel
   Email: fsaidara@pmh.com

   And a copy to:

   Sidley Austin LLP
   787 Seventh Avenue
   New York, New York 100019
   Attn:   Thomas R. Califano
           William E. Curtin
           Anne G. Wallice
   Email: tom.califano@sidley.com,
          wcurtin@sidley.com,
          anne.wallice@sidley.com

19. This Agreement may be amended at any time in writing, signed by the parties.

20. The parties agree to discuss in good-faith amendments to this Agreement at any time.

21. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without the application of any conflict of laws principles.

22. No provision of this Agreement is or shall be construed as being for the benefit of, or enforceable by, any person or entity that is not a party to the Agreement.