Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 3635
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vhh.law
Email: emily.chou@vhh.law

*Counsel for the State of Connecticut*

**KRAMER LEVIN NAFTALIS & FRANKEL, LLP**
Kenneth H. Eckstein (*pro hace vice* application pending)
Adam C. Rogoff (*pro hace vice* application pending)
Megan M. Wasson (*pro hace vice* application pending)
1177 Avenue of the Americas
New York, NY 10036
Tel: 212-715-9100
Fax: 212-715-8000
Email: keckstein@kramerlevin.com
arogoff@kramerlevin.com
mwasson@kramerlevin.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1], | § § § | Case No. 25-80002 (SGJ) |
| Debtors. | § § § § | (Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION
OF RIGHTS TO THE DEBTORS' DIP FINANCING MOTIONS**

[Related Dkt. Nos. 48, 57]

The State of Connecticut,[2] by and through its undersigned counsel, hereby submits this

limited objection (the "**Limited Objection**") and reservation of rights to Prospect Medical

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA, 90232.

[2] The State of Connecticut ("**Connecticut**") hereby acts through the Office of the Attorney General and the Office of the Governor, on behalf of Connecticut and Connecticut's various agencies.

Holdings, Inc.'s, and its affiliated debtors' (collectively, the "**Debtors**" or "**Prospect**"), DIP

Financing Motions.[3]

## INTRODUCTION

1.      While Connecticut supports the Debtors' request for additional liquidity and does

not object to the general relief sought in the DIP Financing Motions,[4] Connecticut submits this

Limited Objection and reservation of rights concerning certain provisions of the DIP Financing

Orders.  As set forth in the *Statement by the State of Connecticut in Connection with Prospect's*

*Chapter 11 Cases* (the "**Statement**") [Dkt. No. 527], Connecticut's primary objective in these

Chapter 11 Cases is to preserve Connecticut's healthcare system by transitioning the Debtors'

Connecticut Hospitals[5] to a new operator.  Connecticut stands ready, willing, and able to work

with the Debtors, and all other relevant parties, to facilitate that transition process.[6]

---

[3] As used herein, the DIP Financing Motions shall mean collectively (1) *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Dkt. No. 48] (the "**TL DIP Motion**") and (2) *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing (A) Postpetition ABL Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Dkt. No. 57] (the "**ABL DIP Motion**").  The orders approving the DIP Financing Motions are the "**DIP Financing Orders**", and the credit facilities sought to be approved therein are the "**DIP Facilities**".

[4] Given that the Debtors still have not filed the actual credit agreements or final DIP Financing Orders they seek to enter into, Connecticut is unable to determine whether any provisions therein negatively impact Connecticut's rights. Connecticut understands, based on a draft of one of the final DIP Financing Orders received from the Debtors, that the Debtors may seek to restrict Connecticut's statutory recoupment and setoff rights.  As set forth herein, Connecticut strongly objects to any attempts to limit Connecticut's statutory rights.

[5] The Debtors' Connecticut hospitals include three community hospitals:  Manchester Memorial Hospital in Manchester, CT, Rockville General Hospital in Vernon, CT, and Waterbury Hospital in Waterbury, CT.  These hospitals, together with their affiliated healthcare operations are the "**Connecticut Hospitals**".

[6] Connecticut's deadline to object to the DIP Financing Motions was extended through 12pm EST on Tuesday, February 11, 2025.

2.      As of the Petition Date, the Debtors owed Connecticut more than $100 million on account of unpaid provider taxes.[7]  Connecticut has a secured claim on account of those unpaid taxes, with corresponding liens on assets of the Connecticut Hospitals.  *See* Statement, ¶ 21.  The DIP Financing Orders recognize that Connecticut is one of the Debtors' prepetition secured creditors.  *See* DIP Financing Orders, definition of "Prepetition Secured Parties."  But the DIP Financing Orders fail to provide Connecticut with sufficient adequate protection, and fail to appropriately preserve Connecticut's rights on account of material Medicaid payments made to the Debtors during the Chapter 11 Cases for which Connecticut has recoupment and/or setoff rights.  The DIP Financing Orders must be modified to address these concerns.

## LIMITED OBJECTION

3.      Connecticut statutes require hospitals and other healthcare providers to pay an annual tax based on the provider's revenues.  Those revenues are used to fund Medicaid programs across the state – including Medicaid programs at Prospect's Connecticut Hospitals.  While benefiting from these Medicaid payments, however, Prospect has failed to pay its required taxes since the spring of 2022.  In December 2023, Connecticut filed tax liens against Prospect for $67 million in unpaid taxes.  Prospect's unpaid provider taxes now exceed $100 million.  Notwithstanding Prospect's failure to financially support Connecticut's Medicaid program, Connecticut continues to make Medicaid payments to Prospect for the benefit of the Connecticut Hospitals and patients.  This includes an approximately $6.2 million supplemental Medicaid payment already made post-petition, in addition to regular Medicaid payments Connecticut continues to make, for which Connecticut has recoupment and setoff rights.

---

[7] The Debtors owe additional amounts to various municipalities within Connecticut, including the City of Waterbury which filed its own objection to the DIP Financing Motions.  [Dkt. No. 418].  Connecticut supports the preservation of the liens and claims of the Connecticut municipalities, which should not be primed or otherwise adversely affected by the DIP Financing Motions.

4.    Despite Connecticut's continued financial support of Prospect to ensure the preservation of healthcare at the Connecticut Hospitals, the Debtors have asked this Court to subordinate Connecticut's secured claim to the DIP Lender's and the DIP ABL Lenders' claims.[8] In exchange, the Debtors have proposed to provide Connecticut with a limited form of adequate protection – replacement liens on (a) DIP ABL Collateral, a term which is defined, *inter alia*, by reference to a pre-petition intercreditor agreement that is not readily available,[9] and (b) DIP Collateral, which is defined as all of the Debtors' assets,[10] in each case solely to the extent of any diminution in value of Connecticut's interest in the collateral.[11]

5.    Connecticut's interests are not adequately protected by the Debtors' proposed "replacement liens," which, in the context of this case, offer no value.  First, it is self-evident that providing a prepetition creditor with a replacement lien on its own collateral is worthless.  *See, e.g., In re LTAP US, LLLP*, No. 10-14125 KG, 2011 WL 671761, at *3 (Bankr. D. Del. Feb. 18, 2011) ("Providing [secured creditor] with a replacement lien on assets against which it already has a lien is illusory."); *see also In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) (noting that the debtor cannot grant the secured creditor replacement liens on collateral already subject to the secured creditors' liens); *Kimbrough Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville Corp.)*, 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981) (debtor lacked assets to

---

[8] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them as set forth in the Statement or the DIP Financing Motions as applicable.

[9] *See* ABL DIP Motion, Ex. A, ¶6.

[10] *See* TL DIP Motion, Ex. A, ¶5.

[11] *See, e.g., Interim Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Dkt No. 101, ¶13] (the "**Interim TL DIP Order**").

provide secured creditor adequate protection because all of the debtor's collateral was already subject to creditor's security interest). Nevertheless, the Debtors' adequate protection package includes these replacement liens on pre-existing collateral. Second, a junior lien on the remaining DIP Collateral and DIP ABL Collateral is an inadequate form of protection. These assets are already subject to multiple tranches of secured claims, and the value of Connecticut's replacement liens in the non-Connecticut DIP Collateral and DIP ABL Collateral will likely be extinguished long before it would be possible to determine whether Connecticut's interests have diminished in value (as the Debtors have not yet disclosed a proposed timeline to sell or otherwise transfer their Connecticut Hospitals).[12] By offering Connecticut junior liens against assets likely to be sold free and clear, while operating with a likely insufficient amount of funding in the interim, the Debtors, in reality, offer Connecticut no value and no protection at all.

6.      These replacement liens cannot adequately protect Connecticut's interests, and so the Debtors must demonstrate that Connecticut is adequately protected in some other manner. But the Debtors have not, and cannot, claim that Connecticut is adequately protected by way of an equity cushion. The Debtors' argument appears to be that Connecticut is adequately protected because access to the DIP Facilities will allow the Debtors to continue operating; and Connecticut's security interests are protected by the Debtors' continued operations. *See* TL DIP Motion, ¶50. But the Debtors cannot prime Connecticut simply because they think Connecticut is better off if post-petition financing is in place. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 566 (3d Cir. 1994) ("The bankruptcy court was also wrong in finding that Carteret derived

---

[12] *See Debtors' Motion for Entry of an Order Shortening the Notice Period for Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement, (B) The Sale Of The Debtors' Assets Free and Clear of Interests, (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) the Assignment of Certain Permits; and (II) Granting Related Relief* [Dkt. No. 349] (seeking to set the hearing to approve the sale of the Debtors' Rhode Island hospitals for February 12, 2025).

adequate protection from the increased value of the Crystal Springs project through the contemplated continuing construction."); *In re Futures Equity L.L.C.*, Nos. 00-33682-BJH-11, 00-34825-BJH-11, 00-34826-BJH-11, 2001 Bankr. LEXIS 2229, at *16 (Bankr. N.D. Tex. Apr. 11, 2001) ("Improvements to the property financed by the post-petition loan are not adequate protection unless the debtor establishes that the improvements add value equal to, or beyond, the amount of the superpriority loan."); *In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 754 (S.D. Fla. 2010) ("focus[ing] on preserving the value of the Project for the benefit of all creditors" is "worthy and important" but does not establish adequate protection).

7.      The evidence that the Debtors have presented to date does not support their claim that the DIP Facilities will enable the Debtors to continue their operations while pursuing successful sale transactions for the Connecticut Hospitals.  To date, the Debtors have only published a four-week budget that ends this week.  This budget does not demonstrate that any of the hospitals, let alone the Connecticut Hospitals, can operate through a successful sale process. Therefore, the Debtors' argument fails on account of its faulty premise, and is made worse by the fact that the DIP Lender and the DIP ABL Lenders, who do not necessarily share Connecticut's interest in ensuring the preservation of the Connecticut Hospitals, will have oversight and approval power over the Debtors' budget and, in turn, the operations at the Connecticut Hospitals.  *See, e.g.,* Interim TL DIP Order, ¶1.

8.      Worse still, the Debtors likely seek to use Medicaid payments, which Connecticut makes for the benefit of the Connecticut Hospitals and its patients, to run their operations outside of Connecticut, or even to pay the same lenders who are priming Connecticut's interests.  That is not the intended use of Medicaid payments that are critically needed to run the Connecticut Hospitals and address patient health and safety concerns.  Under the DIP Financing Motions and

in accordance with the Cash Management Order, cash is swept on a daily basis to the Debtors' master account at City National Bank.[13]  The Debtors' centralized cash management system routinely deprives the Connecticut Hospitals of the funds necessary to operate,[14] and funds swept appear to include the Medicaid payments made by Connecticut to support the Connecticut Hospitals and their patients.

9.      Connecticut has a post-petition secured claim as a result of continuing to make post-petition Medicaid payments that Connecticut is otherwise entitled to recoup and/or setoff against the unpaid prepetition provider taxes.  11 U.S.C. § 506(a) ("An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . .").  At the end of January, Connecticut made a $6.2 million supplemental Medicaid payment to the Debtors, despite the fact that the Debtors owe Connecticut more than $100 million in Medicaid-related taxes.  Connecticut was entitled to setoff and/or recoup that $6.2 million payment against the unpaid provider taxes. Notwithstanding Connecticut's setoff and recoupment rights, Connecticut's first priority is the continued operation of the Connecticut Hospitals and health and safety of their patients.  Thus, when Connecticut made the first post-petition payment, it informed the Debtors that the payment was being made as a showing of goodwill and in order to support the Debtors' operations in Connecticut, but that Connecticut reserved all rights of setoff and recoupment for the January supplemental Medicaid payment and all future Medicaid payments.

---

[13] *Order (I) Authorizing the Debtors to (A) Continue Their Existing Cash Management System and Maintain Their Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records; and (II) Granting Related Relief* [Dkt. No. 103] (the "**Cash Management Order**"). The Cash Management Order was entered on a final basis at the first day hearing, and Connecticut reserves all rights with respect to that order.

[14] *See* Statement, ¶ 9.

10.      The DIP Financing Orders should expressly provide this protection.  While the final DIP Financing Orders have not yet been filed, Connecticut suspects that the Debtors will seek to impose limitations on Connecticut's (and other governmental entities') recoupment and setoff rights.  Connecticut strenuously objects to any attempt by the Debtors to abrogate its setoff and recoupment rights in the DIP documents.  The DIP Financing Order should not change the status quo on these critical issues – any dispute over rights to recoupment or setoff should be reserved until there is a live dispute on these issues to be addressed.  Relatedly, the DIP Financing Orders suggest that to the extent Connecticut receives any payments, or otherwise receives DIP Collateral or DIP ABL Collateral, Connecticut shall be deemed to have received such property in trust and turn over such property to the DIP Lender or the DIP ABL Lenders.  *See, e.g.,* Interim DIP TL Order, ¶19.  That provision is simply improper for a regulatory authority, and Connecticut does not consent to hold items in trust for the DIP Lender or the DIP ABL Lenders.  If payments are (allegedly) improperly made, the Debtors, the DIP Lender, and the DIP ABL Lenders can pursue a cause of action under section 549 of the Bankruptcy Code, subject to Connecticut's rights, claims and defenses thereto.

11.      Connecticut has raised these concerns with the Debtors and is hopeful that its limited objections can be resolved consensually through the entry of a stipulation providing additional adequate protection, including but not limited to: (a) segregating post-petition Medicaid payments made by Connecticut in a new bank account not subject to the DIP Lender's or the DIP ABL Lenders' claims or liens, and providing that the segregated account and funds deposited therein shall remain unencumbered except for Connecticut's claims and liens; (b) restricting use of funds in the segregated account to working capital, patient care, and employee salaries for the Connecticut Hospitals; (c) providing Connecticut's advisors with all copies of reporting provided

- 8 -

to the DIP Lender, the DIP ABL Lenders, and/or the Official Committee of Unsecured Creditors; (d) providing that the Debtors will pay their post-petition provider taxes in the ordinary course, and when due; (e) providing that the Debtors will pay the prepetition and post-petition fees and expenses of the monitor appointed for the Waterbury hospital under that certain November 2024 consent order[15]; (f) reimbursing Connecticut for its reasonable professional fees and expenses incurred in connection with the bankruptcy case on a monthly basis, or at a minimum, providing that Connecticut will have secured and administrative expense claims for such accrued and unpaid post-petition professional fees and expenses; and (g) stipulating that Connecticut has valid, perfected, secured post-petition liens and claims with respect to all amounts paid or payable on account of Medicaid payments.

## **RESERVATION OF RIGHTS**

12.     There is no dispute that the Debtors need the funds provided by the DIP Financing Orders.  That funding, however, cannot come at the cost of depriving existing secured creditors of their rights, or using state funds earmarked for Medicaid payments for purposes unrelated to operating the Connecticut Hospitals.  Connecticut has been in discussions with the Debtors about these issues and is optimistic that its concerns can be consensually addressed.  To the extent that Connecticut's Limited Objection is not resolved prior to the hearing, Connecticut reserves all rights to amend, supplement, and otherwise revise this Limited Objection.

---

[15] After a series of state law violations at the Waterbury hospital, a consent order was issued in November 2024 requiring the appointment of an independent monitor.  The monitor is stationed at the hospital and required to make monthly reports to state regulators.

Dated: February 11, 2025

Respectfully submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 3635
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vhh.law
Email: emily.chou@vhh.law

-and-

**KRAMER LEVIN NAFTALIS & FRANKEL, LLP**
Kenneth H. Eckstein (*pro hace vice* application pending)
Adam C. Rogoff (*pro hace vice* application pending)
Megan M. Wasson (*pro hace vice* application pending)
1177 Avenue of the Americas
New York, NY 10036
Tel: 212-715-9100
Fax: 212-715-8000
Email: keckstein@kramerlevin.com
arogoff@kramerlevin.com
mwasson@kramerlevin.com

*Counsel for the State of Connecticut*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served through the CM-ECF system to all counsel of record registered to receive a Notice of Electronic Filing in this case.

/s/ Jeff P. Prostok
Jeff P. Prostok