

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 14, 2025**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered)<br>Related to Dkt. Nos. 57, 102 |

### FINAL ORDER (I) AUTHORIZING (A) POSTPETITION ABL FINANCING, AND (B) THE USE OF CASH COLLATERAL; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Prospect Medical Holdings, Inc. and its affiliated

debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned

chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an order, pursuant to sections 105,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

361, 362(d), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503(b), 506, and 507 of title 11 of

the United States Code, 11 U.S.C. §§101–1532 (the "Bankruptcy Code"), rules 2002, 4001, 6003,

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules

2002-1, 4001-1, and 5005-1, and 9013-1  of the Bankruptcy Local Rules for the Northern District

of Texas (the "Local Rules"), and the Procedures for Complex Cases in the Northern District of

Texas, seeking entry of the Interim Order[2] and a final order (this "Final Order" and together with

all exhibits hereto and the Interim Order, the "DIP Orders") that, among other things:

i.    authorizes the Debtors, jointly and severally, to obtain a super-priority senior
secured postpetition revolving credit facility ("DIP ABL Facility" and the loans
issued thereunder, the "DIP ABL Loans") in an aggregate principal amount of up
to $90,000,000 upon entry of the Interim Order and satisfaction or waiver of the
borrowing conditions set forth in the *Senior Secured Superpriority Debtor-in-
Possession Loan and Security Agreement* in substantially the form attached hereto
as **Exhibit 1** (as amended, restated, supplemented or otherwise modified from time
to time in accordance with the terms thereof, the "DIP ABL Credit Agreement"
and, together with any ancillary, collateral or related documents and agreements,
including this Final Order, the "DIP ABL Loan Documents"),[3] and upon entry of
the Interim Order was made available to the Debtors subject to the terms and
conditions set forth in the DIP ABL Loan Documents and which upon entry of this
Final Order, pursuant to the terms of the DIP ABL Credit Agreement among certain
of the Debtors, as DIP ABL Borrowers, and eCapital Healthcare Corp. or its
designees or assignees, as Lender ("eCapital" or the "DIP ABL Lender"), and to
perform their respective obligations thereunder and all such other and further acts
as may be necessary, appropriate or desirable in connection with the DIP ABL Loan
Documents which will roll-up (a) the Prepetition ABL Obligations (as defined
herein), including interest and fees through the date of repayment, into obligations
under the DIP ABL Facility (the "DIP ABL Obligations"), upon the funding of any
DIP ABL Loans following entry of the Interim Order, and (b) the remainder of the
Prepetition ABL Obligations in full upon entry of this Final Order, which shall be
implemented, in each case, through the automatic substitution and exchange of all
Prepetition ABL Obligations for DIP ABL Obligations on a cashless basis
(the "DIP ABL Roll-Up");

---

[2] "Interim Order" means the *Interim Order (I) Authorizing (A) Postpetition ABL Financing, and (B) the Use of Cash
Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting
Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing;
and (VI) Granting Related Relief* [Docket No. 102].

[3] Capitalized terms used but not otherwise defined herein have the meaning set forth in the Motion or the DIP ABL
Credit Agreement, as applicable.

ii. authorizes the Debtors, on a final basis, to execute, deliver, and perform under the DIP ABL Credit Agreement and any other DIP ABL Loan Documents;

iii. authorizes certain of the Debtors to issue, incur, and guarantee all loans, notes, advances, extensions of credit, financial accommodations, reimbursement obligations, fees and premiums, and all other obligations due or payable to or for the benefit of the DIP ABL Lender under the DIP ABL Loan Documents, and to perform such other acts as may be required or appropriate in connection therewith;

iv. authorizes and directs the Debtors, on a final basis, to use the proceeds of the DIP ABL Facility and the Cash Collateral (as defined below) solely in accordance with the DIP ABL Loan Documents and this Final Order to (a) fund the postpetition working capital needs of the Debtors; (b) pay fees, costs and expenses of the DIP ABL Loan Documents on the terms and conditions described in this Final Order and the DIP ABL Credit Agreement; and (c) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP ABL Loan Documents, the Agreed Budget (as defined below), and this Final Order;

v. authorizes the Debtors to grant to the DIP ABL Lender valid, enforceable, nonavoidable, and automatically and fully perfected and priming security interests, liens, and superpriority claims, including (a) allowed superpriority administrative expense claims pursuant to sections 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation), and (b) liens in the DIP ABL Collateral (as defined below) and all proceeds thereof, including, without limitation, all property constituting "cash collateral," as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, to secure all DIP ABL Obligations, subject only to the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) and the Permitted Prior ABL Liens;

vi. authorizes and approves, on a final basis, the Debtors to grant to the Prepetition Secured Parties (as defined below), as adequate protection of their respective interest in the Prepetition Collateral (as defined below), valid, enforceable, non-avoidable, and automatically and fully perfected security interests and replacement liens in the DIP ABL Collateral, solely to the extent of any Diminution (as defined below) of the Prepetition Secured Parties' respective interest in the Prepetition Collateral, as more fully set forth in this Final Order, subject and subordinate only to the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation), the Permitted Prior ABL Liens, the DIP ABL Liens (as defined below), and DIP ABL Superpriority Claims (as defined below), without waiver of the Debtors' right to assert any and all challenges, causes of action, and claims against the Prepetition Secured Parties;

vii. final approval of certain stipulations by the Debtors with respect to the Prepetition ABL Credit Agreement and the Prepetition ABL Collateral (as defined herein) as set forth herein;

viii.     authorizes the DIP ABL Lender to take all commercially reasonable actions to implement and effectuate the terms of this Final Order and the DIP ABL Credit Agreement;

ix.     authorizes payment of the DIP ABL Fees (as defined below) at the times and in the amounts set forth in the DIP ABL Credit Agreement and this Final Order;

x.     a waiver of (a) the Debtors' right to surcharge any collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code or otherwise; (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code; and (c) the equitable doctrine of "marshaling" and other similar doctrines with respect to any collateral;

xi.     modifies the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent set forth herein and as necessary to permit the Debtors and the DIP ABL Lender to implement and effectuate the terms and provisions of the DIP ABL Loan Documents, including this Final Order, and authorizes the DIP ABL Lender, upon the occurrence and during the continuation of an Event of Default (as set forth herein and in the DIP ABL Credit Agreement), to permit the DIP ABL Lender to exercise rights and remedies, as contemplated hereby and by the DIP ABL Credit Agreement; and

xii.     waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Final Order.

This Court, having considered the relief requested in the Motion, the exhibits attached thereto, the First Day Declaration, the Rundell Declaration, the *Supplemental Declaration of Paul Rundell in Support of the Debtors' DIP Motions* [Docket No. 569], the DIP ABL Credit Agreement, the other papers filed with this Court, the evidence submitted and arguments made at the interim hearing held before this Court on January 14, 2025 (the "Interim Hearing"); the evidence submitted and arguments made at the final hearing held before this Court on February 12, 2025 (the "Final Hearing," together with the Interim Hearing, the "Hearings"); and due and sufficient notice of Hearings having been given in accordance with Bankruptcy Rules 2002 and 4001(b), (c), and (d) and all applicable Local Rules; and the Hearings having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors'

assets; and it appearing that the Debtors' entry into the DIP ABL Credit Agreement and the other

DIP ABL Loan Documents is a sound and prudent exercise of the Debtors' business judgment;

and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL, AND THE EVIDENCE SUBMITTED DURING THE HEARINGS**:[4]

a.     **Petition Date**.  Beginning on January 11, 2025 (the "Petition Date"), each of the

Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court,

commencing these Chapter 11 Cases.

b.     **Debtors in Possession**.  The Debtors are operating their businesses and managing

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

c.     **Jurisdiction and Venue**.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 157

and 1334 and the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated

August 3, 1984, entered by the United States District Court for the Northern District of Texas.

This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§

1408 and 1409.

d.     **Notice**.  The Hearings were held pursuant to Bankruptcy Rule 4001(b)(2) and

(c)(2).  Notice of the Motion has been provided in a manner sufficient under the circumstances,

and no other or further notice of the Motion or the entry of this Final Order shall be required.

e.     **Interim Order**. On January 14, 2025, the Court entered the Interim Order pursuant

to which the Court, *inter alia*, (i) authorized the Debtors to obtain postpetition secured financing

---

[4]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, and
shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  To
the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To
the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

from the DIP ABL Lender, on an interim basis, under the terms and conditions set forth therein and in the DIP ABL Term Sheet, and (ii) approved the Debtors' entry into the DIP ABL Term Sheet.

f. **Debtors' Stipulations**. In requesting the DIP ABL Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP ABL Lender to provide the DIP ABL Facility, and in exchange for and in recognition of the priming of the Prepetition ABL Liens and the consent (and/or deemed consent) of the Prepetition ABL Lender to the use of their Cash Collateral, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows (subject to paragraph 28 of this Final Order) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph f, the "Stipulations"):

    i.    *Prepetition ABL Credit Agreement*. Pursuant to that certain *Credit and Security Agreement* between Southern California Healthcare System, Inc., Alta Los Angeles Hospitals, Inc., and Alta Hospitals System, LLC (together the "Prepetition ABL Borrowers"), and eCapital Healthcare Corp. (in its capacity as the lender, the "Prepetition ABL Lender") dated as of June 5, 2024 (as amended, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date in accordance with the terms thereof, the "Prepetition ABL Credit Agreement," and together with all other agreements, guarantees, pledges, collateral and security documents, control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith collectively, the "Prepetition ABL Loan Documents"), the Prepetition ABL Lender provided a revolving asset-based credit facility (the "Prepetition ABL Facility") to the Prepetition ABL Borrowers. Pursuant to the Prepetition ABL Loan Documents, Prospect Medical Holdings, Inc. (the "Prepetition ABL Guarantor"), among other things, unconditionally and irrevocably guaranteed, on a joint and several basis, the payment in full in cash of all of the Prepetition ABL Obligations.

    ii.    *Prepetition ABL Obligations*. As of the Petition Date, the Prepetition ABL Borrowers were justly and lawfully indebted to the Prepetition ABL Borrowers and Prepetition ABL Guarantors, on a joint and several basis, without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $82,370,974 on account of principal amounts outstanding under the Prepetition ABL Facility, *plus* accrued but unpaid interest (limited to the non-default rate), *plus* all

fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise), comprising "Obligations" (as defined in the Prepetition ABL Credit Agreement) (collectively, the "Prepetition ABL Obligations").

iii.  *Prepetition ABL Liens*. Pursuant to the Prepetition ABL Loan Documents, each of the Prepetition ABL Borrowers granted to eCapital valid and properly perfected continuing liens on and security interests in (the "Prepetition ABL Liens") all "Collateral" (as defined in the Prepetition ABL Credit Agreement) (collectively, the "Prepetition ABL Collateral").

iv.  *Validity and Enforceability of Prepetition ABL Obligations and Prepetition ABL Liens*. As of the Petition Date, (i) the Prepetition ABL Liens in the Prepetition ABL Collateral (A) have been properly recorded and were valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition ABL Collateral, (B) were granted to or for the benefit eCapital for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or the financial commitments and other financial accommodations or consideration secured or obtained thereby, and (C) are senior with priority over any and all other liens on or security interests in the Prepetition ABL Collateral, subject only to the terms and conditions of the PBGC Subordination Agreement (defined in paragraph 54 below), and to liens and security interests that were expressly permitted to be incurred under the Prepetition ABL Loan Documents (solely to the extent such permitted liens and security interests were (x) in existence as of the Petition Date, (y) valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (z) senior in priority to the Prepetition ABL Liens, the "Permitted Prior ABL Liens"); (ii) the Prepetition ABL Obligations constitute legal, valid, non-avoidable and binding obligations of each of the Prepetition ABL Borrowers, enforceable in accordance with the terms of the Prepetition ABL Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (iii) no portion of the Prepetition ABL Liens or the Prepetition ABL Obligations, and no payments made at any time to eCapital, is subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including, without limitation, any Avoidance Action (as defined below) or any claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action

of any nature or description, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, in each case, that may be asserted by the Debtors, their respective estates or any other person or entity; and (iv) the Prepetition ABL Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against each of the Prepetition ABL Borrowers and their respective estates.

v.   *No Claims, Defenses, or Causes of Action.* As of the date hereof, there exist no claims, defenses, or any other Cause of Action of any nature or description whatsoever that may be asserted by the Debtors, their respective estates, predecessors, successors, and assigns, against eCapital or any of its Representatives, in each case, arising from, in connection with, or related to this Final Order, the Prepetition ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Loan Documents or the Prepetition ABL Collateral.

vi.   *Releases.* Effective as of the date of entry of this Final Order, the Debtors, on behalf of themselves and their respective estates, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit eCapital and its Representatives (in their capacities as such) of and from any and all Causes of Action that the Debtors, their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the Prepetition ABL Lender and its Representatives (in their capacities as such) for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Final Order, in each case, arising under, in connection with or related to this Final Order, the DIP ABL Roll Up Obligations, the Prepetition ABL Liens, the Prepetition ABL Collateral, the Prepetition ABL Obligations or the Prepetition ABL Loan Documents, the Adequate Protection Liens (as defined below), the Adequate Protection Claims (as defined below), the Adequate Protection Obligations (as defined below), the Prepetition ABL Loan Documents, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any Avoidance Actions, (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the Prepetition ABL Liens, the Prepetition ABL Collateral, the Prepetition ABL Obligations or the Prepetition ABL Loan Documents, or (v) any claim or Cause of Action with respect to the validity, enforceability,

8

extent, amount, perfection or priority of the DIP ABL Roll Up Obligations, the Prepetition ABL Liens, the Prepetition ABL Obligations, the Prepetition ABL Collateral or the Prepetition ABL Loan Documents

vii.  *Cash Collateral*. Any and all of the Prepetition ABL Borrower's cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, all cash, cash equivalents and other amounts on deposit or maintained by the Prepetition ABL Borrowers in any accounts with any depositary institution), whether as original Prepetition ABL Collateral, arising from the sale or other disposition of Prepetition ABL Collateral, or proceeds of other Prepetition ABL Collateral, or cash, rents, income, offspring, products, proceeds or profits generated from the Prepetition Collateral, constitutes Cash Collateral.

g.  **Committee Formation**.  On January 29, 2025, an official committee of unsecured creditors (the "Committee"), as provided for under section 1102 of the Bankruptcy Code, was appointed by the United States Trustee for the Northern District of Texas (the "U.S. Trustee").

h.  **No Credit Available on More Favorable Terms**.  Given their current financial condition, financing arrangements, and capital structure, and the circumstances of the Chapter 11 Cases, as demonstrated at the Interim Hearing and the Final Hearing, the Debtors are unable to obtain financing in respect of the DIP ABL Collateral from sources other than the DIP ABL Lender on terms more favorable than the DIP ABL Facility.  The Debtors are unable to procure sufficient financing in the form of unsecured credit allowable as an administrative expense.  The Debtors are also unable to obtain sufficient secured credit without (i) granting to the DIP ABL Lender the DIP ABL Liens and the DIP ABL Superpriority Claims and (ii) granting the Adequate Protection Liens (as defined below), in each case subject and subordinate to the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) and the Permitted Prior ABL Liens, as set forth herein and in the DIP ABL Credit Agreement.

i.  **Good Faith**.  Based upon the papers filed and the proceedings of record in these Chapter 11 Cases, (i) the extension of credit and financial accommodations (including the use of Cash Collateral) under the DIP ABL Facility, as provided by the DIP ABL Credit Agreement, are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably

equivalent value and fair consideration; (ii) the DIP ABL Facility and the DIP ABL Loans thereunder are being provided by the DIP ABL Lender in "good faith" within the meaning of section 364(e) of the Bankruptcy Code in express reliance on the protections offered thereby; (iii) the liens, claims, and other covenants and payments as set forth in the DIP ABL Loan Documents or this Final Order, as well as the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code are integral, critical and essential components of the DIP ABL Facility provided by the DIP ABL Lender to the Debtors; and (iv) the DIP ABL Facility, the DIP ABL Liens, the DIP ABL Superpriority Claims, and the Adequate Protection Liens, and all terms, conditions, and relief set forth in and otherwise approved by the DIP Orders shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Orders or any provision thereof is vacated, reversed, or modified, on appeal or otherwise.

j.    **Good Cause**.  Good cause has been shown for the entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The relief requested in the Motion is fair and reasonable and is in the best interest of the Debtors and their estates, and essential for the continued operations of the Debtors' businesses and the preservation of the value of the Debtors' assets.

k.    **Need for Postpetition Financing and Use of Cash Collateral**.  The Debtors do not have sufficient and reliable sources of working capital to continue to operate their business in the ordinary course without the financing requested in the Motion.  The financing provided pursuant to the DIP Orders and the DIP ABL Loan Documents and the authority to use Cash Collateral granted herein will permit the Debtors to, among other things, (i) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Cases; (ii) fund any obligations benefiting from the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation); (iii) continue the orderly operation of their businesses, in an effort to maintain the health and safety of their patients; (iv) maintain business relationships with customers, vendors, and suppliers; (v) make payroll for their employees, including providers essential for patient care; and (vi) satisfy other working capital and operational needs.

l.      **Willingness to Provide Financing**.  The DIP ABL Lender has committed to provide financing to the Debtors subject to:  (i) entry of the DIP Orders; (ii) approval of the terms and conditions of the DIP ABL Facility, the DIP ABL Credit Agreement, and the other DIP ABL Loan Documents; (iii) satisfaction of the closing conditions set forth in the DIP ABL Credit Agreement; and (iv) findings by this Court that the DIP ABL Lender is extending credit to the Debtors pursuant to the DIP Orders and the DIP ABL Loan Documents in good faith, and that each of the DIP ABL Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to the DIP Orders and the DIP ABL Credit Agreement will have the protections provided by section 364(e) of the Bankruptcy Code.

m.      **Priming of Prepetition Liens**; **Adequate Protection**.  As of the Petition Date, the Prepetition Secured Parties[5] have asserted claims against certain of the Debtors under the Prepetition Loan Documents[6] or other applicable law (the "<u>Prepetition Obligations</u>"), and the Prepetition Secured Parties have asserted that such obligations were secured by liens and security interests granted by certain of the Debtors or otherwise arising under applicable law (all such asserted liens and security interests, the "<u>Prepetition Liens</u>") on and in the assets of the Debtors to the extent set forth under the respective Prepetition Loan Documents or such applicable law (all such assets, the "<u>Prepetition Collateral</u>").[7]  The priming of the asserted security interests in and

---

[5]   The "<u>Prepetition Secured Parties</u>" means, collectively, (i) the lenders, lessors, agents and other parties to the Prepetition Loan Documents (collectively, the "<u>Prepetition Lenders</u>"), (ii) the Pension Benefit Guaranty Corporation ("<u>PBGC</u>"), on behalf of the Crozer-Keystone Health System Employees Retirement Plan ("<u>Crozer Plan</u>") and the Eastern Connecticut Health Network, Inc. Pension Plan (the "<u>ECHN Plan</u>"), (iii) the State of Connecticut, and (iv) any party in interest with a valid, enforceable, non-avoidable, and perfected lien as of the Petition Date (or perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code).

[6]   The "<u>Prepetition Loan Documents</u>" means, collectively, the eCapital Credit Agreement, the HospitalCo Term Loan Agreement, the PhysicianCo Loan Agreement, the MPT PA Mortgage Loan Agreement and the other MPT Obligations Documents (each as defined in the *Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement*, dated as of February 13, 2025, by and among the Debtors and the DIP Term Lender (the "<u>JMB DIP Credit Agreement</u>")), respectively.

[7]   For the avoidance of doubt, except as set forth in paragraph f of this Final Order, nothing contained herein shall constitute any stipulation or acknowledgement as to the validity or enforceability of the Prepetition Loan Documents, or the validity, enforceability, priority or perfection of the Prepetition Obligations or Prepetition Liens asserted by the Prepetition Lenders, and all rights, claims, causes of action, objections, defenses and challenges with respect to the Prepetition Lenders, the Prepetition Loan Documents, the Prepetition Obligations

liens on the Prepetition Collateral and any other interests of the Debtors in property under section 364(d) of the Bankruptcy Code, as contemplated by the DIP ABL Credit Agreement and as further described below, will enable the Debtors to obtain the DIP ABL Facility and to continue to operate their business for the benefit of their estates and creditors, and the Debtors would not be able to obtain postpetition financing in a sufficient amount without granting such priming liens. Consistent with the requirements of section 364(d) of the Bankruptcy Code, and without waiving the Debtors' or any other parties' right to assert any and all challenges, causes of action, and claims against the Prepetition Obligations or the Prepetition Liens (except as expressly set forth in this Final Order as against the Prepetition ABL Lender), the Prepetition Secured Parties shall receive adequate protection as set forth in this Final Order, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any decrease in the value of its interest, if any, in the Prepetition Collateral resulting from (i) the use, sale, or lease by the Debtors of the Prepetition ABL Collateral during the pendency of the Chapter 11 Cases; (ii) the DIP ABL Liens and the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) pursuant to this Final Order and the DIP ABL Credit Agreement; or (iii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such actual diminution, collectively, "Diminution").  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Lien is valid, senior, enforceable, prior, perfected or non-avoidable.

        n.      **Roll-up of Prepetition ABL Obligations into DIP ABL Obligations**.  Upon entry of this Final Order, all remaining Prepetition ABL Obligations shall be rolled up and converted into DIP ABL Obligations on a cashless basis upon entry of this Final Order (such Obligations, the "DIP ABL Roll-Up Obligations").  DIP ABL Lender would not otherwise consent to the use of its Cash Collateral and would not be willing to provide the DIP ABL Facility nor extend credit to the Debtors without the inclusion of the DIP ABL Roll-Up and conversion of the Prepetition ABL Obligations into DIP ABL Roll-Up Obligations as provided herein.  The DIP ABL Roll-Up

---

and the Prepetition Liens asserted by the Prepetition Lenders, whether held by the Debtors, the Committee or any other party in interest, is hereby expressly preserved.

will enable the Debtors to obtain urgently needed financing to administer their Chapter 11 Cases, to fund their operations, and to maximize value for all parties in interest. Following the conversion of the Prepetition ABL Obligations into DIP ABL Roll-Up Obligations, the DIP ABL Roll-Up Obligations shall be considered and treated as DIP ABL Obligations. The conversion (or "roll up") shall be authorized as compensation for, and in consideration for, and solely on account of, the agreement of the Prepetition ABL Lender to fund amounts, and provide other considerations to the Debtors under the DIP ABL Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Obligations.

      o.    **DIP Budget**. The Debtors have prepared and delivered to JMB Capital Partners Lending, LLC or its designees or assignees (the "DIP Term Lender") and to the DIP ABL Lender and its advisors an initial budget, a copy of which is attached to the Interim Order as Exhibit 2 (which was the same budget filed in connection with the Debtors' motion with respect to the approval of its proposed financing with the DIP Term Lender, together with any additional line item or other detail and supplements as may be provided pursuant to the terms of the DIP ABL Loan Documents, the "Initial DIP Budget"). The Initial DIP Budget reflects, among other things, for the 13-week period commencing on or about the Petition Date, the Debtors' projected operating receipts, operating disbursements, non-operating disbursements, net operating cash flow and liquidity for each one-week period covered thereby. The Initial DIP Budget may be modified, amended, extended, and updated from time to time and, once approved (or deemed approved) by the DIP Term Lender (or deemed approved) and once approved (or deemed approved) by the Debtors, except for the purposes set forth in paragraph 25(b) of this Final Order related to the DIP ABL Carve-Out Allocation (as defined herein), shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (including any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Loan Term Sheet) shall constitute, without duplication, an "Agreed Budget"); *provided*, *however*, that any changes to the professional fee budget for Committee professionals shall require the prior written consent of the Committee.

As part of the process for determining an Agreed Budget, any Professional Person (as defined herein) may request a "true up" for any accrued fees and expenses exceeding the amounts estimated as part of any prior Agreed Budget, with such requests subject to approval in the Debtors' reasonable discretion (with consent of the DIP ABL Lender); *provided* the "true up" described in this sentence does not increase the Agreed Budget for purposes of calculating the DIP ABL Carve-Out Allocation.  To avoid doubt, except as set forth in paragraph 25 of this Final Order, the Agreed Budget is solely subject to approval by the DIP Term Lender and, once approved by the DIP Term Lender, shall be deemed an Agreed Budget for purposes of this Final Order and the DIP ABL Credit Agreement.  A copy of the Agreed Budget for purposes of this Final Order is attached hereto as **Exhibit 2**.  This Agreed Budget has been prepared by the Debtors, their management, and their advisors, and the Debtors believe that the Agreed Budget is reasonable under the circumstances.  The DIP ABL Lender is relying, in part, upon the Debtors' agreement to comply with the Agreed Budget (subject only to Permitted Variances) and the terms of the DIP ABL Credit Agreement in determining to enter into the DIP ABL Facility and to consent to the use of Cash Collateral provided for in this Final Order.  The Debtors' failure to comply with the Agreed Budget (subject only to the Permitted Variances) shall constitute an "Event of Default" under the DIP ABL Credit Agreement.  No item in the Agreed Budget shall be construed or treated as a cap, limit, or constraint on the fees and expenses of the DIP ABL Lender or the obligation of the DIP ABL Borrowers to satisfy such obligations.

p.    **Use of Cash Collateral and Proceeds of DIP ABL Facility**.  As a condition to the Debtors' entry into the DIP ABL Credit Agreement and the other DIP ABL Loan Documents and the extension of credit under the DIP ABL Facility, including the use of Cash Collateral, the Debtors have agreed that the proceeds of the DIP ABL Facility and Cash Collateral shall be used solely in accordance with the terms and conditions of this Final Order, the DIP ABL Credit Agreement, and the Agreed Budget (subject to Permitted Variances).  All of the Debtors' cash constituting DIP ABL Collateral, including the Debtors' cash and other amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts

generated by the collection of accounts receivable constituting DIP ABL Collateral or other disposition of the DIP ABL Collateral or DIP ABL Collateral deposited into the Debtors' banking, checking, or other deposit accounts as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is the DIP ABL Lender's Cash Collateral.

q.  **Section 506(c), Section 552(b) and Marshaling**.  As a material inducement to the DIP ABL Lender's agreement that its liens and superpriority claims shall be subject to payment of the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) and the Permitted Prior ABL Liens, the DIP ABL Lender is entitled to (i) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral and the DIP ABL Obligations in favor of the DIP ABL Lender; (ii) a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the Prepetition ABL Lender; and (iii) a waiver of the provisions of section 506(c) of the Bankruptcy Code with respect to the DIP ABL Collateral.

r.  **Requisite Authority**.  Each Debtor has all requisite corporate or entity power and authority to execute and deliver the DIP ABL Credit Agreement and the other DIP ABL Loan Documents to which it is a party and to perform its obligations thereunder.

s.  **Immediate Entry**.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules. Consummation of the DIP ABL Facility and the permitted use of Prepetition ABL Collateral in accordance with this Final Order and the DIP ABL Loan Documents, is therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

NOW, THEREFORE, based upon the foregoing findings and conclusions, the Motion, and the record before this Court, and after due consideration, and this Court having found good and sufficient cause therefor,

**IT IS HEREBY ORDERED THAT:**

1.  **Motion Granted**.  The relief sought in the Motion is granted as set forth herein. Entry into the DIP ABL Credit Agreement and, as applicable, the other DIP ABL Loan Documents

is authorized and approved, and the use of Cash Collateral on a final basis is authorized, in each case, subject to the terms and conditions set forth in this Final Order and in the DIP ABL Credit Agreement, including the Agreed Budget (subject to Permitted Variances).  All objections to the Motion to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2. **Authorization of the DIP ABL Facility (including the DIP ABL Roll-Up Obligations)**.  The Debtors were, pursuant to the Interim Order, and hereby are expressly and immediately authorized and empowered to execute and deliver the DIP ABL Credit Agreement and the other DIP ABL Loan Documents (in each case, to the extent not previously executed and delivered), and to incur and perform the DIP ABL Obligations, including DIP ABL Roll-Up Obligations, in accordance with, and subject to, the terms of this Final Order and the DIP ABL Loan Documents, and to execute, deliver, and perform (and to cause the DIP ABL Guarantor to execute, deliver, and perform) under all instruments, certificates, agreements, and documents which may be required or necessary for their performance under the DIP ABL Loan Documents, and the creation, perfection, and continuation (as applicable) of the DIP ABL Liens described in and provided for by this Final Order and the DIP ABL Loan Document.  The Debtors were, pursuant to the Interim Order, and hereby continue to be authorized to pay any principal, interest, fees, expenses, and other amounts subject to and in accordance with the DIP ABL Loan Documents and this Final Order, as such amounts become due and owing, without further Court approval (except as otherwise provided herein or in the DIP ABL Loan Documents), including, without limitation, (a) the Commitment Fee and other fees included in the DIP ABL Credit Agreement, as well as (b) any reasonable and documented fees and expenses of counsel to the DIP ABL Lender, as set forth herein and in the DIP ABL Credit Agreement, subject to paragraph 26 of this Final Order, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final Order and the DIP ABL Loan Documents.  Upon execution and delivery, the DIP ABL Credit Agreement and, as applicable, the other DIP ABL Loan Documents shall represent legal, valid, and binding obligations of the Debtors, enforceable against the Debtors and their

estates in accordance with their terms. All provisions of the DIP ABL Credit Agreement are incorporated herein and approved in their entirety. Each officer of the Debtors acting individually is hereby authorized to execute and deliver each of the DIP ABL Credit Agreements and the other DIP ABL Loan Documents.

3.      **DIP ABL Obligations**. The DIP ABL Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP ABL Obligations. All DIP ABL Obligations shall be enforceable against the Debtors, their respective estates, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, or in any other proceeding superseding or related to any of the foregoing (the "Successor Case"). The DIP ABL Obligations shall include, but not be limited to, (a) the payment by the Debtors of (i) the unpaid principal amount of and interest on the DIP ABL Loans, as and when due, whether at maturity, by acceleration, or otherwise, and (ii) all other monetary obligations of the Debtors to the DIP ABL Lender under the DIP ABL Loan Documents and this Final Order, and (b) the payment and performance of all covenants, duties, agreements, obligations and liabilities of the Debtors to the DIP ABL Lender under the DIP ABL Loan Documents and this Final Order. The Debtors and their successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP ABL Loan Documents and the DIP ABL Obligations. The DIP ABL Obligations shall become due and payable, without notice or demand, on the DIP ABL Maturity Date (as set forth in the DIP ABL Credit Agreement) or as otherwise set forth in the DIP ABL Loan Documents. No obligation, payment, transfer, or grant of collateral as security hereunder or under the DIP ABL Loan Documents (including any DIP ABL Obligation or DIP ABL Liens) to the DIP ABL Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law, or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination, claim, counterclaim, charge, assessment, cross-claim, defense, or any other liability or challenge

under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

4.     **Authorization to Borrow**.  The Debtors are hereby authorized to execute, deliver, enter into, and, as applicable, comply with and perform all of their obligations, and to pay all fees, costs, expenses, indemnities, and other amounts contemplated, under the DIP ABL Credit Agreement (and any other DIP ABL Loan Documents), including the DIP ABL Roll-Up Obligations, and to take such other and further acts as may be necessary, appropriate or desirable in connection therewith.  The Debtors are authorized to borrow up to the Facility Cap subject to the limitations of the "Borrowing Base" as set forth in the DIP ABL Credit Agreement, and the Debtors are hereby authorized to provide a guaranty of payment and performance in respect of the DIP ABL Obligations, in each case, in accordance with the DIP ABL Credit Agreement, and the DIP ABL Obligations are hereby approved (as and when such amounts become earned, due, and payable in accordance with the DIP ABL Credit Agreement) without the need to seek further Court approval.  Notwithstanding anything to the contrary herein or in any other DIP ABL Loan Document or otherwise, the DIP ABL Lender shall not be required to lend any amounts in excess of the "Borrowing Base" in accordance with the DIP ABL Credit Agreement.

5.     **Cash Management**. From and after the date of the entry of this Final Order, the Debtors shall maintain cash management in accordance with the DIP ABL Loan Documents and shall maintain all control agreements (i.e., DACAs and DAISAs) required by the Prepetition ABL Credit Agreement and the DIP ABL Loan Documents (the "Control Agreements"). Unless otherwise agreed to in writing by the DIP ABL Lender, the Debtors shall maintain no accounts except those identified in any interim and/or final order granting the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue Their Existing Cash Management System and Maintain Their Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions and (C) Maintain Existing Business Forms and Books and Records; and (II) Granting Related Relief*. All Control Agreements in place as of the Petition Date shall remain in effect for the benefit of the DIP ABL Lender as if the DIP ABL Borrowers or other

applicable Debtor had signed such Control Agreement post-petition and as if the DIP ABL Lender had signed such Control Agreement pursuant to the DIP ABL Credit Agreement.  The DIP ABL Borrowers and the DIP ABL Lender shall be authorized to amend any Control Agreement in accordance with this Final Order or as otherwise deemed necessary by the Debtors and the DIP ABL Lender; *provided* that no Control Agreement related in any way to the DIP ABL Priority Collateral may be amended without the prior written consent of the DIP ABL Lender.

6.     **DIP ABL Collateral.** The term "DIP ABL Collateral" means all "Collateral" as defined in the DIP ABL Credit Agreement and (i) all causes of actions under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP ABL Collateral and any proceeds thereof and (ii) all proceeds of Avoidance Actions related to DIP ABL Collateral.[8]

7.     **DIP ABL Priority Collateral.** The term "DIP ABL Priority Collateral" means the "DIP ABL Priority Collateral" as defined in the DIP ABL Credit Agreement and (i) all causes of actions under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP ABL Priority Collateral and any proceeds thereof and (ii) all proceeds of Avoidance Actions related to DIP ABL Priority Collateral.

8.     **Disposition of Collateral**.  Notwithstanding anything otherwise provided herein, it shall be deemed an Event of Default under the DIP ABL Credit Agreement and, as applicable, the other DIP ABL Loan Documents if the Debtors sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP ABL Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Final Order or the Agreed Budget (subject to the Permitted Variances), without the prior written consent of the DIP ABL Lender, which consent shall not unreasonably be withheld or delayed.  Notwithstanding anything otherwise provided herein, the net cash proceeds of any sale of DIP ABL Priority Collateral outside of the

---

[8]    For the purposes of this Final Order, "Avoidance Actions" means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their estates or other authorized parties in interest under the Bankruptcy Code or other applicable law, including actions or remedies under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

ordinary course of business shall, subject to the lien priorities set forth herein and in the DIP ABL

Credit Agreement, be used to immediately satisfy the DIP ABL Obligations.

9.     **DIP ABL Liens**.   To secure the DIP ABL Obligations, immediately upon and

effective as of entry of this Final Order, the DIP ABL Lender is hereby granted, on a final basis,

continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected

security interests in and liens on the DIP ABL Collateral as follows, subject only to the Carve-Out

(up to the amount of the DIP ABL Carve-Out Allocation) and Permitted Prior ABL Liens:

> a.   Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing,
>      enforceable, non-avoidable and automatically and fully perfected first-priority
>      senior priming liens and security interests in all DIP ABL Collateral, regardless of
>      where located, which senior priming liens and security interests in favor of the DIP
>      ABL Lender shall be senior to the Prepetition Liens; and
>
> b.   Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-
>      avoidable, and automatically and fully perfected junior liens on and security
>      interests in all DIP ABL Collateral (collectively, the "<u>DIP ABL Liens</u>").

Other than as set forth herein or in the DIP ABL Loan Documents, the DIP ABL Liens shall not

be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted

in the Chapter 11 Cases or any Successor Case, and shall be valid and enforceable against any

trustee appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of

the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor

Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Case, at any time

existing or arising, of any kind or nature whatsoever, including, without limitation, administrative

expenses.  The DIP ABL Liens shall not be subject to section 510(c), 549, or 550 of the Bankruptcy

Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section

551 of the Bankruptcy Code shall be pari passu with or senior to the DIP ABL Liens.

10.     **DIP ABL Superpriority Claims.** Subject to the Carve-Out (up to the amount of

the DIP ABL Carve-Out Allocation), the DIP ABL Lender was granted, effective immediately

upon entry of the Interim Order and approved on a final basis by this Final Order, pursuant to

section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in

the Chapter 11 Cases and any Successor Case (collectively, the "DIP ABL Superpriority Claims")
for all DIP ABL Obligations with priority over any and all administrative expense claims and
unsecured claims against the Debtors' or their estates in the Chapter 11 Cases and any Successor
Case, as provided under section 364(c)(1) of the Bankruptcy Code, and which shall be senior to
the rights of the Debtors, their estates, and their successors or other representatives to the extent
permitted by law.  The DIP ABL Superpriority Claims shall have recourse to and be payable from
all prepetition and postpetition property and assets of the Debtors and the estates including the DIP
ABL Collateral and all proceeds thereof.

11.     **No Obligation to Extend Credit**.  The DIP ABL Lender shall have no obligation
to make any loan or advance under the DIP ABL Loan Documents unless (a) all of the conditions
precedent and other terms under and subject to the DIP ABL Loan Documents and this Final Order
have been satisfied in full or waived by the DIP ABL Lender (in its sole discretion), and (b) no
Event of Default under the DIP ABL Credit Agreement or the other DIP ABL Loan Documents
(including this Final Order) has occurred and is continuing.

12.     **Use of DIP ABL Facility Proceeds**.  The Debtors shall be permitted to use Loans
under the DIP ABL Facility only for the purposes specifically set forth in this Final Order and the
DIP ABL Credit Agreement subject to the Agreed Budget.  Notwithstanding anything herein, the
extensions of credit under the DIP ABL Facility shall not constitute Cash Collateral of the
Prepetition Secured Parties.

13.     **No Monitoring Obligation**.  The DIP ABL Lender shall not have any obligation
or responsibility to monitor any Debtor's use of the DIP ABL Facility, and the DIP ABL Lender
may rely upon each Debtor's representation that the use of the DIP ABL Facility at any time is in
accordance with the requirements of this Final Order and the DIP ABL Credit Agreement,
including the Agreed Budget (subject to the Permitted Variances).

14.     **Authorization to Use Cash Collateral**.  Subject to the terms and conditions of this
Final Order and the DIP ABL Loan Documents, and in accordance with the Agreed Budget
(subject to the Permitted Variances), the Debtors are authorized to use Cash Collateral until the

DIP ABL Termination Date.

15.    **Adequate Protection for Prepetition Secured Parties**.  Subject to the limitations described in the DIP Orders, as adequate protection, solely to the extent of any Diminution of the Prepetition Secured Parties' asserted interest in the Prepetition Collateral resulting from the subordination of the Prepetition Liens to the DIP ABL Liens and the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) and the Debtors' continuing use of the Prepetition Collateral (and, with respect to MPT[9], certain additional accruals as set forth herein), the Prepetition Secured Parties received, effective immediately upon entry of the Interim Order and approved on a final basis by this Final Order (or shall receive immediately upon entry of this Final Order, as applicable):

a.    continuing valid, binding, enforceable and perfected postpetition replacement liens pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code on the DIP ABL Collateral (up to the amount of the DIP ABL Carve-Out Allocation), which shall be subject and subordinated only to the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation), the DIP ABL Liens, Permitted Prior ABL Liens and the liens on the DIP ABL Collateral in favor of the DIP Term Lender (the "Adequate Protection Liens") and which (a) shall maintain the respective priorities among the Prepetition Secured Parties in the Prepetition ABL Collateral as of the Petition Date, (b) otherwise be senior to all other security interests in, liens on, or claims against the Prepetition Collateral, and (c) shall not otherwise be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, and shall not be subject to sections 510(c), 549 or 550 of the Bankruptcy Code, without waiver of any of the Debtors' or any other party's right to assert any and all challenges, causes of action, and claims against

---

[9]    As used in this Final Order, "MPT" means Medical Properties Trust, Inc., together with its subsidiaries or other affiliates that hold claims against any Debtor.

the Prepetition Secured Parties; *provided, however*, that MPT shall receive replacement liens (which replacement liens shall constitute Adequate Protection Liens) on all DIP ABL Collateral, which will be subject to and subordinate to the DIP ABL Liens, the Carve-Out, the Permitted Prior ABL Liens, and senior to all other liens on the DIP ABL Collateral; *provided further* that, subject to alternative priority set forth in any subsequent order of this Court addressing the matter and to PBGC's right to oppose any request for entry of any such order, as to any asset constituting DIP ABL Collateral, such replacement liens of MPT shall have the same relative priority with respect to the replacement liens of the PBGC granted pursuant to this Final Order as MPT's prepetition liens have with respect to PBGC's prepetition liens with respect to such asset; and

b.  (i) for MPT, in addition to the replacement liens, detailed above, (A) superpriority administrative expense claims (subject and subordinate to such claims in respect of the Carve-Out, the Permitted Prior ABL Liens, and the DIP ABL Liens and senior to all other claims), (B) current payment in cash of MPT's professional fees and expenses, in an amount no more than $1.25 million per month, with unpaid accruals (including, without limitation, amounts in excess of such cap) secured by the replacement liens granted to MPT described above and constituting superpriority administrative expense claims of MPT as set forth above; and (C) claims of $5 million per month, secured by the replacement liens granted to MPT described above and constituting superpriority administrative expense claims of MPT as set forth above;[10] (ii) for Prepetition Secured Parties who are equipment lessors, timely performance of postpetition rent payments by the Debtors pursuant to the terms of the parties' lease agreement, unless and until such lease agreement is rejected under section 365 of the Bankruptcy Code, and (iii) for Prepetition Secured Parties who are governmental

---

[10]   For the avoidance of doubt, the payments and claims referenced in (b)(i)(B) and (C) of this paragraph shall not be duplicative of the fees and claims under the DIP Term Loan Order.

taxing authorities, the same reporting requirements and obligations set forth in paragraph 15 of the Final DIP Term Loan Order.

c. Notwithstanding anything set forth herein to the contrary, any adequate protection payments, liens, or claims required or provided under this Final Order, including to MPT, may be subject to clawback, disgorgement or recharacterization as payments of principal, to the extent the applicable prepetition liens or claims are determined by a further order of the Court to be avoidable, unenforceable or unperfected as of the Petition Date, or unsecured in whole or in part. All parties reserve all rights in connection with the foregoing, including with respect to whether relief should be granted and the remedies that may be sought in any further proceeding.

16. **Modification of DIP ABL Loan Documents**. The Debtors and the DIP ABL Lender are hereby authorized to implement, in accordance with the terms of the DIP ABL Loan Documents, any non-material modifications of the DIP ABL Loan Documents without further notice, motion, or application to, order of, or hearing before this Court. Any material modification or amendment to the DIP ABL Loan Documents shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon four (4) business days' notice to the U.S. Trustee and Prepetition Secured Parties, *provided* that any forbearance from, or waiver of, (a) a breach by the Debtors of a covenant, representation or any other agreement or (b) a default or an Event of Default, in each case under the DIP ABL Credit Agreement shall not require an order of this Court. In the event of any inconsistency between this Final Order, the Interim Order and the DIP ABL Credit Agreement, this Final Order shall control; *provided, further,* that all modifications, amendments, supplements or waivers shall be provided to the Committee no later than three (3) days prior to the effectiveness thereof for non-material amendments, and four (4) business days prior to the effectiveness thereof, for material amendments; *provided, further*, that, for the avoidance of doubt, the foregoing shall not apply to any waiver that imposes no obligations on, or is otherwise not adverse to, the Debtor.

17. **DIP ABL Facility Reporting**. Except as otherwise provided herein or approved

by the DIP ABL Lender, the proceeds from the DIP ABL Facility shall be used only in compliance with the terms of the DIP ABL Loan Documents and in accordance with the Agreed Budget.  The Debtors shall comply with the reporting requirements and obligations set forth in the DIP ABL Loan Documents.[11]

18.   **Perfection of DIP ABL Liens and Adequate Protection Liens**.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP ABL Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP ABL Liens and the Adequate Protection Liens or to entitle the DIP ABL Lender and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the DIP ABL Lender and the Prepetition Secured Parties are authorized, but not required, to file, as each deems necessary or advisable, such financing statements, security agreements, deposit account control agreements, mortgages, notices of liens and other similar documents to perfect or otherwise evidence the DIP ABL Liens and the Adequate Protection Liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP ABL Liens or the Adequate Protection Liens.  The DIP ABL Lender and the Prepetition Secured Parties may, in their respective sole discretion, file an electronic copy or photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.  To the extent that a Prepetition Secured Party is, with respect to the DIP ABL Collateral, a secured

---

[11]   The Debtors are providing the Committee and the PBGC the reporting obligations set forth in paragraph 15 of the Final DIP Term Loan Order.

party under any Prepetition Loan Documents or is listed as loss payee, lenders' loss payee or additional insured under any Debtor's insurance policies, the DIP ABL Lender shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  For the avoidance of doubt, any deposit account control agreements contemplated by the DIP ABL Credit Agreement shall automatically supersede any preexisting deposit account control agreements, without the necessity of any further action, including by the Debtors, the DIP ABL Lender, or the Prepetition Secured Parties.  Upon the request of the DIP ABL Lender, each Debtor, without any further consent of any party, is authorized to take, execute, deliver, and file any such instruments contemplated by the DIP ABL Credit Agreement to enable the DIP ABL Lender to further validate, perfect, preserve, and enforce the DIP ABL Liens and the applicable Adequate Protection Liens respectively.

19.     **Modification of Automatic Stay**.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors, the DIP ABL Lender, and, as applicable, the Prepetition Secured Parties to accomplish the transactions contemplated by this Final Order.

20.     **[RESERVED]**.

21.     **Payments Held in Trust**.  Except as expressly permitted in this Final Order, the DIP ABL Credit Agreement, or otherwise ordered by this Court, including in respect of the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) and the Permitted Prior ABL Liens, in the event that any person or entity receives any payment on account of a security interest in the DIP ABL Collateral or receives any DIP ABL Collateral or any proceeds of DIP ABL Collateral prior to indefeasible payment in full in cash of all DIP ABL Obligations under the DIP ABL Credit Agreement, and termination of the DIP ABL Facility in accordance with the DIP ABL Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP ABL Collateral in trust and shall immediately turn over such proceeds to the DIP ABL Lender, for application in accordance with this Final Order, the DIP ABL Credit Agreement, or the applicable DIP ABL Loan Documents.

22.     **Maintenance of DIP ABL Collateral**.  Until the payment in full of the DIP ABL
Obligations, the Debtors shall:  (a) insure the DIP ABL Collateral as required under the DIP ABL
Credit Agreement and (b) maintain the cash-management system consistent with the terms and
conditions of any order(s) governing the Debtors' cash-management systems and the DIP ABL
Credit Agreement.

23.     **DIP ABL Termination Event; Exercise of Remedies.**

a.     **DIP ABL Termination Event**.  For purposes of this Final Order, the term
"DIP ABL Termination Event" shall mean:  (i) the occurrence of the Maturity Date,
(ii) the occurrence of any material breach or Event of Default under the DIP ABL Credit
Agreement or this Final Order, or (iii) the acceleration of the DIP ABL Obligations in
accordance with the terms of the DIP ABL Credit Agreement or the other DIP ABL
Loan Documents.

b.     **Exercise of Remedies**.  Upon the occurrence and during the continuation
of a DIP ABL Termination Event, without further notice to, hearing of, application to,
or order from this Court, the automatic stay provisions of section 362 of the Bankruptcy
Code shall be vacated and modified to the extent necessary to permit the DIP ABL
Lender to take any of the following actions, at the same or different time: (i) deliver a
written notice (which may be via email) to counsel for the Debtors, the U.S. Trustee,
counsel for the Prepetition Secured Parties, and counsel for the Committee (the
"Remedies Notice") declaring the occurrence of a DIP ABL Termination Event (such
date, the "DIP ABL Termination Declaration Date") and deliver a Carve-Out Trigger
Notice; (ii) declare the termination, reduction or restriction of any commitments under
the DIP ABL Facility to the extent any such commitment remains; (iii) declare all DIP
ABL Obligations to be immediately due and payable, without presentment, demand or
protest or other notice of any kind, all of which are expressly waived by the Debtors;
(iv) declare the termination, restriction or reduction of the DIP ABL Facility and the

DIP ABL Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP ABL Liens, the DIP ABL Superpriority Claims, or the DIP ABL Obligations; (v) charge default interest at the default rate set forth in the DIP ABL Credit Agreement; and (vi) declare the termination, restriction, or revocation of the ability of the Debtors to use Cash Collateral.

c. **Waiting Period Procedures**.  The Debtors may seek an emergency hearing during the period beginning on the DIP ABL Termination Declaration Date and prior to the expiration of the three (3) business days following the DIP ABL Termination Declaration Date (such period, including as such period may be tolled, the "Waiting Period").  If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Waiting Period, the Waiting Period shall be deemed automatically extended until such time as the matter can be heard by the Court.  At any hearing regarding a Remedies Notice, the Debtors may only raise the issue of whether an Event of Default has occurred, but for avoidance of doubt the Committee's and all other parties' rights and remedies are expressly preserved (including the right to seek non-consensual use of Cash Collateral).  During the Waiting Period, the Debtors shall continue to have the right to use DIP ABL Collateral (including Cash Collateral) in accordance with the terms of this Final Order, or other DIP ABL Loan Documents, and the Agreed Budget, solely to pay any expenses which are necessary to (i) preserve the DIP ABL Collateral or (ii) contest, in good faith, the occurrence of the Event of Default (other than, for the avoidance of doubt, the occurrence of the Maturity Date under the DIP ABL Credit Agreement).

d. **Rights and Remedies Following DIP ABL Termination Date**.  Following a DIP ABL Termination Declaration and unless this Court has entered an order prior to the expiration of the Waiting Period to the contrary, the DIP ABL Lender shall be entitled to exercise all rights and remedies in accordance with this Final Order, the DIP

ABL Loan Documents, applicable law, and the automatic stay of section 362 of the Bankruptcy Code shall automatically, without further order of this Court, be lifted, to allow the DIP ABL Lender to pursue all rights and remedies in accordance with the DIP ABL Credit Agreement, the other DIP ABL Loan Documents, this Final Order, and applicable law.

24.      **No Waiver by Failure to Seek Relief**.  The rights and remedies of the DIP ABL Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP ABL Lender may have under this Final Order, the DIP ABL Loan Documents, applicable law, or otherwise.  The failure or delay on the part of the DIP ABL Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP ABL Loan Documents, or applicable law shall not constitute a waiver of any of their respective rights.  Except as expressly set forth herein, none of the rights or remedies of the DIP ABL Lender under this Final Order or the DIP ABL Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the DIP ABL Lender.  No consent required hereunder by the DIP ABL Lender shall be implied by any inaction or acquiescence by the DIP ABL Lender.

25.      **Carve-Out**.

a.   **Priority of Carve-Out**.  The DIP ABL Liens and the DIP ABL Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation (as defined herein)) and up to 15% of any transaction fees or the like earned by, and unpaid to, Houlihan Lokey, Inc. The Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation) shall be senior to all claims and liens over all assets of the Debtors, including any DIP ABL Collateral, as set forth in the ABL DIP Orders.

b.   **DIP ABL Carve-Out Allocation**.  Because the DIP ABL Borrowers comprise only a portion of the Debtors for which Professional Persons are providing services, the

DIP ABL Liens and the DIP ABL Superpriority Claims shall only be subject to fifteen percent (15%) of the Carve Out as set forth in the Agreed Budget attached to this Final Order (the amount of such fifteen percent (15%) of the Carve Out, the "DIP ABL Carve-Out Allocation").  Notwithstanding anything to the contrary herein, no modification, amendment, extension, or update to the Agreed Budget shall increase the amount of the DIP ABL Carve-Out Allocation which is fixed at the amount of fifteen (15%) of the Agreed Budget attached to this Final Order. For the purpose of calculating the DIP ABL Carve-Out Allocation, the Agreed Budget attached to this Final Order shall control and remain in effect for purposes of calculating the DIP ABL Carve-Out Allocation except as consented to by the DIP ABL Lender.

c. **Carve-Out**.  The term "Carve-Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under 28 U.S.C. § 1930(a), together with any interest thereon pursuant to 31 U.S.C. § 3717 ("Statutory Fees"), which shall not be subject to the Agreed Budget; (ii) Court-allowed fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000, (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, including transaction fees or similar fees (the "Allowed Professional Fees"), incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and persons or firms retained by the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code or the patient care ombudsman in these Chapter 11 Cases (if any) (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons"), at any time before or on the first calendar day following delivery by the DIP ABL Lender of a Carve-Out Trigger Notice (as

defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Date Fees"), subject, in the case of all Professional Persons, and solely for purposes of this clause (iii) of the Carve-Out, to the Agreed Budget and any limits by the ABL DIP Orders, provided that Professional Persons may carry forward budgeted but unused amounts set forth in the Agreed Budget for any week for use in any one or more subsequent weeks; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $4,000,000 incurred after the first calendar day following delivery by the DIP ABL Lender of the Carve-Out Trigger Notice (the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (which shall not be subject to the Agreed Budget) (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap" or the "Carve-Out Cap"); provided that nothing herein shall be construed to impair the ability of the DIP ABL Lender to object to the fees, expenses, reimbursement or compensation described in clauses (iii) or (iv) above, on any grounds. Solely for purposes of clause (iii) of the Carve-Out, in the event that Allowed Professional Fees exceed or are expected to exceed the amounts provided in the Agreed Budget, the parties will negotiate in good faith (but without further obligation) regarding a proposed amendment to the Agreed Budget to address such additional Allowed Professional Fees; provided that any increase to the Carve Out Cap is subject to the reasonable review and consent of the DIP ABL Lender prior to the date on which such Agreed Budget becomes effective and any increase to the DIP ABL Carve Out Allocation is subject to paragraph 25(b) of this Final Order. For purposes of this Final Order, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP ABL Lender or its counsel to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the Prepetition Secured Parties, counsel to the DIP Term Lender, and counsel to the Committee, which notice may

be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the Loans under and as such terms are defined in the DIP ABL Credit Agreement, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

d. **Fee Reserve**.  As soon as reasonably practicable following the entry of this Final Order, and each week thereafter, the Debtors shall transfer cash on hand or cash proceeds from the DIP ABL Facility in an amount equal to the amount of fees and expenses reflected in the Agreed Budget for the Professional Persons, respectively, into two segregated Carve-Out Accounts[12] (one for Debtor Professionals and one for Committee Professionals) in an amount equal to the amount of fees and expenses reflected in the Agreed Budget for each Professional Person for such week.  The Debtors shall be authorized to use funds held in the Carve-Out Accounts solely to pay professional fees of the applicable Professional Persons, as they become allowed, due and payable pursuant to any compensation procedures of the Court until the payment in full of all allowed professionals fees; provided, that the Debtors' obligations to pay allowed professional fees shall in no way be limited to funds held in the applicable Carve-Out Accounts.

e.  **Carve Out Trigger Notice**. The Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date (and any available cash thereafter) to transfer to the applicable Carve-Out Accounts an amount of cash equal to the remaining unfunded portion of the Carve-Out.  Neither the DIP ABL Lender nor any of the Prepetition Secured Parties shall sweep or foreclose upon any cash on hand or subsequent cash of the Debtors (including cash received as a result of the sale or other disposition of any assets) until the Carve-Out Accounts have

---

[12]  "Carve-Out Account" means a separate segregated account not subject to the control of the DIP ABL Lender, the DIP Term Loan Lender, or any of the Prepetition Secured Parties.

been fully funded in an amount equal to all remaining unfunded portions of the Carve Out as required hereunder.

f.   Upon entry of this Final Order, any amounts previously funded to the segregated "Carve-Out Trigger Notice Reserve" pursuant to the Interim Order, in addition to any unfunded and accrued amounts as of the entry of the Final Order by any Debtor Professional, shall be appropriately re-distributed into the two Carve-Out Accounts pursuant to this paragraph.  The Carve-Out Accounts shall be funded on a weekly basis, and shall contain an amount equal to the amount of fees reflected in the Agreed Budget for the Debtor Professionals and the Committee Professionals, respectively from the Closing Date through the weekly date of funding.  The aggregate amounts within the Agreed Budget allocated for Committee Professionals may be reallocated among the Committee Professionals, as determined by the Committee Professionals.

g.   **Carve-Out Draw**.  Subject to exhaustion of the DIP ABL Loans and the applicable terms of the DIP ABL Loan Documents, the Debtors shall be permitted to draw on the DIP ABL Facility in the amount of any remaining unfunded portions of the DIP ABL Carve-Out Allocation less any unfunded portions of the DIP ABL Carve-Out Allocation, notwithstanding any default, Event of Default, or the occurrence of a Trigger Date; *provided* that in no event shall the DIP ABL Lender be obligated to lend any amounts in excess of the Borrowing Base or the Facility Cap, as such terms are defined in the DIP ABL Loan Documents.  Any Carve-Out Trigger Notice shall be deemed a consent by the DIP ABL Lender to authorize the Debtors to deposit Cash Collateral or DIP ABL Facility proceeds into the applicable Carve-Out Accounts in an amount equal to the unfunded portion of the sum of the Post-Carve-Out Trigger Notice Cap and any budgeted amounts reflected in the Agreed Budget through the date of the Carve-Out Trigger Notice that have not already been

deposited in the Carve-Out Accounts.  In accordance with the DIP ABL Loan
Documents, the DIP ABL Lender shall be entitled to maintain a reserve in the
amount of a reasonable estimate of amounts that may be included in the DIP ABL
Carve-Out Allocation or that are or may be payable from any proceeds of a
transaction, including amounts which are or may become payable to any
Professional Persons which would be included in the DIP ABL Carve Out
Allocation.

h.  Notwithstanding anything contained herein to the contrary, funds transferred to the
Carve-Out Accounts (i) shall be held in trust exclusively for the benefit of the
Professional Persons, including with respect to obligations arising under the Carve
Out, and (ii) shall not be subject to any liens or claims granted to the DIP ABL
Lender or any other creditors and shall not constitute DIP ABL Collateral or
Prepetition Collateral; *provided*, *however*, that the DIP ABL Lender shall have a
reversionary interest in the funds held in the Carve-Out Accounts, if any, after all
amounts included in the Carve Out have been funded into the applicable Carve-Out
Accounts and all Allowed Professional Fees have been paid in full pursuant to a
final order of the Court.  All funds in the Carve-Out Accounts shall be used to pay
all obligations set forth in the definition of Carve Out until such obligations are paid
in full.

i.  **Payment of Allowed Professional Fees Prior to the Trigger Date**.  Any payment
or reimbursement made prior to the occurrence of the Trigger Date in respect of
any Allowed Professional Fees shall not reduce the Carve-Out.

j.  **No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object
to Fees**.  The DIP ABL Lender shall not be obligated, liable, or in any way
responsible for the direct payment or reimbursement of any fees or disbursements
of any of the Professional Persons incurred in connection with the Chapter 11 Cases

or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in the

DIP Orders or otherwise shall be construed to obligate the DIP ABL Lender in any

way to pay compensation to, or to reimburse expenses of, any of the Professional

Persons, or to guarantee that the Debtors or their estates has sufficient funds to pay

such compensation or reimbursement.  Nothing herein shall be construed as consent

to the allowance of any fees and/or expenses of Professional Persons of any of the

Debtors, the Committee, any other official or unofficial committee in these

Chapter 11 Cases or any Successor Cases, or of any other person or entity, or shall

affect the right of the DIP ABL Lender to object to the allowance and payment of

any such fees and expenses.  Notwithstanding anything to the contrary in this Final

Order, (A) the failure of the Carve-Out Trigger Notice Reserve to satisfy in full

the Allowed Professional Fees shall not affect the priority of the Carve Out with

respect to any shortfall, and (B) subject to the limitations with respect to the DIP

ABL Lender, in no way shall any Agreed Budget, Carve Out, or Carve Out Cap

be construed as a cap or limitation on the amount of the Allowed Professional

Fees due and payable by the Debtors (which includes, for the avoidance of doubt,

the Allowed Professional Fees of the Committee's advisors).

26.    **Approval of DIP ABL Fees**.  In consideration for the DIP ABL Facility, the DIP

ABL Lender shall be paid all fees, expenses and other amounts payable under the applicable DIP

ABL Loan Documents as such become due, including, without limitation, the Commitment Fee

(which was deemed fully earned and allowed upon entry of the Interim Order and paid in full in

cash from the proceeds of the "Initial Draw," as that term is defined in the DIP ABL Credit

Agreement), and the reasonable and documented fees and expenses of the DIP ABL Lender in

connection with the DIP ABL Facility (all such fees, together, the "DIP ABL Fees").  The DIP

ABL Fees were approved on a final basis upon entry of the Interim Order and were deemed to be

allowed, fully earned, non-refundable, and payable in accordance with the terms of the DIP ABL

Credit Agreement without the need for any further order of this Court.  The DIP ABL Fees and

the approval thereof in the Interim Order is hereby ratified and adopted in full and such amounts shall continue to be deemed allowed, fully earned, and non-refundable; *provided* that, upon entry of this Final Order, the DIP ABL Fees shall be payable in accordance with the terms of the DIP ABL Loan Documents.  The DIP ABL Fees shall be part of the DIP ABL Obligations.

27.     **DIP ABL Lender' Professionals' Fees**.  Professionals for the DIP ABL Lender ("DIP ABL Lender Counsel") on behalf of the DIP ABL Lender (the "DIP ABL Lender Professionals") shall provide summary copies of any invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law) with: (i) a summary of the work performed during the relevant compensation period; (ii) the name of, hourly rate (if applicable) of, and number of hours worked by each professional and paraprofessional who worked on the matter during the relevant compensation period; and (iii) the total fee amount being requested by electronic mail to the U.S. Trustee and counsel to the Committee contemporaneously with the delivery of such fee and expense statements to the Debtors.  At the conclusion of the Review Period (as defined below) the DIP ABL Lender shall promptly pay in full all such invoiced fees and expenses of the DIP ABL Lender Counsel, other than the Disputed Invoiced Fees (as defined below), directly to the DIP ABL Lender Counsel, and such amount shall be added to the DIP ABL Obligations.  Any objections raised by the Debtors, the U.S. Trustee or the Committee with respect to such invoices (the "Disputed Invoiced Fees") must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice (the "Review Period") (to be followed by the filing with this Court, if necessary, of a motion or other pleading, with at least ten (10) days' prior written notice by the submitting party of any hearing on such motion or other pleading).  Notwithstanding the foregoing, on or about the date of entry of this Final Order, the DIP ABL Lender shall pay fees

and expenses of the DIP ABL Lender Professionals incurred prior to such date, without the need for any DIP ABL Lender Professional to first deliver a copy of its invoice as provided for herein and such amounts shall be added directly to the balance of the DIP ABL Loan Obligations. No DIP ABL Lender Professionals shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court.

28. **Effect of Stipulations on Third Parties.** The Debtors' Stipulations and the Release contained herein shall be binding in all circumstances upon the Debtors upon entry of this Final Order and upon their Estates upon entry of the Final Order. The Debtors' Stipulations shall be binding upon each other party-in-interest, including the Committee, except to the extent such party in interest *first* obtains standing (including any chapter 11 trustee) or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined herein), the chapter 7 trustee in such Successor Case), by no later than March 30, 2025 (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined herein) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "Challenge"), such Challenge is fully and finally adjudicated, (i) and (ii) shall be referred to as the "Challenge Period Termination Date") and *second,* obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge"). The filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period with respect to solely that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion. Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any

Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (i) any and all payments made to or for the benefit of the Prepetition ABL Lender, or otherwise authorized by this Final Order (whether made prior to, on, or after the Petition Date) shall not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance by any party in interest, (ii) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition ABL Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge; *provided,* that all other stipulations (other than those subject to a Successful Challenge) shall remain binding on any Committee or other party-in-interest. Notwithstanding any provision to the contrary in the DIP ABL Orders, nothing in this Final Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' Estates. The failure of any party-in-interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' Estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph 28 or to require or permit an extension of the Challenge Period Termination Date. No portion of the Carve-Out, any Cash Collateral, any other DIP ABL Collateral, or any proceeds of the DIP ABL Facility, including any disbursements set forth in the Agreed Budget or obligations benefitting

from the Carve-Out (up to the amount of the DIP ABL Carve-Out Allocation), shall be used for the payment of Allowed Professional Fees, disbursements, costs or expenses incurred by any person, including, without limitation, any Committee, in connection with challenging the DIP ABL Lender or the Prepetition ABL Lender's liens or claims, preventing, hindering or delaying any of the DIP ABL Lender' or the Prepetition ABL Lender enforcement or realization upon any of the DIP ABL Collateral, or initiating or prosecuting any claim or action against the DIP ABL Lender or Prepetition ABL Lender.  Notwithstanding anything in this Paragraph 28 to the contrary, PBGC shall not be required to initiate a Challenge to preserve all of its rights and priority with respect to its lien described in the PBGC Subordination Agreement (defined below).  Following a Successful Challenge related to the Stipulations in paragraphs e(ii)-e(iv), the DIP ABL Roll Up shall be unwound in the amount of the Prepetition ABL Obligations minus the amount lent to the Debtors on or prior to the Challenge Period Termination Date  under the DIP ABL Credit Agreement.

29. **Indemnification**.  The DIP ABL Lender (and its affiliates and respective officers, directors, employees, advisors, and agents, solely in such capacity) (each such person, an "Indemnitee") will have no liability for and will be indemnified and held harmless by the Debtors and their estates against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence, bad faith or willful misconduct of the relevant indemnified person (or any of its affiliates or any of its or its respective officers, directors, employees, advisors or agents).  Such indemnity shall not be available (a) to the extent arising from a material breach of any obligation of such Indemnitee under the applicable DIP ABL Loan Documents or (b) to the extent arising out of any loss, claim, damage, liability or expense that does not involve an act or omission of the Debtors and that is brought by an Indemnitee against another Indemnitee.

30. **Proofs of Claim**.  Notwithstanding any order entered by this Court, the DIP ABL Lender shall not be required to file a proof of claim in the Chapter 11 Cases or Successor Case,

and the Interim Order was deemed to constitute a timely filed proof of claim and the entry of this

Final Order shall be deemed to constitute a timely and valid amendment of such proof of claim.

Any order entered by this Court in relation to the establishment of a bar date (a "<u>Bar Date Order</u>")

for any claim (including administrative claims) in the Chapter 11 Cases or Successor Case shall

not apply to the DIP ABL Lender.  Notwithstanding the foregoing, the DIP ABL Lender may, in

its sole discretion, file (and amend or supplement) one or more proofs of claim or aggregate proofs

of claim in the Chapter 11 Cases for any claim allowed herein or that the DIP ABL Lender

otherwise has or may have in respect of the Debtors.  In addition, notwithstanding anything to the

contrary in any Bar Date Order, PBGC shall be allowed to file one master set of proofs of claim

in the case of the main Debtor with respect to all amounts owed to PBGC by the Debtors and such

master set of proofs of claim shall be deemed to have been filed against each of the Debtors.  The

provisions set forth in this paragraph are intended solely for the purpose of administrative

convenience and shall not affect the substantive rights of any party  in interest or their respective

successors in interest.

      31.      **Limitations on Use of DIP Proceeds, Cash Collateral, the Carve-Out and

Other Funds**.  Except as otherwise permitted in this Final Order and the Agreed Budget, the DIP

ABL Facility, the DIP ABL Collateral, the Cash Collateral, and the Carve-Out (up to the amount

of the DIP ABL Carve-Out Allocation) may not be used, directly or indirectly, by any of the

Debtors, the Committee or any other official or unofficial committee, or any trustee or other estate

representative appointed in the Chapter 11 Cases (or any Successor Case) or any other person or

entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection

therewith) in connection with (a) preventing, hindering, or delaying any of the DIP ABL Lender'

enforcement or realization upon any of the DIP ABL Collateral; (b) using or seeking to use Cash

Collateral without the permission of the DIP ABL Lender or selling or otherwise disposing of DIP

ABL Collateral without the prior written consent of the DIP ABL Lender, as permitted by the DIP

ABL Credit Agreement, or further order of the Court; (c) using or seeking to use any insurance

proceeds constituting DIP ABL Collateral without the prior written consent of the DIP ABL

Lender; (d) seeking to amend or modify any of the rights granted to the DIP ABL Lender under
this Final Order or the DIP ABL Credit Agreement, including seeking to use Cash Collateral or
DIP ABL Collateral on a contested basis; (e) litigating, objecting to, challenging or contesting in
any manner in any way the DIP ABL Liens, DIP ABL Obligations, DIP ABL Superpriority
Claims, DIP ABL Collateral (including Cash Collateral) or any other claims held by or on behalf
of the DIP ABL Lender; (f) litigating, objecting to, challenging, or contesting in any manner, or
raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any
of the DIP ABL Obligations, the DIP ABL Liens, or any other liens or interests of the DIP ABL
Lender; *provided* that, notwithstanding anything to the contrary in this Final Order, the Committee
may use the proceeds of the DIP ABL Collateral and Cash Collateral in an amount not to exceed
$50,000 (the "Investigation Budget") only to investigate, but not litigate (x) the claims and liens
of the DIP ABL Lender and (y) potential claims, counterclaims, causes of action, or defenses
against the DIP ABL Lender; (g) seeking to subordinate, recharacterize, disallow or avoid the DIP
ABL Obligations; or (h) any other prohibited or otherwise restricted use of proceeds as set forth
in the DIP ABL Credit Agreement; *provided*, *however*, that nothing contained herein or in the DIP
ABL Loan Documents shall preclude the Debtors from seeking to refinance the DIP ABL Facility.
Upon an Event of Default or DIP ABL Termination Event, nothing herein shall limit the Debtors'
right to move for an order of the Court authorizing the use of Cash Collateral absent the DIP ABL
Lender's consent.

     32.    **Releases**.  Upon entry of the Interim Order, and as ratified by this Final Order, the
Debtors, on their own behalf and on behalf of their estates, forever and irrevocably:  (a) release,
discharge, and acquit each of the DIP ABL Lender and each of their respective former or current
officers, employees, directors, agents, representatives, owners, members, partners, financial
advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates,
and predecessors in interest, in each case solely in their capacity as such, from any and all claims,
demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and
obligations, of every type, including, without limitation, any so-called "lender liability" or

equitable subordination claims or defenses, solely with respect to or relating to the negotiation of and entry into the DIP ABL Credit Agreement and the other DIP ABL Loan Documents; and (b) waive, discharge and release any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP ABL Liens and the DIP ABL Obligations; *provided*, *however*, that nothing contained herein shall release the DIP ABL Lender from its commitments and obligations hereunder and under the DIP ABL Loan Documents.

33.     **Waivers**.

a.      **Limitation on Charging on Expenses**.   No costs or expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from or against the DIP ABL Lender with respect to the DIP ABL Collateral pursuant to section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP ABL Lender.

b.      **No Marshaling**.   In no event shall the DIP ABL Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP ABL Collateral or the DIP ABL Obligations and all proceeds shall be received and applied in accordance with this Final Order and the DIP ABL Credit Agreement; *provided, however*, notwithstanding anything contained in this paragraph, the DIP Orders or the DIP ABL Documents to the contrary, prior to seeking payment of any DIP ABL Obligations, DIP ABL Liens or DIP ABL Superpriority Claims from proceeds of Avoidance Actions, the DIP ABL Lender shall first satisfy such obligations, liens and claims from all DIP ABL Collateral other than proceeds of Avoidance Actions ("Other DIP ABL Collateral") and shall only avail itself of proceeds of Avoidance Actions if the DIP ABL Obligations are unable to be Paid in Full[13] from the Other DIP ABL Collateral.

---

[13] For purposes hereof, the term "Paid in Full" means, with respect to the DIP ABL Obligations, the irrevocable and indefeasible payment in full in cash of all DIP ABL Obligations, other than continuing indemnification and

c.      **Section 552(b)**. The Prepetition ABL Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Lender, with respect to proceeds, product, offspring or profits of any of the Prepetition ABL Collateral.

34.      **No Lender Liability**.  In determining to make any loan or accommodation or any kind (whether under the DIP ABL Loan Documents or otherwise) or to permit the use of Cash Collateral, the DIP ABL Lender shall not owe any fiduciary duty to the Debtors or their respective creditors, shareholders, or estate, and the DIP ABL Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors by virtue of making the DIP ABL Loans. Furthermore, nothing in the DIP Orders or the DIP ABL Loan Documents shall impose or allow the imposition upon the DIP ABL Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates, if any (as defined in section 101(2) of the Bankruptcy Code).

35.      **Limitation of Liability**.   Nothing in the DIP Orders, the DIP ABL Loan Documents, the Prepetition ABL Loan Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP ABL Lender of (a) any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts or (b) any fiduciary duties to the Debtors, their respective creditors, shareholders, or estates. The DIP ABL Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP ABL Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in value thereof, or (iv) any act or default

---

expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently and finally expired or shall have been terminated, cancelled and discharged.

of any carrier, servicer, bailee, custodian, forwarding agency, or other person and all risk of loss, damage, or destruction of the DIP ABL Collateral shall be borne by the Debtors.

36.    **No Third-Party Beneficiaries**.  Except as explicitly provided for herein, the DIP Orders do not create any rights for the benefit of any Professional Person, third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

37.    **Insurance Proceeds and Policies**.  The DIP ABL Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured, lender loss payee, and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP ABL Collateral.

38.    **No Waivers or Modifications of Interim Order**.  The Debtors have agreed not to and shall not seek any modification or extension of this Final Order without the prior written consent of the DIP ABL Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP ABL Lender.

39.    **Binding Effect of this Final Order**.  Immediately upon entry of this Final Order by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP ABL Lender, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of any of the Chapter 11 Cases or any Successor Case; provided that the DIP ABL Lender shall not have any obligation to permit the use of DIP ABL Collateral (including Cash Collateral) by or extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.

40.    **Discharge**.  Except as otherwise agreed in writing by the DIP ABL Lender, the DIP ABL Obligations shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP ABL Obligations have been indefeasibly

paid in full in cash, on or before the effective date of such confirmed plan.

41.    **Survival**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any chapter 11 plan in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Cases or Successor Case. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP ABL Lender pursuant to this Final Order and the DIP ABL Credit Agreement, and the adequate protection provided to the Prepetition Secured Parties pursuant to this Final Order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Final Order until, in respect of the DIP ABL Facility, all the DIP ABL Obligations, pursuant to the DIP ABL Loan Documents and this Final Order, have been paid in full (such payment being without prejudice to any terms or provisions contained in the DIP ABL Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP ABL Facility are terminated.  The terms and provisions concerning the indemnification of the DIP ABL Lender shall continue in the Chapter 11 Cases, in any Successor Case, following dismissal of any of the Chapter 11 Cases or any Successor Case, following termination of the DIP ABL Facility until all of the DIP ABL Obligations have been indefeasibly Paid in Full (as described in the DIP ABL Credit Agreement).

42.    **Necessary Actions**.  The Debtors are authorized and directed to take such actions as are reasonable and appropriate to implement the terms of this Final Order and the DIP ABL Loan Documents.

43.    **Payments Free and Clear**. Any and all payments or proceeds remitted to the DIP ABL Lender on behalf of the applicable Credit Parties (as defined in the DIP ABL Credit Agreement) shall be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on,

directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

44.     **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), or 7062, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

45.     **Final Order Controls.**  In the event of any conflict between or among the terms or provisions of the Interim Order, this Final Order, the DIP ABL Credit Agreement, and the DIP ABL Credit Agreement, the terms and provisions of this Final Order shall govern and control.  In the event of any conflict between or among the terms or provisions of the Interim Order, the DIP ABL Credit Agreement, and the DIP ABL Credit Agreement, the terms and provisions of DIP ABL Credit Agreement shall govern and control. Any reference to "DIP ABL Loan Documents" herein shall be construed to mean, as the case may be, such DIP ABL Loan Documents as modified by this Final Order.

46.     **Headings.**  All paragraph headings used in this Final Order are for ease of reference only and shall not affect the construction or interpretation hereof.

47.     **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to implementation, interpretation, and enforcement of the DIP ABL Loan Documents or this Final Order.

48.     Nothing in this Final Order shall modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Term Loan DIP Order or the *Final Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (the "Final Term Loan DIP Order")..

49.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

50.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

51.     All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

52.     **The North River Insurance Company**. Notwithstanding any other provisions of the Interim Order or this Final Order, nothing in the Interim Order, this Final Order, or the DIP ABL Loan Documents shall prime any setoff and/or recoupment rights of The North River Insurance Company under applicable law; *provided* that the Debtors' and the DIP ABL Lender's respective rights to dispute or challenge any such alleged setoff or recoupment rights are hereby preserved.

53.     **Atlantic Specialty Insurance Company**. Nothing in this Final Order shall alter, prejudice, prime, modify, or impair any rights or interests of the Debtors' sureties under any surety bonds, related indemnity agreements, and/or in any collateral of such sureties; *provided* that the Debtors' and the DIP ABL Lender's respective rights to dispute or challenge any such alleged rights or interests are hereby preserved.

54.     **FRMC**. Notwithstanding anything to the contrary contained in this Final Order or the DIP ABL Loan Documents, (i) the FRMC Deposit Account, the FRMC Accounts, and any other bank accounts owned by PhysicianCo (a) shall not constitute the DIP ABL Collateral or Cash Collateral and (b) shall be free of any DIP ABL Superpriority Claim, DIP ABL Liens, Carve-Out (with respect to the FRMC Deposit Account, except to the extent of any funds thereunder determined in accordance with the Cash Management Order not to be owed to FRMC), Permitted Liens, any other Adequate Protection Liens, or any other liens being granted under this Final Order or any other order granting postpetition financing by this Court; (ii) nothing in this Final Order or

the DIP ABL Loan Documents shall alter, prejudice, prime, modify, impair, or in any way adversely impacts the FRMC Lien.  Notwithstanding anything to the contrary contained in this Final Order, the DIP ABL Loan Documents, or any Agreed Budget, the DIP ABL Borrowers and the DIP ABL Guarantor shall be permitted and directed to (i) continue to fund the FRMC Deposit Account, and (ii) otherwise make or effectuate any payments to PhysicianCo, each in accordance with the Cash Management Order[14] to the extent required thereunder.

55.    **Fisher**.  Notwithstanding any language to the contrary in this Final Order, this Final Order does not affect or impair any rights, or remedies or claims that Fisher Scientific Company LLC,  and its divisions and subsidiaries ("Fisher") may have (a) in relation to reclamation claims, to the extent valid and not subject to avoidance, and to the extent actually avoided, under applicable law pertaining to any equipment or goods sold, delivered or otherwise supplied to the Debtors by Fisher within forty-five days prior to the Petition Date, (b) to assert an administrative expense claim against the Debtors under any applicable provision of the Bankruptcy Code, including section 503(b)(9), or (c) in respect of any executory contracts between Fisher and the Debtors, if any.  Any such rights, remedies, and claims, if any, are preserved and reserved; *provided, however*, that the rights of the Debtors, the DIP ABL Lender, and all other parties in interest to oppose and object to Fisher's assertion of any such rights, claims, or remedies, if any, and to seek any related relief, are preserved and reserved, and the rights of Fisher to seek additional adequate protection and/or other relief are reserved and preserved.

56.    **PBGC Subordination Agreement**. Nothing herein, including any party's consent to the entry of this Final Order, shall be deemed to waive, modify, or otherwise impair the respective rights of the DIP ABL Lender or PBGC, pursuant to that certain Lien Subordination Agreement entered into as of September 16, 2024 (the "PBGC Subordination Agreement"), by and

---

[14]  "Cash Management Order" means the *Amended Order (I) Authorizing the Debtors to (A) Continue Their Existing Cash Management System and Maintain Their Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records; and (II) Granting Related Relief*.  Only for purposes of this paragraph, capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Cash Management Order.

between Debtor, the DIP ABL Lender, and PBGC, acting solely on behalf of the Crozer Plan, the ECHN Plan, and the Waterbury Hospital Cash Balance Retirement Plan (collectively, the "Pension Plans"), under equity or law, and the DIP ABL Lender expressly reserves all of its rights and remedies whether now existing or hereafter arising under the Prepetition ABL Credit Documents and/or equity or law in connection with all Events of Default. Any liens held by PBGC shall remain subordinated to the DIP ABL Liens held by the DIP ABL Lender pursuant to this Final Order and the PBGC Subordination Agreement. Notwithstanding anything to the contrary herein, liens held by the PBGC shall not be considered "Permitted Prior ABL Liens" under the DIP ABL Loan Documents.

57. **PBGC**. In addition to Adequate Protection Liens, (i) postpetition interest shall accrue on PBGC's prepetition secured claim against the Debtors in the amount of $137,845 per month, which interest shall be paid-in-kind on the 11th day of each month (with the first such payment to be made upon the entry of this Final Order) with such amounts to constitute an allowed administrative expense claim against the Debtors that shall be paid in accordance with any chapter 11 plan the Debtors may confirm in these cases, (ii) the Debtors shall pay PBGC's outside professionals' reasonable fees and expenses in an amount not to exceed $35,000 per month, subject to the ability of such professionals to carry any unused portion of such monthly amount forward or back to pay fees and expenses incurred in prior or future months, as applicable, (iii) PBGC's outside professionals shall seek payment of their fees and expenses from the Debtors pursuant to the procedures set forth in paragraph 26 of the DIP Term Order; (iv) the Debtors shall preserve all documents related to the Pension Plans and coordinate with PBGC in good faith to arrange for the delivery of such documents to PBGC upon its request; (v) the Debtors shall respond promptly to PBGC's requests for information regarding the Pension Plans; and (vi) in exchange for PBGC's agreement to resolve its filed objection to the Motion on the terms set forth in this Final Order, the Debtors shall not agree (absent entry of an order from the Court) to grant adequate protection to any other Prepetition Secured Party that would diminish the nature, extent, amount or priority of the Adequate Protection Liens and other adequate protection provided to PBGC in this Final Order.

58.     As noted by the Court at the Final Hearing, after entry of this Final Order, any Objecting Party[15] shall have the right to file a separate motion with the Court to request additional adequate protection of their asserted interests in the Prepetition Collateral.  The ability of the Debtors or any other party in interest to oppose any such relief is hereby reserved.

**# # # END OF ORDER # # #**

---

[15] "Objecting Party" has the meaning given to such term in the *Debtors' Omnibus Reply in Support of Debtors' DIP Motions* [Docket No. 574].

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          tom.califano@sidley.com
                rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:      (212) 839-5300
Facsimile:      (212) 839-5599
Email:          wcurtin@sidley.com
                pventer@sidley.com
                anne.wallice@sidley.com

*Attorneys to the Debtors
and Debtors in Possession*