# **Exhibit A**

**Settlement Term Sheet [Docket No. 633-1]**

## Summary of Proposed Settlement Terms Among the Debtors and Medical Properties Trust, Inc. ("MPT")

| Term | Summary |
|---|---|
| *Debtor in Possession Financing Facilities and Adequate Protection* | • MPT consents to the eCapital ABL DIP facility and JMB DIP facility (including JMB's blanket priming liens) on currently agreed terms (including, without limitation, as to facility size), without amendment<br><br>• MPT shall provide a $25 million new money commitment for DIP Financing consisting of (i) a $13.5 million stand-by delayed draw term loan, subordinated (last out) to the JMB DIP and (ii) the Seismic Funding Advances (as defined below) (collectively, the "Junior DIP").[1]<br><br>• MPT to be granted Adequate Protection in the form of (i) replacement liens (subject to and subordinate to the carve-out, the JMB DIP Facility and the eCapital ABL DIP Facility, but senior to all other liens), (ii) superpriority administrative expense priority on the Junior DIP (including, without limitation, accrued amounts and rolled-up MPT Term Loan), subject to and subordinate to the carve-out, the JMB DIP Facility and the eCapital ABL DIP Facility, but senior to all other claims, (iii) current payment in cash of reasonable professional fees commencing from the petition date, up to a maximum of $1.25 million in cash per month, with any unpaid balance accruing as additional claims under the Junior DIP, and (iv) an accrual to the Junior DIP equal to $5 million per month (offset against accrued interest and rent under Tranches 7 and 8 of the Recovery Waterfall, as applicable)<br><br>• Upon entry of the 9019 Order (as defined below) and as adequate protection, the MPT Term Loan will be fully rolled up<br><br>• Use of proceeds of Junior DIP same as JMB DIP<br><br>• (i) Reporting and information rights same as JMB DIP and (ii) upon notice of a draw under the Junior DIP (other than in respect of the Seismic Funding Advances), as a condition thereto and ongoing once any portion of Junior DIP is drawn, consent right (not to be unreasonably withheld) as to future budgets same as JMB DIP<br><br>• The Junior DIP shall (i) mature on 12/31/2025, (ii) earn interest at a rate of 16.00% per annum on the new money funded on the Junior DIP and 11.50% on the rolled-up MPT Term Loan, which shall be paid in kind on a quarterly basis, and (iii) receive (A) a funding fee payable in kind equal to 4% of the new money principal amount funded in respect of the Junior DIP and (B) an exit fee equal to 6% of the new money principal amount of the Junior DIP repaid. For the avoidance of doubt, (x) no interest shall accrue on accrued Adequate Protection amounts and (y) no funding fees or exit fees will be payable on accrued Adequate Protection amounts or rolled-up MPT Term Loans. |

---

[1] Provision of Junior DIP is subject to MPT board approval.

1

MPT Response to Debtors' Proposal - February 11, 2025
Confidential; Subject to FRE 408 and State Law Equivalents

| Term | Summary |
|---|---|
| | • During the period between the filing of the 9019 Motion (as defined below) and the entry of the 9019 Order (as defined below) (the "Interim Period"), the Debtors will draw no more than an additional $46 million on the JMB DIP (the "Pre-9019 Cap")[2] and for the Interim Period MPT shall be granted, pursuant to any order approving the JMB DIP, Adequate Protection as described above (with accrued amounts secured by replacement liens and subject to superpriority administrative expense priority as if claims under the Junior DIP). Absent approval of the 9019 Order, MPT shall be entitled to object to the final DIP motion insofar as it seeks to draw any additional amounts above the Pre-9019 Cap.<br><br>• The JMB DIP order shall provide that during the Interim Period none of the creditors' committee's fees and expenses pertaining to any investigation of or litigation with MPT in an aggregate amount above $800,000 shall be paid pursuant to the carve-out and professional fee escrow. The 9019 Order shall provide that none of the creditors' committee's fees and expenses from and after the entry of the 9019 Order pertaining to any investigation of or litigation with MPT shall be paid pursuant to the carve-out and professional fee escrow. |
| *Pennsylvania Operations* | • The Debtors shall pursue the highest and best bid for the ongoing operations of the Pennsylvania Operations (taking into account, among other things, the amount of MPT obligations being assumed and Commonwealth of Pennsylvania approval), using the NFP Transaction (as defined below) as the effective stalking-horse bid<br><br>• During the stipulated receivership period, the Debtors will provide diligence to and cooperate with potential operators referred by MPT; to the extent any such operators are deemed acceptable by the Commonwealth of Pennsylvania, the Debtors will pursue a transaction with such operators as either a backup to or alternative to a transaction with the not for profit consortium designated in the pending sale motion (the "NFP Transaction")<br><br>• MPT-designated / supported bids shall be submitted to and negotiated exclusively by the Debtors through Houlihan Lokey<br><br>• Any transaction for the Pennsylvania Operations shall include the assumption of (i) all employee-related obligations (including accrued payroll and PTO), except pension related obligations, (ii) all outstanding or accrued and unpaid property taxes on the transferred properties, in each case for the applicable facility(ies) and (iii) assumption of mechanic's liens and equipment leases<br><br>• In the event there is no acceptable transaction to the Commonwealth, MPT consents to the wind-down and closure of the operations, including without limitation the conversion of the Pennsylvania Chapter 11 cases to a Chapter 7, subject to (i) |

---

[2] NTD: Increase is to accommodate elimination of seismic funding prior to entry of 9019 Order.

2

MPT RESPONSE TO DEBTORS' PROPOSAL - FEBRUARY 11, 2025
CONFIDENTIAL; SUBJECT TO FRE 408 AND STATE LAW EQUIVALENTS

| Term | Summary |
|---|---|
|  | confirmation that MPT will not have resulting monetary obligations of any kind and (ii) application of resulting proceeds pursuant to the Recovery Waterfall as set forth herein<br><br>• MPT shall irrevocably consent to a sale of all assets of the Pennsylvania operations (including the real property), free and clear of claims, liens and encumbrances pursuant to 11 USC §363, subject to (i) confirmation that MPT will not have resulting monetary obligations of any kind and (ii) application of resulting proceeds pursuant to the Recovery Waterfall as set forth herein |
| *California / Connecticut Operations* | • The Debtors shall market the California and Connecticut Hospitals exclusively through Houlihan Lokey (the "California / Connecticut Sale Process") to solicit the highest and best bid in one or more sale transactions (each a "California / Connecticut Sale")<br><br>• The Debtors shall provide MPT regular updates on the California / Connecticut Sale Process<br><br>• During the Interim Period and thereafter, MPT shall not initiate or have direct contact / discussions with any potential buyer who is subject to an NDA with the Company regarding the sale of the Debtors' California and/or Connecticut hospitals / operations; provided however, upon request of either MPT or the potential buyer, Houlihan Lokey shall arrange and participate in discussions between MPT and the potential buyer; provided further that MPT may initiate and/or have such direct contact / discussions with any of the potential buyers specified on a redacted exhibit delivered by MPT to the Debtors (the "Designated Buyers") so long as Houlihan Lokey is included in such contact / discussions or declines to be included in such contact / discussions. In the event that a buyer who is subject to an NDA contacts MPT and/or initiates discussions with MPT, in each case regarding the sale of the Debtors' California and/or Connecticut hospitals / operations (notwithstanding the restrictions of such NDA), MPT shall inform Houlihan Lokey and refer such buyer to coordinate a discussion through Houlihan Lokey.<br><br>• Negotiations specifically relating to leasing the real property from MPT, arising from the California / Connecticut Sale Process, will be coordinated and attended by Houlihan Lokey<br><br>• Net sale proceeds distributed pursuant to the Recovery Waterfall |

| Term | Summary |
|---|---|
|  | - In the event any California / Connecticut Sale (other than a credit bid by MPT) includes a lease with MPT, the value of such lease[3] (as agreed upon by the parties at the time of the bid) will be funded by MPT and distributed in accordance with the Recovery Waterfall (Exhibit A) and if MPT is a recipient of the proceeds in the Recovery Waterfall, such new lease contribution will be on a net funded basis given the MPT recoveries (*i.e.*, claim reduction); provided, however, upon agreement of the parties hereto and so long as the JMB DIP Facility has been paid in full, MPT shall be able to defer its obligation to provide cash funding pending the closing of other transactions reasonably expected to provide cash proceeds to the Recovery Waterfall. Any such deferral shall not, however, eliminate MPT's obligation for cash funding (although amount may be changed based on net funding mechanic set forth above).<br><br>- MPT shall be permitted to credit bid its starting with its most senior tranche of remaining claims set forth in the Recovery Waterfall in any California / Connecticut Sale (other than the participation of its deficiency claim in any recoveries allocated to the Estate); provided that the cash proceeds of any such transaction (together with other projected proceeds payable pursuant to the Recovery Waterfall as set forth in this Term Sheet) shall be sufficient to pay (i) the claims in Tranche 1 of the Recovery Waterfall, (ii) to the extent the assets subject to such credit bid are subject to priority liens in favor of the PBGC or the state of Connecticut, Tranches 3 and 4, as applicable, of the Recovery Waterfall and (iii) to the extent MPT elects to credit bid claims allocated to Tranche 7 or Tranche 8 of the Recovery Waterfall, the recovery allocated to the Estate corresponding to the credit bid amount of such claims, in each case shall be funded in cash by MPT (unless otherwise agreed by the holders of such claims or the Estate, as applicable)<br><br>- MPT shall irrevocably consent to a sale of all assets of the California / Connecticut operations (including the real property), free and clear of claims, liens and encumbrances pursuant to 11 USC §363, subject to the terms set forth herein (including as to credit bidding) and application of resulting proceeds pursuant to the Recovery Waterfall as set forth herein; provided that, with respect to a sale transaction in which the consideration includes a lease with MPT for such operations and/or real property, such lease shall be on terms acceptable to MPT in MPT's sole and absolute discretion<br><br>- Bid procedures for the California / Connecticut Sale Process to be customary for typical bankruptcy sale process in the Northern District of Texas with a break-up fee and expense reimbursement not to exceed 3% of the transaction value<br><br>- Notwithstanding the foregoing, the Debtors preserve their rights to pursue a plan of reorganization of some or all of the California / Connecticut Operations in lieu of a sale transaction; provided, however, that (x) MPT expressly reserves all rights to vote against, or object to, any such plan and (y) MPT shall be permitted to credit bid consistent with the Bankruptcy |

---

[3] NTD: During the Interim Period the parties hereto shall use commercially reasonable efforts to agree upon on valuation mechanics based on normalized, annualized rent with a capitalization multiple, subject to agreed exceptions, including, without limitation, characteristics (including, without limitation, creditworthiness) of tenant and deferral rent.

4

MPT Response to Debtors' Proposal - February 11, 2025
Confidential; Subject to FRE 408 and State Law Equivalents

| Term | Summary |
|---|---|
| | Code any or all of its claims as set forth herein with respect to any or all of the Debtors' assets in connection with any such plan |
| *Rhode Island Hospital Operations* | • Sale of the Rhode Island Hospitals to Centurion to be completed pursuant to a 11 USC §363 private sale<br>• Estimated gross sale proceeds of ~$10-15 million to be paid to the estate to pay transaction expenses of Centurion sale, with residual amount after payment of such expenses distributed pursuant to the Recovery Waterfall<br>• MPT agrees to support and not object to the Centurion transaction on currently agreed terms (without material modification) free and clear of applicable liens, subject to application of resulting proceeds pursuant to the Recovery Waterfall as set forth herein |
| *Rhode Island Physician Company Operations* | • Sale of Rhode Island Physician Company ("RI PCo") assets to be completed pursuant to 11 USC §363 private sale with Astrana (currently ~$67 million of gross proceeds) or such other party (as necessary)<br>• Net sale proceeds distributed pursuant to the Recovery Waterfall<br>• MPT agrees to support and not object to the RI PCo transaction with Astrana on currently agreed terms (without material modification), free and clear of applicable liens, subject to application of resulting proceeds pursuant to the Recovery Waterfall as set forth herein |
| *Culver City Seismic Funding* | • Promptly following entry of the 9019 Order and to facilitate the completion of the seismic upgrade at Southern California Hospital at Culver City, MPT will (i) provide the necessary approvals in support of the related PACE financing and subject to revised milestones (including, without limitation, confirmation from HCAI that funding satisfies licensure requirements), (ii) pending receipt of such PACE financing proceeds, promptly make advances of $11.5 million (the "Seismic Funding Advances") in support of the Seismic upgrade work (which payments shall be made directly to contractors (or to the Debtors as reimbursement for prior payments to such contractors in connection with the seismic upgrade) and not used for any other purpose), the amount of which Seismic Funding Advances shall be treated as a funded amount under (and added to the principal amount of) the Junior DIP and which Seismic Funding Advances shall be repaid from the PACE funds promptly after receipt thereof (with such funds not being used for any other purpose until the Seismic Funding Advances (and any interest, fees and other amounts due with respect thereto) are repaid in full) or pursuant to the Recovery Waterfall (whichever is available sooner) and (iii) reasonably cooperate with the Debtors to complete the upgrade work |

5

MPT RESPONSE TO DEBTORS' PROPOSAL - FEBRUARY 11, 2025
CONFIDENTIAL; SUBJECT TO FRE 408 AND STATE LAW EQUIVALENTS

| Term | Summary |
|---|---|
| *Settlement* | • The Debtors and MPT shall memorialize the terms of this settlement as a Bankruptcy Rule 9019 settlement agreement, subject to Bankruptcy Court approval pursuant to an order consistent herewith and otherwise acceptable to each of the Debtors and MPT (the "9019 Order") to be entered within 30 days of the 9019 motion being filed.<br>• The 9019 Order to include findings regarding MPT lien and claim validity and mutual broad releases between the Debtors and their estates, on the one hand, and MPT, on the other hand, including broad releases for their respective existing and former Board members and Officers and advisors |
| *Plan of Reorganization* | • During the pursuit of the California Sale and Connecticut Sale transactions, the Debtors shall commence the process for confirmation of a Plan of Reorganization (the "POR")<br>• MPT shall be deemed to have an allowed claim secured by all the Debtors' assets in the amount equal to the amounts set forth in Tranche 2, Tranche 7 and Tranche 8 of the Recovery Waterfall<br>• The Debtors will use the proceeds from sale transactions to pay claims pursuant to the Recovery Waterfall (net of fees, costs and expenses of the applicable sale transaction) promptly following receipt thereof (and shall not use such proceeds for any other purpose); provided however the shall have the right to retain up to $15 million of sales proceeds for general liquidity purposes, as necessary if the JMB DIP Facility has been paid in full or JMB otherwise consents<br>• The Debtors will hold all net sale transaction and other proceeds allocated to the estate (including MPT's participation of its deficiency claim therein) for distribution pursuant to the POR consistent with the Recovery Waterfall (and shall not use such proceeds for any other purpose)<br>• Prior to consummation of the POR, the Debtors shall provide transition services to each of the applicable transaction counterparties pursuant to transition service agreements ("TSAs"); the POR shall provide for the formation of a special purpose vehicle ("SPV") that will be tasked with providing transition services to each of the applicable transaction counterparties pursuant to TSAs |

MPT RESPONSE TO DEBTORS' PROPOSAL - FEBRUARY 11, 2025
CONFIDENTIAL; SUBJECT TO FRE 408 AND STATE LAW EQUIVALENTS

| Term | Summary |
|---|---|
| *Estate & UCC Carve Out / MPT Recovery Waiver* | • MPT shall waive any recovery from the first $10 million of proceeds relating to estate causes of action (including Blue Cross / Blue Shield litigation claims) which shall be used to fund administrative claims and the fees of the UCC in excess of those included in the initial approved budget to the JMB DIP, if any, as set forth in the Recovery Waterfall (the "Estate & UCC Administrative Fund")<br><br>• MPT shall waive any recovery solely in respect of the claims set forth in Tranches 7 and 8 (other than MPT's participation of the Recovery Waterfall in the portion of Tranche 8 allocated to the Estate) from (i) estate causes of action, (ii) Blue Cross / Blue Shield litigation claims and (iii) Estate & UCC Administrative Fund |
| *Milestones* | • CA Sale Milestones:<br>   - Buyer outreach commenced by 2/18/25<br>   - Bid Procedures Motion by 2/18/25<br>   - Indication of Interest by 3/18/25<br>   - Stalking Horse Agreements by 5/15/25<br>   - Auction by 6/3/25<br>   - Sale Hearing / Order by 6/5/25<br>   - Regulatory filings submitted within ten business days of the entry of the Sale Order, but regulatory communications to commence immediately<br>• 9019 Order 30 days after Settlement Agreement |

Case 25-80002-sgj11    Doc 633-1    Filed 02/13/25    Entered 02/13/25 12:47:11    Desc
Exhibit A    Page 8 of 10

### Exhibit A – Recovery Waterfall[4]

| TRANCHE | PARTICIPATION |
|---|---|
| 1 | - eCapital DIP: ~$85 million (*on CA A/R and Current Assets only*)<br>- JMB DIP: $100 million plus all fees, interest and expenses |
| 2 | - MPT Junior DIP: Up to $25 million (*$13.5 million delayed-draw Junior DIP plus up to $11.5 million of Seismic Funding Advances (if not reimbursed by PACE Loans)*) plus ~[$84] million MPT Term Loan roll-up plus adequate protection accruals (other than the $5 million per month adequate protection accrual amount)[5] plus interest, fees and expenses |
| 3 | - MPT Adequate Protection Accrual: $5 million per month adequate protection accrual amount<br>- PBGC Secured Claims: ~$[24.3] million plus adequate protection with respect thereto as set forth in the DIP order (*paid only from proceeds of collateral on which PBGC has a senior priority lien*) |
| 4 | - CT Secured Claims: ~$[TBD][6] plus adequate protection with respect thereto as set forth in the stipulation accompanying the DIP order (*paid only from proceeds of collateral on which CT has a senior priority lien*) |
| 5 | - Reserved |
| 6 | - Estate & UCC Administrative Fund: $10 million of proceeds (*paid only from proceeds of estate causes of action (including Blue Cross / Blue Shield litigation claims)*) |
| 7 (SHARING TRANCHE) | - Shared between MPT and Estate: 90% to MPT and 10% to Estate until MPT Tranche 7 is paid in full<br>- Payment of MPT Priority 7 Claims consisting of:<br>  o PA Mortgage Loan: $155,222,518 in principal amount plus $35,460,455.72 in accrued and unpaid interest, fees and other amounts with respect thereto<br>  o Accrued and Unpaid Rent and Actual Out-of Pocket Unreimbursed Impositions: $80,072,892.38<br>  o Actual Out-of-Pocket Unreimbursed Expenditures: $88,674,295.82<br>  o Interest on the MPT amounts set forth in this Tranche 7 accruing at a rate equal to 11.50% per annum and other accruals in respect of the above items (less the $5 million per month adequate protection accrual amount)<br>  o MPT waives any participation in amounts allocated to the Estate |

---

[4] Net transaction proceeds available for payment in the Recovery Waterfall shall be calculated on a net basis after payment of transaction fees / expenses; claim amounts subject to ongoing verification

[5] Reduction in priority of $5 million per month adequate protection accrual amount from Tranche 2 to Tranche 3 is solely for purposes of interim approval of adequate protection in the DIP order.

[6] Subject to agreement between the Debtors and MPT

8

| | |
|---|---|
| **8**<br>*(SHARING TRANCHE)* | - Shared between MPT and Estate: 80% to MPT and 20% to Estate until MPT is paid in full<br>- MPT Priority 8 Claims consist of ~$971 million of Master Lease claims and accruals in respect thereof<br>- MPT deficiency claim participates (as a general unsecured claim) in the Estate's recovery allocation |
| **9** | - 100% to Estate |

Case 25-80002-sgj11    Doc 633-1    Filed 02/13/25    Entered 02/13/25 12:47:11    Desc
Exhibit A    Page 10 of 10