**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PAUL RUNDELL IN
SUPPORT OF THE DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE CLOSURE OF THE
PENNSYLVANIA HOSPITALS; AND (II) GRANTING RELATED RELIEF**

I, Paul Rundell, pursuant to section 1746 of title 28 of the United States Code hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am the Chief Restructuring Officer of Prospect Medical Holdings, Inc. (together with its debtor affiliates in the above captioned chapter 11 cases as debtors and debtors in possession, the "Debtors" and, the Debtors and their non-Debtor affiliates, collectively, the "Company" or "Prospect") and a Managing Director of Alvarez & Marsal North America, LLC ("Alvarez & Marsal"), a turnaround management consulting firm. Throughout my career, I have worked with numerous healthcare clients across the country, helping them navigate financial and operational challenges. I have served as the Chief Restructuring Officer of the Debtors since January 11, 2025.

2.  As Chief Restructuring Officer of the Debtors, I am familiar with and knowledgeable about the Debtors' day-to-day operations, business and financial affairs, and books and records, as well as the circumstances leading to the commencement of these Chapter 11 Cases

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

(as defined below). I submit this declaration (this "Declaration") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Approving the Closure of the Pennsylvania Hospitals and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith, which seeks approval to close the Pennsylvania Hospitals on an expedited basis.

3. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors, my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition, or from my discussions with the Debtors' advisors. If called upon to testify, I would and could testify competently to the facts set forth in this Declaration.

## CLOSURE OF THE PENNSYLVANIA HOSPITALS

**I.  Closure of the Pennsylvania Hospitals Is a Sound Exercise of the Debtors' Business Judgment and in the Best Interests of the Estates.**

4. The Pennsylvania Hospitals incur substantial ongoing losses:

|    | Hospital | City | State | Est. # of Employees[3] | Est. # of Current Patients[4] | FYTD EBITDA Through 01/31/25 |
|----|----------|------|-------|------------------------|-------------------------------|------------------------------|
| 1. | Crozer-Chester Medical Center | Chester | PA | 1,856 | 223 | $ (46,879,734) |
| 2. | Springfield Hospital | Springfield | PA | 62 | 0 | (2,662,519) |
| 3. | Taylor Hospital | Ridley Park | PA | 347 | 61 | (4,301,946) |
| 4. | Delaware County Memorial Hospital | Drexel Hill | PA | 0 | 0 | (2,155,677) |
| 5. | Other Facilities | - | PA | 994 | 0 | (2,198,412) |

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

[3]  Based on HR Report run as of 1/15/25. Employees were grouped by company code, not by physical location.

[4]  Total Census per 03/04/25 census email (which includes inpatient and obs in a bed).

2

| | | |
|---|---|---|
| **TOTAL FYTD EBITDA LOSS**[5] | $ | (58,198,288) |
| **TOTAL EBITDA LOSS (PRIOR 6 MONTHS)**[6] | $ | (91,850,760) |

5. The Debtors' DIP Budget, together with the funding available under the Receiver Agreement, only provide for funding of the Pennsylvania Hospitals' operations until March 14, 2025. In an effort to keep the Pennsylvania Hospitals open, the Debtors have engaged in good-faith discussions with various parties in connection with temporary funding or permanent acquisition of the Pennsylvania Hospitals, and explored whether such other parties would be able to successfully assume responsibility for operating such hospitals. These efforts, however, have unfortunately not been successful.

6. Given the mounting losses at the Pennsylvania Hospitals and the absence of an actionable alternative, the Debtors have made the difficult decision, following consultation with state regulators and other relevant parties in interest, that it is necessary, appropriate, and in the best interest of their estates for the Debtors to seek approval of a safe and expeditious process for closing the Pennsylvania Hospitals. Absent authority to close the Pennsylvania Hospitals, continuing to incur operating losses at the Pennsylvania Hospitals will only further deplete cash resources needed to maintain the Debtors' operations and imperil the Debtors' other hospitals. Therefore, it is imperative that the Debtors begin closing the Pennsylvania Hospitals on an expedited basis.

7. The Debtors understand that the Commonwealth intends to work cooperatively with the Debtors to effectuate a prompt and safe closure of the Pennsylvania Hospitals in accordance with the Closure Plan detailed in the Motion.

---

[5] For the period of 10/01/24 – 01/31/25.

[6] For the period of 08/01/24 – 01/31/25.

**II.    Closure of the Pennsylvania Hospitals Will Protect the Safety, Privacy, and Health of Patients.**

8. With the support of the Debtors' other officers, directors, and restructuring advisors, I have been actively engaged in the effort to implement and effectuate the objectives, timelines, and milestones set forth in the Closure Plan (as defined and described in the Motion), particularly from the perspective of patient health, privacy, and safety.

9. The Closure Plan described in the Motion was developed to protect patient health, privacy, and safety, and I believe it will do so. An important element of the Debtors' Closure Plan includes the establishment of an incident command structure (the "Incident Command Structure") that will oversee the safe and orderly closure of the Debtors' impacted facilities.

10. The Incident Command Structure includes (i) an incident commander (the "IC"), who is responsible for overall incident management and decision-making, (ii) a command staff comprising a (a) Public Information Officer ("PIO"), who manages communication with the media and the public; (b) Safety Officer, who ensures the safety and well-being of responders, patients, and fixed assets; and (c) Liaison Officer, who coordinates with external agencies and organizations, and (iii) the general staff, who manage the operations, logistics, and finances of the closure management process.

11. The proposed Closure Plan contemplates that clinical operations at the Pennsylvania Hospitals will cease on March 14, 2025. This timeline is adequate to ensure the safety of admitted patients in such hospitals. In fact, this timeline serve important functions to minimize patient health and safety risks because hospitals must be staffed adequately to care for patients properly, and I expect that staffing challenges will only increase over time. Therefore, it is imperative to complete the closure of clinical operations at these hospitals as soon as is practicable. At the same time, the time periods contemplated for closure of such hospitals' clinical

operations are sufficient to ensure that the Debtors are able to complete all processes needed to safely close such hospitals. Once clinical operations cease within the relevant time frame, other aspects of the Closure Plan, such as the disposition of fixed assets, medical records and supply inventory, are expected to be completed soon thereafter.

## **CONCLUSION**

12. Based on my experience and participation in the Debtors' day-to-day operations, it is apparent that closing the Pennsylvania Hospitals is critical to the successful prosecution of the Debtors' chapter 11 cases and the sale process. Moreover, the Debtors' proposed Closure Plan, including the timelines for ceasing clinical operations, is consistent with patient health and safety, does not pose imminent or identifiable harm to patients, and is in the best interests of Prospect's patients.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: March 6, 2025

*/s/ Paul Rundell*
Paul Rundell
Chief Restructuring Officer

5