**<u>Exhibit A</u>**

**Revised Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | Case No. 25- 80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**ORDER  (I)(A) APPROVING BIDDING
PROCEDURES AND THE FORM AND MANNER OF NOTICE
THEREOF, (B) AUTHORIZING THE SELECTION OF STALKING HORSE
BIDDER(S) AND APPROVING BID PROTECTIONS, (C) ESTABLISHING BID
DEADLINES AND SCHEDULING AUCTION(S) AND SALE HEARING(S), AND
(D) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES
AND APPROVING THE MANNER OF NOTICE THEREOF, (II)(A) AUTHORIZING
THE SALE OF THE ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES,
AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED
CONTRACTS, AND (III) GRANTING RELATED RELIEF**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

Upon the motion (the "Motion"),[2] of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for entry of an order (this "Order") (i)(a) approving certain bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") in connection with the Sale(s) of the Assets, and the form and manner of notice thereof substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice(s)"), (b) authorizing, but not directing, the Debtors to designate a Stalking Horse Bidder in accordance with the Bidding Procedures for any of the Sales and approving Bid Protections relating to the Stalking Horse Purchaser(s), (c) establishing the dates and deadlines relating to the Bid Deadlines, the Auctions, and the Sale Hearings, and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"), (ii)(a) authorizing and approving the Debtors' entry into an asset purchase agreement with the Successful Bidder(s) or Back-Up Bidder(s), as applicable; (b) authorizing the Sale(s) free and clear of all encumbrances, except for certain assumed liabilities, and (c) authorizing and approving the assumption and assignment of the Assumed Contracts in connection with the Sales, including proposed cure amounts; and (iii) granting related relief, each as more fully set forth in the Motion;  and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§

---

[2]    Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, the Court granting the Motion to the extent provided in this Order, including (a) approving the Bidding Procedures, attached hereto as **Exhibit 1**, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as **Exhibit 2**, (b) authorizing, but not directing, the Debtors to designate Stalking Horse Bidder(s) in accordance with the Bidding Procedures, and approving any Bid Protections related thereto, (c) scheduling an Auction(s) and Sale Hearing(s) in connection with the Sale(s), and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form of the Assumption and Assignment Notice, attached hereto as **Exhibit 3.**

C.    Good and sufficient notice of the relief sought in the Motion has been given, and no further notice is required except as set forth herein with respect to the designation of any

Stalking Horse Bidder(s), the Auction(s), and the Sale Hearing(s).  Subject to the immediately

preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested

in the Motion was afforded to all interested persons and entities.

D.      In accordance with Bankruptcy Rule 6004, the Debtors have properly filed and

noticed the Motion.  The issuance of this Order as of the date hereof, including approval of the

Bidding Procedures, is supported by evidence of compelling business justifications and other

circumstances demonstrating that the relief granted by this Order is necessary to maximize value

for the Debtors and their estates.

E.      The proposed Sale Notice, and the Assumption and Assignment Notice, as set forth

in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all

interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding

Procedures, and the Assumption and Assignment Procedures, and no other or further notice shall

be required for the Sale or the assumption and assignment of contracts.

F.      The process for filing the Stalking Horse Notice(s) and the granting of any Bid

Protections is appropriate and reasonably calculated to provide all interested parties with timely

and proper notice of: (a) the identification of the Stalking Horse Bidder (and if the Stalking Horse

Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor);

(b) the amount of the Stalking Horse Bid and what portion (if any) is cash; (c) whether the Stalking

Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse

Bid; (d) any proposed Bid Protections; and (e) the Stalking Horse Agreement.

G.      The Bidding Procedures are fair, reasonable, and appropriate under the

circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

H.    The Assumption and Assignment Procedures provided for herein and the Assumption and Assignment Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of the Assumed Contracts and related Cure Costs.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED to the extent provided herein.

2.    All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

**I.    Important Dates and Deadlines.**

3.    The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timelines for each of the Sales:

| *CA Sale Transaction Milestones* | |
| --- | --- |
| **Date and Time** (all in prevailing Central Time) | **Event or Deadline** |
| March 18, 2025 | Deadline for Indications of Interest |
| May 15, 2025 | Deadline for Stalking Horse Agreements |
| Late May 2025 | Bid Deadline |
| Not later than June 3, 2025 | Auction |
| TBD | Deadline to File Objection to Sale |
| June 5, 2025 at [•] (prevailing Central Time) | Sale Hearing |
| June 5, 2025 | Deadline for Entry of an Order Approving Sale |

| *CT Sale Transaction Milestones* | |
| --- | --- |
| **Date and Time** (all in prevailing Central Time) | **Event or Deadline** |
| March 18, 2025 | Deadline for Indications of Interest |
| Mid May 2025 | Deadline for Stalking Horse Agreements |
| Late May 2025 | Bid Deadline |
| Late May / Early June 2025 | Auction |

| TBD | Deadline to File Objection to Sale |
|---|---|
| June 5, 2025 at [•] (prevailing Central Time) | Sale Hearing |
| June 5, 2025 | Deadline for Entry of an Order Approving Sale |

4.      The Debtors reserve the right, and are authorized to, following consultation with the Consultation Parties and, with respect to the CA Sale Transaction Milestones, with the prior consent of MPT, modify the above timeline in accordance with the Bidding Procedures, including any Auction(s) that may take place.

**II.     Bidding Procedures.**

5.      The Bidding Procedures, attached as **<u>Exhibit 1</u>** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and bidding procedures relating to the Assets.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith.  The failure to specifically include or reference a particular provision of the Bidding Procedures shall not diminish or impair the effectiveness of such provision.

6.      The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.

7.      The deadline for submitting a Qualified Bid shall be (i) **<u>late May 2025</u>** (the "<u>CA Bid Deadline</u>"), and (ii) **<u>late May 2025</u>** (the "<u>CT Bid Deadline</u>" and, together with the CA Bid Deadline, the "<u>Bid Deadlines</u>"), in each case, unless extended by the Debtors in accordance with the Bidding Procedures.

8.      For the purposes of the Bidding Procedures: (a) any designated Stalking Horse Bidder will be considered a Qualified Bidder, and any Stalking Horse Agreement will be considered a Qualified Bid; and (b) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtor may consider a combination of bids for the Assets.

9.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction(s) and the terms and conditions of the Sale(s) of the Assets.

10.      The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids as soon as reasonably practicable following each Bid Deadline.

11.      If no Qualified Bid other than any Stalking Horse Bid is submitted on or before any of the Bid Deadlines above, the Debtors will not hold an Auction, will file a notice of cancellation of Auction as soon as reasonably practicable, and will request at the Sale Hearing(s) that this Court approve the applicable Stalking Horse Agreement.

12.      If at least two Qualified Bids are received by the Bid Deadlines with regard to any particular Asset or Assets, the Debtors will conduct the Auction.  The Auction will take place **on or before June 3, 2025**, at a time to be determined, at the offices of Sidley Austin, LLP, and, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, MPT, the U.S. Trustee, and a professional or representative of the State of Connecticut shall be permitted to attend and observe the Auction.  Professionals and representatives of any union shall be entitled to attend and observe any Auction at which an Asset where the union members work is being auctioned, so long as such union provides written notice of its intent to attend the Auction at least one (1) day prior to the Auction (or such lesser notice as may be reasonable and practicable), which written notice shall be sent to counsel for the Debtors via electronic mail.

13.      Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to

the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

14.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best Bid for the Assets or subsets thereof, and which Qualifying Bid is the Back-Up Bid (if any); *provided* that any Bid involving a real property lease from MPT may be rejected by MPT in its sole and absolute discretion.  The Debtors may also pursue a plan of reorganization for some or all of the Assets in accordance with the Bidding Procedures.

15.     Within one business day following the conclusion of an Auction, the Debtors shall file and serve a notice of Successful Bidder and Back-Up Bidder (if any) identifying the Asset or Assets being sold and including the asset purchase agreements relating to the same.

16.     Objections related to approval of the Sales, conduct at the Auction(s), the identity of the Successful Bidder(s), cure amounts, and adequate assurance of future performance by the Successful Bidder(s) must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Objection Notice Parties on or before **4:00 p.m. (prevailing Central Time)** on a date the Debtors shall advise by notice filed with the Court; *provided* that if the corresponding Bid Deadline or Auction are modified consistent with this Order, this date shall also be modified.  All rights of the CT Unions (as defined in the Bidding Procedures) are reserved with respect to the timelines or deadlines set forth in the Bidding Procedures.

17.     The Court shall convene the Sale Hearing on **June 5, 2025**, at such time as the Court may have available, or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale(s) to the Successful Bidder(s) or Back-Up

Bidder(s) and the entry of the Sale Order(s) (as defined in the Bidding Procedures). At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Back-Up Bidder(s). Notwithstanding the foregoing, approval of the assumption and assignment of any contract or leases to the Back-Up Bidder(s) shall not be considered or approved at the Sale Hearing, nor shall affected landlords or counterparties be required to object to assumption and assignment of any contract or lease by the Back-Up Bidder(s) prior to the Debtors' filing and service of a notice of intent to proceed with the Back-Up Bid. The Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court.

### III.    Designation of Stalking Horse Bidder

18.    The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties to (a) designate a Stalking Horse Bidder in connection with the CA Sale Transaction and/or the CT Sale Transaction (provided that the Debtors shall not so designate any bid including a real property lease with MPT unless the terms of such lease are acceptable to MPT in MPT's sole and absolute discretion), (b) enter into Stalking Horse Agreements with such Stalking Horse Bidders in accordance with the Bidding Procedures, and (c) agree to any breakup fee and/or expense reimbursement in accordance with the Bidding Procedures. Such breakup fee and/or expense reimbursement shall not in the aggregate exceed three percent (3%) of the transaction value (as such transaction value is determined in consultation with the Consultation Parties).

19.     Such breakup fee and/or expense reimbursement are approved as reasonable and necessary protections to ensure a Stalking Horse Bidder's commitment to the consummation of the applicable Sale.

20.     Absent further order of the Court, no person or entity, other than the Stalking Horse Bidder(s), if any (solely to the extent set forth in this Order), shall be entitled to any expense reimbursement or break-up fee or similar protection by the Debtors for submitting a Bid or in any way participating in the sale process for the Assets.

21.     In the event that the Debtors designate a Stalking Horse Bidder for any Sale(s) and enter into a Stalking Horse Agreement, the Debtors shall promptly file a notice (the "Stalking Horse Notice") which shall (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly-formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) specify any proposed Bid Protections; and (e) attach the Stalking Horse Agreement.  The Debtors' shall serve the Stalking Horse Notice by email, where available, or otherwise by first class mail on the Stalking Horse Notice Parties, with no further notice being required.

## IV.    Notice Procedures

22.     The form of Sale Notice is approved.

23.     As soon as practicable following the entry of this Order, the Debtors shall serve the Sale Notice by email, if available, or otherwise by first class mail upon the Sale Notice Parties; *provided* that, the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the

Bidding Procedures Order; *provided*, *further* that, the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned to the Debtors as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.

24.     The Debtors will also cause the Sale Notice(s) and the Bidding Procedures Order to be posted on the website of the Debtors' claims and noticing agent, Omni Agent Solutions, Inc. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

25.     Service of the Sale Notices as described above shall be good and sufficient notice of the Sales.

**V.     Assumption and Assignment Procedures**

26.     The Assumption and Assignment Procedures, as detailed in the Motion and incorporated herein by reference, are approved.

27.     The form of Assumption and Assignment Notice is approved.

28.     The Debtors will file the Assumption and Assignment Notice(s), substantially in the form attached as **Exhibit 3** to this Order, no later than (i) **April 7, 2025**, or such other date as the Debtors shall advise by notice filed with the Court, for the CA Sale Transaction, and (ii) **April 7, 2025**, or such other date as the Debtors shall advise by notice filed with the Court, for the CT Sale Transaction, each of which shall include a schedule of cure obligations (the "Cure Schedules") for the Assumed Contracts.     The Debtors shall serve such Assumption and

Assignment Notices on each of the non-Debtor parties listed therein, and their counsel of record, if known, by email, where available, or otherwise by first class mail at the notice address in the applicable lease or contract on the date the Assumption and Assignment Notice is filed with the Court. The Cure Schedule will include a description of each Assumed Contract potentially to be assumed and assigned by a potential buyer and the amount, if any, necessary to cure, or compensate the non-Debtor parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

29.    Objections to (a) the Cure Costs set forth in the Cure Schedules or (b) the assumption and assignment of any Assumed Contracts identified in the Cure Schedules must be in writing, state the basis of such objection with specificity, be filed with the Court, and be served on the Objection Notice Parties no later than 4:00 p.m. (prevailing Central Time) on the date that is fourteen (14) calendar days from date of the service of the applicable Cure Schedule.

30.    If, after the Assumption and Assignment Notice Deadline but prior to the Sale Hearing, additional executory contracts or unexpired leases of the Debtors are determined to be potential contracts to be assumed and assigned in connection with the applicable Sale, or the Debtors seek to modify any previously stated Cure Amount associated with an Assumed Contract, as soon as practicable thereafter, the Debtors shall file with the Court and serve on the applicable counterparties a supplemental or amended Assumption and Assignment Notice; *provided*, *however*, the Debtors may not add an executory contract or unexpired lease to the Assumption and Assignment Notice if such executory contract or unexpired lease has been previously rejected by the Debtors by order of the Court. Each supplemental or amended Assumption and Assignment Notice will include the same information with respect to listed Assumed Contracts as was included in the original Assumption and Assignment Notice, and such counterparties shall file any objection

to the Cure Amount or the assumption and assignment of the Assumed Contract by the date that is fourteen (14) calendar days from the date of service of the supplemental or amended Assumption and Assignment Notice.

31.     The Debtors shall provide adequate assurance information with respect to the Successful Bidder and the Back-Up Bidder to the Committee and the DIP Lenders, as applicable, and to those counterparties who request it from the Debtors (Sidley Austin, LLP, 2021 McKinney Avenue, Suite 2000 Dallas, TX 75201, Attn: William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com) and Sean M. Nuernberger (sean.nuernberger@sidley.com)), by no later than one (1) business day prior to the Sale Hearing(s).

32.     Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served an objection to the Cure Costs or the assumption and assignment of its Assumed Contract, such non-Debtor counterparty shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment of such Assumed Contract; and (c) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtor, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract.  In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed Contracts for all purposes in these chapter 11 cases

and will constitute a final determination of the Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

33.     If a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Costs (the "Disputed Cure Costs"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Costs, the Cure Costs shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by agreement among the parties or fixed by the Court with no less than seven (7) days' notice to the affected counterparties.  An adjourned dispute over Disputed Cure Costs may be resolved after the closing of a Sale in the Debtors' discretion.

34.     The inclusion of an Assumed Contract on the Assumption and Assignment Notice will not (a) obligate the Debtors to assume any contract listed thereon nor the Successful Bidder to take assignment of such Assumed Contract, or (b) constitute any admission or agreement of the Debtors that such Assumed Contract is an executory contract.

35.     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder of those Assumed Contracts that have been selected by the Successful Bidder to be assumed and assigned.  The Debtors and their estates reserve any and all rights with respect to any Assumed Contracts that are not ultimately selected.

36.     Prior to the closing of the Sale, the Debtors may amend the Assumption and Assignment Notice and may make a determination not to assume certain Assumed Contracts.  In the event the Debtors file an amended Assumption and Assignment Notice adding executory contracts or unexpired leases or modifying any Cure Costs on or after the Sale Hearing, the

counterparties to such Assumed Contracts shall have fourteen (14) days from the filing and service of any such amendment to object.

37.     For the avoidance of doubt and notwithstanding anything to the contrary herein, prior to regulatory approval of any sale, all parties' rights are reserved as to assumption and assignment of provider agreements, including any disputes over cure amounts.

38.     Cigna Health and Life Insurance Company and certain of its affiliates (collectively, "Cigna") and the Debtors are parties to various third-party payor contracts ("Cigna Payor Contracts") pursuant to which the Debtors, through the healthcare facilities they operate in California and Connecticut, provide covered healthcare services to eligible participants within the Cigna Provider Network.  Notwithstanding anything in this Order or any subsequent notices relating to the Sales to the contrary, the Debtors shall, no later than the later of (i) noon Central Time, two (2) business days prior to the applicable Sale hearing, or (ii) fifteen days prior to the applicable closing date, provide to Cigna, through its counsel, written notice of Debtors' irrevocable (subject to closing of the applicable Sale) decision as to whether or not the Debtors propose to assume and assign any or all of the Cigna Payor Contracts to the applicable Successful Bidder as part of the Sale.

39.     The Debtors and the Successful Bidder shall give UnitedHealthcare Insurance Company (including its parents, affiliates, and subsidiaries, "United") at least fifteen days written notice prior to the closing of the Sales of the Successful Bidder's irrevocable decision whether to have any of the contracts between United and the Debtors assumed and assigned to it in the Sale. Given the exigencies of the circumstances surrounding the bankruptcy case, including solicitation of the Assets and the need to proceed with the Sales as proposed in the Motion, United shall use good faith efforts to attempt to comply with any statutory or regulatory membership notification

requirements concerning the Sales, as applicable, based upon the timing of the closings of the Sales

and the limited notice afforded to United herein of the treatment of its contracts in such Sales.

**VI.    Additional Provisions.**

40.    Credit bids shall be permitted to the extent any such credit bid is permitted by the

Bankruptcy Code and applicable nonbankruptcy law.  Any Secured Party submitting a credit bid

shall still be required to satisfy all necessary regulatory requirements and approvals.

41.    Any substantial contribution claims by any bidder are deemed waived, to the extent

based on such bidder's submission of a bid in accordance with the Bidding Procedures.

42.    Notwithstanding anything to the contrary herein, the entry of this Order and the

relief granted hereby is without prejudice to the rights of any party to object or respond to any

proposed Sale or any other document or instrument contemplated by any of the foregoing, and all

such rights are reserved and preserved in all respects.

43.    Nothing contained herein or any action taken pursuant to relief requested is

intended to be or shall be construed as (a) an admission as to the validity of any claim against the

Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of,

basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a

promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in

interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or

granting of approval for assumption of any agreement, contract, program, policy, or lease under

section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability,

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the

Court's order is not intended to be and should not be construed as an admission to the validity of

any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

44.    The continued effectiveness of this Order is subject to and contingent upon the Court's entry of a final order approving the Proposed Settlement.  MPT's rights to contest the Sales are hereby reserved in all respects to the extent such final order is not timely entered.

45.    Notice of the Motion, as provided therein, shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Complex Case Procedures as satisfied by such notice.

46.    In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of the Bidding Procedures shall control and govern in all respects.

47.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

48.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**# # # END OF ORDER # # #**

Order submitted by:

SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:        (214) 981-3300
Facsimile:        (214) 981-3400
Email:             tom.califano@sidley.com
                   rpatel@sidley.com

*and*

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:        (212) 839-5300
Facsimile:        (212) 839-5599
Email:             wcurtin@sidley.com
                   pventer@sidley.com
                   anne.wallice@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## **Exhibit 1**

**Bidding Procedures**

## BIDDING PROCEDURES

Beginning on January 11, 2025, Prospect Medical Holdings, Inc. ("PMH") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2025, the Court entered the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling Auction(s) and Sale Hearing(s), (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; (II)(A) Authorizing the Sale of the Assets Free and Clear of all Encumbrances, and (B) Approving the Assumption and Assignment of the Assumed Contracts; and (III) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[1] approving, among other things, the bidding procedures (the "Bidding Procedures") to be used in connection with one or more sales of all or substantially all of the Debtors' assets in California (such assets, "CA Assets" and such sale, the "CA Sale Transaction") and the Debtors' assets in Connecticut (such assets, "CT Assets," together with the CA Assets, the "Assets," and such sale, the "CT Sale Transaction" and, together with the CA Sale Transaction, the "Sales").[2]

The Bidding Procedures Order also authorized, among other things, the right of the Debtors to, at any time prior to an Auction and in consultation with the Consultation Parties, designate a stalking horse bidder for the applicable Assets (the "Stalking Horse Bidder(s)"), whose Qualified Bid (as defined below) shall serve as the stalking horse bid (the "Stalking Horse Bid") for such Assets, subject to higher and better bids in accordance with the terms and conditions of these Bidding Procedures. The Debtors may also consider competing bids (each, a "Chapter 11 Plan Bid") in the form of a chapter 11 plan of reorganization (a "Chapter 11 Plan Transaction").

## I. ASSETS TO BE SOLD

The Debtors are marketing all of the operating Assets as going concerns including, *inter alia*, inventory, receivables, intellectual property, equipment and real estate in California and Connecticut.

The Debtors intend to accept going concern bids on a subset of the Assets available, as well as on the whole business. Bidders will be asked to provide in their Bid both (a) the Asset(s) being bid on, and (b) the portion of the Bid consideration attributable to each of the assets listed.

The sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the Court pursuant to sections 105, 363, and 365 of title 11 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

[2]    In connection with the Bidding Procedures, Potential Bidders (as defined below) may also submit a bid to make an investment in connection with a chapter 11 plan.

Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9007-1 and 9014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas (the "Local Bankruptcy Rules")

## II.    KEY DATES

The Bidding Procedures are designed to provide interested parties with the opportunity to qualify for, and participate in one or more potential auctions (each, an "Auction") to be conducted by the Debtors and to submit competing bids (each, a "Bid") for some or all of the Assets.  In accordance with the Bidding Procedures, the Debtors will (a) coordinate with each Potential Bidder (as defined below) regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders, in consultation with the Consultation Parties, (c) negotiate, in consultation with the Consultation Parties, any Bid made, and (d) make such other determinations as are provided for in these Bidding Procedures (collectively, the "Bidding Process").

The key dates for the Bidding Process are as follows:

| CA Sale Transaction Milestones | |
| --- | --- |
| **Date and Time**<br>(all in prevailing Central Time) | **Event or Deadline** |
| March 18, 2025 | Deadline for Indications of Interest |
| May 15, 2025 | Deadline for Stalking Horse Agreements |
| Late May 2025 | Bid Deadline |
| Not later than June 3, 2025 | Auction |
| TBD[3] | Deadline to File Objection to Sale |
| June 5, 2025 at [•] (prevailing Central Time) | Sale Hearing |
| June 5, 2025 | Deadline for Entry of an Order Approving Sale |

| CT Sale Transaction Milestones | |
| --- | --- |
| **Date and Time**<br>(all in prevailing Central Time) | **Event or Deadline** |
| March 18, 2025 | Deadline for Indications of Interest |
| Mid May 2025 | Deadline for Stalking Horse Agreements |
| Late May 2025 | Bid Deadline |
| Late May / Early June 2025 | Auction |
| TBD[4] | Deadline to File Objection to Sale |
| June 5, 2025 at [•] (prevailing Central Time) | Sale Hearing |
| June 5, 2025 | Deadline for Entry of an Order Approving Sale |

The Debtors, in consultation with the Consultation Parties (and (i) with respect to the CT Sale Transaction Milestones, the State of Connecticut,[5] and (ii) with respect to the CA Sale Transaction Milestones, with the prior consent of MPT) may extend any of the deadlines in these

---

[3]    This date shall be set no earlier than the day following the Auction for the CA Assets.

[4]    This date shall be set no earlier than the day following the Auction for the CT Assets.

[5]    For the avoidance of doubt, the information or documentation provided to the State of Connecticut by the Debtors relating to the CT Assets pursuant to these Bidding Procedures shall be limited to the identity of Potential Bidders, the CT Assets being bid on, and any unique regulatory conditions.

Bidding Procedures, including any Auction(s) that may take place, subject to the terms of an order approving these Bidding Procedures Order.

## III.    DESIGNATION OF STALKING HORSE BIDDER

The Debtors may, at any time prior to the Auction(s), pursuant to these Bidding Procedures in consultation with the Consultation Parties, designate a Stalking Horse Bidder for any of the Sales (provided that the Debtors shall not so designate any bid including a real property lease with MPT unless the terms of such lease are acceptable to MPT in MPT's sole and absolute discretion).    Any asset purchase agreement, investment agreement, or similar agreement memorializing the proposed transaction set forth in any Stalking Horse Bid (a "Stalking Horse Agreement") will be binding on the Stalking Horse Bidder(s) and set the floor for all Qualified Bids, subject to higher or otherwise better Qualified Bids.  If the Stalking Horse Bid is not selected as the Successful Bid, a Stalking Horse Bidder is obligated to serve as the Back-Up Bidder, if its bid represents (in the view of the Debtors in consultation with the Consultation Parties) the second-highest or otherwise second-best bid after the applicable Auction.  Notwithstanding any of the foregoing, the Debtors are not obligated to select any Stalking Horse Bidders and may proceed to the Auction(s) without one.

In the event that the Debtors, in consultation with the Consultation Parties, designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement for any of the Assets, the Debtors shall promptly file a notice designating the Stalking Horse Bidder and setting forth: (a) an identification of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the amount of the Stalking Horse Bid and what portion (if any) is cash; (c) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) any proposed Bid Protections;[6] (e) the Stalking Horse Agreement, including all exhibits, schedules or attachments thereto; and (f) the deadline to object to any of the proposed Bid Protections described therein.

The Stalking Horse Bidder shall provide adequate assurance information to the Debtors, as contemplated in Section X.c herein, in connection with their Stalking Horse Bid.  If the Stalking Horse Bidder is named the Successful Bidder or the Back-Up Bidder, the Debtors shall provide such adequate assurance information to the Consultation Parties and to those counterparties who request it from the Debtors (Attn: William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com), and Sean M. Nuernberger (sean.nuernberger@sidley.com)) by no later than one (1) business day prior to the Sale Hearing.

In exchange for serving as the Stalking Horse Bidder, in each case, the Debtors may offer such Stalking Horse Bidder certain bid protections, including the reimbursement of reasonable and documented out-of-pocket costs and expenses incurred in connection with the Sale(s) and not to exceed a specified amount (the "Expense Reimbursement") and (b) a breakup fee (the "Break-Up Fee" and together with the Expense Reimbursement, the "Bid Protections").  The Bid Protections

---

[6]    The Debtors shall inform the Committee (as defined below) of any Bid Protections prior to filing the notice.

shall not in the aggregate exceed three percent (3%) of the transaction value (as such transaction value is determined in consultation with the Consultation Parties).

## IV. POTENTIAL BID REQUIREMENTS

To participate in the Bidding Process or otherwise be considered for any purpose hereunder, a person or entity interested in purchasing the Assets (other than MPT) must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

   a.   an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (a "Confidentiality Agreement");

   b.   sufficient information, as reasonably determined by the Debtors (in consultation with the Consultation Parties) that the Potential Bidder has or may reasonably obtain the financial capacity to close the Sale(s) (including current audited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), and also the financial capacity to comply with applicable state regulations and standard of care requirements, the adequacy of which must both be acceptable to the Debtors;

   c.   sufficient information, as reasonably determined by the Debtors (in consultation with the Consultation Parties), to determine the necessary regulatory approvals and the Potential Bidder's progress in obtaining those approvals and likelihood of success in doing so, and that, without limitation on the foregoing, the Potential Bidder has the ability to receive any and all necessary governmental, licensing, regulatory, and other approvals required;

   d.   identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, including details related to the Potential Bidder's beneficial owners, ultimate beneficial owners, and controlling entities and whether the Potential Bidder is an insider or affiliate of any of the Debtors, and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated Sale; and description of the nature and extent of any due diligence the Potential Bidder wishes to conduct; and

   e.   a statement that the Potential Bidder intends to access the Data Room (as defined below) for a purpose consistent with the Bidding Procedures.

Only (i) those parties that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors and their advisors, in consultation with the Consultation Parties, and (ii) MPT (each, a "Potential Bidder") may submit bids to purchase the Assets. The Debtors shall share the information in Article IV(c)-(d) relating to the CT Assets with the State of Connecticut.

## V.      DUE DILIGENCE

The Debtors have designated Houlihan Lokey Capital Inc. ("Houlihan") to coordinate the response to all reasonable requests for additional information and due diligence with respect to the Assets and the Sale(s).   Contact information for Houlihan is as follows: Andrew Turnbull (ATurnbull@HL.com),   Daniel   Martin   (DMartin@HL.com)   and   Grant   Hubbell (grantland.hubbell@hl.com).   Houlihan will serve as the lead point of contact for all potential purchases interested in the Sale(s), and any such purchaser will need to contact Houlihan to ensure participation in the marketing and sale process described herein.  Further, Houlihan will coordinate and attend all negotiations specifically relating to leasing the real property from Medical Properties Trust, Inc. (together with its affiliates, "MPT") in connection with the Sale(s).

Only Potential Bidders and the Consultation Parties shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "Data Room") and to additional non-public information regarding the Debtors as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable, available, and appropriate under the circumstances.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as reasonably requested by such Potential Bidder in writing, as soon as reasonably practicable after such request.  The Debtors may designate one or more representatives to coordinate all reasonable requests for additional information and due diligence from Potential Bidders.  Potential Bidders will not, initiate or engage in discussions in respect of matters relating to the Debtors or a potential Sale with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors; *provided* that, upon the request of any Potential Bidder or by MPT, Houlihan shall arrange and participate in discussions between MPT and any Potential Bidder (other than MPT); *provided further* that MPT may initiate and/or have such direct contact or discussions with any of the Potential Bidders (other than MPT) specified on a redacted exhibit delivered by MPT to the Debtors so long as Houlihan is included in such contact or discussions (or otherwise declines to be included in such contact/discussions); *provided further* that these Bidding Procedures will not prevent Potential Bidders from discussing regulatory or other governmental approvals (and providing information requested in connection therewith) with the applicable regulatory or other governmental authorities regardless of whether such regulatory or other governmental authorities are contract counterparties of the Debtors.  In the event that a Potential Bidder (other than MPT) initiates discussions or contacts MPT regarding the Sale(s) or operations in connection with the Assets, MPT shall inform Houlihan and refer such buyer to coordinate discussions through Houlihan.

The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information, other than the Successful Bidder and the Back-Up Bidder as contemplated by the terms of their respective Definitive Documentation.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential Sale to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement (an "Authorized Representative").  Neither the Debtors nor any of their representatives shall furnish any information of any kind whatsoever relating to the Debtors, the Assets or any proposed Sale to any person or entity who is

not a Potential Bidder or such Potential Bidder's applicable Authorized Representative, other than with respect to the Consultation Parties as set forth herein.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that, the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate the Sale. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

The Debtors make no representation or warranty as to the information provided through this due diligence process or otherwise, including the documents in the Data Room, except as set forth in any executed definitive documents for the Sale(s). Each Potential Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making a bid; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or such Potential Bidder's Confidentiality Agreement.

Each Potential Bidder (including any Qualified Bidder (as defined below)) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and the Consultation Parties and their respective advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Potential Bidder (including any Qualified Bidder) or that a bid made by such bidder is not a Qualified Bid. Notwithstanding the foregoing, this paragraph shall not apply to MPT in its capacity as a Potential Bidder.

## VI.    NO COMMUNICATION AMONG BIDDERS

There shall be no communications regarding potential Bids, a potential Sale(s), or another potential transaction between or among any bidders, including any Stalking Horse Bidder(s), unless the Debtors have previously authorized such communication in writing (email from the Debtors' counsel being sufficient); *provided*, that MPT shall be permitted to communicate with Potential Bidders in the manner provided in Section V of these Bidding Procedures. The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to disqualify any bidder that the Debtors believe, in their reasonable judgment, has communicated with another bidder in violation of these Bidding Procedures.

A Potential Bidder may, with the Debtors' prior consent, not to be unreasonably withheld or delayed, discuss the aspects of a bid pertaining to employees and employee obligations with a

collective bargaining representative of an Asset it seeks to acquire, including, in the case of the CT Assets, with the American Federation of Teachers and AFT Connecticut (on behalf of Locals 5055, 5121, 5144, 5153 and 5154) ("AFT"), and Connecticut Health Care Associates District 1199 ("CHCA" and, together with AFT, the "CT Unions").

## VII.    INDICATIONS OF INTEREST

The Debtors reserve the right to require Potential Bidders to submit written indications of interest prior to the applicable Bid Deadline specifying, among other things, the Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party; *provided* that (i) the Consultation Parties (and, solely with respect to indications of interest regarding all or a portion of the CT Assets, the State of Connecticut) shall have the right to review any indications of interest received by the Debtors, and (ii) any indications of interest received by the Debtors shall be provided promptly to the Consultation Parties (and, solely with respect to indications of interest regarding all or a portion of the CT Assets, the State of Connecticut).[7]  If a Potential Bidder fails to comply with any such request by the Debtors, the Debtors may deny such Potential Bidder further diligence access or deny such Potential Bidder further participation in the Auction process.  The Debtors also reserve the right, in consultation with the Consultation Parties, to exclude any Potential Bidder (other than MPT) (prior to its submission of a Qualified Bid) from continuing in the Auction process if the Debtors determine that the consideration proposed to be paid by such Potential Bidder is insufficient.

## VIII.    SUBMISSIONS TO THE DEBTORS; CONSULTATION PARTIES

All submissions to the Debtors required or permitted to be made under the Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

  a.    Debtors' Counsel:  Sidley Austin, LLP, 2021 McKinney Avenue, Suite 2000 Dallas, TX 75201, Attn: William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com), and Sean M. Nuernberger (sean.nuernberger@sidley.com); and

  b.    Debtors' Investment Banker: Houlihan Lokey, Inc., 111 S. Wacker Drive, 38th Fl., Chicago, IL  60606, Attn: Andrew Turnbull (ATurnbull@hl.com), Daniel Martin (DMartin@hl.com) and Grant Hubbell (grantland.hubbell@hl.com).

 "Consultation Parties," as used in these Bidding Procedures shall mean (a) the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee") and such Committee's counsel, (b) MPT, including (without limitation) in its capacity as Junior DIP Lender, and its counsel, (c) JMB Capital Partners Lending, LLC, in its capacity as DIP Lender, and its counsel, and (d) eCapital Healthcare Corp., in its capacity as DIP ABL Lender, and its counsel; *provided* that, notwithstanding anything to the contrary contained in the Bidding

---

[7]    The information or documentation provided to the State of Connecticut by the Debtors relating to the CT Assets pursuant to these Bidding Procedures shall be limited to the identity of Potential Bidders, the CT Assets being bid on, and any unique regulatory conditions.

Procedures Order or the Bidding Procedures, the Debtors shall not consult with a Consultation Party (or its advisors) unless and until such Consultation Party, or in the case of the Committee, any Committee member through Committee counsel, confirms in writing to the Debtors (in form and substance reasonably acceptable to the Debtors) that they will not be acting as a Potential Bidder for the Assets.

In the event that any Consultation Party or an affiliate of the foregoing submits a bid that is a Qualified Bid (as defined below), such bidding party or its affiliates shall no longer be considered a Consultation Party under these Bidding Procedures until such time such party withdraws its Bid; *provided* that, such bidding party will have the same rights as any other Qualified Bidder set forth herein.

## IX.    BID DEADLINES

Bids (including all requirements to be considered a Qualified Bid (as defined below)), as they relate to the CA Sale Transaction, must be transmitted via email (in PDF or similar format) to the Debtors and their advisors specified herein so as to be actually received no later than **late May 2025** (the "CA Bid Deadline").

Bids (including all requirements to be considered a Qualified Bid (as defined below)), as they relate to the CT Sale Transaction, must be transmitted via email (in PDF or similar format) to the Debtors and their advisors specified herein so as to be actually received no later than **late May 2025** (the "CT Bid Deadline" and, together with the CA Bid Deadline, the "Bid Deadlines").

The Debtors may extend the Bid Deadlines for any reason whatsoever in consultation with the Consultation Parties and (i) with respect to any extension of the CT Bid Deadline, the State of Connecticut, and (ii) with respect to any extension of the CA Bid Deadline, the prior consent of MPT.

## X.    BID REQUIREMENTS

To participate in the process and if applicable an Auction(s), a Potential Bidder must deliver to the Debtors and their advisors an irrevocable offer for the purchase of the Assets that must meet the following criteria (collectively, the "Bid Requirements"):

a.    Each Bid must be accompanied by a letter or email:

(i)    fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder;

(ii)    setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price;

(iii)    stating with specificity the Assets (including any specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including any applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(iv)    setting forth a list of the regulatory and third-party approvals necessary to close the transaction, and the status of the Potential Bidder's application(s) to obtain such regulatory or third-party approvals (and identifying whether any such approvals have already been obtained and providing evidence thereof);

(v)    allocating the portion of the Bid consideration attributable to the Assets and the category of Assets being bid on, to the extent multiple Asset categories are contained in the Bid;

(vi)    providing the terms, if any, of any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, but in no event to exceed three percent (3%) of the transaction value; *provided* that, in the event a Stalking Horse Bidder is designated, all bids must (a) not be subject to any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets, and (b) provide consideration to the Debtors of at least the sum of (1) the Stalking Horse Bid, (2) the amount of any Bid Protections, and (3) a reasonable minimum overbid amount equal to or greater than $1 million or such other amount determined by the Debtors ("Incremental Overbid") over the Starting Bid;

(vii)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable if selected as the Successful Bidder and for at least 60 days after the entry of the Sale Order if selected as the Back-up Bidder;

(viii)    containing a commitment to (A) close the contemplated transaction(s) by a specified Closing Date (as defined below) for the applicable Sale, and (B) assume accrued and unpaid employee obligations relating to the acquired Assets as of the Closing Date, including accrued and unpaid wages, paid time off and health care related benefits but excluding claims relating to defined benefit pension plans, and postpetition trade obligations applicable to the acquired Assets;

(ix)    indicating whether the Potential Bidder intends to hire any or all of the non-management employees of each acquired Asset and whether it seeks not to assume each collective bargaining agreement ("CBA") covering employees of each acquired Asset.  Each Bid must also indicate the Potential Bidder's treatment of health, welfare and retirement plans covering the employees of acquired Assets;

9

      (x)     providing that, other than with respect to any regulatory approvals, such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

      (xi)    containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets, has relied solely upon its own independent review and investigation and/or inspection of any documents and any other information in making the Bid;

      (xii)   other than with respect to any Bid by MPT, providing that the Potential Bidder agrees to serve as a backup bidder (the "Back-Up Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined below) (the "Back-Up Bid") with respect to the relevant Assets through at least 60 days after the entry of the Sale Order;[8] and

b.     Other than for any Chapter 11 Plan Bid, be accompanied by (i) an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (after consulting with the Consultation Parties) (a "Qualified Bid Purchase Agreement"), and (ii) a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the applicable form purchase agreement, and the applicable schedules and exhibits. Each Chapter 11 Plan Bid must be accompanied by a duly executed, non-contingent investment agreement, signed by an authorized representative of such bidder, pursuant to which the bidder proposes to effectuate the Chapter 11 Plan Transaction, in the form of a recapitalization transaction effectuated pursuant to a chapter 11 plan of reorganization, and must provide for a fully-committed investment of capital;

c.     be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), which may, but shall not be required to, include (i) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale(s); (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to comply with applicable state regulations and standard of care requirements; (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid; (iv) evidence demonstrating that the Potential Bidder can demonstrate adequate assurance of its future performance under assumed contracts and leases, which may include (a) audited and unaudited financial statements, including all supplements or amendments thereto; (b) tax returns; (c) bank account statements; (d) a contact person for the Potential Bidder; and (e) information necessary for contract counterparties to assess whether the Potential Bidder will be able to adequately perform under any provider agreements sought to be transferred as part of any Bid

---

[8]   No Back-Up Bidder is exempt from satisfying all necessary regulatory requirements and approvals.

and operate the healthcare facilities related thereto; and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  Should the prospective bidder be a newly formed entity (a "Newco"), written evidence of adequate assurance of future performance should also include when such Newco was formed, how it will be financed, together with evidence of any financial commitments, and identify what credit enhancements, if any, will be available to guarantee the obligations under the leases, and the operational experience of the proposed management.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to (i) affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale; and (ii) the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

d.      be accompanied by (i) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of seven percent (7%) of the consideration of the Bid, inclusive of cash consideration and lease value, which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtor (a "Good Faith Deposit"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has or will have the available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (*provided*, *however*, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors).  The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in its sole discretion, including by requiring Qualified Bidders to provide a Good Faith Deposit for any non-cash consideration based on such Qualified Bidder's estimate of the value of any such non-cash consideration.  Notwithstanding the foregoing or anything contained herein to the contrary, a Good Faith Deposit shall not be required in connection with a credit bid without any cash consideration, except to the extent necessary to satisfy the Bid Protections of any Stalking Horse Bidder(s).

e.      To the extent that the Bid includes a real property lease with MPT, the terms of such lease are acceptable to MPT in MPT's sole and absolute discretion.

Promptly following the receipt of the Bid Requirements, the Debtors will share each document with the Consultation Parties, that have not submitted a Bid, and their respective advisors.  The Debtors will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder."  The Debtors will notify the Qualified Bidders whether the bids submitted constitute Qualified Bids, which will enable such

Qualified Bidders to participate in the applicable Auction(s). Any Stalking Horse Bid or Bid by MPT, as applicable, will be deemed a Qualified Bid and the Stalking Horse Bidder or MPT, as applicable, will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.

By submitting a Bid, each bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from (a) submitting a Bid after conclusion of the Auction (if any) and (b) seeking to reopen the Auction (if any) once closed. The submission of a Bid shall constitute a binding and irrevocable offer (a) for the Successful Bidder (as defined below), until consummation of the Sale, (b) for the Back-Up Bidder, if any, as provided herein, and (c) for any bidder other than the Successful Bidder and Back-Up Bidder, until three (3) business days after entry of an order approving the Successful Bid and (if applicable) the Back-Up Bid for the applicable Assets, such order to be in form and substance acceptable to the DIP Lender (such order, a "Sale Order"), and each Bid must include a written acknowledgement and representation to such effect.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in its reasonable business judgment (in consultation with the Consultation Parties), including, among others, (a) the amount and nature of the consideration, including any obligations to be assumed and real property leases agreed upon; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the number, type, and nature of any changes to the form of asset purchase agreement, as applicable, requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtor of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof, including that the Qualified Bidder has provided a list of the regulatory and third-party approvals necessary to close the transaction, and the status of the Qualified Bidder's application to obtain any regulatory or third-party approvals (and identifying whether such approvals have already been obtained and providing evidence thereof); (f) the net benefit to the Debtors' estates (including after taking account of the Bid Protections); (g) the tax consequences of such Qualified Bid; (h) the impact on non-insider employees, collective bargaining agreements and pension plans, and the proposed treatment of employee obligations owing to such non-insider employees and plans; (i) the financial capacity to comply with applicable state regulations and standard of care requirements; and (j) any other factors that the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid (other than a Bid by MPT)[9] if such Bid, among other things:

    a.    requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

---

[9]    MPT is not exempt from satisfying all necessary regulatory requirements and approvals.

b.      is not received by the applicable Bid Deadline;

c.      does not comport with the Bid Requirements;

d.      is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

e.      does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estate or the Auction(s).

Any Bid involving a real property lease from MPT may be rejected by MPT if the terms of such lease are not acceptable to MPT in its sole and absolute discretion.

Any Bid rejected pursuant to the foregoing two paragraphs shall not be deemed to be a Qualified Bid; *provided* that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than fourteen (14) business days after the Bid Deadline.

Notwithstanding anything herein to the contrary, the Debtors also reserve the right to work with (a) Potential Bidders to aggregate two or more Bids into a single consolidated Bid prior to the applicable Bid Deadline and (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any). The Debtors may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder and their Bid a single Qualified Bid for purposes of the Auction, if any).

## XI.    NO QUALIFIED BIDS

If only one Qualified Bid is received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the applicable Auction(s), and may decide, in the Debtors' reasonable business judgment, to designate such bid as the Successful Bid for the applicable Assets, and pursue entry of a Sale Order approving the Sale of such Assets to the Bidder pursuant to an agreed-upon asset purchase agreement.

## XII.    AUCTION(S)

If the Debtors receive two or more Qualified Bids with respect to the same Assets by the applicable Bid Deadline, the Debtors will conduct an Auction to determine the Successful Bidder(s) (as defined below) and Back-Up Bidder, as applicable for such applicable Assets. In such event, the Debtors shall, in consultation with the Consultation Parties, evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for purposes of constituting the opening bid at the Auction for the relevant Assets (the "Starting Bid"). The determination of which Qualified

Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Bid (as defined below) shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deems relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed and real property leases; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the number, type, and nature of any changes to the form of asset purchase agreement, as applicable, requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtor of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals and meeting any applicable standard of care requirements and the Qualified Bidder's status of obtaining such necessary regulatory approvals) and the timing thereof; (f) the net benefit to the Debtors' estates (including after taking account of the Bid Protections); (g) the tax consequences of such Qualified Bid; (h) the impact on non-insider employees, collective bargaining agreements and pension plans, and the proposed treatment of employee obligations owing to such non-insider employees and plans; and (i) any other factors that the Debtors may reasonably deem relevant.  Prior to the start of the Auction, the Debtors shall notify all Qualified Bidders, including the Stalking Horse Bidder, if any, and each of MPT and the Consultation Parties, as to which Qualified Bid is the Starting Bid for the Auction with respect to each Asset Sale.

If an Auction is held, such Auction shall take place at the offices of Sidley Austin, LLP. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, MPT, the U.S. Trustee, and a professional or representative of the State of Connecticut shall be permitted to attend and observe the Auction.  Professionals and representatives of any union shall be entitled to attend and observe any Auction at which an Asset where the union members work is being auctioned, so long as union provides written notice of its intent to attend the Auction at least one (1) day prior to the Auction (or such lesser notice as may be reasonable and practicable), which written notice shall be sent to counsel for the Debtors via electronic mail.  Prior to any Auction for an Asset which employs members of a labor union, the Debtors shall share with such union's counsel (including in the case of a Starting Bid for the CT Assets, with counsel to the CT Unions) any portion of the applicable Starting Bid which specifies the treatment of employees or CBAs, subject to the terms of any reasonable confidentiality agreement.  Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

The Auction shall be conducted in a timely fashion according to the procedures set forth below (the "Auction Procedures").

Auction Procedures

a.    **The Debtors Shall Conduct the Auction**.  The Debtors, with the assistance of their advisors, shall direct and preside over any Auction.  At the commencement of the Auction, the Debtors, (1) may announce procedural and related rules governing

14

the Auction, including time periods available to all Qualified Bidders to submit any Overbids (as defined below); and (2) shall describe the terms of the Starting Bid. Only incremental Bids that comply with the terms set forth in Section XII.b of these Bidding Procedures shall be considered "Overbids." Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders in attendance at the Auction.

The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Starting Bid, all Overbids, and the Successful Bid (as defined below) and Back-Up Bid, as applicable.

Each Qualified Bidder who wishes to bid at the Auction shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Except as otherwise permitted by the Debtors, only Qualified Bidders shall be entitled to bid at the Auction.

The Debtors, in consultation with the Consultation Parties, have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale(s) contemplated by their proposal, to ensure compliance with applicable state regulations and standard of care requirements, and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction(s).

The Debtors, after consultation with the Consultation Parties, may announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify the Bidding Procedures.

b. **Terms of Overbids**. Each Overbid must comply with the following terms:

1. Minimum Overbid Increment. At the commencement of the initial solicitation of Overbids, the Debtors shall announce the minimum increment by which any Overbid must exceed the applicable Starting Bid; *provided* that, the initial increment must be at least $1,000,000 for all-Asset bids and $250,000 for bids on individual hospital assets. For each subsequent bid (a "Subsequent Bid"), the minimum Overbid must also be at least $500,000 or $250,000, as applicable. The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction.

2. Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline by which time any Overbids must be submitted to the Debtors (an "Overbid Round Deadline"); *provided* that the Debtors, in their reasonable business judgment may extend any Overbid Round Deadline.

3.   <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment but shall otherwise comply with the terms of the Bidding Procedures.

c.   **Consideration of Overbids**.  The Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent financing commitments to consummate the proposed Sale at the prevailing Overbid amount.

d.   **Closing the Auction**.  The Auction shall continue until there is only one or more Qualified Bids that the Debtors determine, in their business judgment and in consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid for the respective Asset Sale.  Such Qualified Bid shall be designated the "<u>Successful Bid</u>" for such Sale and the Qualified Bidder submitting such Qualified Bid shall be designated the "<u>Successful Bidder</u>" with respect to such Sale. At such time the Debtors will close the Auction and designate, in their business judgment and in consultation with the Consultation Parties, the Back-Up Bid and Back-Up Bidder in accordance with the Bidding Procedures.  The Debtors' designation of a Qualified Bid as a Successful Bid (or Back-Up Bid, as applicable) shall be subject to and conditioned on the Court's approval of such Successful Bid (or Back-Up Bid, as applicable) and the Sale contemplated thereby.  As soon as reasonably practicable after the designation of a Successful Bid (or Back-Up Bid, as applicable), the Debtors shall finalize definitive documentation to implement the terms of such Successful Bid (or Back-Up Bid, as applicable) and cause such definitive documentation to be filed with the Court.

e.   **Rejection of Bids.**  The Debtors in their reasonable business judgment may (in consultation with the Consultation Parties) reject, at any time before entry of an order of the Court approving a Successful Bid (or Back-Up Bid, as applicable), any Bid that the Debtors determine is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or the Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.  Any Bid involving a real property lease from MPT may be rejected by MPT in its sole and absolute discretion and such Bid, if rejected, shall not be a Successful Bid or the Back-Up Bid.

Nothing in these Auction Procedures (if an Auction is held) will prevent the Debtors or their respective governing bodies from exercising their respective fiduciary duties under applicable law or as reasonably determined in good faith by the Debtors to terminate the Auction(s) or any of the Sale(s) considered therein.

Within one (1) business day following the conclusion of the Auction(s), the Debtors shall file a notice on the Court's docket identifying (with specificity) the Successful Bidder for the respective Asset Sale and any applicable Back-Up Bidder.

The Debtors' presentation to the Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtor's acceptance of such Bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing(s).

All bidders at the Auction(s) will be deemed to have consented to the core jurisdiction and constitutional authority of the Court and waived any right to jury trial in connection with any disputes relating to the Auction(s), the Sale(s), and all agreements entered into in connection with any proposed Sale(s).

## XIII.  DESIGNATION OF BACK-UP BIDDER

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, (i) shall provide written notice to the Back-Up Bidder (if any) and (ii) file and serve a notice of intent to proceed with the Back-Up Bidder (the "Notice of Intent to Proceed with Back-Up Bidder"), at which time the Back-Up Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid, as approved by the Sale Order.

Notwithstanding the foregoing, affected landlords or contract counterparties shall have seven (7) days from the filing of a Notice of Intent to Proceed with the Back-Up Bidder to object to the approval of the assumption and assignment of any contract or lease by the Back-Up Bidder. The assumption and assignment of such contract or lease shall not be approved or otherwise authorized in connection with the closing of the Sale to the Back-Up Bidder until such objection period has run and any timely objections resolved, and no finding or conclusion of law regarding the approval of the Sale to the Back-Up Bidder shall have a preclusive effect on such objecting counterparty's rights with respect to assumption and assignment of any contract or lease except to the extent agreed upon or adjudicated to the contrary.  If a timely objection is filed, the Debtors may seek to have such objection resolved on an expedited basis upon reasonable notice under the circumstances (which notice shall be no less than seven (7) days).

## XIV.  RIGHT TO CREDIT BID

Any party that has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Party") shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the purchase price specified in such Secured Party's Bid; *provided* that, a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected lien in favor of such Secured Party as to such

claim(s).  Any Secured Party submitting a credit bid shall still be required to satisfy all necessary regulatory requirements and approvals.

Notwithstanding the foregoing or anything to the contrary herein, MPT shall be permitted to credit bid starting with its most senior tranche of remaining claims set forth in the Recovery Waterfall (as defined in the MPT Stipulation)[10] in any of the proposed Sale(s) (other than the participation of its deficiency claim in any recoveries allocated to the Debtors' estate); *provided* that the cash proceeds of any such Sales (together with other projected proceeds payable pursuant to the Recovery Waterfall) shall be sufficient to pay (i) the claims in Tranche 1 of the Recovery Waterfall, (ii) to the extent the assets subject to such credit bid are subject to priority liens (relative to the MPT claims being credit bid) in favor of the PBGC or the State of Connecticut, Tranches 3 and 4, as applicable, of the Recovery Waterfall, and (iii) to the extent MPT elects to credit bid claims allocated to Tranches 7 or 8 of the Recovery Waterfall, the recovery allocated to the Debtors' estate corresponding to the credit bid amount of such claims, and in each case shall be funded in cash by MPT (unless otherwise agreed by the holders of such claims or the estate, as applicable).

## XV.    AS-IS, WHERE-IS

Consummation of any Sale will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors in the executed definitive documentation for the Sale(s) (the "Definitive Documents").  Consummation of any Sale(s) will be without any representations or warranties whatsoever by the Debtors' representatives or advisors.  Unless otherwise specifically accepted or agreed to by the Debtors in the Definitive Documents, all of the Debtors' right, title, and interest in and to the Assets disposed of in a Sale will be transferred to the Successful Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.[11]

## XVI.    SALE HEARING(S)

The Court shall hold a hearing to consider approval of the Successful Bid (and Back-Up Bid, as applicable) and the Sale(s) contemplated thereby (each such hearing, a "Sale Hearing").  The Sale Hearing(s) may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing(s) or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the chapter 11 cases.

## XVII.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Court.  The Debtors shall retain

---

[10]    "MPT Stipulation" means the *Stipulation between the Debtors and Medical Properties Trust, Inc. Regarding Global Settlement* [Docket No. 633].

[11]    Connecticut reserves all rights with respect to the sale of its collateral free and clear of Connecticut's claims and liens.

any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of any Back-Up Bidder shall be retained until three (3) business days after the applicable closing date (each, a "<u>Closing Date</u>").  The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than three (3) business days following the entry of the Sale Order.

If a Successful Bidder (or, if the Sale is to be closed with a Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction), the Debtors and their estate shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then such Back-Up Bidder) as part of the damages resulting to the Debtor and its estate for such breach or failure to perform.

## XVIII. RESERVATION OF RIGHTS AND MODIFICATIONS

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties (and, with respect to the CT Sale Transaction Milestones, the State of Connecticut), reserve the right to modify these Bidding Procedures at or prior to the Auction(s), including, without limitation, to extend the deadlines set forth herein (subject to, with respect to the CA Sale Transaction Milestones, the prior consent of MPT), modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction(s) at or prior to the Auction(s), and/or adjourn the Sale Hearing(s); *provided* that, the Debtor may not amend these Bidding Procedures or the Bidding Process to reduce or otherwise modify its obligations to consult with, or otherwise provide documents or other information to, any Consultation Party or, without the prior consent of MPT, to modify the Bid Protections.  As discussed herein, the Debtors further reserve their rights to pursue a plan of reorganization for some or all of the Assets.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; *provided* that, the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of its fiduciary duties.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.

## XIX.   FIDUCIARY OUT

Notwithstanding anything to the contrary in the Bidding Procedures or any document filed with or entered by the Court, nothing in the Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale(s) or the Bidding

Procedures to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided* that no such action or refraining from action shall be inconsistent with the Term Sheet governing the Debtors' Proposed Settlement with MPT (such as by purporting to deny MPT the right to credit bid or requiring MPT to accept a real property lease on terms not acceptable to it in its sole and absolute discretion).

Further, notwithstanding anything to the contrary in the Bidding Procedures or any document filed with the Court, until the closing of the Auction (or cancellation thereof), the Debtors, the Consultation Parties, and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to, subject to the restrictions otherwise set forth herein: (A) consider, respond to, and facilitate unsolicited alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (B) provide access to non-public information concerning the Debtors to any entity pursuing an Alternate Proposal; *provided*, that the Debtors enter into a reasonable and customary confidentiality agreement or nondisclosure agreement with any such entity; (C) maintain or continue discussions or negotiations with respect to Alternate Proposals; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposals. For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors or their affiliates from continuing the marketing process and/or otherwise seeking the highest and best price with respect to any transaction providing for the sale or disposition of the Assets.

## XX.    CONSENT TO JURISDICTION

All Qualified Bidders at the Auction(s) shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction(s) or the construction and enforcement of the Bidding Procedures.

[*Remainder of the page intentionally left blank*]

## **Exhibit 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

Beginning on January 11, 2025, Prospect Medical Holdings, Inc., and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 18, 2025, the Debtors filed a motion (the "Bidding Procedures Motion"), pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an order approving, among other things, the procedures (the "Bidding Procedures") for submitting competing bids in connection with one or more sales of all or substantially all of the Debtors' assets in California (such assets, the "CA Assets" and such sale, the "CA Sale Transaction") and the Debtors' assets in Connecticut (such assets, the "CT Assets," and together with the CA Assets, the "Assets," and such sale, the "CT Sale Transaction" and, together with the CA Sale Transaction, the "Sales").

On [●], 2025, the Court entered an order approving the Bidding Procedures Motion [Docket No. [●]] (the "Bidding Procedures Order").[2] Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to a sale of any of the Assets are received by the applicable Bid Deadline (as defined below), the Debtors will conduct one or more Auctions, which shall start on (i) **[●] at [●] [a/p].m. (prevailing Central Time)** for the CA Sale Transaction and (ii) **[●] at [●] [a/p].m. (prevailing Central Time)** for the CT Sale Transaction. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order, as applicable.

the Consultation Parties, the U.S. Trustee, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.  Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than the applicable Bid Deadline may bid at the Auction(s).  Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

The Sale Hearing(s) to consider approval of the CA Sale Transaction and CT Sale Transaction, as applicable, to the Successful Bidder(s) at the Auction(s), free and clear of all liens, claims and encumbrances, will be held before the Court on **June 5, 2025**, at a time to be determined, or at such other time thereafter as counsel may be heard.  The Sale Hearing(s) may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing(s) or by including such adjournment on any agenda filed with the Court or by the filing of a notice with the Court.

Objections related to approval of the Sales, conduct at the Auction(s), the identity of the Successful Bidder(s), and adequate assurance of future performance by the Successful Bidder(s) must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received on or before **[●], 2025, at 4:00 p.m. (prevailing Central Time)** by the following parties (collectively, the "Objection Notice Parties"):

(a)    counsel to the Debtor, Sidley Austin, LLP, 2021 McKinney Avenue, Suite 2000 Dallas, TX 75201, Attn: William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com), and Sean M. Nuernberger (sean.nuernberger@sidley.com);

(b)    the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attn: Elizabeth A. Young (elizabeth.a.young@usdoj.gov);

(c)    counsel to the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com), and Gabe Sasson (gabesasson@paulhastings.com); and

(d)    counsel to MPT, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn: Emil A. Kleinhaus (EAKleinhaus@wlrk.com); and KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067, Attn: Thomas E. Patterson (tpatterson@ktbslaw.com).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage all parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of any Assets and/or copies of any related document, including the Bidding Procedures Motion or the Bidding Procedures Order, may make a written request to William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com), and Sean M. Nuernberger (sean.nuernberger@sidley.com).   In addition, copies of the Bidding Procedures Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, and are available on the Debtors' claims and noticing agent's website free of charge at https://omniagentsolutions.com/Prospect.

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

**You are receiving this notice because you may be a counterparty to a contract or lease with Prospect Medical Holdings, Inc. or one of its affiliates or subsidiaries. Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

Beginning on January 11, 2025, Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2025, the Court entered an order approving certain procedures (such procedures, the "Bidding Procedures") in connection with one or more sales of all or substantially all of the Debtors' assets in California (such assets, the "CA Assets" and such sale, the "CA Sale Transaction") and the Debtors' assets in Connecticut (such assets, the "CT Assets," and together with the CA Assets, the "Assets," and such sale, the "CT Sale Transaction" and, together with the CA Sale Transaction, the "Sales") [Docket No. [●]] (the "Bidding Procedures Order").[2]

Pursuant to the Bidding Procedures and the Bidding Procedures Order, the Debtors may potentially assume and assign to the Successful Bidder(s) one or more of those executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively, the "Potentially Assigned Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or the Bidding Procedures Order, as applicable.

The Debtors have indicated on **Schedule A** annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Agreements (in each instance, the "Cure Amount").

Any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in order for such contract or lease to be assumed and assigned, must file an objection (the "Contract Objection") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Court and (d) is served on  (i) counsel to the Debtors, Sidley Austin, LLP, 2021 McKinney Avenue, Suite 2000 Dallas, TX 75201, Attn: William E. Curtin (wcurtin@sidley.com), Anne G. Wallice (anne.wallice@sidley.com), Veronica A. Courtney (vcourtney@sidley.com), and Sean M. Nuernberger (sean.nuernberger@sidley.com); (ii) the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attn: Elizabeth A. Young (elizabeth.a.young@usdoj.gov); (iii) counsel to the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com), and Gabe Sasson (gabesasson@paulhastings.com); and (iv) counsel to MPT, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn: Emil A. Kleinhaus (EAKleinhaus@wlrk.com); and KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067, Attn: Thomas E. Patterson (tpatterson@ktbslaw.com) (collectively, the "Notice Parties") by no later than **4:00 p.m. (prevailing Central Time) on the date that is fourteen (14) calendar days after the service of this Assumption and Assignment Notice** (the "Contract Objection Deadline").

The Debtors shall file a notice identifying the Successful Bidder with the Court and serve such notice upon parties in interest within one (1) business day of the close of any Auction designating such Successful Bidder.  The deadline for objecting to the assignment of the Potentially Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance ("Adequate Assurance Objection") shall be  **[●], 2025 at 4:00 (prevailing Central Time)** (the "Adequate Assurance Objection Deadline").

**UNLESS A CONTRACT OBJECTION IS TIMELY AND PROPERLY FILED AND SERVED BEFORE THE CONTRACT OBJECTION DEADLINE OR AN ADEQUATE ASSURANCE OBJECTION IS TIMELY RAISED BEFORE THE ADEQUATE ASSURANCE OBJECTION DEADLINE, THE NON-DEBTOR PARTY TO A POTENTIALLY ASSIGNED AGREEMENT SHALL (A) BE FOREVER BARRED FROM OBJECTING TO THE CURE AMOUNT AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH POTENTIALLY ASSIGNED AGREEMENT, AND THE DEBTOR AND THE SUCCESSFUL BIDDER(S) SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE AMOUNT; (B) BE DEEMED TO HAVE CONSENTED TO ANY ASSUMPTION AND ASSIGNMENT OF SUCH POTENTIALLY ASSIGNED AGREEMENT; AND (C) BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS OR THE SUCCESSFUL BIDDER(S) THAT ANY ADDITIONAL AMOUNTS ARE DUE OR**

**OTHER DEFAULTS EXIST, THAT CONDITIONS TO ASSIGNMENT MUST BE SATISFIED UNDER SUCH POTENTIALLY ASSIGNED AGREEMENT OR THAT THERE IS ANY OBJECTION OR DEFENSE TO THE ASSUMPTION AND ASSIGNMENT OF SUCH POTENTIALLY ASSIGNED AGREEMENT.[3]**

**IN ADDITION, THE PROPOSED CURE AMOUNT SET FORTH IN <u>SCHEDULE A</u> HERETO SHALL BE BINDING UPON THE NON-DEBTOR PARTIES TO THE POTENTIALLY ASSIGNED AGREEMENTS FOR ALL PURPOSES IN THESE CHAPTER 11 CASES AND WILL CONSTITUTE A FINAL DETERMINATION OF THE CURE AMOUNTS REQUIRED TO BE PAID BY THE DEBTOR IN CONNECTION WITH ANY ASSUMPTION AND ASSIGNMENT OF THE POTENTIALLY ASSIGNED AGREEMENTS.**

Where a non-Debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "<u>Disputed Cure Amount</u>"), then (a) the cure amount shall be as agreed between the parties or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing(s) or at such other date and time as may be determined by the Debtors or fixed by the Court. All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing(s), unless adjourned by agreement of the parties.

A Contract Objection shall not constitute an objection to the relief generally requested in the motion to approve the Bidding Procedures or in the Sale. Parties wishing to otherwise object to the relief requested in the motion to approve the Bidding Procedures or the Sale must file and serve a separate objection, stating with particularity such party's grounds for objection, on each of the Notice Parties listed above no later than **[●], 2025 at 4:00 p.m. (prevailing Central Time)**.

If you agree with the Cure Amount indicated on **<u>Schedule A</u>**, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

For the avoidance of doubt and notwithstanding anything to the contrary herein, prior to regulatory approval of any sale, all parties' rights are reserved as to assumption and assignment of provider agreements, including any disputes over cure amounts.

The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

---

[3]    Connecticut reserves all rights with respect to the assumption and assignment of its provider agreements.

**Schedule A**

## LEASES

| Landlord Name / Address | Address of Subject Property | Cure Amount |
|---|---|---|

## EXECUTORY CONTRACTS

| Counterparty Name / Address | Description of Contract | Cure Amount |
|---|---|---|