SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
            rpatel@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    wcurtin@sidley.com
            pventer@sidley.com
            anne.wallice@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

## DEBTORS' OBJECTION TO AD HOC
## COMMITTEE'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), file this objection (this "Objection")[2] to the *Motion of the Ad Hoc Committee of Medical Malpractice Claimants for Relief from the Stay to Permit Continuation of Personal Injury*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2]    By agreement with counsel to the Movants, the Debtors will file a supplemental response in support of the Objection ahead of the final hearing on the Motion, and in any event, no later than April 18, 2025.

*Litigation and to Pursue Insurance Proceeds* [Docket No. 893] (the "<u>Motion</u>"), filed by the Ad

Hoc Committee of Medical Malpractice Claimants (the "<u>AHC</u>" or "<u>Movants</u>").  In support of this

Objection, the Debtors respectfully state as follows:

### <u>PRELIMINARY STATEMENT</u>[3]

1.    The Movants seek relief from the automatic stay to prosecute their Pennsylvania

state court actions (the "<u>State Court Actions</u>"), alleging state law claims of medical malpractice

(or similar theories) against certain of the Debtors, and to liquidate their claims against the

applicable Debtor and collect from available insurance coverage and state funds.

2.    The Movants' arguments in support of this relief reflect a fundamental

misunderstanding of the Debtors' insurance program, and fails to cite to applicable law in this

circuit.  For the Debtors' hospitals inside Pennsylvania, primary medical professional liability and

general liability coverage are provided by RRG, a self-insurance program administered by an

entity owned by Debtors.  For all policy periods beginning October 1, 2020 through the present

date, RRG's primary coverage is subject to self-insured retentions (each, an "<u>SIR</u>"), meaning that

under such policies, the Debtors are required to make payment up to the amount of the applicable

SIR—$250,000—and, only ***after*** the Debtors satisfy the SIR, RRG will step in to cover the

remaining costs of the claims, up to the applicable limits (which is either $500,000 or $1,000,000

per occurrence).  Therefore, the Movants cannot proceed against the Debtors without causing the

Debtors to incur claims, which is precisely the harm that the automatic stay is designed to avoid.

3.    Further, certain Debtors are obligated to ensure that RRG has adequate

capitalization for its coverage by prefunding liabilities on a quarterly basis with cash sufficient to

---

[3]    Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed thereto in
the remainder of the Objection.

meet expected losses.  Should RRG's funds be depleted, the Debtors will be subject to a capital call by RRG to meet minimum capitalization requirements, which are important issues for the regulators that govern RRG.  Accordingly, if the Movants proceed on their claims and liquidate claims against RRG, the Debtors will need to expend estate resources on recapitalizing RRG.

4.      Not only would proceeding against the primary insurer prejudice the Debtors, but PMH—a Debtor—provides the next layer of self-insurance after the $500,000 Pennsylvania MCARE Fund.  The Pennsylvania Debtors' excess policies prior to October 1, 2020 are subject to a $4 million SIR, and their policies after October 1, 2020 are subject to a $12.5 million SIR, in each case that PMH—a Debtor—would be obligated to pay.  As a result, any judgment in the State Court Actions will effectively serve as a judgment against the Debtors and recovery on account of such judgment is subject to the strict priorities set forth in the Bankruptcy Code.  Recognizing this, bankruptcy courts in the Fifth Circuit routinely deny motions to lift the automatic stay—even when the movants agree to limit recovery to insurance—when there are SIRs at play.

5.      Movants' alleged basis to support such relief from the automatic stay—that the automatic stay threatens to delay the adjudication of the State Court Actions, and that the Movants seek only to collect any judgment or settlement from the Debtors' insurers or applicable state funds—is insufficient to meet Movants' heavy burden of demonstrating that cause exists to lift the automatic stay to allow Movants to continue the State Court Actions.

6.      If the stay is lifted, however, the Debtors will not only be required to dedicate attention, personnel, and resources to protect their rights and interests in the State Court Actions, but will also be required to expend significant costs undergoing discovery and otherwise defending the State Court Actions, ultimately transferring assets out of the Debtors' estates on account of a pre-petition general unsecured claim, to the detriment of other similarly-situated creditors.  This

violates the "central policy of the Bankruptcy Code": equality of distribution among similarly situated creditors. *Begier v. IRS*, 496 U.S. 53, 58 (1990).

7.      As explained further below, allowing Movants to litigate the State Court Actions and collect against the Debtors' estates (i) could erode the estates' assets, due to the self-insured retention obligations and Debtor obligations to recapitalize RRG, and (ii) will distract the Debtors, their management, and advisors, from focusing on the Debtors' ongoing chapter 11 administration efforts.  Additionally, if the Court grants the Motion, it may encourage other claimants to seek similar relief, leading to a flood of litigation unsupervised by this Court and potentially inconsistent outcomes.  Such diversions will drain estate resources and prevent the Debtors from focusing on their highly complex restructuring efforts, including the sale of numerous hospitals and medical facilities across various states, while maintaining high standards of patient care.

8.      In contrast, Movants will not suffer harm by the continuation of the stay other than delay in adjudicating their claims.  That alone cannot establish cause to permit stay relief for the Movants—if that was the case, the automatic stay would serve no purpose.  Especially in these Chapter 11 Cases, any distractions could have a strongly detrimental effect on the Debtors' estates and on the health and well-being of their patients.  Therefore, the Debtors respectfully request that the relief requested by Movants be denied.

## BACKGROUND

### A.      General Background

9.      The Debtors and their non-Debtor affiliates (collectively, the "Company") are significant providers of coordinated regional healthcare services in California, Connecticut, Pennsylvania, and Rhode Island.  The Company's business can be broadly divided into two segments: (1) hospital operations, which consist of, among other things, the ownership and operation of 16 acute care and behavioral hospitals, providing a wide range of inpatient and

outpatient services spanning multiple states, and (2) physician-related services, including (a) certain owned and managed medical groups, independent physician associations, managed services organizations and risk taking entities, (b) Prospect Health Plan, Inc., a Knox-Keene licensed entity, and (c) one licensed acute hospital operating as Foothill Regional Medical Center (collectively, "PhysicianCo"). The PhysicianCo entities are not Debtors in these Chapter 11 Cases.

10.     Beginning on January 11, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases. On January 29, 2025, the Office of the United States Trustee established the Official Unsecured Creditors' Committee [Docket No. 295] (the "Committee").

11.     A detailed description of the Debtors and their business, and the facts and circumstances supporting this Motion and the Debtors' Chapter 11 Cases, are set forth in greater detail in the *Declaration of Paul Rundell in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [Docket No. 41].

**B.     Background on the State Court Actions**

12.     The State Court Actions are comprised of multiple medical malpractice actions pending in various Pennsylvania state courts against defendants that include certain of the Debtors. Movants initiated their lawsuits to recover damages for personal bodily injuries allegedly caused by defendants' allegedly negligent provision of medical care (and associated theories of liability).

13.     Exhibit A to the Motion sets forth the lawsuit of each AHC member claimant, the Debtor-defendant in each lawsuit, and the Pennsylvania state court where each lawsuit is pending.

C.     **The Debtors' Insurance Program**[4]

14.     The Debtors maintain a broad insurance program, covering, among other things, director and officer liability, property liability, employment practice liability, cyber liability, crime liability, fiduciary liability, errors and omissions liability, professional liability, automobile liability, aviation liability, pollution liability, workers' compensation liability, and general liability.  In addition, the insurance program includes several layers of excess liability coverage.

15.     For hospitals and other medical operations inside Pennsylvania, medical professional liability and general liability coverage are provided by Prospect Medical Holdings Risk Retention Group, Inc. ("RRG"), a non-Debtor affiliate.  RRG is a self-insurance program incorporated and domiciled in the state of Vermont, and is owned by Debtors as the sole Class A Unit holder, and insured professional corporations or other healthcare provider entities or individuals (with whom the Debtors have contractual relationships) as the Class B Unit holders. RRG contracts directly with service providers, such as third-party administrators, managers, legal advisors, actuarial consultants, tax advisors, investment managers, and auditors, to manage and administer the medical professional liability and general liability policies for its members.

16.     RRG provides primary malpractice insurance coverage with the legally-required limits of (a) for physicians, a $500,000 per-occurrence limit and $1,500,000 aggregate limit, and (b) for hospitals, a $500,000 per-occurrence limit and $2,500,000 aggregate limit.  RRG also provides general liability coverage with a $1,000,000 per-occurrence limit and a $2,000,000 aggregate limit.  The Debtors ensure that RRG has adequate capitalization for such coverage by

---

[4]     The Debtors continue to work with their advisors to review the insurance program to determine applicable coverage, and may provide additional information in advance of the final hearing on the Motion.

Given the voluminous nature of the insurance policies, the Debtors have summarized the policy provisions.  *See* Fed. R. Evid. 1006.  The Debtors have provided, subject to the Protective Order [Docket No. 821], the specific insurance policies relevant to the State Court Actions to counsel to the Movants upon their request.  The Debtors can provide the specific insurance policies to the Court or parties in interest upon request.

prefunding liabilities on a quarterly basis with cash sufficient to meet expected losses. Should RRG's funds be depleted, the Debtors will be subject to a capital call by RRG to meet minimum capitalization requirements, which are important issues for the regulators that govern RRG.

17.    For policy periods from October 1, 2020 through the current date, RRG's primary coverage is subject to a $250,000 SIR. Policy periods prior to October 1, 2020 have a $0 SIR. For all policy periods, the MCARE Fund provides $500,000 of additional coverage in excess of $500,000 RRG malpractice coverage for physicians, hospitals, and certain professional corporations.[5] The MCARE Fund is subject to a $1,500,000 aggregate limit per-institution and per-physician, which has already been exhausted for some policy years in the State Court Actions.

18.    For policy periods prior to October 1, 2020, coverage in excess of RRG and, if not exhausted, the MCARE Fund, is provided by third-party excess insurers. However, those excess policies are subject to a $4,000,000 SIR, which has to be paid by PMH (a Debtor).

19.    For policy periods from October 1, 2020 through the current date, coverage in excess of RRG and, if not exhausted, the MCARE Fund, is provided by CHIC (described in the next paragraph). The total excess policy limit is typically $80,000,000, for each loss event and in the annual aggregate, excess of the primary coverage layers described above. These CHIC policies have a $12.5 million SIR, which has to be paid by PMH (a debtor).

20.    PMH is the parent company of a wholly-owned non-Debtor subsidiary, Connecticut Healthcare Insurance Company ("CHIC"). Non-Debtor CHIC is a captive insurance company subject to the local insurance laws and regulations of the Cayman Islands, where CHIC is incorporated and domiciled. CHIC works with brokers, third-party administrators, and actuaries

---

[5]    "The MCARE Fund provides a secondary layer of liability insurance coverage to health care providers by paying damages awarded in medical professional actions that exceed the minimum level of professional liability insurance the MCARE Act requires providers to maintain." *Pa. Med. Soc. v. Dep't of Public Welfare*, 39 A.3d 267, 272 (Pa. 2012) (citing 40 P.S. § 1303.712(a)).

to evaluate, procure, and administer cost-efficient excess coverage for the Debtors' workers' compensation, professional liability, and general liability insurance policies that is fully reinsured by third-party insurers.

21.    CHIC's insurance policies are reimbursement policies.  As such, PMH initially pays the costs for any claims that exceed the applicable RRG limit (described above), including defense costs and settlement payments.  Upon request from PMH, debtor CHIC will promptly seek to recover such amounts from third-party reinsurers pursuant to its reinsurance contracts.  Once CHIC has recovered the full amount of the claims from the third-party reinsurers, CHIC will then reimburse PMH for the portion of PMH's initial payment that exceeds the SIR.

## OBJECTION

22.    "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."  *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (quoting H.R. Rep. 95-595, 340 (1977), U.S.C.C.A.N. 1978, p. 6296).  Specifically, it protects against, among other things,  (i) "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case," (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and (iii) "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(1), (3), and (6).

### A.    Movants Fail to Demonstrate that "Cause" Exists for Relief from the Automatic Stay

23.    Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause."  However, the Bankruptcy Code does not offer guidance as to what constitutes "cause," but rather, the reviewing court must determine whether cause exists on a case-by-basis.  *See, e.g.*, *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (explaining that whether "cause" exists is a fact-intensive inquiry "committed to the discretion of the bankruptcy judge … that must be determined on a case-by case basis.").

24.    While there is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) "cause" exists to lift the automatic stay, courts have often looked to the following case-specific factors:  (i) whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, (ii) whether any hardship to a non-debtor of continuation of the stay outweighs any hardship to debtor, and (iii) whether the creditor has a probability of prevailing on the merits of the case.  *BDA Design Group, Inc. v. Official Unsecured Creditors' Committee*, No. 3:13-cv-01568-O, 2013 WL 12100467, at *6 (N.D. Tex. Sept. 2, 2013).

25.    Additionally, courts in the Fifth Circuit have also relied up on a set of twelve factors, the so-called "*Sonnax Factors*," when making such assessment. *See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).  The *Sonnax Factors* include:

1) whether relief would result in a partial or complete resolution of the issues;
2) lack of any connection or interference with the bankruptcy case;
3) whether the other proceeding involves the Debtor as a fiduciary;
4) whether a specialized tribunal with the necessary expertise has been established to hear the case the cause of action;
5) whether the debtor's insurer has assumed full responsibility for defending it;
6) whether the action primarily involves third parties;
7) whether litigation in another forum would prejudice the interests of other creditors;

9

8) whether the judgment claim arising from the other action is subject to equitable subordination;

9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10) the interests of judicial economy and the expeditions and economical resolution of litigation;

11) whether the parties are ready for trial in the other proceeding; and

12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286; *In re Celsius Network LLC*, 642 B.R. 497, 502 (Bankr. S.D.N.Y. 2022).

26.     Though not all of the *Sonnax Factors* may be relevant to each case, "even slight interference with the administration [of the Debtors' estates] may be enough to preclude relief." *Anderson v. Hoechst Celanese Corp.* (*In re U.S. Brass Corp.*), 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994), *modified*, 176 B.R. 11 (Bankr. E.D. Tex. 1994) (emphasis added); *see also In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect on such litigation on the administration of the estate.") (citation omitted).  Not every possible detriment to the creditor or estate independently justifies lifting the stay.  *In re Omni Lion's Run*, L.P., 578 B.R. 394, 399 (Bankr. W.D. Tex. 2017).  Moreover, where an unsecured creditor seeks relief from the automatic stay, such relief is granted only in extraordinary circumstances.  *In re Eagles Enters., Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("Unsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances"); *In re Stranahan Gear Co.*, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986) ("Several factors mitigate strongly against the allowance of any relief in this case—or in any but the most extraordinary set of circumstances— where the moving party is an unsecured creditor.").

27.     Critically, the movant carries the initial burden on the stay relief, and only if the movant makes a *prima facie* case does the debtor need to respond.  *See In re Kowalsky*, 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999) (citing *In re Sonnax*, 907 F.2d at 1280).  "If a movant fails to

make a *prima facie* showing, the court should deny the relief requested." *Id.* (citing *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994)).

28.     Here, the Motion should be denied because the Movants have not established a *prima facie* case that the stay should be lifted.  Even if the Court finds that the Movants have met their burden to prove a *prima facie* case, the Motion should still be denied because cause to lift the stay does not exist.

**B.     Movants Have Not Established Cause for Relief from the Automatic Stay**

**1.     Movants Fail to Satisfy the Balancing Test**

a.     <u>Lifting the Stay Will Prejudice the Debtors</u>

29.     A significant factor in determining whether the bankruptcy court should lift the automatic stay is whether allowing such action to proceed outside the bankruptcy forum would negatively affect the administration of the debtor's estate.  *BDA Design Group*, 2013 WL 12100467, at *5 (citing *In re U.S. Brass Corp.*, 173 B.R. at 1006 (stating that "even slight interference with the administration may be enough to preclude relief")).  Here, allowing the State Court Actions to proceed will certainly prejudice not only the Debtors and their estates, but all other creditors in these Chapter 11 Cases, as it would essentially permit Movants to leapfrog such other creditors (including senior creditors) and circumvent the chapter 11 process.

30.     Most of the applicable professional liability and general liability insurance policies that cover the claims asserted in the State Court Actions are subject to an SIR before primary coverage under RRG kicks in.  All of the applicable insurance policies are subject to a substantial SIR before the excess insurer (whether third-party or CHIC) will step in.  Until the Debtors meet such SIRs, continuation of the State Court Action would create mounting claims against the Debtors.  The Debtors would be forced to litigate the State Court Actions to prevent such claims.

31.    Further, even for RRG primary policies with no SIRs, if RRG would have to pay claims and the Debtors would not be able to defend, the Debtors would need to expend estate resources on recapitalizing RRG.  Moreover, for years where CHIC is the excess policy issuer, only once the Debtors have made such payments is CHIC obligated to reimburse the remaining cost of the claim up to the applicable policy limit.  For these reasons, continued litigation of the State Court Actions would interfere with case administration and deplete estate resources and funds, to the detriment of all creditors.  Movants are effectively asking to leapfrog priority creditors and race to the courthouse to collect in advance of other, similarly-situated creditors.

32.    Bankruptcy courts in this circuit do not grant relief from the automatic stay to recover from insurance when there is a self-insured retention.  *See, e.g.*, *In re Tailored Brands, Inc.*, No. 20-33900 (MI), 2021 WL 2021472, at *5 (Bankr. S.D. Tex. May 20, 2021) (finding that movant was not entitled to relief from discharge to pursue tort claims against the debtor in state court where the debtor's self-insured retention "effectively left [the debtors] uninsured" with respect to the movant's action); *In re iHeartMedia, Inc.,* Case No. 18-31274 (MI), 2019 Bankr. Lexis 1617, at *12, *16 (Bankr. S.D. Tex. May 28, 2019) (denying a motion to lift the stay where the movant's "attempt to collect against the [i]insurance [p]olicy directly affect[ed] the bankruptcy estate" by virtue of the insurance policy's deductible, which the court explained operated like an SIR in implicating the insured debtors' finances);[6] *In re CJ Holding Co.*, No. 16- 33590 (DRJ), 2018 WL 3965225, at *2 (Bankr. S.D. Tex. Aug. 15, 2018) (finding that movant was not entitled to relief from stay to pursue his claims against the discharged debtor and its employee for which the discharged debtor would have vicarious liability when the insurance policy covering the claim

---

[6]    The *iHeart* court reasoned that when the litigation would implicate the debtor, as opposed to "plac[ing] the financial burden solely on the insurer," the movant's claim was against the debtor, its characterization of its claim as "a claim against the insurance proceeds . . . [was] simply incorrect," and it "failed to carry its burden demonstrating cause for relief from the automatic stay." *Id.* at **15-16.

was subject to a deductible); *see also DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005) (refusing to allow claim to proceed against debtor due to debtor's $2 million SIR).

33.     Movants contend that they seek to litigate only nominally against the Debtors, and collect any judgment or settlement from the Debtors' basic primary coverages, the MCARE Fund, excess insurance policies, and any other applicable state funds.  Motion ¶ 11.  They argue that because they seek only to recover against the Debtors' insurers and applicable state funds, there is no risk of material loss to the Debtors' estates.  Motion ¶ 18.  However, as described above, most of the insurance policies that cover the claims asserted in the State Court Actions are subject to an initial SIR (owed by PMH) before primary coverage kicks in, as well as multi-million-dollar SIRs under the excess policies that the Debtors must meet before the excess insurers step in.  As most of the underlying insurance policies require the Debtors to incur the initial damage and defense costs per occurrence, continuation of the State Court Actions would lead to mounting claims against a Debtor, which is exactly what the automatic stay is designed to avoid.

34.     Further, as described above, if the Movants were successful in the State Court Actions, RRG's reserves could quickly become depleted, which would require that the Debtors expend their limited resources on recapitalizing RRG to ensure compliance with all regulatory and contractual obligations.  The case law is clear that when a debtor must expend estate resources to defend claims outside the bankruptcy court, such as in the instant case, the bankruptcy court should not lift the stay.  Movants should not be permitted to deplete estate assets in pursuit of their claims outside the orderly administration of claims in the bankruptcy court.

b.     The Balance of the Harms Clearly Favors the Debtors

35.     Movants have not established that the harm that they will experience if the stay is not lifted outweighs the harm to the Debtors' estates if the stay is lifted such that "cause" exists to stay relief.  Movants have failed to demonstrate that they will experience significant hardship from

Case 25-80002-sgj11    Doc 1307    Filed 03/21/25    Entered 03/21/25 16:42:25    Desc
Main Document    Page 14 of 24

the continuation of the stay. Movants merely assert that they will be prejudiced if they are cannot pursue their claims now—explaining only that their alleged injuries occurred in years past and that they (or their attorneys) have expended significant resources in pursuit of such litigation. Not every possible detriment to the creditor or estate independently justifies lifting the stay. *In re Omni Lion's Run, L.P.*, 578 B.R. at 399. Movants articulate no reason why the State Court Actions must be litigated now rather than as part of the post-confirmation claims reconciliation process, along with the claims of all other creditors.[7] Movants may file a proof of claim to preserve their rights with respect to the claims asserted in the State Court Actions and receive the same treatment as other prepetition, general unsecured claims under a plan of reorganization.[8]

36.    In contrast, the prejudice to the Debtors, as explained herein, is significant. Lifting the stay would force the Debtors to defend themselves in the State Court Actions, all while incurring substantial costs in the process. Allowing the State Court Actions to proceed also will prejudice other creditors, as it essentially allows the Movants to leapfrog the Debtors' other creditors and circumvent the Chapter 11 process: most of the policies have SIRs that need to be satisfied by a Debtor, certain Debtors would need to expend estate resources on recapitalizing RRG, and excess coverage (third-party or CHIC) does not kick in until a $4 million or $12.5 million SIR—in each case payable by Debtor PMH—is satisfied. For all these reasons, continuation of the State Court Actions could result in the depletion of estate resources and funds, to the detriment of all creditors. This prejudice to the Debtors and their estates outweighs the prejudice to the Movants of a delayed adjudication or resolution of their claims.

---

[7]    Movants' jury trial argument (Motion ¶ 18) is a red herring. The issue is not what court should be adjudicating the Movants' claims, but whether all adjudication of Movants' claims should be stayed, in any court, under § 362.

[8]    *In re Xenon Anesthesia*, cited by Movants (Motion ¶ 17) is easily distinguishable. There, the court held that the automatic stay did not apply to criminal contempt proceedings against a non-debtor. *Id.* at 110, 112. That holding has no bearing on the instant case, where the Movants seek monetary damages against a Debtor.

c.    Movants Have Not Demonstrated a Likelihood of
Prevailing on the Merits of Their Claim

37.    Movants have not established they are likely to prevail in the State Court Actions.

In any event, when taking into account the prejudice to the Debtors that would be caused by

allowing the State Court Actions to proceed and the lack of harm to Movants, whether Movants

are likely to prevail in the State Court Action is not a strong factor weighing in favor of lifting the

stay. *See In re Spansion, Inc.*, 418 B.R. 84, 97 (Bankr. D. Del. 2009) (finding that "the third factor

is not crucial to [the court's] determination" because the other factors "weigh heavily in favor of

staying the [action]"), *vacated on other grounds, Samsung Elecs. Co. v. Ad Hoc Consortium of

Floating Rate Noteholders*, No. 09-0836 (RBK), 2010 WL 2636115, at *1 (D. Del. June 29, 2010);

*see also In re Stewart*, 649 B.R. 755, 762 (Bankr. N.D. Ill. 2023) ("It has never been clear why the

creditor's likelihood of success should matter to a lift-stay decision.").

2.    **Movants Fail to Satisfy the Relevant *Sonnax* Factors**

38.    Movants' request for relief from the automatic stay similarly fails under application

of the relevant *Sonnax* factors. *See In re Celsius Network LLC*, 642 B.R. at 502–03.

39.    ***Lifting the stay will interfere with the bankruptcy case.*** Continued litigation of

the State Court Actions will distract attention from the reorganization process and delay and

interfere with the bankruptcy case. *In re Celsius Network LLC*, 642 B.R. at 502. Further, most

applicable policies have SIRs (payable by Debtor PMH), and even those that do not have SIRs

before the primary coverage have SIRs (payable by Debtor PMH) before the excess coverage.

And RRG, the primary insurer, remains adequately funded only by capital calls to the Debtors.

Lifting the automatic stay to allow the State Court Actions to proceed would thus require the

Debtors to expend estate resources, and because the Debtors would have to participate in the

litigation to protect their interests, continuation of the State Court Actions would distract the

Debtors and their professionals from the important process of administering this challenging chapter 11 case. This factor clearly weighs in favor of denying the Motion.

40.     ***The Debtors' insurers have not assumed full responsibility for defending the Debtors.*** No third-party unaffiliated insurer has assumed the defense of the Debtors in the State Court Actions, and with respect to most of the applicable insurance policies that cover the claims asserted in the State Court Actions, the Debtors must first exhaust an SIR before their insurer will cover defense costs and any liability for the claims asserted in the State Court Actions. This factor weighs in favor of denying the Motion.

41.     ***Litigation in state court will prejudice other creditors.*** "The automatic stay levels the playing field and ensures that creditors need not rush to other forums to preserve their rights." *In re Celsius Network LLC*, 642 B.R. at 503. Between the SIRs and recapitalization of RRG, pursuit of the State Court Actions will prejudice other creditors by depleting the Debtors' assets. This is especially pronounced here when there are already multiple additional lift-stay motions on the docket, and the Debtors understand there may be more to come. *In re Celsius Network LLC*, 642 B.R. at 503 (this factor favors debtor when lift-stay motion, if granted, would invite others to seek similar relief) (citing *In re SunEdison, Inc*., 557 B.R. 303, 308–09 (Bankr. S.D.N.Y. 2016) (finding for debtors on this factor based, in part, on risk of "encourag[ing] other claimants to file their own stay relief motions")). This factor weighs in favor of denying the Motion.

42.     ***The interests of judicial economy and the expeditious and economical resolution of the litigation do not require the stay to be lifted.*** Movants have not demonstrated an immediate need for stay relief to litigate the claims asserted in the State Court Actions now, as opposed to as part of the post-confirmation claims reconciliation process. There is no reason why the State Court Actions cannot proceed at a later date, if they are not consensually resolved as part of plan

confirmation or a post-confirmation process.  Further, lifting the stay would lead to duplication of efforts and potentially inconsistent judgments for similarly-situated creditors.  *In re Celsius Network LLC*, 642 B.R. at 504 (citing *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 353 (9th Cir. 1996) ("By staying the state action, the bankruptcy court promoted judicial economy and efficiency by minimizing the duplication of litigation in two separate forums and preventing litigation of a claim that may have been discharged in bankruptcy proceedings.")).  This factor weighs in favor of denying the Motion.

43.    ***The balance of the harms from lifting the stay weighs in the Debtors' favor.***  As described in detail above, lifting the stay to litigate the State Court Actions in the middle of the Debtors' Chapter 11 Cases would cause a significant distraction, drain estate resources, and be highly prejudicial to the Debtors.  The Debtors would be required to divert personnel and resources away from the sale of the remaining assets and the filing of a plan to defend the State Court Actions.  This factor weighs in favor of denying the Motion.

44.    Though Movants do not address the *Sonnax* factors in the Motion, these factors weigh heavily against granting Movants' request for relief from the automatic stay.  The Motion, therefore, should be denied.

## RESERVATION OF RIGHTS

45.    The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this Objection and to object to the Motion, on any basis whatsoever, at a future date.[9]  Nothing herein shall be interpreted as an admission that any claim described herein or in the State Court Actions is valid, and the Debtors reserve all rights with respect thereto.

---

[9]    By agreement with counsel to the Movants, the Debtors have until April 18, 2025 to supplement this Objection with a further response.

## <u>CONCLUSION</u>

46.    The Movants have failed to satisfy their heavy burden to establish that "cause" exists to grant relief from the automatic stay with respect to the State Court Actions.  Consequently, the Motion should be denied.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  March 21, 2025
Dallas, Texas

/s/ Thomas R. Califano

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          tom.califano@sidley.com
                rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:      (212) 839-5300
Facsimile:      (212) 839-5599
Email:          wcurtin@sidley.com
                pventer@sidley.com
                anne.wallice@sidley.com

*Attorneys for the Debtors
and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on March 21, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Thomas R. Califano*
Thomas R. Califano

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered)<br>Rel. to Dkt. No. 893 |

**ORDER DENYING MOTION FOR RELIEF**
**FROM AUTOMATIC STAY FILED BY AD HOC COMMITTEE**

Upon the *Motion of the Ad Hoc Committee of Medical Malpractice Claimants for Relief from the Stay to Permit Continuation of Personal Injury Litigation and to Pursue Insurance Proceeds* [Docket No. 893] (the "Motion"),[2] filed March 7, 2025, by the Ad Hoc Committee of Medical Malpractice Claimants (the "Movant") in the above-captioned chapter 11 cases of

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), requesting relief from the automatic stay in effect in these cases under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code") to prosecute the State Court Actions, as more fully set forth in the Motion; and upon the objection of the Debtors (the "Objection"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given; and after due deliberation and for the reasons stated by the Court, it is hereby ordered that the Motion is **DENIED**.

# # # END OF ORDER # # #

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          tom.califano@sidley.com
                rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:      (212) 839-5300
Facsimile:      (212) 839-5599
Email:          wcurtin@sidley.com
                pventer@sidley.com
                anne.wallice@sidley.com

*Attorneys to the Debtors*
*and Debtors in Possession*