Vincent Slusher
Texas Bar No. 00785480
Law Office of Vincent Slusher
2121N. Akard Street, Suite 250
Dallas, Texas 75201
214-478-5926
*vince.slusher@proton.me*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>**PROSPECT MEDICAL HOLDINGS, INC.,** *et al.,* [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION OF FIFTH THIRD SECURITIES INC. FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 USC §503(b)**

TO THE HONORABLE CHIEF JUDGE STACEY G. JERNIGAN,

UNITED STATES BANKRUPTCY JUDGE:

The above captioned debtors and debtors in possession (collectively, the "Debtors") respectfully file this objection ("Objection") to the Motion of Fifth Third Securities Inc. for Allowance of Administrative Expense Claim Under 11 USC §503(b) (the "Substantial Contribution Motion") and in support thereof respectfully submits as follows.

**PRELIMINARY STATEMENT**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

1

1.      In their Motion and Supporting Brief, Fifth Third seeks administrative expense priority for fees and expenses "earned in connection with Fifth Third's successful efforts to market and sell the Debtors' RI Assets." These fees and expenses "earned" by Fifth Third total (i) approximately $5,000,000.00 representing the Transaction Fee (as defined in Fifth Third's Motion and Brief), plus (ii) amounts incurred and to be incurred on account of this Motion and the prosecution of Fifth Third's rights in these chapter 11 cases (together, the "<u>Substantial Contribution Claim</u>"). Fifth Third seeks this relief pursuant to 11 U.S.C. § 503(b)(3)(D).

> Section 503(b) of the Bankruptcy Code provides in relevant part:
>
> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
>
> . . .
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ...

2.      Because their Substantial Contribution Claim does not seek reimbursement of actual, necessary expenses **incurred** by Fifth Third, the claim fails to meet the initial requirement for relief under §503(b) and this court need not consider whether or not Fifth Third has made a substantial contribution under §503(b)(D). *Smith v. Mirant Corp. (In re Mirant Corp.)*, 308 Fed. Appx. 824, 827 (5th Cir. 2009). Beyond Fifth Third's failure to meet the basic requirements to even reach consideration of whether its efforts were sufficient to give rise to a substantial contribution claim, Fifth Third's engagement letter is subject to a pending rejection notice. Finally,

2

the Debtors have not, and are not, seeking retention of Fifth Third as a professional in these cases. Payment of the Substantial Contribution Claim to Fifth Third would be contrary to established law.

## JURISDICTION AND VENUE

3    The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory and legal predicates for the relief requested herein are sections 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure 9014 (the "Bankruptcy Rules"), Local Bankruptcy Rule for the Northern District of Texas 9014-1 (the "Local Bankruptcy Rules"), and the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures").

5.    The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

6.    The Debtors and their non-Debtor affiliates (collectively, the "Company") are significant providers of coordinated regional healthcare services in California, Connecticut, Pennsylvania, and Rhode Island. The Company's business can be broadly divided into two segments: (1) hospital operations, which consist of, among other things, the ownership and operation of 16 acute care and behavioral hospitals, providing a wide range of inpatient and outpatient services spanning multiple states, and (2) physician-related services, including (a) certain owned and managed

medical groups, independent physician associations, managed services organizations and risk taking entities, (b) Prospect Health Plan, Inc., a Knox-Keene licensed entity, and (c) one licensed acute hospital operating as Foothill Regional Medical Center (those businesses described in (2), collectively, "PhysicianCo"). *The PhysicianCo entities are not Debtors in these chapter 11 cases*.

7. Beginning on January 11, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these cases. On January 29, 2025, the Office of the United States Trustee appointed the Official Unsecured Creditors' committee.

8. A detailed description of the Debtors and their business, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 41] (the "First Day Declaration").

9. Prior to the Petition Date, on March 10, 2021, the Debtors and Fifth Third entered into that certain Engagement Letter pursuant to which the Debtors engaged Fifth Third to serve as investment banker and financial advisor with respect to the marketing and sale of the Debtors' Rhode Island business (the "RI Assets" or "Purchased Assets").

10. On November 17, 2022, the Seller[2] and The Centurion Foundation, Inc, CharterCARE Health of Rhode Island, Inc. and each of their successors and assigns (collectively, the "Buyer") entered into an asset purchase agreement (as amended on April 18, 2023 and November 7, 2023, the "Original Agreement") pursuant to which Seller would sell and Buyer would purchase the Purchased Assets (the "Transaction") free and clear of all Interests (except those Assumed Liabilities expressly assumed by the Buyer and Permitted Encumbrances).

11. Since signing the Original Agreement in 2022, the Debtors and the Buyer have been working diligently with the Rhode Island Attorney General and the Rhode Island Department of Health to satisfy regulatory requirements and prerequisites to closing the transaction. These agencies enumerated multiple conditions that the Debtors and Buyer were required to satisfy prior to closing the Transaction, including increasing liquidity, hiring additional staff, and improving hospital conditions.

12. The Debtors engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as Investment Banker to the Debtors pursuant to application to employ filed in this case on January 29, 2025 [Docket No. 307]. That application was granted by the Court on February 19, 2025 [Docket No. 727]. As set forth in the application to employ Houlihan Lokey, Houlihan Lokey also acted as investment banker for the Debtors prepetition. The scope of Houlihan Lokey's engagement included the sale of the Rhode Island hospitals.

---

[2] "Seller" means, collectively, Debtors Prospect Medical Holdings, Inc., Prospect CharterCARE, LLC d/b/a CharterCARE Health Partners, Prospect CharterCARE RWMC, LLC d/b/a Roger Williams Medical Center f/k/a Roger Williams General Hospital, Prospect RI Home Health and Hospice, LLC, Prospect CharterCARE Home Health and Hospice, LLC, New University Medical Group, LLC d/b/a University Medical Group, Prospect CharterCARE SJHSRI, LLC d/b/a Our Lady of Fatima Hospital, Prospect CharterCARE Physicians, LLC d/b/a CharterCARE Medical Associates, Prospect CharterCARE Ancillary Services, LLC, and Prospect Blackstone Valley Surgicare, LLC.

13. The Debtors estimated that in order to close the transaction as conditions existed in December 2024, it would have to (i) contribute approximately $15 million in cash, (ii) retain certain material liabilities; and (iii) continue to fund operating losses through the date of closing. As a result of these factors the transaction between Sellers and Centurion required significant renegotiation culminating in the approval by this Court of the Amended and Restated Asset Purchase Agreement (the "Centurion Transaction").[3] These renegotiations and amendments were undertaken by Houlihan Lokey, Debtors' Counsel and the Debtors. These discussions took weeks to complete and resulted in a renegotiated transaction which is expected to yield positive consideration to these estates, as well as sufficient proceeds to fund the Hospital Fund required by the Attorney General for the State of Rhode Island. Fifth Third Securities Inc. was not a participant in those negotiations nor in the amendments and modifications to the terms of the Asset Purchase Agreement required to get the Centurion Transaction to a point where it was approved by the Court.

14. On the Petition Date the Debtors' filed Debtors Motion for Entry of an Order (I) Authorizing Rejection of Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property (II) Approving Procedures for Future Rejection of Additional Executory Contracts and Unexpired Leases, and (III) Granting Additional Relief [Docket No. 8]. That motion was granted pursuant to Order Granting Motion (I) Authorizing Rejection of Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property (II) Approving Procedures for Future Rejection of Additional Executory Contracts and Unexpired Leases, and (III) Granting Additional Relief [Docket No. 605]. Pursuant to the foregoing Order, and in compliance with the

---

[3] See Debtors' Motion for Entry of an Order Approving Sale of Rhode Island Assets [Docket No. 349] and Order Approving and Authorizing (A) the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets Free and Clear of Interests, (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) the Assignment of Certain Permits; and (II) Granting Related Relief [Docket No. 606].

6

procedures approved therein, on February 18, 2025 the Debtors' filed their Notice of Rejection of Certain Executory Contracts and Unexpired Leases [Docket No. 709]. In that notice the Debtors' designated the Fifth Third engagement letter as a contract to be rejected. Fifth Third has filed an objection to the notice of rejection.

15. On March 24, 2025, Fifth Third filed the Substantial Contribution Motion and Brief in Support.

## OBJECTION AND ARGUMENT

16. In their Substantial Contribution Motion and Supporting Brief, Fifth Third seeks administrative expense priority "for fees and expenses earned in connection with Fifth Third's successful efforts to market and sell the Debtors' RI Assets." These fees and expenses "earned" by Fifth Third total (i) approximately $5,000,000.00 representing the Transaction Fee (as defined in Fifth Third's Motion and Brief), plus (ii) amounts incurred and to be incurred on account of this Motion and the prosecution of Fifth Third's rights in these chapter 11 cases (together, the "Substantial Contribution Claim"). Fifth Third seeks this relief pursuant to 11 U.S.C. § 503(b)(3)(D). In support of the Substantial Contribution Claim, Fifth Third submits two declarations one from Mr. Lenning of Fifth Third and one from Mr. Mingle of Centurion. Also submitted are Fifth Third's engagement agreement and a copy of the Original Agreement.

17. Further, in connection with the Substantial Contribution Motion, Fifth Third filed its Witness and Exhibit List [Docket No. 1504], identifying various additional pleadings and the final version of the Asset Purchase Agreement documenting the Centurion Transaction. Fifth Third did not identify in any of their filings any actual, necessary expenses incurred by Fifth Third in connection with their asserted substantial contribution claim.

A. **No claim for reimbursement**.

18. Section 503(b) of the Bankruptcy Code provides in relevant part:

After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –

. . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

. . .

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; ...

19. The Substantial Contribution Motion seeks the payment by the Debtor of the Transaction Fee it claims is due under the terms of the engagement agreement between the Debtors and Fifth Third. Fifth Third does not claim to have incurred any fees or expenses in connection with the services it claims to have provided to the Debtors with the exception of some relatively insignificant costs incurred with hosting a data site for the Debtors post-petition.[4] Instead it claims to have somehow incurred the Transaction Fee as an "expense" for which it should be reimbursed. "*Value of Services Provided*. The expenses incurred, *i.e.*, the Transaction Fee, were reasonable, actual and necessary to advising the Debtors and obtaining a purchaser for the RI Assets (and all related Services)." (Fifth Third Supporting Brief at Pg. 19, Para. 39.)

20. In *Smith v. Mirant Corp. (In re Mirant Corp.)*, 308 Fed. Appx. 824, 827 (5th Cir. 2009), the Fifth Circuit stated that "an entity whose expenses are allowable under paragraph (3) (of §503(b))

---

[4] Indeed, the Debtors have acknowledged on the record in these proceedings their willingness to provide Fifth Third with reasonable compensation for post post-petition data hosting services.

is defined as a "creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders" who made a substantial contribution to the bankruptcy proceedings. 11 U.S.C.A. § 503(b)(3). **The fact that other administrative expenses compensable under paragraph (3)**, a category which specifically excludes attorneys' fees compensable under paragraph (4), **must have been "incurred by" the creditor** does not warrant the same result with regard to paragraph (4)." (*Emphasis Added*).

21. Under §503(b)(4) an attorney or accountant for a creditor who has made a substantial contribution may recover its fees for services rendered, as may an Indenture Trustee under §503(b)(5). However, the creditor itself may only recover reasonable and necessary expenses it has incurred.

22. Certainly, Fifth Third cannot claim to have incurred an expense, pretermitting discussion of the reasonable and necessary prongs required, under the facts present here. Not having incurred an expense to be reimbursed, Fifth Third's claim for reimbursement on an administrative priority basis fails.

B.    Pending rejection of Fifth Third Engagement Agreement.

23. The Debtors have properly filed pursuant to and in accordance with court approved procedures, their Notice of Intent to Reject the Fifth Third Engagement Agreement. Fifth Third has filed its objection to the Notice to Reject asserting that the Notice does not identify any business justification or judgement to support its stated intent to reject. The objection goes on to surmise that this failure must derive from its knowledge that Fifth Third is likely to succeed on its substantial contribution claim and therefore has no articulable business justification. First, the Debtors will file a reply to Fifth Third's objection in due course and address the specifics raised therein. Second, the Notice of Intent to Reject the Fifth Third Agreement was in no way deficient

9

as the procedures approved by the Court also approved the form of rejection notice to be filed and did not require the Debtors to include a recitation of the business justification for rejection.

24. In early December 2024, at the time decision was made to retain Houlihan Lokey as its investment banker, the Centurion Transaction was in dire straits. Needing to bring approximately $15 million in cash, retain certain material liabilities; and continue to fund operating losses through the date of closing, there was no possibility to close the transaction. As a result of these factors, the transaction between Seller and Centurion required significant renegotiation culminating in the approval by this Court of the Amend and Restated Asset Purchase Agreement. These discussions took weeks to complete and resulted in a renegotiated transaction which yields positive consideration to these Estates of between $10 million and $15 million, as well as sufficient proceeds to fund the Hospital Fund required by the Attorney General for the State of Rhode Island. Fifth Third was not a participant in those negotiations nor in the amendments and modifications to the terms of the Asset Purchase Agreement required to get the Centurion Transaction to a point where it was approved by the Court.

25. The Debtors had and have ample justification for rejecting the Fifth Third Agreement, including but not limited to saving these estates from a significant administrative expense claim. In fact, failing to seek rejection of the Fifth Third agreement would be extremely harmful to these estates.

26. Should the Court approve rejection of the Fifth Third Agreement, they will have an unsecured rejection damage claim, a far better result for these estates than assumption of the agreement and obligating the estates to an administrative expense claim.

27. The Debtor has broad discretion in rejection of executory contracts. As the Court of Appeal for the Second Circuit has explained this policy:

> In reviewing a trustee's or debtor-in-possession's decision to assume an executory contract, then, a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, *and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate*.

*Orion Pictures*, 4 F.3d at 1099 (emphasis added). Fifth Third cannot satisfy the §503(b)(3) requirements, they at best will end up with an unsecured rejection damage claim in these cases.

C.  <u>Impermissible payment under 11 USC §§ 327-330</u>.

28. Despite assertions to the contrary, Fifth Third in the Substantial Contribution Motion is seeking payment by these estates for professional services despite the fact that it has not been retained by the Debtors post-petition, the Debtors have not sought nor obtained approval for such retention, nor are the Debtors now seeking such relief. Were Fifth Third claiming something other than fees for professional services, such as reimbursement for reasonable and necessary expenses, the argument might have some merit. That is simply not the case here. Retention and payment of professionals in chapter 11 cases is subject to strict requirements as set forth in §§327 and 330 of the Bankruptcy Code. The relief requested here does not satisfy those requirements.

WHEREFORE, for the reasons stated above the Debtors respectfully request that the relief requested in the Substantial Contribution Motion be denied, and for such other relief as is just and equitable.

Dated: April 14, 2025

                                                                                                 Respectfully submitted,

By:    *s/ Vincent P. Slusher*

            Vincent P. Slusher
            2121 N. Akard St., Suite 250
            Dallas, Texas 75201
            (214) 478-5926
            vince.slusher@proton.me

            **Proposed Conflicts Counsel for Debtors and Debtors in Possession**