**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

------------------------------------------------------ x
   :
In re:                       :        Chapter 11
   :
PROSPECT MEDICAL HOLDINGS,   :        Case No. 25-80002 (SGJ)
INC., et al.,[1]   :
   :
        Debtors.   :        (Jointly Administered)
   :
------------------------------------------------------ x

**OBJECTION OF THE AD HOC COMMITTEE OF MEDICAL MALPRACTICE
CLAIMANTS TO DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) APPROVING AND AUTHORIZING MANDATORY
CLAIMS RESOLUTION PROCEDURES TO RESOLVE PROFESSIONAL
LIABILITY AND GENERAL LIABILITY CLAIMS; (II) REQUIRING
THE DEBTORS' INSURERS TO SATISFY THEIR OBLIGATIONS UNDER
THE APPLICABLE POLICIES; AND (III) GRANTING RELATED RELIEF
(Dkt. No. 1712)**

The Ad Hoc Committee of Medical Malpractice Claimants ("**AHC**"), who are plaintiffs in

lawsuits against the Debtors arising out of treatments at the closing Pennsylvania hospitals, object

to the *Debtors' Motion For Entry Of An Order (I) Approving And Authorizing Mandatory Claims*

*Resolution Procedures To Resolve Professional Liability And General Liability Claims; (II)*

*Requiring The Debtors' Insurers To Satisfy Their Obligations Under The Applicable Policies; And*

*(III) Granting Related Relief* (Dkt. No. 1712) ("**Procedures Motion**"), on the following grounds.

1.        As of this filing, discussions with the Debtors continue, but given the objection

deadline (extended by agreement) and the proposed order currently on file, the AHC files this

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the
Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors'
mailing address is 3824 Hughes Ave., Culver City, CA 90232.

objection to the Procedures Motion and currently filed proposed order.

2.      The Debtors argue that the proposed Claims Resolution Procedures will facilitate mediation between the Debtors, PL/GL Claimants, and the Debtors' insurers (and reinsurers), bringing all economically interested parties to the table to facilitate global resolution and increase recovery for PL/GL claims from the Debtors' insurers (and reinsurers) and estimation for plan purposes of unresolved claims." Procedures Motion, p. 3.

3.      The proposed procedures, however, suffer from flaws that will render the proposed mediations grossly unfair to claimants and in many cases a waste of time and resources. Further, the motion lacks clarity needed for parties to be able to intelligently arrive at the most fruitful path forward for addressing the AHC's medical malpractice claims. Some of the issues with the proposed Procedures are as follows.

**A.     The availability of funds to Pennsylvania claimants alone is unclear**.

4.      At the outset, Pennsylvania malpractice insurance coverage is unique in that Commonwealth statute requires each health care provider and hospital to be insured for a primary amount of $500,000. Thereafter, each complying provider is covered for an additional $500,000 by a state agency known as the MCARE Fund. Debtors have no apparent plan for bringing MCARE, a crucial component for any Pennsylvania medical malpractice case, to the table, or assurance that RRG and CHIC will participate. Without these crucial participants, mediation will likely be fruitless.

5.      Other unresolved issues bear on the funds available to Pennsylvania claimants alone. There is a lack of clarity about the "more than three hundred" court actions against the Debtors as of the Petition Date, in that there is no indication of how many such actions involve the Pennsylvania hospitals and professionals, which are the subject of the AHC members' medical

malpractice claims, as opposed to claims in other states. In addition, the Debtors have recently moved to reject contracts with medical providers in Pennsylvania, presumably including contracts where Debtors purportedly have indemnification obligations to professionals for malpractice lawsuits. Thus, the Debtors' concerns about indemnity obligations may be moot after these contract rejections. The involvement of the Pennsylvania Commonwealth fund, MCARE, in paying medical malpractice claims is specific to Pennsylvania medical providers and so is available only to victims of Pennsylvania medical malpractice, as are the RRG funds. All these factors bear on the availability of insurance proceeds to Pennsylvania malpractice claimants alone.

**B.      Some limited discovery may be needed in some cases to make any mediation fruitful**.

6.      Also bearing on the availability of insurance to malpractice claimants is whether any of the other defendants in these cases have their own insurance. In many cases, this remains to be determined. PL/GL Claimants should not be stayed or enjoined from taking discovery of employees, affiliates, purportedly indemnified parties, and non-debtor defendants to discover if such parties have their own insurance unrelated to the Debtors, and for those non-Debtor parties who do have their own coverage, that coverage should be invoked for the non-Debtor defendant, not the Debtor's policies or indemnity obligations, if any. The Debtor should not pay to settle claims of non-Debtors who have their own coverage, whether those non-Debtors are employees or indemnitees or otherwise.

7.      The proposed procedures are infirm because they contemplate an exchange of offers on each claim, but where lawsuits have been stayed by the Bankruptcy while still in their early stages, there may not have been enough evidence developed for the parties to provide the materials useful for valuing the claims. The procedures expect, for example, a counteroffer from the plaintiff that "shall (i) provide all information to substantiate the PL/GL Claim sufficient for

the Debtors and insurance carrier to evaluate the validity and amount of the PL/GL Claim; (ii) provide all documents that the PL/GL Claimant contends support the PL/GL Claim…" Procedures Motion p. 9. Yet the Procedures provide, "No party in interest shall be allowed to conduct any discovery related to a PL/GL Claim prior to the initial Mediation Session. Any discovery allowed after the initial Mediation Session shall be determined by the Mediator in their sole discretion." Procedures, ¶ 28. This unnecessarily hinders claimants from meaningful development of their claims. If malpractice claims in their early stages were stayed, there may be little or no medical records or testimony developed nor expert reports generated, and the procedures do not give the plaintiffs the opportunity to gather such information, conduct necessary medical records discovery, or obtain the needed discovery from the medical professionals involved. The procedures require Plaintiffs to marshal all their evidence but make no allowance of time for such information to be generated where it is still needed and be subject to the sole discretion of a mediator who is chosen by Debtors in their sole discretion. This unfairly prejudices claimants in the presentation of their settlement proposals, and as a result, settlement proposals may not be meaningfully received or responded to by Debtors, insurers, MCARE, or other responsible parties.

8.      The proposed order should provide that PL/GL Claimant may request additional information from the Debtors and the applicable insurance carriers to assist in a good faith evaluation of any Debtor offer. Claimants should be allowed to take reasonable discovery of employees, affiliates, indemnified parties, and non-debtor defendants to discover if such parties have their own insurance unrelated to the Debtors. If the PL/GL Claimant requests additional information or documentation by the Response Deadline, the Debtors and the applicable insurance carriers should respond with information or documentation sufficient to permit the PL/GL Claimant to evaluate the basis for the Debtors' offer.

4

**C.      Claimants should not be burdened unnecessarily in any compelled mediation**.

9.      Claimants should not have to bear the cost of these forced mediations that are designed for the benefit of the Debtors. The costs of mediation should be allocated among the Debtors and the applicable insurers and re-insurers. No claimant should be financially penalized with respect to adherence to the proposed procedures, or otherwise, without further notice and opportunity to be heard and court order.

10.      Further, if the Debtors intend that malpractice victims or their representatives must travel outside of their cities in order to mediate, such a demand would be grossly unfair and expensive for claimants who have already suffered enough at the hands of the Debtor hospitals and their professionals. Mediation must occur either by video platform or if in person, then in the venue of the victim's lawsuit. Further, for purposes of involving Pennsylvania's state MCARE Fund, the mediation must occur in Pennsylvania. And the mediator chosen must be one who is familiar with the role that MCARE plays in Pennsylvania malpractice claims, and not just be some lone mediator that the Procedures Motion proposes for all mediations. Mediators should be chosen from a panel of select potential Pennsylvania mediators compiled by agreement of Debtors and AHC Claimants.

**D.      The Procedures should incentivize serious insurer participation and provide Claimants an escape hatch in certain circumstances.**

11.      If mediation and the claims resolution procedure fail, the stay should be automatically lifted to allow the AHC Claimant to proceed against insurance policies, state funds, and non-Debtor assets.

12.      The Procedures should result in settlement amounts to be paid to claimants in whole dollars, not bankruptcy dollars. If some party, like the DIP lenders, or Creditors Committee, object to a settlement payment successfully, or if an agreed upon settlement payment is reduced over the

objection of a Claimant, the Claimant should have the right to terminate the settlement. Also, if the case converts to Chapter 7 or a trustee is appointed, the Claimant should have the right to terminate the settlement.

**E.     Other issues yet to be addressed.**

13.     Other unanswered issues with the Procedures include:

a)  In some cases, the medical professional is alleged to have direct liability for which the hospital may only be vicariously liable. Will that professional be involved in the process?

b)  How will Prospect be able to respond and discuss any value or resolution if the doctor is not actively involved or is disputing liability or damages?

c)  Will the original defense attorney who had been defending the claim be participating?

d)  In Pennsylvania, serious cases will not be resolved unless MCARE participates and contributes. MCARE has said from time to time that they would participate in early mediation of cases but in practice, typically the Fund is unable to respond for a particular defendant unless there is a tender of the primary insurance for that defendant and the exchange of expert reports that will enable MCARE to evaluate the merits of the case.

e)  How will MCARE be educated as to the theories on liability and damages, which usually occurs when the case is more mature and evidence developed?

f)  What is RRG's position regarding whether it pays from dollar one on the primary coverages?

g)  Will the insurance layers above the SIR in the excess policies drop down?

h)  Will non-debtor defendants and their insurers participate in this process and if so, how?

i)  For those cases that have already been mediated and settlement amounts proposed by the insurers and/or MCare, another mediation should not be ordered.

j)  Some claims arose prior to the Prospect acquisition of Debtors in 2016 and may be covered by entirely different insurance unrelated to Debtors. If so, these cases should surely be allowed to proceed and not roped into this forced mediation process.

12.     The AHC Claimants reserve the right to raise such other and further objections

and arguments as may be necessary and appropriate.

## CONCLUSION

Absent resolution of the above issues, the Debtors' Claims Resolution Motion should be
denied.

Dated: May 20, 2025                     Respectfully submitted,

                                        **STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC**

                                        /s/ *Peter D'Apice*
                                        Sander L. Esserman
                                        State Bar No. 06671500
                                        Peter C. D'Apice
                                        State Bar No. 05377783
                                        2323 Bryan Street, Ste. 2200
                                        Dallas, TX 75201-2689
                                        Telephone: (214) 969-4900
                                        Facsimile: (214) 969-4999
                                        Email: esserman@sbep-law.com
                                                dapice@sbep-law.com

                                        **COUNSEL FOR AD HOC COMMITTEE OF
                                        MEDICAL MALPRACTICE CLAIMANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by
electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in
this case on May 20, 2025.

                                        /s/ *Peter D'Apice*
                                        Peter D'Apice