SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
    rpatel@sidley.com
    mquejada@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    wcurtin@sidley.com
    pventer@sidley.com
    anne.wallice@sidley.com

*Attorneys for the HCo Debtors and Debtors
in Possession*

*Proposed Attorneys for the PCo Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered)<br>(Emergency Hearing Requested) |

## HCO DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING (A) POSTPETITION FINANCING AND
## (B) THE USE OF CASH COLLATERAL; (II) GRANTING
## LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
## EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION
## TO PREPETITION LENDERS; AND (IV) GRANTING RELATED RELIEF

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. prevailing Central Time on August 4, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on the matters set forth in this motion on August 4, 2025, at 1:30 p.m. prevailing Central Time in Courtroom #1, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Suite 1254, Dallas, Texas 75242. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. The meeting code is 2304 154 2638. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judgejernigans-hearing-dates.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Prospect Medical Holdings, Inc. ("PMH") and its hospital-related debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "HCo Debtors") file this Motion (this "Motion"). In support of this Motion, the HCo Debtors will submit the *Declaration of Paul Rundell in Support of the HCo Debtors' Supplemental DIP Motion* (the "Rundell Declaration"), and to the extent necessary, the Debtors may introduce additional supporting testimony at the hearing. The HCo Debtors further state as follows:

## **PRELIMINARY STATEMENT**[2]

1.      This Motion should come as no surprise. The HCo Debtors have not hidden the fact that, due to sale processes that have taken longer than expected, they need access to additional liquidity. Two weeks ago, the HCo Debtors were before this Court seeking authorization to enter

---

[2]   Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the *Amended Final Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 698] (as in effect on such date, the "Final JMB DIP Order").

into the second amendment to the JMB DIP Facility (such amendment, the "Second Amendment")

and incur $30 million of additional debtor-in-possession financing (the "JMB DIP Upsize"),

financing which was anticipated by, and referenced in the *Order Granting Motion to

(A) Compromise Controversy with MPT and Junior DIP and (B) Granting Related Relief* [Docket

No. 1287] (the "9019/Junior DIP Order"). Even with the approval of the JMB DIP Upsize, the

HCo Debtors made clear at the hearing (the "July 7 Hearing"), that they would still need additional

financing due to the complexity and unanticipated length of these chapter 11 cases. *See* Hr'g Tr.

36:15-18, July 7, 2025.

2.     Accordingly, by this Motion, the HCo Debtors seek authorization to obtain

additional new-money postpetition financing and approval of their entry into a third amendment

to JMB DIP Facility (such facility, the "Supplemental JMB DIP). The Supplemental JMB DIP is

a superpriority senior secured term loan amendment consisting of $55 million of new money term

loan commitments, of which $15 million is proposed to be made available upon entry of the Interim

Order (as defined below). The HCo Debtors estimate that the Supplemental JMB DIP will provide

financing through the end of October to (a) enable the HCo Debtors to consummate the approved

sale transactions in Rhode Island and Pennsylvania, (b) finalize the sale processes in Connecticut,

and California, and (c) provide a pathway to confirmation of a chapter 11 plan. When the HCo

Debtors filed these chapter 11 cases, they reasonably anticipated: (i) immediately transitioning or,

in the alternative, closing the Pennsylvania Hospitals, *see* Hr'g Tr. 18:17-19:11, Jan. 14, 2025,

(ii) reviving the sale of the Connecticut hospitals to Yale, *see id.* at 19:11-23, and (iii) closing the

Rhode Island sale no later than mid-April 2025, *see* Hr'g Tr. 10:19-2, Feb. 12, 2025. These

expectations and good-faith estimations from the beginning of these cases have clearly not come

to pass: (i) the HCo Debtors continued to operate the Pennsylvania Hospitals for an additional

four months with the goal of a going-concern transaction, ultimately closing the hospitals in May 2025; (ii) the HCo Debtors were unable to revive the Yale transaction and began marketing their Connecticut assets anew; and (iii) the Rhode Island sale still has not closed due to regulatory issues (although the HCo Debtors are anticipate an end of August 2025 closing).  All these unexpected factors have combined to strain the Debtors' liquidity.

3.      At the same time the Debtors have made progress, including closing the Astrana sale, which allowed the Debtors to pay the existing JMB DIP Facility down by approximately $67 million and satisfy the secured claims of the PBGC in full.  Prior to the hearing on the Motion, the Debtor anticipates having stalking horse purchasers for its California and Connecticut operations. And on August 20, 2025, the Debtors will seek approval of their joint disclosure statement and hope to begin solicitation of a plan.

4.      As discussed below, the Debtors have been working to reach agreement either on alternative financing from MPT or on additional financing from JMB.  If those efforts to reach agreement are unsuccessful, the HCo Debtors' will demonstrate that at this point MPT is in a much better position than it was at the commencement of this case.  In addition to the aforementioned paydown of the JMB DIP and the $5.0 million per month in adequate protection it has received, the Debtors have entered into agreement for a sale of the Pennsylvania ASC/Imaging Sites at an aggregate purchase price of $50.3 million and anticipate having stalking horses for their California and Connecticut operations imminently.[3]  When the Court previously found that MPT was adequately protected, the HCo Debtors had ascribed $0 in value to the Pennsylvania hospital operations and there was extreme uncertainty related to the potential sale transactions in California

---

[3]    Critically, the Supplemental JMB DIP requires the full funding of the $15 million interim amount and the HCo Debtors' entry into a stalking horse agreement for California, in order to access the additional $40 million in financing.

4

and Connecticut.  The HCo Debtors' work over the past six months has resulted in additional value

for these Estates, including some which was never anticipated at the commencement of this case.

5.       With respect to the JMB DIP Upsize, when the HCo Debtors informed MPT in late

June that they were planning to access the additional $30 million in new-money financing in

accordance with the Settlement and Support Agreement, MPT initially objected but then provided

the HCo Debtors with an alternative: a term sheet for $30 million in substitute financing with no

fees.  In response, JMB committed to providing, at the HCo Debtors' option, the Supplemental

JMB DIP in addition to the JMB DIP Upsize.  Recognizing the value of the optionality of

committed additional financing from JMB, the HCo Debtors sought and received the Court's

approval to proceed with the Second Amendment and the JMB DIP Upsize [Docket No. 2477].[4]

The HCo Debtors did not, however, seek approval of the Supplemental JMB DIP at the July 7

Hearing.  Instead, the HCo Debtors laid out the path forward in simple terms: in the absence of

MPT's consent to the Supplemental JMB DIP, the HCo Debtors, MPT, and JMB would seek

approval from the Court.  *See* Hr'g Tr. 32:3-6, July 7, 2025.

6.       On July 17, 2025, the HCo Debtors received a term sheet from JMB summarizing

the proposed terms of the Supplemental JMB DIP, which the HCo Debtors shared with MPT and

the Committee shortly after receipt.  MPT then responded with its own term sheet (such term sheet,

the "MPT Term Sheet").  The HCo Debtors and MPT have engaged in discussions related to the

MPT Term Sheet, but the HCo Debtors ultimately determined that, as of the filing of this Motion,

the proposal from JMB was a better option for the HCo Debtors.  Notwithstanding the filing of

this Motion and the HCo Debtors' current determination that the JMB proposal is the better option

---

[4]     On July 21, 2025, MPT filed a *Notice of Appeal* [Docket No. 2574] with respect to the Court's order approving
the JMB DIP Upsize.  By this Motion, the HCo Debtors do not seek to address the appeal and hereby reserve all
rights and arguments in connection therewith.

at this time, the HCo Debtors will continue to engage on the terms of the financing with JMB, MPT, and the Committee.

7.      Considering the facts and circumstances, at this time, the proposed Supplemental JMB DIP provides the best financing available to the HCo Debtors as of the date of this Motion. As described herein, in the Rundell Declaration, and as the additional testimony the HCo Debtors will introduce at the upcoming hearing, the Supplemental JMB DIP contains terms that are the most favorable available to the HCo Debtors, are reasonable under the circumstances, and provide the HCo Debtors with necessary additional liquidity to continue (a) operating the hospitals, ensuring patient care, and avoiding imminent wind down as a result of the HCo Debtors' critical liquidity position, (b) paying employees who are essential to providing care to the HCo Debtors' patients, (c) paying ordinary course operating expenses necessary to support their operations, and to (d) (i) effectuating its ongoing value-maximizing sale transactions and (ii) negotiating the terms of a chapter 11 plan for the benefit of their creditors.  Further, the Supplemental JMB DIP (in addition to the MPT Term Sheet) was evaluated by the HCo Debtors' board of directors, who have been overseeing the HCo Debtors' restructuring efforts.  Accordingly, HCo Debtors respectfully request that the Court grant this Motion.

**RELIEF REQUESTED**

8.      By this Motion, the HCo Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order" and, together with the Interim Order, collectively, the "Supplemental JMB DIP Orders"),[5] granting, among other things, the following relief:

> (i)      authorizing the HCo Debtors (together with its affiliated Debtors, the "DIP Borrowers"), to enter into additional postpetition financing pursuant to the third amendment (such amendment, the "Third Amendment") to the *Senior*

---

[5]      The HCo Debtors will file the form of Final Order prior to the Final Hearing (as defined herein).

*Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement*, dated as of February 13, 2025, subject to the terms and conditions set forth in the Third Amended Agreement attached to the Interim Order as <u>Exhibit 1</u> (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the DIP Borrowers and JMB Capital Partners Lending, LLC, and/or its designees or its assignees (the "<u>DIP Lender</u>"), consisting of new money term loans in an aggregate principal amount of $55,000,000 from the DIP Lender, of which $15,000,000 will be available immediately upon entry of the Interim Order (the "<u>Initial Draw</u>"), with the remainder to be available subject to and following entry of the Final Order (the "<u>Delayed Draws</u>"), in each case in accordance with the terms of the Third Amendment, the other DIP Documents, and the Approved Budget (each as defined in the Final JMB DIP Order); and

(ii)     authorizing the HCo Debtors to execute, deliver, and perform under the DIP Credit Agreement, the Third Amendment, the Final JMB DIP Order, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the HCo Debtors to the DIP Lender on account of the JMB DIP Facility or granting or perfecting liens or security interests by any of the HCo Debtors in favor of and for the benefit of the DIP Lender, on account of the JMB DIP Facility, as the same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the HCo Debtors and the DIP Lender (collectively, the "<u>DIP Documents</u>"); and

(iii)    granting the DIP Lender all rights and obligations set forth and in accordance with the Final JMB DIP Order (as defined below).

## <u>JURISDICTION AND VENUE</u>

9.     The United States Bankruptcy Court for the Northern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    The legal predicates for the relief requested in this Motion are sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),

rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1 and 9013-1 of the Local Bankruptcy Rules for the Northern District of Texas (the "Local Bankruptcy Rules"), and the Procedures for Complex Cases in the Northern District of Texas.

11.    The HCo Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## **SUMMARY TERMS OF THE DIP DOCUMENTS**

12.    In accordance with Bankruptcy Rule 4001(b)–(d), the chart below summarizes material terms of the Supplemental JMB DIP.[6]

| Provision | Summary | Location |
|---|---|---|
| Third Amendment | The terms and conditions under the DIP Credit Agreement and the other DIP Documents remain in full force and effect, except to the extent such terms and conditions are amended, modified, or supplemented by the Third Amendment.<br><br>The Third Amendment and all definitive documentation related thereto must be reasonably satisfactory to the DIP Lender and the Borrowers. | DIP Credit Agreement, § 5.11 |
| Supplemental JMB DIP Amount | The DIP Lender commits to fund additional loans under the Third Amendment on the Third Amendment Effective Date in an aggregate principal amount of $55,000,000 (such amount, the "Supplemental JMB DIP Amount"). | DIP Credit Agreement, § 2 |
| Supplemental JMB | The additional loans under the Third Amendment in the amount of $55,000,000 (such commitment, the | DIP Credit Agreement, § 2 |

---

[6]    The following summary of the terms of the Supplemental JMB DIP is qualified entirely by the express terms of the referenced documents, including the Third Amendment and the Interim Order. If there are any inconsistencies between the summary below and such documents, the terms of such documents shall control. Capitalized terms used but not otherwise defined in this summary chart shall have the meanings ascribed to them in the Third Amendment or the Interim Order, as applicable.

| Provision | Summary | Location |
|---|---|---|
| DIP Loans | "Supplemental JMB DIP" and such loans, the "Supplemental JMB DIP Loans"), including up to $15,000,000 in additional term loans available on an interim basis, are subject to the terms of the Third Amendment.<br><br>Such amount may be reduced from time to time, including, without limitation, by the aggregate amount of Supplemental JMB DIP Loans funded by the DIP Lender. | |
| Conditions Precedent to Receive Supplemental JMB DIP | The following must be satisfied to access Supplemental JMB DIP Loans under the Supplemental JMB DIP:<br><br>i. The Court has entered the Final Order on or before August 10, 2025;<br><br>ii. the Third Amendment Effective Date has occurred;<br><br>iii. the conditions precedent under Section 3 of the Third Amendment are satisfied (or waived by the DIP Lender); and<br><br>iv. the Borrowers have satisfied the milestone(s) set forth in Section 7(b) of the Third Amendment, including entry into a stalking horse purchase agreement for the California assets acceptable to the DIP Lender in its reasonable discretion. | DIP Credit Agreement, § 3 |
| Supplemental Commitment Fee | The Borrowers shall pay to the DIP Lender an additional commitment fee equal to 4.0% of the total amount of the Supplemental JMB DIP (the "Supplemental Commitment Fee").<br><br>The Supplemental Commitment Fee shall be fully earned, non-refundable, and allowed upon execution of the Third Amendment, and shall be paid in accordance with the Third Amendment.<br><br>The DIP Credit Agreement automatically terminates if the Supplemental Commitment Fee is not fully earned, non-refundable, and allowed upon the occurrence of the Third Amendment Effective Date. | DIP Credit Agreement, § 2.8 |
| Supplemental Exit Fee | The Borrowers shall pay to the DIP Lender an additional exit fee equal to the sum of 6.0% of the total amount of the Supplemental JMB DIP (the "Supplemental Exit Fee").<br><br>The Supplemental Exit Fee shall be fully earned, non-refundable, and allowed upon execution of the Third | DIP Credit Agreement, § 2.8 |

| Provision | Summary | Location |
|---|---|---|
| | Amendment. The Supplemental Exit Fee will be paid consistent with the Third Amendment terms.<br><br>The DIP Credit Agreement automatically terminates if the Supplemental Exit Fee is not fully earned, non-refundable, and allowed upon the occurrence of the Third Amendment Effective Date. | |
| Priority and Security | The Borrowers' obligations under the Third Amendment constitute DIP Obligations and are secured by the DIP Liens, DIP Superpriority Claims, and all other claims, rights, and terms applicable to the DIP Obligations under the Final JMB DIP Order and the other DIP Documents. | DIP Credit Agreement, § 8 |
| Approval of a Final Order | The Court shall enter a final, stay-exempt, and non-appealable order, in form and substance satisfactory to the DIP Lender in its reasonable discretion, authorizing and approving, on a final basis the DIP Credit Agreement and the terms and conditions of the Third Amendment (the "Final Order").<br><br>The Interim Order must be entered by the Court on or before August 10, 2025. Otherwise, the Third Amendment, and any other applicable DIP Documents automatically terminate and have no further force and effect. | DIP Credit Agreement, § 7 |
| Third Amendment Effective Date | The Third Amendment becomes effective only upon satisfaction in full, in a manner satisfactory to the DIP Lender, of the following conditions (the first date upon which all such conditions shall have been satisfied, the "Third Amendment Effective Date"):<br><br>i.   the representations and warranties contained in the Third Amendment and in each other DIP Documents are true and correct in all material respects in accordance with the applicable terms;<br><br>ii.   no Default or Event of Default has occurred and will continue on the Third Amendment Effective Date or result from the Third Amendment becoming effective in accordance with its terms;<br><br>iii.   the DIP Lender has received a copy of the Third Amendment, duly executed by the Borrowers and the DIP Lender; and<br><br>iv.   the Third Amendment has been delivered to the Committee (as defined in the Final JMB | DIP Credit Agreement, § 3 |

| Provision | Summary | Location |
|-----------|---------|----------|
| | DIP Order), the United States Trustee for the Northern District of Texas, and the Prepetition Secured Parties (as defined in the Final JMB DIP Order) and filed on the docket of the Court in accordance with the Final JMB DIP Order. | |

13.     The Supplemental JMB DIP is the product of good-faith, arm's-length negotiations among the HCo Debtors and the DIP Lender, each of which was represented by experienced counsel and financial advisors.  The HCo Debtors and their advisors actively negotiated the terms and provisions of the Supplemental JMB DIP, including on material terms of the proposed financing, ultimately resulting in the deal embodied in the DIP Credit Agreement.

14.     The HCo Debtors respectfully submit that the foregoing material terms are appropriate and necessary components of the agreement with the DIP Lender regarding the Supplemental JMB DIP.  As set forth in greater detail herein, granting the HCo Debtors' requested relief is critical to patient care and the continued operation of the HCo Debtors' businesses and consummation of the sales processes and these chapter 11 cases.  Accordingly, the material provisions in the DIP Credit Agreement should be approved.

**THE HCO DEBTORS' CURRENT POSTPETITION FINANCING**[7]

15.     On February 18, 2025, the Court entered the Final JMB DIP Order authorizing the HCo Debtors to obtain a non-amortizing priming super-priority senior secured postpetition credit facility in an aggregate principal amount of up to $100 million (the "JMB DIP Facility") and (b) the

---

[7]     A summary of the Debtors' prepetition capital structure is provided in paragraphs 15–20 of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 48] (the "JMB DIP Motion").

*Amended Final Order (I) Authorizing (A) Postpetition ABL Financing, and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 695] (as in effect on such date, the "<u>Final eCapital DIP Order</u>" and together with the Final JMB DIP Order, the "<u>Final DIP Orders</u>").

16.    On March 20, 2025, the Court entered the 9019/Junior DIP Order (i) approving the Settlement and Support Agreement and (ii) authorizing the HCo Debtors to obtain postpetition financing pursuant to a $25 million non-amortizing priming, super-priority secured term loan facility provided by MPT (the "<u>Junior DIP Facility</u>").

17.    On July 9, 2025, in accordance with the terms of the Final JMB DIP Order and the Settlement and Support Agreement, the Court entered the *Order Authorizing the Debtors' Entry Into the DIP Upsize* [Docket No. 2477] (the "<u>JMB DIP Upsize Order</u>"), authorizing the HCo Debtors to enter into the Second Amendment and access the JMB DIP Upsize.

## <u>THE HCO DEBTORS' NEED FOR POSTPETITION FINANCING</u>

18.    Throughout the course of these chapter 11 cases, the HCo Debtors have faced several challenges, including, among others, the closure of their Pennsylvania hospitals.  After months of intensive work and negotiations with all stakeholders, the HCo Debtors and their advisors were unable to identify a viable acquirer for the HCo Debtors' Pennsylvania hospitals and were left with no other option other than closing the hospitals.  Following the cessation of operations at the Pennsylvania hospitals, the HCo Debtors solicited and received interest in certain non-hospital assets, including the Pennsylvania ASC/Imaging Sites (as referenced above) and real property.  Despite initially estimating that the transition of all Pennsylvania hospital operations (including the Pennsylvania ASC/Imaging Sites) would be accomplished on a cash-free basis, the HCo Debtors were able to successfully sell the Pennsylvania ASC/Imaging Sites (the

"Pennsylvania ASC/Imaging Sites Transaction") for an aggregate purchase price of $50.3 million. *See Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and Sale of the Pennsylvania ASC/Imaging Sites Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) the Assignment of Certain Permits; and (II) Granting Related Relief* [Docket No. 2412].   The HCo Debtors anticipate closing the Pennsylvania ASC/Imaging Sites Transaction on July 31, 2025.   Additionally, the HCo Debtors have been engaged in an ongoing marketing process for both certain real property and personal property in Pennsylvania, a process which the HCo Debtors expect will bring in additional value to the estate.

19.     In parallel, the HCo Debtors and their advisors have been working tirelessly to facilitate the other sale processes for their Rhode Island, California, and Connecticut hospital operations.   The Rhode Island sale transaction, which was approved by the Court on February 12, 2025 [Docket No. 606] and was expected to close in April 2025, has not yet closed due to various buyer issues and other regulatory matters.   However, the HCo Debtors anticipate that the Rhode Island sale transaction will successfully close at the end of August 2025.   While the overall California and Connecticut sale process has also taken much more time than originally estimated, the HCo Debtors have remained focused on balancing the necessity to monetize these assets with allowing sufficient time for interested parties to make well-informed and value-maximizing bids. The HCo Debtors have made substantial progress towards resolving any outstanding roadblocks and believe that they very close to naming stalking horse bidders and progressing the sale transactions.   In fact, the HCo Debtors anticipate that, as of the date this Motion will be heard, they will have a designated stalking horse bidders for their California assets, which is a precondition to receiving funds under the Supplemental JMB DIP.

20.     These chapter 11 cases have continued for almost seven months—much longer than originally estimated.  The HCo Debtors estimate that, as of August 4, 2025, they will have *de minimis* cash on hand (approximately $7 million), and, without access to the Supplemental JMB DIP, will completely run out of cash on at or around August 8, 2025.  The HCo Debtors' current budget, which has been shared with MPT and the Committee, and has been carefully developed and evaluated by the HCo Debtors' financial advisor and investment banker, will be attached to the Rundell Declaration as Exhibit A.

21.     Simply put, immediate and irreparable harm will be caused to the HCo Debtors and their estates if immediate supplemental financing is not obtained.  Therefore, the HCo Debtors have a critical need to access the Supplemental JMB DIP in order to continue the incredible efforts already expended in these chapter 11 cases and effectuate the sale transactions for the HCo Debtors' various hospitals, consummate a chapter 11 plan, and ensure a smooth transition out of bankruptcy.  The terms of the Supplemental JMB DIP taken as a whole are fair, reasonable, and are the most favorable terms currently available to the HCo Debtors under the circumstances.

## THE SUPPLEMENTAL JMB DIP SHOULD BE APPROVED

**I.     The HCo Debtors Should Be Authorized to Obtain the Supplemental JMB Facility through the DIP Documents.**

22.     Here, the HCo Debtors are not seeking entry into an entirely new DIP facility. Instead, the HCo Debtors seek a second upsize to its existing JMB DIP Facility, substantially on the same terms provided under the original DIP Term Loan Agreement, subject to the modifications set forth herein.  Pursuant to the Final JMB DIP Order, the Court has already found that, with respect to the JMB DIP Facility and the DIP Documents, the HCo Debtors have satisfied the requirements for relief under section 364 of the Bankruptcy Code, which authorizes a debtor

to obtain secured or superpriority financing under certain circumstances. The HCo Debtors hereby

incorporate by reference the arguments and support set forth in the JMB DIP Motion.

### A. Entering into the Supplemental JMB DIP Is a Sound Exercise of Business Judgment.

23. The HCo Debtors' determination to move forward with the Supplemental JMB DIP

is a sound exercise of their business judgment following an arm's-length process and careful

evaluation of their alternatives. Specifically, and in the face of severely limited cash on hand, the

HCo Debtors require additional financing to close the proposed sales and fund the costs of these

chapter 11 cases in preparation for an orderly winddown, following consummation of the sale

transactions. Accordingly, the HCo Debtors negotiated the DIP Documents, including the Third

Amendment, with the DIP Lender in good faith, at arm's length, and with the assistance of their

advisors. The HCo Debtors believe that they have obtained the best financing available under the

current circumstances in an amount sufficient to fund operations and the costs of these chapter 11

cases through the end of October, and on reasonable terms. Accordingly, the Court should

authorize the HCo Debtors' entry into the DIP Documents, including but not limited to the Third

Amendment, as a reasonable exercise of the HCo Debtors' business judgment.

### B. The HCo Debtors Should Be Authorized to Obtain the Supplemental JMB DIP on a Secured and Superpriority Basis.

24. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured

credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course

of business, and (c) obtaining credit with specialized priority or with security. *See* 11 U.S.C. § 364.

If a debtor in possession cannot obtain postpetition credit on an unsecured basis, pursuant to

section 364(b) of the Bankruptcy Code, a court may authorize a debtor to obtain credit or to incur

debt, the repayment of which is entitled to superpriority administrative expense status, or is secured

by a senior lien on unencumbered property, or a junior lien on encumbered property, or a

combination of the foregoing. *See* 11 U.S.C. § 364. In addition, pursuant to section 364(d) of the

Bankruptcy Code, a court may authorize a debtor to obtain postpetition credit secured by a lien

that is equal or senior in priority to existing liens on encumbered property (*i.e.*, a "priming" lien)

when a debtor is unable to obtain credit on other terms and the interests of existing lienholders are

adequately protected, or if the existing lienholders consent to such priming.

25.      As was authorized under the Final JMB DIP Order, the HCo Debtors propose that

the obligations under the Third Amendment constitute DIP Obligations and therefore are secured

by the DIP Liens, DIP Superpriority Claims, and all other claims, rights, and terms applicable to

the DIP Obligations under the Final JMB DIP Order and the other DIP Documents. Therefore, the

approval of the Supplemental JMB DIP is consistent with the Final JMB DIP Order and governed

by both sections 364(c) and 364(d) of the Bankruptcy Code.

### i.    The HCo Debtors Satisfy the Condition Under Section 364(c) to Obtain Financing on a Senior Secured and Superpriority Basis.

26.      In the event that a debtor demonstrates that it is unable to obtain unsecured credit

allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code,

section 364(c) provides that a court may authorize the obtaining of credit or the incurring of debt

on a senior secured and superpriority basis. *See* 11 U.S.C. § 364(c).

27.      In determining whether to authorize financing under 364(c) of the Bankruptcy

Code, courts will consider whether (i) the debtor's efforts to obtain unsecured credit under

sections 364(a) and 364(b) of the Bankruptcy Code, (ii) the credit transaction benefits the debtor

and is necessary to preserve estate assets, and (iii) the terms of the credit transaction are fair,

reasonable, and adequate, given the circumstances of the debtor and proposed lender. *In re

Republic Airways Holdings Inc*., No. 16-10429 (SHL), 2016 WL 2616717, at *11 (Bankr.

S.D.N.Y. May 4, 2016); *In re Ames Dep 't Stores, Inc*., 115 B.R. at 39–40.

28.     *First*, to show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) of the Bankruptcy Code.  *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). The HCo Debtors have not been able to obtain unsecured credit or alternative DIP financing on better terms than those reflected in the DIP Credit Agreement, and there are no better offers available to the HCo Debtors or before the Court at this time.

29.     *Second*, the Supplemental JMB DIP is critical to these chapter 11 cases.  As previously discussed, the HCo Debtors will have approximately $7 million of cash on August 4, 2025, and run out of cash on or around August 8, 2025.  In the absence of the Supplemental JMB DIP, the HCo Debtors anticipate critically low liquidity levels, threatening the ongoing sale processes and, more importantly, their ability to pay their employees and vendors and to continue operations.  *Id.*  The Supplemental JMB DIP has been sized to provide the HCo Debtors with liquidity to continue the sale processes, the ongoing operation of their businesses, satisfy wage and salary obligations for their 9,700 employees, and pursue confirmation of these chapter 11 cases. *Id.* ¶ 7.

30.     Considering the foregoing, the Court should authorize the HCo Debtors to provide the DIP Lender with superpriority administrative expense status in accordance with the DIP Credit Agreement and consistent with the Final JMB DIP Order, as provided for in section 364(c)(1) of the Bankruptcy Code.

### ii.  The HCo Debtors Should Be Authorized to Obtain Priming Liens Under Section 364(d) of the Bankruptcy Code.

31.    Section 364(d) provides that debtors may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."  11 U.S.C. § 364(d)(1).  The HCo Debtors may incur "priming" liens under the Supplemental JMB DIP if they are unable to obtain unsecured or junior secured credit and either (a) the affected secured lenders consent, or (b) adequate protection exists for such priming lien.

32.    Here, the Court previously approved the adequate protection package provided to the Prepetition Secured Parties (as defined in the Final JMB DIP Order) and MPT pursuant to the Final JMB DIP Order.  As discussed herein, when the Court previously found that MPT was adequately protected, the HCo Debtors had ascribed $0 in value to the Pennsylvania hospital operations and there was extreme uncertainty related to the potential sale transactions in California and Connecticut.  Now, however, the HCo Debtors expect approximately $50.3 million in gross proceeds at the closing the Pennsylvania ASC/Imaging Sites Transaction.  Additionally, the HCo Debtors anticipate that, by the time this Motion is heard, they will have designated stalking horse bidders for the sales of their California and Connecticut hospital operations.

33.    Accordingly, if MPT's interests were adequately protected at the time of entry of the Final JMB DIP Order, the same must be true now.  Therefore, the HCo Debtors submit that the requirement of section 364(d) of the Bankruptcy Code is satisfied.

## II.    Immediate Access to the Supplemental JMB DIP Should Be Approved.

34.    The Court may grant interim relief in respect of a motion filed pursuant to section 363(c) or 364 of the Bankruptcy Code if, as here, interim relief is "necessary to avoid

immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). In examining requests for interim relief under this rule, courts generally apply the same business judgment standard applicable to other business decisions. *See In re Ames Dep't Stores*, 115 B.R. at 40.

35.    Here, the HCo Debtors and their estates will suffer immediate and irreparable harm if the interim relief requested herein is not granted promptly. As set forth in the Rundell Declaration, the HCo Debtors have an immediate need for additional liquidity through the Supplemental JMB DIP in order to continue the sale processes, the ongoing operation of their businesses, satisfy wage and salary obligations for their employees, and pursue confirmation of these chapter 11 cases. The Supplemental JMB DIP provides essential funding to the HCo Debtors' chapter 11 cases, which will not be able to continue, much less pursue and consummate the sale transactions, without the additional financing. Accordingly, the HCo Debtors request the Court grant the interim relief requested herein to be effective immediately.

## EMERGENCY CONSIDERATION

36.    The HCo Debtors request emergency consideration of this Motion. As described herein, the HCo Debtors believe that immediate relief is necessary to avoid irreparable harm to the HCo Debtors and their estates.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

37.    The HCo Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the Rundell Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the HCo Debtors' ongoing operations and value-maximizing process. Accordingly, ample cause exists to justify the waiver

of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **RESERVATION OF RIGHTS**

38.    Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the HCo Debtors; (b) a waiver of the HCo Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the HCo Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the HCo Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the HCo Debtors' or any party in interest's rights to subsequently dispute such claim.

## **NOTICE**

39.    Notice of this Motion has been provided by email, facsimile, or overnight courier to the Complex Service List [Docket No. 2190].  The HCo Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

20

WHEREFORE, the HCo Debtors request entry of the Interim Order substantially in the form attached hereto granting the relief requested herein and granting such other relief as is just and proper.

Dated:  July 26, 2025
Dallas, Texas

*/s/ Thomas R. Califano*

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               rpatel@sidley.com
               mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         wcurtin@sidley.com
               pventer@sidley.com
               anne.wallice@sidley.com

*Attorneys for the HCo Debtors and Debtors in Possession*

*Proposed Attorneys for the PCo Debtors and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on July 26, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Thomas R. Califano*
Thomas R. Califano