| | |
|---|---|
| SIDLEY AUSTIN LLP<br>Thomas R. Califano (24122825)<br>Rakhee V. Patel (00797213)<br>Maegan Quejada (24105999)<br>2021 McKinney Avenue, Suite 2000<br>Dallas, Texas 75201<br>Telephone:  (214) 981-3300<br>Facsimile:  (214) 981-3400<br>Email:  tom.califano@sidley.com<br>           rpatel@sidley.com<br>           mquejada@sidley.com | SIDLEY AUSTIN LLP<br>William E. Curtin (admitted *pro hac vice*)<br>Patrick Venter (admitted *pro hac vice*)<br>Anne G. Wallice (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:  (212) 839-5300<br>Facsimile:  (212) 839-5599<br>Email:  wcurtin@sidley.com<br>           pventer@sidley.com<br>           anne.wallice@sidley.com |

*Attorneys for the HCo Debtors and the
PCo Debtors and Debtors in Possession*

*Proposed Attorneys for the TopCo
Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered) |

**DEBTORS' EMERGENCY MOTION
FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT
AGREEMENT WITH YALE NEW HAVEN HEALTH SERVICES
CORPORATION AND MPT PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

> **Emergency relief has been requested. Relief is requested not later than 9:30 a.m. (prevailing Central Time) on October 10, 2025. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on October 10, 2025, at 9:30 a.m. (prevailing Central Time) in Courtroom #1, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Suite 1254, Dallas, Texas 75242. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. The meeting code is 2304 154 2638. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judgejernigans-hearing-dates.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Prospect Medical Holdings, Inc. ("PMH") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion (this "Motion").

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) approving the terms of the settlement agreement (the "Settlement Agreement"), attached as Exhibit 1 to the Order, between (i) the Debtors, (ii) Yale New Haven Health Services Corporation ("YNHH"), and (iii) Medical Properties Trust, Inc., MPT of Manchester PMH, LLC, MPT of Rockville PMH, LLC, and MPT of Waterbury PMH, LLC (collectively, "MPT," and together with the Debtors and YNHH, the "Parties"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (b) granting related relief.

2. In support of this Motion, the Debtors rely upon and incorporate the *Declaration of Paul Rundell in Support of the Debtors' Motion for Entry of an Order (I) Approving a Settlement Agreement With YNHH and MPT Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* (the "Rundell Declaration"), filed contemporaneously herewith. The Debtors also rely on and incorporate by reference the *Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 41] (the "HCo First Day Declaration").[2]

**PRELIMINARY STATEMENT**[3]

3. YNHH, MPT, and the Debtors have reached an agreement to fully and finally resolve, compromise, and settle the disputes between them including, without limitation, any disputes arising out of or related to YNHH's Motion to Lift Stay and the Debtors' Motion to Assume in the Debtors' chapter 11 cases, and any claims or counterclaims asserted by the Parties in the lawsuit pending in the Connecticut Superior Court (the "Connecticut State Court," and such lawsuit, the "Connecticut Litigation"), without any admission of liability or concession of the validity of the positions or arguments advanced by each other.

4. Following mediation with Judge Harlin D. Hale among (a) the Debtors; (b) YNHH; (c) MPT; (d) the Official Committee of Unsecured Creditors (the "Committee"); (e) the City of Waterbury; and (f) the State of Connecticut, in its capacity as an observer (collectively, the "Mediation Parties"), the Debtors and YNHH announced at a status conference before this Court on September 16, 2025 (the "Status Conference") that they had reached a resolution in principle,

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Rundell Declaration, HCo First Day Declaration, or Settlement Agreement, as applicable.

[3] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed thereto in the remainder of the Motion.

with the definitive documentation to come at a later date.[4] Since then, the Parties have been working to memorialize the terms of the settlement and, on September 26, 2025, the Parties executed the Settlement Agreement. The Settlement Agreement provides that YNHH will pay $45,000,000 in cash to the Debtors to settle the disputes between them.

5. In addition to this financial benefit, the Settlement Agreement provides other benefits to the Debtors and the stakeholders in these cases. It resolves time-consuming and expensive litigation between the Debtors and YNHH, allowing the Debtors and their advisors to better focus on other pressing issues in these chapter 11 cases, including confirmation of a chapter 11 plan. Also, it provides clarity to the Debtors and potential bidders in connection with the Debtors' ongoing sale process for the Debtors' CT Assets.

6. As further described below, entry into and implementation of the Settlement Agreement is in the best interests of the Debtors and their estates and satisfies the requirements under Bankruptcy Rule 9019 and applicable law. The Settlement Agreement is the result of good-faith negotiations among the Debtors, MPT, and YNHH, during which the Committee was present and informed. The terms of the Settlement Agreement are fair and reasonable and the decision to enter into the Settlement Agreement represents a sound exercise of the Debtors' business judgment.

7. For these reasons, and as further described below, the Court should approve the Settlement Agreement.

**JURISDICTION AND VENUE**

8. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of*

---

[4] *See* Hr'g Tr. 4:12-14; 6:2-3, September 16, 2025.

*Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The legal predicates for the relief requested in this Motion are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Bankruptcy Rules.

10. The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**A. General Background**

11. The Debtors and their non-Debtor affiliates (collectively, the "Company") are significant providers of coordinated regional healthcare services in multiple states. The Company's business can be broadly divided into two segments: (1) hospital operations, which consist of, among other things, the ownership and operation of 16 acute care and behavioral hospitals, providing a wide range of inpatient and outpatient services spanning multiple states (collectively, "HCo"), and (2) prior to the Astrana Sale (as defined below), physician-related services, including certain owned and managed medical groups, independent physician associations, managed services organizations and risk taking entities (collectively, "PhysicianCo" or "PCo").

12. Upon the closing of the Astrana Sale on July 1, 2025, the ownership of former PhysicianCo affiliates Prospect Health Plan, Inc., a Knox-Keene licensed entity, and Alta Newport Hospital, LLC dba Foothill Regional Medical Center, a licensed acute hospital, were transferred to Astrana. The remaining PhysicianCo entities have ceased operations and no longer employ any employees.

13. Beginning on January 11, 2025 (the "Petition Date"), the HCo Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court. A detailed description of the HCo Debtors and their business, and the facts and circumstances of the HCo Debtors' chapter 11 cases, is set forth in greater detail in the HCo First Day Declaration.

14. On January 29, 2025, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed the Official Unsecured Creditors' Committee [Docket No. 295].

15. On January 30, 2025, the U.S. Trustee appointed Suzanne Koenig as the patient care ombudsman (the "Ombudsman") in these chapter 11 cases [Docket No. 325].

16. On July 7, 2025 (the "PCo Petition Date), each of the PCo Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

17. On September 19, 2025 (the "TopCo Petition Date"), each of the TopCo Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

18. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 93, 2473].

B. **The Connecticut Litigation**

19. Beginning in 2021, the Debtors launched a robust marketing and sale process for their New Jersey, Rhode Island, and Connecticut hospitals. *See* HCo First Day Decl. ¶ 10. On October 5, 2022, PMH and certain of its Connecticut affiliates (the "CT Debtors"), as sellers, and YNHH, as buyer, entered into an Asset Purchase Agreement (the "CT APA") for the sale of the Debtors' three Connecticut-based hospitals and their related medical facilities (the "CT Assets") in exchange for $435 million in cash, subject to certain adjustments. *Id.* ¶ 76.

20. In May 2024, YNHH filed a lawsuit in the Connecticut State Court seeking to be released from its obligation to acquire the CT Assets for the reasons stated in the Second Amended Complaint.[5] *Id.* ¶ 77.

21. On June 6, 2024, the CT Debtors filed an application for prejudgment remedy against YNHH, seeking prejudgment attachment of YNHH's property sufficient to secure the purchase price under the CT APA of $435 million.[6]

22. The Connecticut State Court entered an order (the "PJR Order") approving a stipulation between the CT Debtors and YNHH pursuant to which YNHH agreed to "maintain an aggregate balance in the Subject Account sufficient to fund the closing of the transaction if so

---

[5] *See Yale New Haven Health Services Corporation's Reservation of Rights to Debtors' Motion for Entry of an Order Approving Bidding Procedures for the California and Connecticut Assets* [Docket. No. 1143]; *see also* Second Am. Complaint at 7-14, *Yale New Haven Health Servs. Corp. v. Prospect Med. Holdings, Inc.*, No. HHD-CV24- 6184328-S (Conn. Super. Ct. Oct. 22, 2024) ("Second Am. Complaint").

[6] Application for Prejudgment Remedy, *Prospect Med. Holdings, Inc. v. Yale New Haven Health Servs. Corp.*, No. HHD-CV24-5083574-S (Conn. Super. Ct. June 6, 2024).

ordered, provided that [the CT Debtors] agrees that a trial on the merits will occur in December 2024."[7]

23. On January 22, 2025, the CT Debtors removed the Connecticut Litigation to the U.S. District Court for the District of Connecticut (the "Connecticut Federal Court") and then sought to transfer the Connecticut Litigation to this Court.[8] YNHH filed a motion for abstention and equitable remand requesting that the Connecticut Federal Court remand the Connecticut Litigation to the Connecticut State Court.[9] On July 22, 2025, the Connecticut Federal Court entered an order granting YNHH's motion to remand the Connecticut Litigation to the Connecticut State Court and denying the CT Debtors' motion to transfer (such order, the "Remand Order").[10] The Connecticut Litigation was then remanded to the Connecticut State Court.

C. **Bankruptcy Court Proceedings and the Mediation**

24. On August 4, 2025, YNHH filed the *Yale New Haven Health Services Corporation's Motion from the Automatic Stay to Proceed to Summary Judgment in the State Law Contract Action* [Docket No. 2722] (the "Motion to Lift Stay"), seeking to permit the Connecticut State Court to decide YNHH's pending summary judgment motion declaring that it has no

---

[7] Stipulation and [Proposed] Order; Order at 3, *Prospect Med. Holdings, Inc. v. Yale New Haven Health Servs. Corp.*, No. HHD-CV24-5083574-S (X07) (Conn. Super Ct., July 5, 2024; Aug. 13, 2024). Though trial did not occur in December 2024, the CT Debtors and YNHH have not sought any modification of the PJR Order and an aggregate balance sufficient to fund the closing of the transaction continues to be maintained in the Subject Account.

[8] The removed case is styled *Yale New Haven Health Services Corporation v. Prospect Medical Holdings, Inc., et al.*, Case No. 3:25-cv-00105-MPS (D. Conn.).

[9] Pl.'s Motion for Abstention and Equitable Remand, Dkt. No. 11, *Yale New Haven Health Services Corporation v. Prospect Medical Holdings, Inc., et al.*, Case No. 3:25-cv-00105-MPS (D. Conn. Jan. 28, 2025).

[10] Ruling on Plaintiff's Motion to Remand and Defendant's Motion to Transfer, Case No. 3:25-cv-00105-MPS (D. Conn. July 22, 2025).

obligation to close on the sale of the Debtors' CT Assets due to the CT Debtors' alleged breaches of the CT APA.

25. On August 18, 2025, the Debtors filed a motion to assume the CT APA [Docket No. 2855] (the "Motion to Assume") and the *Debtors' Objection to Motion for Relief from Automatic Stay Filed by Yale New Haven Health Services Corporation* [Docket No. 2857] (the "Objection to Motion to Lift Stay").

26. At a hearing on August 20, 2025, to consider the Motion to Lift Stay, the Court adjourned consideration of the Motion to Lift Stay to September 23, 2025 (the "September 23 Hearing"), to be heard in conjunction with the Motion to Assume. The Court also suggested that the Debtors, YNHH, and certain other parties attempt to mediate the issues prior to the September 23 Hearing.[11] The Debtors later adjourned the September 23 Hearing to October 6, 2025.

27. Accordingly, on September 5, 2025, the Court entered an *Agreed Order Regarding Mediation* [Docket No. 3068], directing the Mediation Parties to participate in a mediation on September 15, 2025 to resolve the issues presented by the Motion to Lift Stay and Motion to Assume (the "Mediation").

## THE SETTLEMENT AGREEMENT

28. After arm's-length negotiations at the Mediation, the Debtors and the Mediation Parties reached an agreement in principle, embodied in the Settlement Agreement, to fully and finally resolve all disputes between the Debtors, MPT, and YNHH, including with respect to the Motion to Lift Stay, the Motion to Assume, and the Connecticut Litigation, subject to the Court's approval of the Settlement Agreement.

---

[11] *See* Hr'g Tr. 135:14-15, August 20, 2025.

29. The key terms of the settlement, as set forth in the Settlement Agreement, are as follows:[12]

| Provision | Summary Description |
|---|---|
| **Settlement Payment** | Within three (3) business days after the Effective Date,[13] YNHH will pay $45,000,000 to the Debtors (the "Settlement Payment"). |
| **Mutual Releases** | Debtors. Each of the Prospect Parties for itself and for each of the other Debtor Persons hereby remises, waives, releases and forever discharges, as of the Effective Date, each and all of the YNHH Persons from any and all claims, debts, demands, allegations, actions, causes of action, counterclaims, suits, duties, dues, interest, sum and sums of money, bills, accounts, accountings, reckonings, bonds, special fees, indemnities, exonerations, covenants, contracts, controversies, agreements, promises, doings, omissions, trespasses, variances, damages, judgments, extents, costs, expenses, losses, exposures, executions, obligations and liabilities of any kind whatsoever, whether in law, equity, tort or otherwise and whether or not presently known (and including, without limitation, any that are unknown or unsuspected) that any Debtor Person has or ever had, may have, could have asserted, or hereafter can, shall or may have (from the beginning of the world to the Dismissal Effective Date) against any or all of the YNHH Persons based upon, consisting of, resulting from, in connection with, arising out of or related, directly or indirectly, to the APA, MPT Master Agreement, State Law Contract Action, Lift Stay Motion, Assumption Motion or other Subject Matters (collectively, "Debtor Released Claims"), except only that the YNHH Persons are not released from any express obligations contained in this Agreement.<br><br>YNHH. YNHH for itself and for each of the other YNHH Persons hereby remises, waives, releases and forever discharges, as of the Effective Date, each and all of the Debtor Persons and MPT Persons from any and all claims, debts, demands, allegations, actions, causes of action, counterclaims, suits, duties, dues, interest, sum and sums of money, bills, accounts, accountings, reckonings, bonds, special fees, indemnities, exonerations, covenants, contracts, controversies, agreements, promises, doings, omissions, trespasses, variances, damages, judgments, extents, costs, expenses, losses, exposures, executions, obligations and liabilities of any kind whatsoever, whether in law, equity, tort or otherwise and whether or not presently known (and including, without limitation, any that are unknown or unsuspected) that any YNHH Person has or ever had, may have, could have asserted, or hereafter can, shall or may have (from the beginning of the world to the Dismissal Effective Date) against any or all of the Debtor Persons or MPT Persons based upon, consisting of, resulting from, in connection with, arising out of or related, directly or indirectly, to the APA, MPT Master Agreement, State Law Contract Action, Lift Stay Motion, Assumption Motion or other Subject Matters (collectively, "YNHH Released Claims"), except only that the Debtor Persons and MPT Persons are not released from any express obligations contained in this Agreement. |

---

[12] The summary of the Settlement Agreement set forth in this section is qualified in its entirety by the provisions of the Settlement Agreement. To the extent there exist any inconsistencies between this summary and the Settlement Agreement, the Settlement Agreement shall govern.

[13] The "Effective Date" means the date on which the Bankruptcy Court enters an order approving the Motion in form and substance acceptable to the Parties that is: (i) in full force and effect and not subject to any stay and (ii) is no longer subject to reversal or modification on appeal.

| | |
|---|---|
| | MPT. MPT for itself and for each of the other MPT Persons hereby remises, waives, releases and forever discharges, as of the Effective Date, each and all of the YNHH Persons from any and all claims, debts, demands, allegations, actions, causes of action, counterclaims, suits, duties, dues, interest, sum and sums of money, bills, accounts, accountings, reckonings, bonds, special fees, indemnities, exonerations, covenants, contracts, controversies, agreements, promises, doings, omissions, trespasses, variances, damages, judgments, extents, costs, expenses, losses, exposures, executions, obligations and liabilities of any kind whatsoever, whether in law, equity, tort or otherwise and whether or not presently known (and including, without limitation, any that are unknown or unsuspected) that any MPT Person has or ever had, may have, could have asserted, or hereafter can, shall or may have (from the beginning of the world to the Dismissal Effective Date) against any or all of the YNHH Persons based upon, consisting of, resulting from, in connection with, arising out of or related, directly or indirectly, to the APA, MPT Master Agreement, State Law Contract Action, Lift Stay Motion, Assumption Motion or other Subject Matters (collectively, "MPT Released Claims"), except only that the YNHH Persons are not released from any express obligations contained in this Agreement. |
| **Notices of Dismissal** | In exchange for the Settlement Payment to be paid to the Debtors pursuant to the terms of the Settlement Agreement, YNHH and the Debtors shall execute and file a stipulation of dismissal with prejudice of the Connecticut Litigation. |
| **Approval of Settlement and Withdrawal of Motions** | Within two business days after the Execution Date, Prospect shall cause to be filed with the Court the Motion, which shall seek approval of the Settlement Agreement and result in the approval of the withdrawal of the Motion to Lift Stay and Motion to Assume. |

30.     The Debtors believe that terms of the Settlement Agreement are fair and reasonable[14] and have determined that the benefits of the Settlement Agreement outweigh the cost to the Debtors' estates of pursuing the claims and defenses against YNHH.[15]  Specifically, the Settlement Agreement results in a $45 million cash payment that will be available for distribution to the Debtors' estates, providing immediate and certain value that would otherwise be subject to the risks, delays, and expense of litigation, thereby preserving estate value.[16]  The Settlement Payment will be distributed pursuant to the recovery waterfall (the "Recovery Waterfall") set forth in the *Order (A) Approving Settlement with MPT and Junior DIP and (B) Granting Related Relief* [Docket No. 1287].

---

[14]    Rundell Decl., ¶ 4.

[15]    *Id.*

[16]    *Id.*

31. The Settlement Agreement is the product of arm's-length negotiations among the Parties and is well within the range of reasonableness for the Debtors to enter into the Settlement Agreement, represents a sound exercise of the Debtors' business judgment, and is in the best interest of the Debtors' estates.[17] Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

32. The Debtors are seeking this Court's approval of the Settlement Agreement under section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."[18]

33. Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

34. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution

---

[17] Rundell Decl., ¶ 5.

[18] *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc); *see also Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1116 (5th Cir. 1995) (stating that section 105(a) of the Bankruptcy Code "authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code").

of bankruptcy cases.[19] Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.[20] Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court."[21]

35. In making this determination, the United States Court of Appeals for the Fifth Circuit applies a three-part test, "with a focus on comparing 'the terms of the compromise with the rewards of litigation.'"[22] The Fifth Circuit has instructed courts to consider the following factors: "(1) the probability of success in the litigation, with due consideration for the uncertainty of law and fact, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise."[23]

36. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views."[24] Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."[25]

---

[19] *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); *see also Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (settlements are a "normal part of the process of reorganization" and "a desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly").

[20] *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

[21] *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

[22] *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop. by & through Mabey* (*In re Cajun Elec. Power Coop.*), 119 F. 3d 349, 356 (5th Cir. 1997) (citing *Jackson Brewing*, 624 F.2d at 602).

[23] *Id.*

[24] *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995).

[25] *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

37. Generally, the bankruptcy court need not decide the issues in dispute when evaluating a settlement.[26] "In evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.'"[27] Instead, the bankruptcy court "need only 'canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness."[28] Further, if the bankruptcy court determines that "a substantial controversy exists for which there is an uncertain outcome in litigation", that suffices to satisfy the Rule 9019 standard.[29]

38. After evaluating various alternatives, the Debtors have determined that the Settlement Agreement is fair, equitable, in the best interests of the Debtors' estates, and falls well within the range of reasonable outcomes.

39. *First*, the likelihood of the Debtors' success in litigation against YNHH is uncertain, would be costly and time-consuming, and would distract from and delay the Debtors' ongoing sale processes for the CT Assets, as well as their plan confirmation efforts. Had the Parties not settled, the Debtors would be forced to devote significant time, effort, and resources to preparing for an undoubtedly arduous hearing scheduled for October 6, 2025, and to manage the burdens of extensive discovery, including expert discovery, that such litigation would entail.

40. *Second*, the Settlement Agreement is the product of arms-length negotiations between the Mediation Parties, each of which were represented by independent counsel and other advisors. As a result, the Settlement Agreement is truly a compromise between the positions taken by the Mediation Parties. YNHH's counsel even noted at the Status Conference that "everybody's

---

[26] *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).

[27] *Age Ref. Inc.*, 801 F.3d at 541 (quoting *Cajun Elec. Power Coop.*, 119 F.3d at 356).

[28] *In re Goodman Networks, Inc.*, No. 22-31641, 2024 WL 460478, at *8 (Bankr. N.D. Tex. Feb. 6, 2024).

[29] *Id.*

pretty satisfied" with the outcome, although "I don't think anybody's happy with it." The Debtors agree with the Court that this shared sentiment is indicative of a good compromise.[30]

41. *Finally*, the Settlement Agreement is fair, reasonable, and in the best interest of the Debtors' estates. By resolving the Debtors' litigation with YNHH, the Settlement Agreement preserves estate resources that may otherwise be spent on litigation.

42. For these same reasons, entering into the Settlement Agreement is a sound exercise of the Debtors' business judgment.[31] The Settlement Agreement provides for a path forward and resolution of these cases that avoids the necessity for costly and uncertain litigation to determine the respective rights of the parties.

43. Accordingly, for the reasons stated in this Motion, the Settlement Agreement should be approved.

## EMERGENCY CONSIDERATION

44. While Bankruptcy Rules 2002(a)(3) and 9019(a) ordinarily require 21-days' notice to creditors of a proposed settlement hearing, "Rule 2002(a)(3) allows the Bankruptcy Court to dispense with notice altogether 'for cause shown' and Rule 9006(c)(1) provides that 'the bankruptcy court for cause shown may in its discretion with or without notice order the period reduced.'" *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 251, 550-51 (D.D.C. 2008) (citing Fed. R. Bankr. P. 2002(a)(3) and 9006(c)(1)). Cause exists for emergency consideration of this Motion. The Debtors are engaged in an ongoing sale process for the CT Assets. Prompt approval of the Settlement Agreement resolves the Debtors' longstanding disputes with YNHH, thereby providing assurance to potential bidders regarding the stability of the Debtors' estates and the absence of

---

[30] *See* Hr'g Tr. 4:15, September 16, 2025 (noting that satisfaction, but not happiness, regarding a settlement "means it's good.").

[31] Rundell Decl., ¶ 5.

protracted litigation risk. Granting the relief requested herein on an emergency basis will therefore facilitate the Debtors' ability to maximize value for all stakeholders through a competitive and successful sale process.

## REQUEST FOR WAIVER OF STAY

45. To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). The Debtors further seek the waiver of any other stay that may be applicable under the Bankruptcy Code or the Bankruptcy Rules. As discussed herein, the relief requested in this Motion is necessary immediately for the Settlement Agreement to become effective and binding among the Parties and for the Settlement Payment to be made.

## NOTICE

46. Notice of this Motion has been provided by email, facsimile, or first class mail to: (a) the Complex Service List [Docket No. 1416]; and (b) YNHH. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

47. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of the page intentionally left blank*]

WHEREFORE, the Debtors respectfully requests the entry of the Order, granting the relief requested and granting such other and further relief as the Court deems just and proper.

Dated: September 26, 2025
Dallas, Texas

/s/ *Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:   (214) 981-3300
Facsimile:    (214) 981-3400
Email:         tom.califano@sidley.com
                  rpatel@sidley.com
                  mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:    (212) 839-5599
Email:         wcurtin@sidley.com
                  pventer@sidley.com
                  anne.wallice@sidley.com

*Attorneys for the HCo Debtors and the PCo Debtors and Debtors in Possession*

*Proposed Attorneys for the TopCo Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on September 26, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Thomas R. Califano*
Thomas R. Califano