Caleb T. Holzaepfel (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone: (423) 266-5500
Facsimile: (423) 266-5499
Email: Caleb.holzaepfel@huschblackwell.com

Alejandra Garcia Castro
State Bar No. 24131325
HUSCH BLACKWELL LLP
1900 N. Pearl, Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email: Alejandra.garciacastro@huschblackwell.com

*Counsel for Safety National Casualty Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>Prospect Medical Holdings, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 25-80002 (SGJ)<br>Jointly Administered<br><br>**Re: Docket No. 2986** |

### SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND RESERVATION OF RIGHTS TO THE JOINT CHAPTER 11 PLAN OF PROSPECT MEDICAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

Safety National Casualty Corporation ("Safety National"), by and through counsel, respectfully files this objection (the "Objection") to the *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Dkt. No. 2986] (the "Plan"), and in support of this Objection would show the Court as follows:

### INTRODUCTION

Debtors' attempted treatment of its insurers under the proposed Plan is ill-conceived, contradictory, and violates insurers' rights under the law and the Bankruptcy Code. Certain provisions of the Plan seek to alter the obligations of the Debtors and Safety National's rights under the Safety National Insurance Policies (defined below) and the Bankruptcy Code. Specifically, through the Plan, Debtors (1) improperly seek to avoid paying cure claims and/or post-petition priority claims – while assuming the Safety National Insurance Policies and/or

receiving post-petition benefits; (2) improperly seek to designate workers' compensation claims under the Safety National Insurance Policies as "Insured Claims" – thereby funneling workers' compensation claims through Post-Confirmation Claims Resolution Procedures (as defined below) process that violates several state laws; (3) improperly seek to modify Safety National's claims and coverage defenses under the Safety National Insurance Policies; and finally, (4) improperly seek to modify and determine Safety National's rights and obligations under insurance policies that contain self-insured retention obligations via the Post-Confirmation Claims Resolution Procedures, which Safety National had previously objected to and was carved out of.

Accordingly, Safety National files this Objection, seeking denial of confirmation of the proposed Plan as drafted, or requesting that specific language be modified in the Plan and/or any Confirmation Order affirming the rights and obligations under the Safety National Insurance Policies.

## **BACKGROUND**

A.    **Debtors' Insurance Policies with Safety National.**

1.    In 2018, Safety National entered into insurance programs with Prospect Medical Holdings, Inc. and its various affiliated debtors (collectively, "Prospect" or "Debtors"), including, but not limited to, the following:

> a.    For policy period from October 1, 2018 forward, such policy period expiring on October 1, 2025, Safety National provided excess workers' compensation and employers' liability coverage with a self-insured retention endorsement ("SIR") to Debtor (the "Excess Workers' Compensation Policy").

> b.    For policy period from October 1, 2018 forward, such policy period expiring on October 1, 2025, Safety National provided workers' compensation and employers' liability coverage to Debtor (the "First WC Policy").

> c.    For policy period from October 1, 2018 forward, such policy

HB: 4909-5482-4266.7

period expiring on October 1, 2025, Safety National provided commercial automobile coverage to Debtor (the "CA Policy").

d.    For policy period from October 1, 2020 forward, such policy period expiring on October 1, 2023, Safety National provided workers' compensation and employers' liability coverage with an SIR to Debtor (the "SIR WC Policy", and collectively with the Excess Workers' Compensation Policy and the First WC Policy, the "WC Policies").

2.    In conjunction with the above-listed insurance annual policies, Safety National entered into various related agreements with Prospect (together with the above listed WC Policies and CA Policy and other related ancillary agreements, the "Safety National Insurance Policies"). The coverage under the Safety National Insurance Policies remains in place, and both Debtors and Safety National continue to have ongoing obligations related to administering and defending claims under the Safety National Insurance Policies, including deductible and/or self-insured retention ("SIR") obligations.

3.    Safety National is providing workers' compensation, excess workers' compensation and employers' liability coverage, and commercial auto coverage under the Safety National Insurance Policies. Debtors are self-insured up to and including $500,000 (SIR amount) under the SIR WC Policy. That is, pursuant to the Safety National Insurance Policies, the Debtors are expressly obligated to manage, defend, and pay claims up to the $500,000 (SIR amount) per incident. Only after the SIR is actually paid will Safety National step in. The CA Policy contains a $100,000 per accident deductible obligation. The Excess Workers' Compensation Policy contains a $500,000 per accident and/or per employee deductible obligation.

**B.    Debtors' Chapter 11 Case and Treatment of Safety National Insurance Policies.**

4.    On January 11, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

HB: 4909-5482-4266.7

5.      On April 29, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving and Authorizing Mandatory Claims Resolution Procedures to Resolve Professional Liability and General Liability Claims; (II) Requiring the Debtors' Insurers to Satisfy their Obligations under the Applicable Policies; and (III) Granting Related Relief* [Dkt. No. 1712] (the "Mandatory Claims Resolution Procedures Motion").

6.      On June 5, 2025, Safety National filed its *Limited Objection* [Dkt. No. 2189] to the Mandatory Claims Resolution Procedures Motion, reserving its rights and expressing its concern that Debtors were improperly seeking to modify and determine Safety National's rights and obligations under the Safety National Insurance Policies that contain SIR obligations via the proposed mandatory claims resolution procedures.

7.      To resolve Safety National's objection, Debtors confirmed that the Safety National Insurance Policies were not implicated in the Mandatory Claims Resolution Procedures Motion, and the related proposed order included neutrality language preserving disputes related to self-insured retentions (and other insurance issues) for a later date, as reflected in the Court's *Order (I) Approving and Authorizing Mandatory Claims Resolution Procedures to Resolve Professional Liability and General Liability Claims and (II) Granting Related Relief* [Dkt. Nos. 2180 and 2181].

8.      On August 27, 2025, the Debtors filed their fourth amended proposed Plan at Docket Number 2986 (the "Plan").

9.      On August 28, 2025, this Court issued its *Order (I) Approving The Adequacy Of The Disclosure Statement; (II) Approving Solicitation Procedures In Connection With Confirmation Of The Plan; (III) Approving The Forms Of Ballots And Notices In Connection Therewith; (IV) Scheduling Certain Dates With Respect Thereto, and; (IV) Granting Related Relief* [Dkt. No. 3014] (the "Solicitation Order").

HB: 4909-5482-4266.7

10. In Plan, Article I.A.40 and 41, Debtors defined "Claims Resolution Procedures" and "Claims Resolution Procedures Order" as follows:

> 40. "Claims Resolution Procedures" has the meaning ascribed thereto in the Claims Resolution Procedures Order.
>
> 41. "Claims Resolution Procedures Order" means the *Order (I) Approving and Authorizing Mandatory Claim Resolution Procedures to Resolve Professional Liability and General Liability Claims; and (II) Granting Related Relief* [Dkt. No. 2180].

11. In Plan, Article I.A.129, Debtors defined "Insured Claim" as follows:

> 129. "Insured Claim" means a Claim for personal injury, wrongful death, medical malpractice, or similar tort Claim that is or may be covered by one or more professional liability or general liability Insurance Policies, or for which a Debtor is entitled to indemnification, reimbursement, contribution, or other payment under one or more Insurance Policies; provided, however, that all Claims for any deductible or self-insured retention obligations of the Debtors shall be treated as General Unsecured Claims (to the extent Allowed) subject to Article III.B.7.b herein.

12. In Plan, Article I.A.215, Debtors defined "Post-Confirmation Claims Resolution Procedures" as follows:

> 215. "Post-Confirmation Claims Resolution Procedures" means the post-confirmation claims resolution procedures, which shall conform with the Claims Resolution Procedures (with only necessary Plan-related modifications), and which will be included in the Plan Supplement.

13. In Plan, Article III.B.7, Debtors proposed the following treatment for "Insured Claims":

> ### Class 7 – Insured Claims
>
> a. *Classification*: Class 7 consists of all Insured Claims.
>
> b. *Treatment*: Except to the extent that a Holder of an Insured Claim agrees to less favorable treatment, each Holder of an Insured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, the treatment provided in the Post-Confirmation Claims Resolution Procedures.

HB: 4909-5482-4266.7

Pursuant to the Post-Confirmation Claims Resolution Procedures, the Insurance Trustee and applicable Holder shall exchange offers to agree on the Allowed amount of such Holder's Insured Claim, which may be paid from the Insurance Trust and/or an Allowed General Unsecured Claim, and the remaining unpaid amount of such Holder's Insured Claim may be liquidated in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies. If the offer exchange procedures do not result in a consensual resolution of the Allowed amount of such Holder's Insured Claim, the Insurance Trustee and applicable Holder shall proceed to mediation under the terms of the Post Confirmation Claims Resolution Procedures. If mediation is unsuccessful (or for any other reason described in the Post-Confirmation Claims Resolution Procedures), the applicable Holder can liquidate their Insured Claim in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies, and in the event that (A) the applicable Insurer denies the tender of defense or there are no applicable or available Insurance Policies, or (B) the proceeds from applicable and available Insurance Policies have been exhausted or are otherwise insufficient to pay in full a Holder's Allowed Insured Claim, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Allowed Insured Claim, then such Holder shall be entitled to its Pro Rata share of GUC Trust Interests as if such Holder was a member of Class 8 – General Unsecured Claims, based on the amount of an Allowed Claim equal to the amount of the Allowed Insured Claim less the amount of available proceeds paid on such Allowed Insured Claim from the applicable and available Insurance Policies (the "Insured Deficiency Claim").

In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed amount of their respective Allowed Insured Deficiency Claim. In no event shall any Holder of an Allowed Insured Deficiency Claim receive payment from the GUC Trust on account of such Allowed Insured Deficiency Claim in an amount that exceeds the Pro Rata share of GUC Trust Interests such Holder would have received had the Holder's Claim been classified in Class 8.

Some of the Insured Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Insured Claims, the Debtors may owe deductible or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Insured Claims for any deductible or self-insured retention obligations, and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 8 General Unsecured Claims, to the extent Allowed. In any event, the applicable Debtors are legally obligated to pay Allowed Insured Claims in their full

face amount.

c. *Voting:* Class 7 is Impaired, and Holders of Class 7 Insured Claims are entitled to vote to accept or reject the Plan.

14.    In Plan, Article IV.I.3, Debtors propose the following procedures for administration

of "Insured Claims" (as defined in the Plan):

All Insured Claims will be administered pursuant to the Post-Confirmation Claims Resolution Procedures and any other Insurance Trust Documents. The Post-Confirmation Claims Resolution Procedures shall conform with the Claims Resolution Procedures (with only necessary Plan-related modifications). Pursuant to the Post-Confirmation Claims Resolution Procedures, the Insurance Trustee may make offers or agree in mediation with a Holder of an Insured Claim on the Allowed amount of such Holder's Insured Claim, which may be paid from the Insurance Trust and/or an Allowed General Unsecured Claim, and the remaining unpaid amount of such Holder's Insured Claim may be liquidated in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies. The Insurance Trustee shall not use Insurance Trust Assets from Settled Insurance Policies that provided coverage only to the Debtors' Pennsylvania operations to pay any Allowed Insured Claims that are non-Pennsylvania Insured Claims, and *vice versa*. The Insurance Trustee may, however, use Insurance Trust Assets from Settled Insurance Policies from one policy year of coverage to pay Allowed Insured Claims that trigger a different policy year of coverage.

The Debtors or the Insurance Trustee, as applicable, shall provide regular notifications to Holders of outstanding Insured Claims regarding the amount of Insurance Trust Assets in the Insurance Trust and the Debtors' Insurers that have become Settling Insurers and the Insurance Policies that have become Settled Insurance Policies. Upon reasonable request of a Holder of an Insured Claim, the Debtors or the Insurance Trustee, as applicable, shall inform such Holder as to the status of the Insurance Policies that may provide coverage for such Holder's Insured Claim.

15.    In Plan, Article VIII.F, Debtors seek to assume all "Insurance Policies" (as defined

in the Plan):

Each Insurance Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, coverage for defense and indemnity

under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

## **OBJECTION**

16.     Section 1129(a) of the Bankruptcy requires that a plan of reorganization and its proponent comply with all applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1)–(2). To confirm a plan of reorganization under chapter 11 of the Bankruptcy Code, the debtor carries the burden of proving the plan or the plan proponent, as applicable, has satisfied each element of section 1129(a), other than subsection 1129(a)(15). Section 1129(a) requires, among other things, that:

a.     The plan and the plan proponent comply with the applicable provisions of Chapter 11. 11 U.S.C. § 1129(a)(1)–(2);

b.     The plan must be proposed in good faith and not by any means forbidden by law. *Id.* § 1129(a)(3);and

c.     The plan must be feasible. *Id.* § 1129(a)(11).

17.     The Plan is not feasible and violates both Safety National's rights under contract and applicable state law.  The Debtors cannot unilaterally amend the Safety National Insurance Policies through the Plan or eliminate Safety National's rights or claims pursuant to the Bankruptcy Code and applicable law. Accordingly, Safety National files this Objection to the language in the Plan, any Plan supplement, the Confirmation Order, or any related documents that non-consensually modifies the rights and obligations under the Safety National Insurance Policies.

18.     This Objection will address, first, the Plan's attempt to eliminate post-petition

priority and/or cure claims while assuming the Safety National Insurance Policies and/or receiving post-petition benefits; second, the improper attempt to funnel workers' compensation claims through a mediation and claims resolution process under various states' laws; and finally, to the extent commercial auto claims are defined as "Insured Claims," the Plan's improper attempts to modify Safety National's claims and coverage defenses under the Safety National Insurance Policies, along with the Plan's inappropriate attempt to modify coverage of Safety National's rights and obligations under the Safety National Insurance Policies by imposing the Post-Confirmation Claims Resolution Procedures onto Safety National.

## A.    Debtors Must Cure Any Defaults, Provide Adequate Assurance of Future Performance to Assume the Safety National Insurance Contracts, and Cannot Classify Post-Petition Priority Claims as General Unsecured Claims

19.    Pursuant to Article VIII.F of the Plan, Debtors seek to assume the Safety National Insurance Policies.

20.    Of course, to the extent Debtors seek to assume executory contracts, they are required to cure any defaults pursuant to 11 U.S.C. § 365(b)(1)(A) ("If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—cures, or provides adequate assurance that the trustee will promptly cure, such default . . .). Moreover, Debtors must provide "adequate assurance of future performance under such contract or lease" to the extent Debtors seek to assume the Safety National Insurance Policies. 11 U.S.C. § 365(b)(1)(C).

21.    As noted, Debtors have significant SIR and deductible obligations under the Safety National Insurance Policies. Debtors must cure any defaults – and provide adequate assurance of future performance in order to assume the Safety National Insurance Policies.

22.    Here, however, the Plan ignores both the Debtors' cure and adequate assurance of

9

future performance obligations.

23.     In fact, the Plan, Article I.A.129, seeks to make all "deductible or self-insured retention claims" pre-petition unsecured claims:

> 129. "Insured Claim" means a Claim for personal injury, wrongful death, medical malpractice, or similar tort Claim that is or may be covered by one or more professional liability or general liability Insurance Policies, or for which a Debtor is entitled to indemnification, reimbursement, contribution, or other payment under one or more Insurance Policies; provided, however, that **all Claims for any deductible or self-insured retention obligations of the Debtors shall be treated as General Unsecured Claims (to the extent Allowed) subject to Article III.B.7.b herein.**

Plan, Article I.A.129 (emphasis added).[1]

24.     **<u>Safety National (1) objects to the attempt to assume the Safety National Insurance Policies and not pay the accrued deductible or self-insured retention obligations, and (2) objects to the egregious attempt to make post-petition deductible or self-insured retention obligations pre-petition claims.</u>**

25.     Through the Plan, it appears that the Debtors want to continue to receive the benefits of the Safety National Insurance Policies for Debtors. However, the Plan does not adequately address the continuing obligations of the Debtors or its successors under the Safety National Insurance Policies. In fact, the Plan seems to attempt to improperly bucket all their obligations under the Policy into general unsecured claims in clear violation of section 365 (cure and adequate assurance obligations) and section 503(b) (post-petition priority claims) of the Bankruptcy Code.

26.     It is well-established that the Debtors and their successors cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See In re Flemng Cos.*, 499

---

[1] Safety National further objects to Debtors attempting to hide a materially prejudicial clause to insurers in a definitional paragraph.

F.3d at 308 ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alteration in original); *St. Paul Fire & Marine Ins. Co.*, 457 F.3d at 773 (finding that a party who accepts the benefit of a contract must also assume its burdens); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln*, Neb., 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16- 4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10- 137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences . . .[.]").

27.     Therefore, to the extent that the Plan seeks to assume the contracts and retain the benefits of any portion of the Safety National Insurance Policies, each of the Safety National Insurance Policies must continue in their entirety, and the rights and benefits, and potential defenses, under each of the Safety National Insurance Policies cannot be split from the respective obligations thereunder. While Debtors may be able to reject the Safety National Insurance Policies, the Debtors cannot also remove Safety National's rights to claims and assistance resulting therefrom, including administrative claims.

11

28.     Moreover, even if Debtors choose not to assume pre-petition insurance policies –
Debtors cannot somehow avoid their post-petition administrative claims obligations.

29.     For pre-petition claims, claim for reimbursement may be in the nature of a pre-
petition claim, but for claims arising from post-petition incidents, that is, post-petition claims, this
claim may be in the nature of an administrative expense claim.  Debtors continued to operate post-
petition – and continued to rely on the Safety National Insurance Policies post-petition.  *In re
Sierra Pac. Broadcasters*, 185 B.R. 575, 579 (B.A.P. 9th Cir. 1995) ("Clearly, the estate is liable
for any actual and necessary costs of administration arising from postpetition claims of worker's
compensation benefits arising from postpetition injuries. *See Reading* [*Co. v. Brown*], 391 U.S.
[471], 482, 88 S.Ct. [1759], 1765 (stating that it was natural and just that those injured by the
operation of a business during arrangement recover ahead of those creditors for whose benefits the
business is continued)."); *In re Broaddus Hosp. Ass'n*, 159 B.R. 763, 771 (Bankr. N.D.W. Va.
1993) ("Therefore, this Court finds that, to the extent BHA is liable for a deductible payment
associated with a post-petition liability, such payment shall be entitled to administrative expense
priority under Bankruptcy Code § 503(b)(1)(A)."); *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th
221, 231-32 (3d Cir. 2021) (finding that claims arising from employees' employment with debtor
is a cost "ordinarily incident to operation of a business," and should be treated as an administrative
expense); *In re GGI Holdings, LLC*, 665 B.R. 727, 781 (Bankr. N.D. Tex. 2024) (priority of claim
depends on when actions "giving rise to the liability occurred."); *In re Krisu Hosp., LLC*, No. 19-
20347-RLJ11, 2021 WL 1186483, at *4 (Bankr. N.D. Tex. Mar. 26, 2021) (citing *In re
Sunarhauserman, Inc.*, 126 F.3d 811, 818 (6th Cir. 1997) ("regardless of the substantive law on
which the claim is based, the proper standard for determining that claim's administrative priority
looks to when the acts giving rise to a liability took place[.]")); *In re Dahlgren Int'l, Inc.*, 147 B.R.

393, 402 (N.D. Tex. 1992) ("damages for claims that arise during, and are caused by, the reorganized operation of a debtor's business —although not ultimately serving to preserve the estate—also have been held to satisfy section 503(b)(1)(A) on grounds that they are necessary costs and expenses of the estate"); *In re Brooke Corp.*, 485 B.R. 650, 659 (Bankr. D. Kan. 2013) ("the scope of § 503(b)(1)(A) is expanded to encompass tort claims arising from postpetition conduct undertaken in the operation of the estate's business").

30.    It is well-established that a debtor or claimant to a debtor cannot obtain any greater rights to insurance coverage or to receive the proceeds of an insurance policy simply as a result of a debtor's bankruptcy filing. *See In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001) ("[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy . . . by merely filing a bankruptcy petition." (*quoting Thomas v. Universal American Mortgage*, 1998 WL 57523 (E.D. Pa. 1998), *aff'd sub nom. In re Thomas*, 182 F.3d 904 (3d Cir. 1999))); *In re Amatex Corp.*, 107 B.R. 856, 865-66 (E.D. Pa. 1989), aff'd, 908 F.2d 961 (3d Cir. 1990) ("[T]he rights and obligations of the Debtor and [its insurer] under the [insurance] policy are not altered because of the Debtor's Chapter 11 filing."); *see also In re Coupon Clearing Service, Inc.,* 113 F.3d 1091, 1092 (9th Cir. 1997) ("The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater rights in property than those held by the debtor prior to bankruptcy"); *Trustmark Ins. v. Transamerica Occidental Life*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) ("a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (internal quotation omitted).

31.    Safety National objects to the Plan based on (1) cure – that is, Debtors must pay all

open SIR and deductible obligations in order to assume the Safety National Insurance Policies, (2) Debtors must demonstrate that they can adequately perform under the Safety National Insurance Policies, and (3) to the extent Debtors are not assuming the Safety National Insurance Policies, Safety National objects to the Plan's attempt to designate post-petition priority claims as general unsecured claims.

**B.    The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.**

32.    The Plan's broad definition of "Insured Claims" in Article I.A.129 means that all claims under the Excess Workers' Compensation Policy and WC Policies would be considered thereunder.

33.    While incomprehensible until a plan supplement hopefully clarifies the "Post-Confirmation Claims Resolution Procedures" (as defined in the Plan), as of now, all claims made under workers' compensation policies would be funneled through some mediation procedures crafted by the Plan and associated documents. *See* Plan, Arts., I.A.129, III.B.7; IV.I.3. What is clear is that because the Plan does not specially address the treatment of workers' compensation claims and direct action claims – it does lump the same under the Plan definition of "Insured Claims".

34.    Both workers' compensation claims and direct action claims are subject to state law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *In re Wire Rope Corp. of Am., Inc.*, 300 B.R. 1, 5–6 (Bankr. W.D. Mo. 2003) (finding that the bankruptcy court does not have jurisdiction to determine workers' compensation claims,

HB: 4909-5482-4266.7

and stating that "[m]oreover, this Court has no desire to hear and determine the workers' compensation claims; there are specialized administrative judges acting under state law that are much better equipped to adjudicate such matters. This Court is not injecting itself into the administration of Missouri's workers' compensation laws; the claims of the pre-petition injured workers will be processed and administered by the Division of Workers' Compensation as if no bankruptcy had been filed."); *In re Hickman*, 265 B.R. 873, 877 (Bankr. N.D. Ohio 2001) (quoting *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir.1981), wherein the Sixth Circuit states: "Claims of workers for injury, occupational disease or death must be filed with and are determined by the Industrial Commission of Ohio which has exclusive jurisdiction subject only to appeal to the Common Pleas Court of Ohio and Ohio appellate courts. No other courts have jurisdiction, not even federal court."); *In re Olga Coal Co.*, 194 B.R. 741, 748 (Bankr. S.D.N.Y. 1996) (payment of workers' compensation claims is an "obligation . . . imposed by the Legislature under the police power of the State"); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

35.   The Plan cannot create mediation procedures that railroad the state law police powers and the exclusive jurisdiction and processes for adjudication of workers' compensation claims. (Nor is there any conceivable reason why the Debtors would want to do so.)

36.   Accordingly, the Plan must clarify that workers' compensation and direct action

15

claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary

course, and relatedly, Safety National may continue to so administer, handle, defend, settle, and/or

pay such covered claims in the ordinary course and pursuant to the terms of the Safety National

Insurance Policies and applicable non-bankruptcy law.

**C.      The Plan Improperly Alters the Terms of the Safety National Insurance Policies.**

37.      Section 365 of the Bankruptcy Code does not permit the modification of executory

contracts. The Safety National Insurance Policies must either be assumed in total—with all

obligations and rights intact—or be rejected.

38.      The Plan seeks to push Insured Claims through mediation procedures crafted by the

Plan and associated documents. *See* Plan, Arts., I.A.40, I.A.41, I.A.129, I.A.215, III.B.7, and

IV.I.3. Despite Safety National having previously objected[2] to the Claims Resolution Procedures

and been assured by Debtors that such procedures did not implicate the Safety National Insurance

Policies, the Plan attempts to impose the identical procedures on the Safety National Insurance

Policies by merely incorporating the Claims Resolution Procedures by reference into the Post-

Confirmation Resolution Procedures definition and Article IV.I.3 of the Plan. Through these

procedures, the Plan seeks to inappropriately modify coverage of claims under the Safety National

Insurance Policies and modify Safety National's rights and obligations thereunder. Any settlement

or resolution of claims under the Plan and through Post-Confirmation Claims Resolution

Procedures cannot impact or modify coverage under the Safety National Insurance Policies

without the express consent of Safety National, which it does not provide.

39.      As the insurer may be ultimately obligated to make payment on claims – and

---

[2] Safety National hereby incorporates and reasserts herein by reference its *Limited Objection to Debtors' Motion for Entry of an Order (I) Approving and Authorizing Mandatory Claims Resolution Procedures to Resolve Professional Liability and General Liability Claims; (II) Requiring the Debtors' Insurers to Satisfy their Obligations under the Applicable Policies; and (III) Granting Related Relief* [Dkt. No. 2189].

HB: 4909-5482-4266.7

Debtors' obligation is for the deductible, it's wholly inappropriate for commercial auto claims to be mediated in this manner. (And once again, it makes no sense why Debtor would even attempt to do so). Moreover, as Debtors' obligations under the WC Policies and Excess Workers' Compensation Policies are (1) subject to state law, (2) likely to be paid out by the individual states, and (3) limited to the amount of the SIR, it's also inappropriate for workers' compensation claims to be mediated in this manner.

40.    Moreover, Safety National objects to any mediation or claims resolution process that would be in any way determinative of (1) the amount of the claims for purposes of coverage, and (2) the defense of Safety National under the law or applicable Safety National Insurance Policy.

41.    To the extent that any of the provisions of the proposed claims resolution or mediation procedures seek or purport to prejudice, modify, amend, or otherwise alter the terms and conditions of the Safety National Insurance Policies, the coverage provided thereby, and/or Safety National's rights thereunder, such prejudice, modification, amendment, or alteration is impermissible. Thus, Safety National objects to the inclusion of any such provisions as a material modification and/or false interpretation of the Safety National Insurance Policies and their terms.

42.    "It is well-settled that an executory contract cannot be assumed in part and rejected in part . . . Rather, a debtor 'must assume the entire contract, *cum onere*'—the debtor must accept 'both the obligations and the benefits of the executory contract.'" *In re Escarent Entities, L.P.*, 423 F. App'x 462, 466 (5th Cir. 2011) (citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) and *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000)); *In re Flemng Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must

17

adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alteration in original); *see Tompkins ex. rel A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burden as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

43.     Where an order of the bankruptcy court alters the rights and obligations under an assumed executory contract, the court is, in effect, modifying the agreement. *In re Escarent Entities, L.P.*, 423 F. App'x at 467. Where this is done without the consent of the non-debtor party, this is, in essence, an un-agreed to modification, and the "bankruptcy court thus violate[s] its obligation to ensure that [the Debtor] assume[s] the contract in toto." *Id.*; *see, e.g., Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (internal citation omitted); *In re Jeffrey L. Miller Investments, Inc.*, 610 B.R. 692, 703 (Bankr. M.D. Fla. 2019) (stating that it is the court's "duty to enforce [a] contract as written—not rewrite it to make it more reasonable for one of the parties"); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

HB: 4909-5482-4266.7

44.     Moreover, it is clear under well-established law that neither the Debtors nor this Court can rewrite the Safety National Insurance Policies, but rather, the Safety National Insurance Policies must be enforced as written. *See, e.g., In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill its unspoken expectation") (quoting, in part, *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

45.     Safety National rights and defenses must be preserved through this Plan and any proposed claims adjudication processes.

**D.     Safety National's Rights Should Be Preserved Under the Plan.**

46.     While the Plan does contain language that would purportedly not modify the defenses of insurers, the Plan also attempts to modify Safety National's rights and defenses.  As such, Safety National would request that this language be substantively modified to make clear

that all Safety National's rights and coverage defenses are preserved and not modified thereunder.

47.     This language is particularly necessary in light of Debtors' (now abandoned) previous attempt to modify the self-insured retention payment requirements in the Mandatory Claims Resolution Procedures Motion.

48.     The Plan must clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other document related to the foregoing, including, but not limited to, those provisions identified above, shall modify, alter, or impair the Safety National Insurance Policies, including the rights and obligations of Safety National and the Debtors thereunder, as well as the coverage provided thereunder.

49.     In fact, it is all the more imperative in a wind down or liquidation, where a debtor is unlikely to be around to meet its defense obligations – and the insurer is almost certain to be forced to step in to administered and defend claims – that all the insurers' rights and defenses are preserved.

50.     Moreover, it is also imperative that liquidating Debtors meet their obligations under Bankruptcy Rule 9005(c) and make a person available with knowledge of the applicable claims for deposition, testimony, and to execute sworn documents in the course of litigation.

51.     For example, it is well-settled under Texas law (where Debtors operated) that, if the insurance policy language so requires, the insured *must* satisfy its policy obligations once a claimant proves that their claim is greater than the SIR amount in order to trigger the insurer's obligations. *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, No. SA-05-CA-135-RF, 2005 WL 3487723, at *3-4 (W.D. Tex. 2005).  In other words, if a policy contains a condition precedent to the insurer's liability that the insured make actual payments of the self-insured retention, then the insurer is not obligated to pay until the insured has paid the self-insured retention. *Id.* (holding that

an insurer shall not be "held to promises they never made and never received payment for."); *see also Energy Res., LLC v. Petroleum Sols. Intern., LLC*, No. H:08-656, 2011 WL 3648083, at *14 (S.D. Tex. Aug. 117, 2011) ("When an insurance policy contains a[] [self-insured retention] as a condition to the insurer's duty to defend, as the Policy does in this case, the insurer's duty to defend is not triggered until the SIR is exhausted.") (citing *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 173 (Tex. Ct. App. 2008) (insurer's policy obligations were not triggered until the SIRs were exhausted)). Importantly, such requirement does not change upon an insured's filing of bankruptcy. *See Wells v. Gulf Ins. Co.*, 484 F.3d 313, 318 (5th Cir. 2007) (holding the excess carrier was not required to provide coverage below its liability floor, even though excess carrier was the first solvent insurer); *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442 (5th Cir. 1991) (same).

52.     The Plan cannot modify, limit, amend, or otherwise affect any of the defenses, rights, and obligations of the Debtors and Safety National with respect to coverage, denial of coverage, or the proper court, forum, or jurisdiction for any disputes regarding coverage or regarding Safety National's rights and obligations under the Safety National Insurance Policies. The Plan must be clarified to provide that the foregoing shall be preserved and determined under the terms of the Safety National Insurance Policies and/or applicable non-bankruptcy law, and that nothing in the Plan, Plan Supplement, the Confirmation Order, or any other document related to the foregoing, shall constitute a determination, consent to, or waiver of jurisdiction as to any of the foregoing.

53.     Accordingly, Safety National requests the language be revised and added to Plan, Art. IX.N as detailed in Paragraph 46 of this Objection.

**E.      Proposed Revised Plan Language.**

54.    In order to resolve the above-mentioned issues, Safety National proposed the following modifications to Plan Language (proposed revision in ***bold, italics, and underline***):

Art., I.A.129:

103. "Insured Claim" means a Claim for personal injury, wrongful death, medical malpractice, or similar tort Claim that is or may be covered by one or more professional liability or general liability Insurance Policies, or for which a Debtor is entitled to indemnification, reimbursement, contribution, or other payment under one or more Insurance Policies; provided, however, that all ***pre-petition*** Claims for any deductible or self-insured retention obligations of the Debtors shall be treated as General Unsecured Claims (to the extent Allowed) subject to Article III.B.7.b herein. ***However, a Claim made under a workers' compensation policy or a commercial automobile policy shall not be considered an "Insured Claim."***

Art. III.7.B (Third Paragraph):

Some of the Insured Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Insured Claims, the Debtors may owe deductible or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Insured Claims for any deductible or self-insured retention obligations, and all ***pre-petition*** Claims for such deductibles and self-insured retention obligations shall be treated as Class 8 General Unsecured Claims, to the extent Allowed. In any event, the applicable Debtors are legally obligated to pay Allowed Insured Claims in their full face amount.

Art. VIII.F:

Each Insurance Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. For the avoidance of doubt, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies. ***For the avoidance of***

***doubt, Insurer counterparties to assumed Insurance Policies shall not be obligated to file cure objections, and accrued but unpaid obligations of Debtors, if any, as of the Effective Date shall be paid in ordinary course.***

Art. IX.N:

N.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except as set forth in Article VIII of the Plan, nothing in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Plan Administrator, may hold against any other Entity, including insurers under any policies of insurance. ***Moreover, notwithstanding any provision in the Plan, Confirmation Order, or any other related document, nothing shall alter, modify, amend, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Plan Administrator or a trustee established by this Plan) or any other individual or entity, as applicable, under any of the Insurances Polices. Any such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law. If proscribed under the Insurance Policies, after the Effective Date, the Debtors, through the Plan Administrator, shall maintain a duty to cooperate and provide reasonable assistance in the defense of any claim, proceeding, or suit against the Debtors for damages payable by the Insurance Policies. Such obligations may include, but are not limited to, appointing a representative of the Debtors as proscribed under Rule 9001(5) of the Federal Rules of Bankruptcy Procedure with knowledge of the applicable claims for deposition, testimony, and to execute sworn documents in the course of litigation.*** ~~nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.~~

## RESERVATION OF RIGHTS

55.      Safety National specifically reserves all of its rights with respect to the Safety National Insurance Policies and its right to further object to the Plan or assert any additional claims as appropriate.

## CONCLUSION

HB: 4909-5482-4266.7

Accordingly, Safety National respectfully requests that the aforementioned language be included in the Plan or any Confirmation Order or, in the alternative, that the Court deny confirmation of the *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* and grant such other and further relief to which Safety National is justly entitled. In the alternative, Safety National requests that all the modifications outlined in Paragraph 46 regarding treatment of the Safety National Insurance Policies be in a revised Plan and/or any Confirmation Order.

Dated: October 1, 2025                    HUSCH BLACKWELL LLP

*/s/ Alejandra Garcia Castro*
Alejandra Garcia Castro
State Bar No. 24131325
1900 N. Pearl, Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email:  Alejandra.garciacastro@huschblackwell.com

Caleb T. Holzaepfel (admitted *pro hac vice*)
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone: (423) 266-5500
Facsimile: (423) 266-5499
Email:  Caleb.holzaepfel@huschblackwell.com

*Counsel for Safety National Casualty Corporation*

HB: 4909-5482-4266.7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system on all parties registered to receive service and via e-mail to the parties listed below:

**James H. Billingsley**
Email: JBillingsley@duanemorris.com
**Thomas Robert Califano**
Email: tom.califano@sidley.com
**Veronica A. Courtney**
Email: vcourtney@sidley.com
**William E Curtin**
Email: wcurtin@sidley.com
**James Ducayet**
Email: jducayet@sidley.com
**Parker G. Embry**
Email: parker.embry@sidley.com
**Dwight M. Francis**
Email: dfrancis@sheppardmullin.com
**Robert S. Friedman**
Email: rfriedman@sheppardmullin.com
**Alexandria Lattner**
Email: alattner@sheppardmullin.com
**Alan H. Martin**
Email: amartin@sheppardmullin.com
**Jonathan E. Mitnick**
Email: jemitnick@sidley.com
**Jonathan W. Muenz**
Email: jmuenz@sidley.com
**Sean M. Nuernberger**
Email: sean.nuernberger@sidley.com
**Rakhee V. Patel**
Email: rpatel@sidley.com
**Steven J. Reisman**
Email: sreisman@katten.com
**Joshua I. Schlenger**
Email: jschlenger@sheppardmullin.com
**Steven E. Sexton**
Email: ssexton@sidley.com
**Vincent P. Slusher**
Email: vince.slusher@proton.me
**Joseph Michael Toddy**
Email: jmtoddy@zarwin.com
**Patrick Venter**
Email: pventer@sidley.com
**Anne G. Wallice**
Email: anne.wallice@sidley.com
***Attorneys for Debtors***

U.S. Trustee for the Northern District of Texas Elizabeth Ziegler Young
elizabeth.a.young@usdoj.gov

**Daren Brinkman**
Email: firm@brinkmanlaw.com
**Matthew Friedrick**
Email: matthewfriedrick@paulhastings.com
**Erez Gilad**
Email: erezgilad@paulhastings.com
**Kris Hansen**
Email: krishansen@paulhastings.com
**John Iaffaldano**
Email: jackiaffaldano@paulhastings.com
**Emily Kuznick**
Email: emilykuznick@paulhastings.com
**Kenneth Pasquale**
Email: kenpasquale@paulhastings.com
**Charles Martin Persons, Jr.**
Email: charlespersons@paulhastings.com
**Gabriel E. Sasson**
Email: gabesasson@paulhastings.com
***Attorneys for the Official Committee of Unsecured Creditors***

*/s/ Alejandra Garcia Castro*
Alejandra Garcia Castro

HB: 4909-5482-4266.7