## Exhibit E

## GUC Trust Documents

## GUC TRUST AGREEMENT AND DECLARATION OF TRUST

This GUC Trust Agreement and Declaration of Trust (the "<u>Agreement</u>"), dated as of [•], 2025, is made by and among Prospect Medical Holdings, Inc. ("<u>PMH</u>") and its affiliated debtors and debtors in possession, [•] (the ["<u>GUC Trust Trustee</u>,"] and together with the Debtors (as defined below), each, a "<u>Party</u>" and collectively, the "<u>Parties</u>").

<u>RECITALS</u>

1.       On January 11, 2025 and July 7, 2025, respectively, PMH and its hospital-related debtor affiliates, as debtors and debtors in possession (collectively, the "<u>HCo Debtors</u>"), together with PHP Holdings, LLC and its physician-related debtor affiliates, as debtors and debtors in possession (collectively, the "<u>PCo Debtors</u>," and together with the HCo Debtors, the "<u>Debtors</u>"),[1] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>"), and their chapter 11 cases are being jointly administered as *In re Prospect Medical Holdings, Inc. et al.*, Case No. 25-80002 (SGJ).

2.       On or about January 29, 2025, the United States Trustee for the District of Northern District of Texas (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors [Docket No. 295] (the "<u>Creditors' Committee</u>").

3.       On August 27, 2025, the Debtors filed the revised versions of the *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2986] (as may be amended or supplemented prior to the date hereof, the "<u>Plan</u>")[2] and the *Disclosure Statement for*

---

[1]       A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.  As used herein, "Debtors" shall also include, as applicable, the Wind-Down Debtors, Reorganized PMH, and the Plan Administrator, each as defined in the Plan.

[2]       A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

*the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2987] (as may be amended or supplemented, the "Disclosure Statement"). On August 28, 2025, the Bankruptcy Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto, and; (V) Granting Related Relief* [Docket No. 3014].

4. On [•], the Bankruptcy Court entered an order ("Confirmation Order") [Docket No. [•]] confirming the Plan, which became effective on [•] ("Effective Date").

5. Articles I, IV and IX of the Plan provides for the creation of the GUC Trust (the "GUC Trust") on the Effective Date of the Plan.

6. The Plan provides for the establishment of the GUC Trust for the exclusive benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and Holders of Allowed General Unsecured Claims in Class 8 (including the MPT Deficiency Claim) (collectively, the "Beneficiaries") pursuant to the Plan.

7. The GUC Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the GUC Trust Assets (as defined below) for the exclusive benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, and the Confirmation Order, and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan, the Backstop Facility, and liquidating purpose of the GUC Trust.

8. Pursuant to the Plan, the GUC Trust (other than with respect to any Disputed Ownership Fund ("DOF")) is intended for federal income tax purposes (a) to be treated as a grantor

trust within the meaning of sections 671-679 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (b) to qualify as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d). For the avoidance of doubt, the decision to elect whether or not to have the Disputed Claim Reserve (as defined below) treated as a DOF for tax purposes shall be determined by the GUC Trust Trustee in its sole discretion and nothing in this Agreement or the Plan shall be construed otherwise.

9.        Pursuant to the Plan, the Debtors, the GUC Trust, the GUC Trust Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the GUC Trust Assets by the Debtors, subject to applicable liabilities and obligations, to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the GUC Trust Assets (other than to the extent the GUC Trust Assets are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the GUC Trust in exchange for their pro rata share of the GUC Trust Interests,[3] and to treat the Beneficiaries as the grantors and owners of the GUC Trust Assets for federal income tax purposes, except with respect to any DOF.

10.        In accordance with the Plan, the GUC Trust is further intended to be exempt from the requirements of (a) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (b) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan, the Global Settlement Agreement and the Confirmation Order, and in consideration of the promises, and the mutual covenants and

---

[3]    "GUC Trust Interests" means, collectively, non-certificated beneficial interests in the GUC Trust granted to each Holder of Allowed General Unsecured Claims, which shall entitle such Holder to their share of the GUC Trust Assets, subject to the terms of the Plan and this Agreement.

agreements of the Parties contained in the Plan, the Global Settlement Agreement and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

**DECLARATION OF TRUST**

The Debtors and the GUC Trust Trustee enter into this Agreement to effectuate the distribution of the GUC Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Articles I, IV and IX of the Plan and Section 2.3.2 of this Agreement, on the Effective Date, the GUC Trust shall be established and, all the GUC Trust Assets shall automatically[4] be transferred to and vest in the GUC Trust, free and clear of all Claims, Liens, interests, encumbrances, and contractually imposed restrictions except as otherwise provided in the Backstop Facility Documents, the Plan or this Agreement;

TO HAVE AND TO HOLD unto the GUC Trust Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that subject to Article IV.H of the Plan and the Global Settlement Agreement, the Assigned Estate Causes of Action, the proceeds of the Assigned Estate Causes of Action, the MPT GUC Advance (if any), the Initial Contribution (if any), any claims, causes of action or objections relating to any Disputed General Unsecured Claim, and all other property held by or transferred to the GUC Trust from time to time under this Agreement or the Plan and any proceeds thereof and earnings thereon (collectively, the "GUC Trust Assets") are to be held by the GUC Trust and applied on behalf of the GUC Trust by the GUC Trust Trustee on the terms and conditions set forth herein and the Plan, solely for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility

---

[4] [NTD: To discuss assumption and assignment agreement.]

remain outstanding) and the Beneficiaries. Further, pursuant to Article II.C of the Plan, the Debtors' obligations under the Backstop Facility shall be deemed transferred to, and assumed by, the GUC Trust as of the date hereof and all amounts owing under the Backstop Facility shall be secured by the Backstop Lien on the proceeds of Assigned Estate Causes of Action and all other assets, if any, transferred (or to be transferred) to the GUC Trust.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER
### DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     <u>Recitals</u>. The Recitals are incorporated into and made terms of this Agreement.

1.2     <u>Conflict Among Plan Documents</u>. In the event of any inconsistency between the Plan, the Confirmation Order, and this Agreement, the Plan or Confirmation Order, as applicable, shall control.

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1    <u>Effectiveness of Agreement; Name of Trust</u>. This Agreement shall become effective on the Effective Date. The GUC Trust shall be officially known as the "Prospect GUC Trust."

2.2    <u>Purpose of Trust</u>. The Debtors and the GUC Trust Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the GUC Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the GUC Trust Assets for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries in accordance with the terms and conditions of this Agreement, the Backstop Facility, and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust.

2.3    <u>Transfer of GUC Trust Assets</u>.

2.3.1    <u>Conveyance of GUC Trust Assets</u>. Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries, the GUC Trust Assets to the GUC Trust as of the Effective Date in trust for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries, which shall, together with any and all other property held from time to time by the GUC Trust under this Agreement and any proceeds thereof and earnings thereon, comprise GUC Trust Assets for all purposes and shall be administered and applied as specified in this Agreement, the Backstop Facility, and the Plan. None of the Debtors shall have any further obligations with respect to the Allowed General Unsecured Claims under

the Plan or the distribution or payment of any proceeds of the GUC Trust Assets to any of the Beneficiaries upon the transfer of the GUC Trust Assets to the GUC Trust in accordance with this Agreement and the Plan, except that the Debtors shall, from time to time, as and when reasonably requested by the GUC Trust Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action reasonably requested by the GUC Trust Trustee as may be necessary or appropriate, to vest or perfect in the GUC Trust or confirm to the GUC Trust Trustee title to and possession of the GUC Trust Assets. The GUC Trust Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan, and/or the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers. The GUC Trust Assets may not be transferred or assigned by the GUC Trust Trustee to any party prior to the satisfaction in full in cash of all obligations under the Backstop Facility.

2.3.2 <u>Title to GUC Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title and interest in and to the GUC Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the GUC Trust on the Effective Date and shall comprise GUC Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, interests, contractually imposed restrictions, and other interests, except as specifically provided in the Backstop Facility Documents, the Plan, or this Agreement, and such transfer is for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries to establish the GUC Trust. The GUC Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the GUC Trust Assets in the possession or control of third parties, pursue, settle and/or resolve any litigation related to the

Disputed General Unsecured Claims, and assert and/or and exercise any and all rights of setoff and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all Holders of Disputed General Unsecured Claims, in each case, in accordance with the terms of the Plan and this Agreement. Without limiting the generality of the foregoing, the GUC Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of GUC Trust Assets. On the Effective Date, the GUC Trust shall be substituted for the Debtors for all purposes with respect to the GUC Trust Assets, the administration of General Unsecured Claims, and the Backstop Facility. To the extent any law or regulation prohibits the transfer of ownership of any of the GUC Trust Assets from the Debtors to the GUC Trust in accordance with this Agreement and the Plan, and such law is not superseded by the Bankruptcy Code, the GUC Trust's interest shall be a lien (junior only to the interest of the Backstop Facility Lender for so long as any amount remains outstanding under the Backstop Facility) upon and security interest in such GUC Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without the need to file financing statements or mortgages. By executing this Agreement, the GUC Trust Trustee on behalf of the GUC Trust hereby accepts all of such aforementioned property as GUC Trust Assets, to be held in trust for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries, subject to the terms of this Agreement, the Backstop Facility Documents, and the Plan.

2.4    <u>Capacity of GUC Trust</u>. Notwithstanding any state or federal law to the contrary or anything herein, the GUC Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The GUC

Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

      2.5    <u>Cooperation of Debtors</u>. The Debtors shall reasonably cooperate with the GUC Trust, MPT, the GUC Trust Trustee and their agents and representatives in the administration of the GUC Trust, including providing reasonable access to books and records with respect to (a) the investigation, prosecution, compromise, and/or settlement of the Assigned Estate Causes of Action, (b) contesting, settling, compromising, reconciling, and objecting to Claims, and (c) administering the GUC Trust. The Debtors shall take all reasonable efforts to assist the GUC Trust and MPT in connection with the foregoing, and the GUC Trust and/or MPT may enter into agreements with the Debtors in order to obtain information on a confidential basis, without being restricted by or waiving any applicable work product, attorney-client, or other privilege. The GUC Trust's receipt of documents, information or communications from the Debtors shall not constitute a waiver of any privilege. Further, the Debtors and their professionals shall use commercially reasonable efforts to cooperate with the GUC Trust, MPT, and GUC Trust Trustee and their professionals in effecting the transition from the Debtors to the GUC Trust of administration of the GUC Trust Assets and of creditors' General Unsecured Claims; *provided* that the Debtors shall not be required to incur any out-of-pocket costs and expenses from and after the Effective Date, including attorneys' fees, without reimbursement from the GUC Trust. The GUC Trust Trustee may request an updated Claims Register from the Notice and Claims Agent within thirty (30) days after the Effective Date and, upon request, the Debtors shall instruct the Notice and Claims Agent to make such register available to the GUC Trust Trustee.

2.6     <u>No Retention of Excess Cash</u>. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the GUC Trust or GUC Trust Trustee retain cash or cash equivalents in excess of a reasonable amount to meet the expenses, and contingent liabilities related to, or to maintain the value of, the GUC Trust Assets during liquidation other than reserves established pursuant to Sections 3 and/or Section 4.1.2 of this Agreement, and shall distribute all amounts not required to be retained for such purposes pursuant to the Backstop Facility Documents and to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, the Backstop Facility Documents, and this Agreement.

2.7     <u>Acceptance by GUC Trust Trustee</u>. The GUC Trust Trustee accepts its appointment as GUC Trust Trustee of the GUC Trust.

## ARTICLE III

## ADMINISTRATION OF TRUST

3.1     <u>Rights, Powers, and Privileges of GUC Trust Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the GUC Trust Assets are transferred to the GUC Trust and become GUC Trust Assets, the GUC Trust Trustee on behalf of the GUC Trust may control and exercise authority over the GUC Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the GUC Trust. In administering the GUC Trust Assets, the GUC Trust Trustee shall endeavor not to unduly prolong the GUC Trust's duration and to act with due regard that undue haste in the administration of the GUC Trust Assets may fail to maximize value for the benefit of the Backstop Facility Lender and the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.2     <u>Power to Contract</u>. In furtherance of the purpose of the GUC Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the GUC

Trust Trustee shall have the right and power on behalf of the GUC Trust, and also may cause the GUC Trust, to enter into any covenants or agreements binding the GUC Trust (including the Backstop Facility Documents), and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the GUC Trust Trustee to be consistent with and advisable in furthering the purpose of the GUC Trust (including the Backstop Facility Documents).

3.3     <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the GUC Trust Trustee from taking or refraining to take any action on behalf of the GUC Trust that, based upon the advice of counsel or other professionals, the GUC Trust Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the GUC Trust Trustee may owe under the Backstop Facility Documents or the Beneficiaries or any other Person under the Plan, Confirmation Order, the Backstop Facility Documents, or this Agreement, unless otherwise specifically limited or restricted by the Plan or this Agreement.

3.4     <u>Powers of GUC Trust Trustee</u>. Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan, the GUC Trust Trustee shall have the power to take the following actions on behalf of the GUC Trust and any powers reasonably incidental thereto that the GUC Trust Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the GUC Trust, unless otherwise specifically limited or restricted by the Plan, the Backstop Facility Documents, or this Agreement:

3.4.1     hold legal title to the GUC Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the GUC Trust Assets;

3.4.2     receive, maintain, conserve, supervise, prosecute, collect, settle, manage, adjust, invest, protect, enforce and where appropriate, cause the GUC Trust to abandon the GUC

Trust Assets, including causing the GUC Trust to invest any moneys held as GUC Trust Assets in accordance with the terms of Section 3.6 hereof;

       3.4.3     cause the GUC Trust to investigate, pursue, commence, prosecute, compromise, settle, dismiss, release, waive, decline to pursue, withdraw, abandon, or resolve all Assigned Estate Causes of Action, *provided* that the GUC Trust may elect to waive any preference claim otherwise constituting an Assigned Estate Cause of Action against any individual vendor so long as all such waived preference claims against such individual vendor and any of its affiliates are for an aggregate claimed amount not in excess of $2,000,000 per transaction.

       3.4.4     open and maintain bank accounts on behalf of or in the name of the GUC Trust;

       3.4.5     cause the GUC Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Backstop Facility Documents, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

       3.4.6     collect and liquidate all GUC Trust Assets, including the sale of any GUC Trust Assets;

       3.4.7     protect and enforce the rights to the GUC Trust Assets vested in the GUC Trust and GUC Trust Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

       3.4.8     review, reconcile, compromise, settle, or object to General Unsecured Claims (other than, without the consent of MPT in its sole discretion, the MPT Deficiency Claims) of any kind, and cause the GUC Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.4.9     cause the GUC Trust to employ or retain professionals, a distribution agent, and other agents, independent contractors and third parties pursuant to this Agreement and pay the reasonable compensation thereof;

3.4.10    cause the GUC Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities (including any taxes imposed on any DOF), and make all other payments relating to the GUC Trust Assets, in accordance with the Plan and this Agreement;

3.4.11    cause the GUC Trust to review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue all Disputed General Unsecured Claims pursuant to the terms of the Plan and this Agreement;

3.4.12    calculate, authorize and make all distributions to the Holders of Allowed General Unsecured Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.4.13    establish, adjust, and maintain a reserve for Disputed General Unsecured Claims (the "Disputed Claims Reserve");

3.4.14    cause the GUC Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the GUC Trust Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.4.15    in reliance upon the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, as may be amended or supplemented from time to time, the "Schedules") and the official Claims Register maintained in these chapter 11 cases, review, and where appropriate, cause the GUC Trust to allow or object to Disputed General Unsecured Claims, and, supervise and administer the GUC Trust's commencement, prosecution,

settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims required to be administered by the GUC Trust;

3.4.16    in reliance upon the Debtors' Schedules and the Claims Register maintained in these chapter 11 cases, maintain a register evidencing the GUC Trust Interest herein held by each Beneficiary and, in accordance with Section 3.[13] of this Agreement, such register may be the official Claims Register maintained in these chapter 11 cases;

3.4.17    cause the GUC Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the GUC Trust, and file tax returns for the GUC Trust as a grantor trust under IRC sections 671-679 and Treasury Regulations section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the GUC Trust, *provided*, *however*, that nothing contained herein shall provide the GUC Trust Trustee with authority or responsibility to file any tax returns for the Debtors', Wind-Down Debtors', or Reorganized PMH's estates, nor shall the GUC Trust or the GUC Trust Trustee have any responsibility or liability in any capacity whatsoever for the filing of Debtors', Wind-Down Debtors', or Reorganized PMH's income tax returns for any period either prior to or after the Effective Date;

3.4.18    cause the GUC Trust to abandon or donate to a qualified section 501(c)(3) of the Tax Code charitable organization any GUC Trust Assets that the GUC Trust Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the GUC Trust and Beneficiaries;

3.4.19    cause the GUC Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the GUC Trust and its

share of the GUC Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.4.20    cause the GUC Trust to seek an expedited determination of tax liability or refund under section 505 of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the termination of the GUC Trust;

3.4.21    cause the GUC Trust to establish such reserves for taxes, assessments and other expenses of administration of the GUC Trust as may be necessary and appropriate for the proper operation of matters incident to the GUC Trust;

3.4.22    cause the GUC Trust to purchase and carry all insurance policies that the GUC Trust Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.4.23    undertake all administrative functions of the GUC Trust, including overseeing the winding down and termination of the GUC Trust;

3.4.24    exercise, implement, enforce, and discharge all of the applicable and relevant terms, conditions, powers, duties, and other provisions of the Plan, the Backstop Facility Documents, the Confirmation Order, and this Agreement, as applicable; and

3.4.25    take all other actions consistent with the provisions of the Plan, the Backstop Facility Documents, and this Agreement that the GUC Trust Trustee deems reasonably necessary or desirable to administer the GUC Trust, including, without limitation, the assumption and repayment of all amounts outstanding under the Backstop Facility in accordance with the terms thereof and the Plan.

3.5    Exclusive Authority to Pursue Assigned Estate Causes of Action.    The GUC Trust, acting by and through the GUC Trust Trustee, shall have the exclusive right, power, and interest

to, in its sole discretion, investigate, sue, pursue, settle, compromise, enforce, release, withdraw, waive, release, abandon, or dismiss any Assigned Estate Causes of Action and shall not be required to provide any notice or seek approval of the Bankruptcy Court for any such action. The GUC Trust shall be the sole representative of the Estates under Section 1123(b)(3) of the Bankruptcy Code, acting by and through the GUC Trust Trustee, with respect to Assigned Estate Causes of Action. The GUC Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the GUC Trust to any counterclaims that may be asserted by any defendant with respect to any Assigned Estate Causes of Action. The GUC Trust shall also be vested with and entitled to assert all of the Debtors' and the Estates' rights with respect to any such counterclaims, under Section 558 of the Bankruptcy Code. Notwithstanding anything contained herein or otherwise, (a) until repayment in full of the Backstop Facility, the Backstop Facility Lender shall have consent rights (not to be unreasonably withheld, conditioned or delayed) over the GUC Trust Trustee's decisions with respect to the Assigned Estate Causes of Action and (b) at all times, the GUC Trust Trustee shall reasonably cooperate with MPT to liquidate the GUC Trust Assets.

      3.6    <u>Global Settlement</u>. In accordance with the Plan and Global Settlement Agreement, (a) the GUC Trust Holdback consisting of $10,000,000 from all Net Proceeds (after satisfaction of Tranches 1 through 4b of the Recovery Waterfall) shall be used to fund the GUC Trust Expenses (the "<u>Initial Contribution</u>"); *provided* that the Initial Contribution may be used instead by the Debtors to the extent necessary to pay Administrative Claims, Other Priority Claims and Priority Tax Claims in connection with Confirmation (and shall be so used by the Debtors, in accordance with clause (5) of the third paragraph of Article II.C of the Plan, prior to drawing on the Backstop Facility); and (b) the first $40,000,000 of Net Proceeds of the Assigned Estate Causes of Action (paid only from proceeds of the Assigned Estate Causes of Action (excluding [any Estate Cause

of Action against Yale or] [5] any PhysicianCo Causes of Action)) (after satisfaction of Tranches 1 through 4b of the Recovery Waterfall) shall be used by the Debtors (x) first, to repay any and all amounts (including interest) owed in connection with the Backstop Facility (including the amount of the MPT GUC Advance, if any, and any interest thereon) in full in cash, and only thereafter, (y) to fund the GUC Trust Expenses and distributions to Holders of General Unsecured Claims (excluding any MPT Deficiency Claims (it being understood that, after the first $40,000,000 of such Net Proceeds have been so expended, the MPT Deficiency Claims shall share pro rata in all distributions to Holders of General Unsecured Claims based on the Claim amount)). Notwithstanding the foregoing, if the amount of such Net Proceeds received pursuant to the foregoing clause (b)(y) is less than $10,000,000, an incremental amount of Net Proceeds of the Assigned Estate Causes of Action (paid only from proceeds of the Assigned Estate Causes of Action (excluding [any Estate Cause of Action against Yale or] any PhysicianCo Causes of Action)) (after satisfaction of Tranches 1 through 4b of the Recovery Waterfall) shall be used to ensure that a total of $10,000,000 (the "<u>GUC Priority Recovery</u>") is used to fund the GUC Trust Expenses and distributions to Holders of General Unsecured Claims (excluding any MPT Deficiency Claims (it being understood that, in such case, after the first $40,000,000 of such Net Proceeds and such incremental amount have been so expended, the MPT Deficiency Claims shall share pro rata in all distributions to Holders of General Unsecured Claims based on the Claim amount)). Notwithstanding the foregoing, if more than $5,000,000 of the Initial Contribution is used by the Debtors to pay Administrative Claims and Other Priority Claims in connection with Consummation, MPT will advance (not subject to any fee) to the GUC Trust, promptly following written request by the GUC Trust, an amount equal to the difference between (x) $5,000,000 and

---

[5]　References to Yale shall be removed upon Bankruptcy Court approval of the Yale 9019 Motion and the Debtors' receipt of the Yale Settlement Payment.

(y) the portion of the Initial Contribution (which cannot be less than $0) not used by the Debtors to pay Administrative Claims and Other Priority Claims in connection with Confirmation (the "MPT GUC Advance"); *provided* that the MPT GUC Advance shall increase dollar-for-dollar the then outstanding amount (if any) under the Backstop Facility and shall be repaid on a priority basis, as set forth in the Plan, consistent with any other Backstop Facility obligations. The MPT GUC Advance shall be used by the GUC Trust to fund the GUC Trust Expenses. Notwithstanding anything contained in the Plan or otherwise, the GUC Trust shall first apply any amounts—other than the Initial Contribution and the proceeds of the MPT GUC Advance (which shall be used by the GUC Trust to fund GUC Trust Expenses) and proceeds of [Estate Causes of Action against Yale and] PhysicianCo Causes of Action (which shall be applied as set forth in the Plan)—received by the GUC Trust promptly following receipt thereof to repay the Backstop Facility (including the MPT GUC Advance) plus interest thereon (which shall accrue at a rate equal to 14.00% per annum, payable in kind (capitalizing at the end of each fiscal quarter)) until paid in full, and only thereafter shall the GUC Trust distribute amounts received (other than the Initial Contribution, the proceeds of the MPT GUC Advance, and the proceeds of [Estate Causes of Action against Yale and] PhysicianCo Causes of Action) in accordance with clause (b)(y) of this paragraph. For the avoidance of doubt, to the extent the GUC Trust Trustee and MPT agree that the GUC Trust will borrow additional amounts from MPT (beyond the MPT GUC Advance) to fund litigation or expenses, nothing in the Plan or otherwise shall prevent the GUC Trust from agreeing to secure such loans with proceeds of the Assigned Estate Causes of Action (excluding [any Estate Cause of Action against Yale or] any PhysicianCo Causes of Action) (after satisfaction of Tranches 1 through 4b of the Recovery Waterfall) and to repay such borrowings before distributing amounts to Holders of General Unsecured Claims, including on account of the GUC Priority Recovery.

Additional Net Proceeds of the Assigned Estate Causes of Action (excluding [any Estate Cause of Action against Yale and] PhysicianCo Causes of Action), paid only from proceeds of such Estate Causes of Action (after repayment of the obligations under the Backstop Facility (including the amount of the MPT GUC Advance, if any) in full in cash), shall be used to fund distributions to all Holders of General Unsecured Claims (including any MPT Deficiency Claim) on a Pro Rata basis in accordance herewith and with the Plan.

      3.7     [Estate Causes of Action against Yale.  Proceeds of any Estate Cause of Action against Yale shall be distributed pursuant to Tranches 1, 2, 3 & 4a, 4b, 6 and 7 of the Recovery Waterfall and the Junior DIP Orders unless MPT elects in its sole discretion that such proceeds shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders). Unless MPT elects in its sole discretion that Estate Causes of Action against Yale shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders) the costs of litigation relating to any such Estate Cause of Action against Yale will be separately funded by MPT pursuant to arrangements acceptable to MPT and no other GUC Trust assets shall be required to be used to pursue such Estate Causes of Action (it being understood that MPT shall have no obligation to provide such funding and, if MPT does not provide such funding, the proceeds of any such Estate Causes of Action against Yale shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders, with such proceeds distributed to Holders of General Unsecured Claims (including any MPT Deficiency Claim on a pro rata basis, other than as provided in the Plan and herein))). Following the Effective Date and assignment of Estate Cause of Action against Yale to the GUC Trust for

pursuit consistent with this paragraph, unless MPT has determined that the Estate Cause of Action against Yale shall be funded by the GUC Trust and the proceeds thereof distributed in accordance with Tranche 5 of the Recovery Waterfall and the Junior DIP Orders, MPT shall have control over settlement of any such Estate Cause of Action, subject to consultation with the GUC Trust Trustee, and MPT shall have control over the litigation of any such Estate Cause of Action, including choice of counsel, subject to consultation with the GUC Trust Trustee.][6]

3.8     PhysicianCo Causes of Action. PhysicianCo Causes of Action shall be treated as Assigned Estate Causes of Action and assigned to the GUC Trust. Proceeds of such PhysicianCo Causes of Action shall be distributed to MPT on account the MPT Note Claims unless MPT elects in its sole discretion that such proceeds shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders). Notwithstanding anything to the contrary herein, MPT Notes Claims and PhysicianCo Subordinated Secured Note Claims shall not receive any distribution on account of Assigned Estate Causes of Action that are not PhysicianCo Causes of Action. Unless MPT elects in its sole discretion that PhysicianCo Causes of Action shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders), the costs of litigation relating to any such PhysicianCo Causes of Action will be separately funded by MPT pursuant to arrangements acceptable to MPT and no other GUC Trust assets shall be required to be used to pursue such PhysicianCo Causes of Action (it being understood that MPT shall have no obligation to provide such funding) and, if MPT does not provide such funding, the proceeds of any such PhysicianCo Causes of Action shall be distributed in the same manner as proceeds of other Assigned Estate Causes of Action (pursuant

---

[6]     References to Yale shall be removed upon Bankruptcy Court approval of the Yale 9019 Motion and the Debtors' receipt of the Yale Settlement Payment.

to Tranche 5 of the Recovery Waterfall and the Junior DIP Orders, with such proceeds distributed to Holders of General Unsecured Claims (including any MPT Deficiency Claim on a pro rata basis, other than as provided in the Plan and herein)). Following the Effective Date and assignment of PhysicianCo Causes of Action to the GUC Trust for pursuit consistent with this paragraph, unless MPT has determined that the PhysicianCo Causes of Action shall be funded by the GUC Trust and the proceeds thereof distributed in accordance with Tranche 5 of the Recovery Waterfall and the Junior DIP Orders, MPT shall have control over settlement of any such PhysicianCo Causes of Action (solely to the extent such Causes of Action relate to PhysicianCo), subject to consultation with the GUC Trust Trustee, and MPT shall have control over the litigation of any such PhysicianCo Causes of Action (solely to the extent such Causes of Action relate to PhysicianCo), including choice of counsel, subject to consultation with the GUC Trust Trustee. To the extent any PhysicianCo Causes of Action are also Causes of Action of HospitalCo, the GUC Trust Trustee and MPT will negotiate in good faith to agree on any funding and settlement thereof, and the allocation with respect to the Net Proceeds thereof, and, absent agreement, shall be entitled to present any issue with respect thereto to the Bankruptcy Court.

3.9     Abandonment. Notwithstanding the foregoing, if, in the GUC Trust Trustee's reasonable judgment, any GUC Trust Asset cannot be sold in a commercially reasonable manner or the GUC Trust Trustee believes in good faith that such property has inconsequential value to the GUC Trust or its Beneficiaries, the GUC Trust Trustee shall have the right to cause the GUC Trust to abandon or otherwise dispose of such property, including by donation of such property to a qualified section 501(c)(3) of the Tax Code charitable organization.

3.10     Responsibility for Administration of Claims. From and after the Effective Date, the GUC Trust shall become responsible for administering and paying distributions to the Holders of

Allowed General Unsecured Claims. The GUC Trust, acting by and through the GUC Trust Trustee, shall have the exclusive right to object to the allowance of any General Unsecured Claim (other than any MPT Deficiency Claim) on any ground, to file, withdraw or litigate to judgment objections to General Unsecured Claims (other than any MPT Deficiency Claim), to settle or compromise any Disputed General Unsecured Claims without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.[7] The GUC Trust, acting by and through the GUC Trust Trustee, shall also be entitled to assert all of the Debtors' and the Estates' rights under, with respect to matters arising out of or relating to the GUC Trust Assets or the GUC Trust, section 558 of the Bankruptcy Code, and may seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

      3.11   <u>Agents and Professionals</u>. The GUC Trust Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the GUC Trust Trustee believes have qualifications necessary to assist in the administration of the GUC Trust, including professionals previously retained by the Debtors or the Creditors' Committee. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the GUC Trust Trustee from engaging counsel or other professionals, including the GUC Trust Trustee itself or the GUC Trust Trustee's firm or their affiliates, to do work for the GUC Trust. The GUC Trust Trustee may pay the reasonable salaries, fees and expenses of such Persons from the Net Proceeds of the Assigned Estate Causes of Action, the Initial Contribution, and the MPT GUC Advance, in accordance with the Plan and this Agreement.

---

[7]    For the avoidance of doubt, nothing in this Agreement restricts the ability of the Debtors to object to Claims that are not General Unsecured Claims.

3.12    Safekeeping and Investment of GUC Trust Assets. All moneys and other assets received by the GUC Trust Trustee shall, until distributed or paid over as provided herein and in the Backstop Facility Documents and the Plan, be held in trust for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the Beneficiaries, but need not be segregated in separate accounts from other GUC Trust Assets, unless and to the extent required by law, the Backstop Facility Documents, or the Plan. Neither the GUC Trust nor the GUC Trust Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution on account of Allowed General Unsecured Claims or payment to the Beneficiaries except as such interest shall actually be received by the GUC Trust or GUC Trust Trustee, which shall be distributed as provided in the Backstop Facility Documents and the Plan. Except as otherwise provided by the Plan or the Backstop Facility Documents, the powers of the GUC Trust Trustee to invest any moneys held by the GUC Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the GUC Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any IRS guidelines (including Revenue Procedure 94-45), whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of New York shall not apply to this Agreement. Notwithstanding the foregoing, the GUC Trust Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere

or conflict with the Backstop Facility Documents or the GUC Trust Trustee's administration of the GUC Trust.

3.13    <u>Maintenance and Disposition of Trust and Debtor Records</u>. The GUC Trust Trustee shall maintain accurate records of the administration of GUC Trust Assets, including receipts and disbursements and other activity of the GUC Trust. The GUC Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Notice and Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the GUC Trust. To the extent of any General Unsecured Claims reflected thereon, the Claims Register may serve as the GUC Trust Trustee's register of GUC Trust Interests held by Beneficiaries. MPT shall have the right, upon not less than ten (10) days' prior written (with email being sufficient) notice delivered to the GUC Trust Trustee, to inspect the books and records during normal business hours reasonably acceptable to the GUC Trust Trustee, subject to entering into a confidentiality agreement reasonably satisfactory in form and substance to the GUC Trust Trustee. The books and records maintained by the GUC Trust Trustee and any records of the Debtors transferred to the GUC Trust may be disposed of by the GUC Trust Trustee at the later of (a) such time as the GUC Trust Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) and the GUC Trust or its Beneficiaries and (b) upon the termination and completion of the winding down or dissolution of the GUC Trust.

3.14    <u>No Bond Required; Procurement of Insurance</u>. Notwithstanding any state or other applicable law to the contrary, the GUC Trust Trustee (including any successor GUC Trust Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve

hereunder without bond. The GUC Trust Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the GUC Trust Trustee and its agents, representatives, employees or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the GUC Trust and paid out of the Net Proceeds of the Assigned Estate Causes of Action, the Initial Contribution, and the MPT GUC Advance, in accordance with the Plan and this Agreement.

**ARTICLE IV**

**DISTRIBUTIONS**

4.1     <u>Distribution and Reserve of GUC Trust Assets</u>. Following the transfer of GUC Trust Assets to the GUC Trust, the GUC Trust Trustee shall make continuing efforts on behalf of the GUC Trust to collect, liquidate, and distribute all GUC Trust Assets, subject to the reserves deemed necessary by the GUC Trust Trustee pursuant to this Agreement and not in conflict with the Backstop Facility Documents or the Plan.

4.1.1     <u>Distributions</u>. The GUC Trust Trustee shall cause the GUC Trust to make distributions of its net income (if any) plus all net proceeds from the sale of assets (if any), at least quarterly, to the Holders of Allowed General Unsecured Claims, except the GUC Trust may retain an amount of net income and other GUC Trust Assets reasonably necessary to maintain the value of the GUC Trust Assets or to meet reasonable expenses, claims and contingent liabilities of the GUC Trust and GUC Trust Trustee, and retention of such amount may preclude distributions to Holders of Allowed General Unsecured Claims; *provided* that no such distributions shall be made to the Beneficiaries for so long as the obligations under the Backstop Facility remain outstanding.

4.1.2     <u>Reserves; Pooling of Reserved Funds</u>. Before any distribution can be made to the Beneficiaries, the GUC Trust Trustee shall, in its reasonable discretion, subject to the

consent of MPT (not to be unreasonably withheld, conditioned or delayed), establish, supplement, and maintain a reserve in an amount sufficient to meet any and all expenses and liabilities of the GUC Trust, including attorneys' fees and expenses and the fees and expenses of other professionals. In accordance with Section 3.4.13 of this Agreement, the GUC Trust may also maintain as necessary the Disputed Claims Reserve with respect to Disputed General Unsecured Claims required to be administered by the GUC Trust. For the avoidance of doubt, the GUC Trust Trustee may withhold any distribution pending the GUC Trust's determination of whether to object to any General Unsecured Claim (other than any MPT Deficiency Claim). Any such withheld distribution shall become part of the Disputed Claims Reserve and shall be distributed to the appropriate Holder of an Allowed General Unsecured Claim no later than the first distribution date after a decision is made not to object to the pertinent General Unsecured Claim (other than any MPT Deficiency Claim) or the General Unsecured Claim becomes Allowed. The GUC Trust Trustee need not maintain any of the GUC Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the GUC Trust; *provided*, *however*, that the GUC Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>. Distributions shall be made net of reserves in accordance with the Plan, the Backstop Facility Documents, and this Agreement, and also net of the actual and reasonable costs of making the distributions.

4.1.4    <u>Right to Rely on Professionals</u>. Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the GUC Trust Trustee may rely and shall be fully protected in relying on the advice and opinion of the GUC Trust's financial advisors, accountants, or other professionals.

4.2     Method of Distributions. Distributions to Holders of Allowed General Unsecured Claims will be made from the GUC Trust in accordance with the terms of the Plan and this Agreement. The GUC Trust may engage disbursing agents and other Persons to assist in making distributions.

4.3     Withholding from Distributions. The GUC Trust Trustee, in its discretion, may cause the GUC Trust to withhold from amounts distributable from the GUC Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the GUC Trust with respect to the amount to be distributed to such Beneficiary. The GUC Trust Trustee shall determine such maximum amount to be withheld by the GUC Trust in its sole, reasonable discretion and shall cause the GUC Trust to distribute to the Beneficiary any excess amount withheld. All amounts properly withheld or deducted from distributions to the Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Beneficiary shall be treated as part of the distribution to such Beneficiary. To the extent that the operation of the GUC Trust or the liquidation of the GUC Trust Assets creates a tax liability imposed on the GUC Trust, the GUC Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the GUC Trust payable without Bankruptcy Court order.

4.4     IRS Forms. The GUC Trust Trustee may require any Holder of a General Unsecured Claim to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan or this Agreement. If a Holder of a General Unsecured Claim (other than MPT) does not provide to the GUC Trust Trustee within ninety (90) days of written request with all documentation that, in the GUC Trust Trustee's reasonable business

judgment, is necessary to determine that all tax withholding and reporting requirement for such Allowed General Unsecured Claim, including a IRS Form W-8 or IRS Form W-9, the distribution on such Allowed General Unsecured Claim shall be deemed disallowed and expunged in its entirety and the funds shall become GUC Trust Assets and redistributed to the other Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan and this Agreement.

4.5 <u>Unclaimed and Undeliverable Distributions</u>. Unclaimed property, together with any distributions to Holders of Allowed General Unsecured Claims returned as undeliverable, shall be held by the GUC Trust Trustee in an unclaimed property reserve (the "<u>Unclaimed Property Reserve</u>") for a period of ninety (90) days and may be released by the GUC Trust Trustee prior to the expiration of the ninety (90) days if presentation of proper proof by such holder of its entitlement thereto is presented to the GUC Trust Trustee. After the expiration of the ninety (90) days, the respective Holders of Allowed General Unsecured Claims (other than MPT) otherwise entitled to such unclaimed property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan or this Agreement, and (a) such Allowed General Unsecured Claims (other than any MPT Deficiency Claim) shall be deemed disallowed and expunged in their entirety; (b) the funds in respect of such unclaimed property shall become GUC Trust Assets and shall revert to the GUC Trust for all purposes including, but not limited to, for distribution to other Holders of Allowed General Unsecured Claims in accordance with the terms of the Plan, Confirmation Order and this Agreement, automatically and without any need for further order of the Bankruptcy Court; and (c) the corresponding GUC Trust Interest of any Beneficiary (other than MPT) holding a disallowed General Unsecured Claim shall be deemed cancelled. Any such funds that revert to the GUC Trust hereunder shall not be subject to the escheat, abandonment or unclaimed property laws of any federal, state, provincial or local government authority.

4.6     No Responsibility to Attempt to Locate Beneficiaries. If a distribution is returned to the GUC Trust as undeliverable, or otherwise remains unclaimed, no further distribution shall be made to such Beneficiary unless and until the Beneficiary notifies the GUC Trust Trustee of such Beneficiary's then-current address and taxpayer identification number. The GUC Trust Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate such Holder, but nothing in this Agreement or the Plan shall require the GUC Trust Trustee to do so.

4.6.1     Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. Unclaimed property held by the GUC Trust shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, or any state, provincial or local governmental unit.

4.7     Request for Reissuance. Distribution checks shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Distribution checks (other than checks payable to MPT) not cashed within such ninety-day period shall be treated as unclaimed property that has been held in the Unclaimed Property Reserve as set forth above in Section 4.5 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the GUC Trust Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted GUC Trust Assets under Section 4.5 of this Agreement. The Beneficiary shall bear all the risk that, and shall indemnify and hold the GUC Trust and GUC Trust Trustee harmless against any loss that may arise if, the GUC Trust Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.8     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the GUC Trust Interest of a Beneficiary, or if there is any disagreement between the

assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the GUC Trust Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.8.1    The GUC Trust Trustee may elect to cause the GUC Trust to make no payment or distribution with respect to the GUC Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the GUC Trust nor the GUC Trust Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the GUC Trust or GUC Trust Trustee be liable for interest on any funds which may be so withheld.

4.8.2    The GUC Trust Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (b) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the GUC Trust Trustee, which agreement shall include a complete release of the GUC Trust and GUC Trust Trustee. Until the GUC Trust Trustee receives written notice that one of the conditions of the preceding sentence is met, the GUC Trust Trustee may deem and treat as the absolute owner under this Agreement of the GUC Trust Interest in the GUC Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the GUC Trust Trustee. The GUC Trust Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.9     In acting or refraining from acting under and in accordance with this Agreement, the GUC Trust Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.10    <u>Priority of Expenses of Trust</u>. The GUC Trust must pay all of its expenses before making any distributions in respect of any Allowed General Unsecured Claim.

**ARTICLE V**

**BENEFICIARIES**

5.1     <u>Interest Beneficial Only</u>. The ownership of a GUC Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or to the GUC Trust Assets or to any right to call for a partition or division of such assets or, other than as set forth in Section 5.4, to require an accounting.

5.2     <u>Ownership of Beneficial Interests Hereunder</u>. Each Beneficiary shall own a GUC Trust Interest herein which shall, subject to Section 4.1 of this Agreement and subject to the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan.

5.3     <u>Evidence of Beneficial Interest</u>. Ownership of a GUC Trust Interest in the GUC Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the GUC Trust by the GUC Trust Trustee.

5.4     <u>Limited Right to Accounting</u>. Other than MPT or the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding), neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the GUC Trust Trustee, and the GUC Trust Trustee shall not be obligated to provide any accounting to any Person; *provided* that MPT or the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) shall be entitled to receive

an accounting upon their reasonable request in writing. The GUC Trust Trustee must provide an accounting to MPT and/or the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) within five (5) business days after MPT's and/or the Backstop Facility Lender's reasonable written request, which accounting shall include the then outstanding amount of residual General Unsecured Claims, the then outstanding amount of residual MPT Deficiency Claims and the amount of GUC Trust Expenses invoiced and/or paid to date, as well as any other similar information reasonably requested. Nothing in this Agreement is intended to require the GUC Trust Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the GUC Trust or as a condition for making any advance, payment, or distribution out of proceeds of GUC Trust Assets.

5.5     No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the GUC Trust or GUC Trust Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the GUC Trust Assets.

5.6     Requirement of Undertaking. The GUC Trust Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the GUC Trust Trustee for any action taken or omitted by it as GUC Trust Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this Section 5.6 shall not apply to any suit by the GUC Trust Trustee.

5.7     Limitation on Transferability. It is understood and agreed that the GUC Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate

notification and proof thereof is submitted to the GUC Trust Trustee, and the GUC Trust Trustee may continue to cause the GUC Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The GUC Trust Trustee may rely upon such proof without the requirement of any further investigation.

5.8     <u>Exemption from Registration</u>. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (a) the parties hereto intend that such rights shall not be securities and (b) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9     <u>Delivery of Distributions</u>. Subject to the terms of this Agreement, the GUC Trust Trustee shall cause the GUC Trust to repay all amounts outstanding under the Backstop Facility and make distributions to Beneficiaries in the manner provided in the Plan, the Backstop Facility Documents, and in this Agreement.

**ARTICLE VI**

**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

6.1     <u>Parties Dealing With the GUC Trust Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the GUC Trust or the GUC Trust Trustee shall be entitled to rely on the authority of the GUC Trust Trustee or any of the GUC Trust Trustee's agents to act in connection with the GUC Trust Assets. There is no obligation of any Person dealing with the GUC Trust Trustee to inquire into the validity or expediency or propriety of any transaction by the GUC Trust Trustee or any agent of the GUC Trust Trustee.

6.2     <u>Limitation of GUC Trust Trustee Liability</u>. In exercising the rights granted herein, the GUC Trust Trustee shall exercise the GUC Trust Trustee's reasonable best judgment, to the end that the affairs of the GUC Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the GUC Trust Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, distribution agent or other disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a Final Order of a court of competent jurisdiction (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the GUC Trust. In no event shall the GUC Trust Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the GUC Trust Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the GUC Trust Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the GUC Trust Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.3     <u>No Liability for Acts of Other Persons</u>. None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     <u>Limitation of Debtors' Liability</u>. The Debtors or their respective successors shall have no liabilities or obligations to the Beneficiaries, the GUC Trust, or the GUC Trust Trustee (each in its capacity as such), other than the liabilities and obligations expressly contemplated by the Plan.

6.5     Without limiting the foregoing, the GUC Trust Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and the GUC Trust Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

6.6     <u>No Liability for Acts of Predecessors</u>. No successor GUC Trust Trustee shall be in any way responsible for the acts or omissions of any GUC Trust Trustee in office prior to the date on which such successor becomes the GUC Trust Trustee, unless a successor GUC Trust Trustee expressly assumes such responsibility.

6.7     <u>No Liability for Good Faith Error of Judgment</u>. The GUC Trust Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order of a court of competent jurisdiction (not subject to further appeal or review) that the GUC Trust Trustee was grossly negligent in ascertaining the pertinent facts.

6.8     <u>Reliance by GUC Trust Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the GUC Trust Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The GUC Trust Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable

for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.9 <u>No Liability For Acts Approved by Bankruptcy Court</u>. The GUC Trust Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the GUC Trust and the General Unsecured Claims required to be administered by the GUC Trust. The GUC Trust Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.10 <u>No Personal Obligation for Trust Liabilities</u>. Persons dealing with the GUC Trust Trustee shall have recourse only to the GUC Trust Assets to satisfy any liability incurred by the GUC Trust Trustee to any such Person in carrying out the terms of this Agreement, and the GUC Trust Trustee shall have no personal, individual obligation to satisfy any such liability.

6.11 <u>Indemnification</u>. The GUC Trust Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer and successors (each, an "<u>Indemnified Party</u>") shall be indemnified for, and defended and held harmless against, by the GUC Trust and solely from the GUC Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered,

or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable, if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the GUC Trust or its Beneficiaries. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud. The amounts necessary for the indemnification provided in this Section 6.11 (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this Section 6.11) shall be paid by the GUC Trust Trustee solely from the proceeds of the Assigned Estate Causes of Action. The GUC Trust Trustee shall not be personally liable for the payment of any GUC Trust expense or claim or other liability of the GUC Trust, and no Person shall look to the GUC Trust Trustee personally for the payment of any such expense or liability. The indemnification provided in this Section 6.11 shall survive the death, dissolution, incapacity, resignation or removal of the GUC Trust Trustee, Indemnified Party or the termination of the GUC Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

6.11.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the GUC Trust under this Section 6.11 shall be expenses of the GUC Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the GUC Trust solely from the proceeds of the Assigned Estate Causes of Action. The GUC Trust Trustee shall not be personally liable for the payment of any GUC Trust expense or claim or other liability of the GUC Trust, and no Person shall look to the GUC Trust Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.11.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The GUC Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.11 on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.11.

6.12    No Implied Obligations. The GUC Trust Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the GUC Trust Trustee.

6.13    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the GUC Trust Trustee, or the termination of the GUC Trust or this Agreement, and shall inure to the benefit of the GUC Trust Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## TAX MATTERS

7.1    Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the GUC Trust Trustee and the GUC Trust shall treat the GUC Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45 and transfer of the GUC Trust Assets to the GUC Trust shall be treated as a transfer of the GUC Trust Assets (other than to the extent the GUC Trust Assets are allocable to Disputed General Unsecured Claims) by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of

the GUC Trust Assets (other than to the extent the GUC Trust Assets are allocable to Disputed General Unsecured Claims) by the Beneficiaries to the GUC Trust in exchange for their pro rata GUC Trust Interest. The Beneficiaries shall be treated as the grantors and deemed owners of the GUC Trust Assets (other than to the extent the GUC Trust Assets are allocable to Disputed General Unsecured Claims) for federal income tax purposes.

7.2     <u>Annual Reporting and Filing Requirements</u>. Pursuant to and in accordance with the terms of the Plan and this Agreement, the GUC Trust Trustee shall file tax returns for the GUC Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). In addition, the GUC Trust Trustee shall file in a timely manner for the GUC Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. The GUC Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items in respect of any GUC Trust Assets allocable to Disputed General Unsecured Claims) will be allocated to the Beneficiaries in accordance with their relative ownership of GUC Trust Interests. Within a reasonable time following the end of the taxable year, the GUC Trust shall send to each Beneficiary a separate statement setting forth such Beneficiary's items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on his/her applicable income tax return.

7.3     <u>Payment of Taxes</u>. The GUC Trust shall be responsible for payment, from the GUC Trust Assets, of any taxes imposed on the GUC Trust (including any taxes imposed on any DOF) or the GUC Trust Assets. In accordance therewith, any taxes imposed on any DOF or its assets will be paid from the GUC Trust Assets.

7.4     <u>Tax Treatment of Reserves for Disputed General Unsecured Claims</u>. The GUC Trust Trustee may, in the GUC Trust Trustee's sole discretion, determine the best way to report

for tax purposes with respect to any Disputed Claims Reserve, including filing a tax election to treat any and all Disputed Claims Reserves as a DOF within the meaning of Treasury Regulations section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the GUC Trust. If an election is made to report any Disputed Claims Reserve as a DOF, (a) all parties (including the Debtors and the Estates, GUC Trust Trustee and the holders of GUC Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing and (b) the GUC Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.5     <u>Valuation of GUC Trust Assets</u>. As soon as possible after the Effective Date, but in no event later than the due date for timely filing of the GUC Trust's first federal income tax return (taking into account applicable tax filing extensions), the GUC Trust Trustee shall determine the fair market value of the GUC Trust Assets as of the Effective Date, based on the GUC Trust Trustee's good faith determination and establish appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the GUC Trust, the GUC Trust Trustee, and the Beneficiaries) for all federal income tax purposes.

**ARTICLE VIII**

**SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE**

8.1     <u>Initial GUC Trust Trustee</u>. The GUC Trust Trustee has been selected by the Creditors' Committee (subject to the Backstop Facility Lender's consent (such consent not to be unreasonably withheld, conditioned, or delayed and for so long as the obligations under the

Backstop Facility remain outstanding)), and its appointment is effective as of the Effective Date of the Plan. The initial trustee shall be the GUC Trust Trustee.

8.2     <u>Term of Service</u>. The GUC Trust Trustee shall serve until (a) the completion of the administration of the GUC Trust Assets and the GUC Trust, including the winding up of the GUC Trust, in accordance with this Agreement and the Plan; (b) termination and dissolution of the GUC Trust in accordance with the terms of this Agreement and the Plan; (c) the GUC Trust Trustee's resignation, death, dissolution, incapacity, liquidation or removal, or (d) removal by a unanimous vote of the Oversight Committee (as defined below). In the event that the GUC Trust Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the GUC Trust Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any GUC Trust Trustee.

8.3     <u>Removal of GUC Trust Trustee</u>. In addition to the above, any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the GUC Trust Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4     <u>Resignation of GUC Trust Trustee</u>. The GUC Trust Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court. In the event of a resignation, the resigning GUC Trust Trustee shall file a full and complete accounting of monies and assets received, disbursed, and held during the term of that GUC Trust Trustee.

8.5     Appointment of Successor GUC Trust Trustee. Upon the resignation, death, dissolution, incapacity, liquidation or removal of a GUC Trust Trustee, the Committee Representative (as defined below) shall appoint a successor GUC Trust Trustee in consultation with the Oversight Committee and subject to the Backstop Facility Lender's consent (such consent not to be unreasonably withheld, conditioned or delayed and for so long as the obligations under the Backstop Facility remain outstanding).

8.6     Powers and Duties of Successor GUC Trust Trustee. A successor GUC Trust Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7     Trust Continuance. The resignation, death, dissolution, incapacity, liquidation or removal of the GUC Trust Trustee shall not terminate the GUC Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the GUC Trust Trustee.

8.8     Compensation of GUC Trust Trustee and Costs of Administration. The GUC Trust Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Net Proceeds of the Assigned Estate Causes of Action, the Initial Contribution, and the MPT GUC Advance, in accordance with the Plan and this Agreement. All costs, expenses, and obligations incurred by the GUC Trust Trustee (or professionals who may be employed by the GUC Trust Trustee in administering the GUC Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the GUC Trust from the Net Proceeds of the Assigned Estate Causes of Action, the Initial Contribution, and the MPT GUC Advance prior to any distribution to Holders of Allowed General Unsecured Claims.

8.9     Appointment of Supplemental GUC Trust Trustee. If the GUC Trust Trustee has a conflict or any of the GUC Trust Assets are situated in any state or other jurisdiction in which the GUC Trust Trustee is not qualified to act as trustee, the GUC Trust Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "Supplemental GUC Trust Trustee") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental GUC Trust Trustee such security as may be designated by the GUC Trust Trustee in its discretion. In the event the GUC Trust Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental GUC Trust Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so. The GUC Trust Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental GUC Trust Trustee any or all of the rights, powers, privileges and duties of the GUC Trust Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental GUC Trust Trustee is acting shall prevail to the extent necessary). To the extent the Supplemental GUC Trust Trustee is appointed by the GUC Trust Trustee, the GUC Trust Trustee shall require such Supplemental GUC Trust Trustee to be answerable to the GUC Trust Trustee for all monies, assets and other property that may be received in connection with the administration of all property. The GUC Trust Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental GUC Trust Trustee, with or without cause, and appoint a successor Supplemental GUC Trust Trustee at any time by executing a written instrument declaring such Supplemental GUC Trust Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## OVERSIGHT COMMITTEE

9.1     <u>Oversight Committee</u>. Pursuant to this Agreement, a GUC Trust Oversight Committee (the "<u>Oversight Committee</u>") shall be created on the Effective Date. The Oversight Committee shall comprise two (2) members. The initial Oversight Committee members are: (a) [_] (including any successor, the "<u>Committee Representative</u>") and (b) [_] (including any successor, the "<u>MPT Representative</u>").

9.2     <u>Oversight Committee Duties and Powers</u>. In connection with the performance of its duties hereunder, the GUC Trust Trustee must consult with the Oversight Committee. The Oversight Committee shall be given reasonable notice of the subject matter of such consultation and an opportunity to review any relevant information relating to, and participate in any call or meeting regarding, such consultation. Notwithstanding any other provision of this Agreement, the GUC Trust Trustee shall report to the Oversight Committee on at least a quarterly basis, which reports shall include such matters and information as reasonably requested by the Oversight Committee. The Oversight Committee shall keep all such information strictly confidential, except to the extent that the Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal) and except that the Oversight Committee members may share such reports with MPT and the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding). For avoidance of doubt, the individual members of the Oversight Committee may disclose any information received from the GUC Trust Trustee to their respective legal counsels for the purpose of obtaining legal advice regarding their rights and duties as members of the Oversight Committee.

9.3     <u>Compensation and Insurance</u>. The GUC Trust Trustee shall reasonably determine the compensation of the Members of the Oversight Committee in connection with their duties on

the Oversight Committee and any such compensation must be consistent with market practice for similar engagements and disclosed on the Bankruptcy Court's docket. All costs, expenses, and obligations reasonably incurred by the Oversight Committee (or professionals who may be employed by the Oversight Committee, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the GUC Trust from the Net Proceeds of the Assigned Estate Causes of Action, the Initial Contribution, and the MPT GUC Advance prior to any distribution to Holders of Allowed General Unsecured Claims. The GUC Trust Trustee, is hereby authorized, but not directed, to obtain and pay for out of the GUC Trust Assets reasonably necessary insurance coverage for members of the Oversight Committee, in connection with the liabilities, duties and obligations of the Oversight Committee and its agents and representatives under this Agreement and the Plan, which insurance coverage may remain in effect for a reasonable period of time as determined by the GUC Trust Trustee after the termination of this Agreement.

9.4 <u>Resignation and Vacancies</u>. Members of the Oversight Committee may resign at any time by giving notice in writing of such resignation to the other members of the Oversight Committee. Vacancies on the Oversight Committee may be filled by a person designated by the GUC Trust Trustee, in consultation with the remaining members of the Oversight Committee; *provided* that if the Committee Representative resigns, its successor shall be selected by the resigning Committee Representative, if the MPT Representative resigns, its successor shall be selected by the resigning MPT Representative and if the MPT Representative dies or becomes incapacitated, its successor shall be selected by MPT. Upon appointment of a successor member of the Oversight Committee, notice of such appointment shall be filed with the Bankruptcy Court

by the GUC Trust Trustee. Unless and until such vacancy is filled, the Oversight Committee shall function with such reduced membership.

9.5     Termination. The Oversight Committee shall continue in existence until the GUC Trust is terminated, or at such earlier time as its remaining members unanimously elect to disband and dissolve the Oversight Committee.

## ARTICLE X

## DURATION OF TRUST

10.1     Duration. Once the GUC Trust becomes effective upon the Effective Date of the Plan, the GUC Trust and this Agreement shall remain and continue in full force and effect until the GUC Trust is terminated.

10.2     Termination on Payment of Trust Expenses and Distribution of GUC Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the GUC Trust, and the distribution of all GUC Trust Assets in accordance with the provisions of the Plan, the Backstop Facility Documents, and this Agreement, the GUC Trust shall terminate and dissolve and the GUC Trust Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3     Termination after Five Years. If the GUC Trust has not been previously terminated and dissolved pursuant to Section 10.2 hereof, no later than five (5) years from the Effective Date (the "Termination Date"), the GUC Trust Trustee shall distribute all of the GUC Trust Assets to the Beneficiaries or the Backstop Facility Lender (for so long as the obligations under the Backstop Facility remain outstanding) in accordance with the Plan and the Backstop Facility Documents, and immediately thereafter the GUC Trust shall dissolve and terminate and the GUC Trust Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 10.5 of this Agreement; *provided* that the Termination Date may be extended if the

Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the GUC Trust Assets.

10.4     No Termination by Beneficiaries. The GUC Trust may not be terminated and dissolved at any time by the Beneficiaries.

10.5     Continuance of Trust for Winding Up; Discharge and Release of GUC Trust Trustee. After the termination of the GUC Trust and solely for the purpose of liquidating and winding up the affairs of the GUC Trust, the GUC Trust Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the GUC Trust Assets including all excess reserves, the GUC Trust Trustee and the GUC Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the GUC Trust Trustee, the Bankruptcy Court may enter an order relieving the GUC Trust Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the GUC Trust Trustee, its employees, professionals, and agents from all liability related to the GUC Trust, and releasing the GUC Trust Trustee's bond, if any.

## ARTICLE XI

## MISCELLANEOUS

11.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2     Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the GUC Trust Trustee. Any notice or other communication which may be or is required to be

given, served, or sent to the GUC Trust Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the GUC Trust or GUC Trust Trustee:
>
> [_]
>
> with a copy to its counsel:
>
> [•]

or to such other address as may from time to time be provided in written notice by the GUC Trust Trustee.

11.2.1     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of laws.

11.2.2     <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.2.3     <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement. Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the terms "includes" and "including" are not limiting, and the term "or" has, except as otherwise indicated, the inclusive meaning represented by the phrase "and/or."

11.2.4     <u>Execution</u>. All funds in the GUC Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to the Backstop Facility Lender or to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or

attach the GUC Trust Assets or the GUC Trust Trustee in any manner or compel payment from the GUC Trust except in connection with the Backstop Facility or by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Backstop Facility Documents, the Confirmation Order and this Agreement.

11.2.5    Amendment. This Agreement may be amended by written agreement of the GUC Trust Trustee and MPT (MPT's consent not to be unreasonably withheld, conditioned or delayed); *provided*, *however*, that such amendment may not be inconsistent with the Plan, the Backstop Facility Documents, or the Confirmation Order. Notwithstanding the foregoing, any amendment, supplement or waiver to or of any provision of this Agreement that affects or would affect the repayment in full in cash of the Backstop Facility prior to the distribution to the Beneficiaries shall be satisfactory to the Backstop Facility Lender in its sole judgment. The GUC Trust Trustee will not agree to any waiver, amendment or modification of this Agreement that would delay, qualify, waive or modify the Backstop Facility Lender's entitlement to be repaid in full in cash from the GUC Trust Assets without the Backstop Facility Lender's consent in its sole discretion (for so long as the obligations under the Backstop Facility remain outstanding).

11.2.6    No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.2.7    No Relationship Created. Nothing contained herein shall be construed to cause any relationship created by this Agreement to constitute an association, partnership or joint venture of any kind.

11.2.8    Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

       11.2.9   <u>Further Assurances</u>. Without limitation of the generality of Section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan and to consummate the transactions contemplated hereby.

       11.2.10   <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

       11.2.11   <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Debtors, GUC Trust, GUC Trust Trustee, and GUC Trust Assets, including, without limitation, the determination of all disputes arising out of or related to the administration of the GUC Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the GUC Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to these chapter 11 cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable

references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*Remainder of the page intentionally left blank*]