Ryan E. Chapple
Texas State Bar No. 24036354
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
Telephone: 512-477-5000
Facsimile: 512-477-5011
Email: rchapple@cstrial.com

*Counsel to the Connecticut Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | § | Case No. 25-80002 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## PERSONAL INJURY CLAIMANTS' OBJECTION TO DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

Jayme L. Pires, Individually and as Administratrix of the Estate of Peter Pires, Jr., Michael Quadrato, Sean Boyle, Amy Dunn, Individually and as Executor of the Estate of Stephen Otis Shepardson, Kristin Shepardson, Mary Lou Shepardson, Leah Pineau as Administratrix d.b.n. of the Estate of Patricia Hart, Lynn Matthews, Individually and as Administratrix of the Estate of Edward Matthews, Anthony Manuel, Chelsea Teasdale, Individually and as Parent and Guardian of Kyle J. Teasdale, Carley Gorcenski (Dolan), Individually and as Executor of the Estate of Griffin Gorcenski, Valerie Carignan, Individually and as Executor of the Estate of Anthony Cocchiola, Golden Jo Elizabeth Grace as Administrator of the Estate of Mary Grace, Katie O'Connor, Individually and as

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

**PERSONAL INJURY CLAIMANTS' MOTION FOR RELIEF - 1**

Administratrix of the Estate of Stephen M. O'Connor, Denise Heavens, Estate of Dale Martin, Ashley Pedro, Individually and as Parent and Guardian of Brooks Pedro, Dylan Pedro, Hitesh Shah, Individually and as Administrator of the Estate of Meghna Shah, Robert P. Matusz, Individually and as Executor of the Estate of Angela R. Matusz, Aerielle St. John and Andrew St. John, as Parents and Guardians of Tucker St. John, Pamela Dorn as the Administratrix of the Estate of Robert F. Dorn, Earl Bueno, Carlos Anthony Varela, Individually and as Administrator of the Estate of Iris Rivera aka Iris Margarita Rivera Ortiz, Kelisha Martinez Morales, Individually and as Parent and Guardian of Kelimar Santiago Martinez, Glen Duplissie, Fiduciary of the Estate of Jonathan Mansfield Duplissie, Debra D'Avino, Ariellmarie Berangere Rankine, as Administratrix of the Estate of Debroah L. Brice (collectively, the Personal Injury Claimants) file this Objection (the Objection) to the Debtors' Amended Joint Chapter 11 Plan [Dkt. 2986] (the Amended Plan) and in support, the Personal Injury Claimants respectfully state as follows:

### I.    BACKGROUND

1. The Personal Injury Claimants are comprised of medical malpractice and tort plaintiffs in varying stages of pre-litigation and/or pending litigation in Connecticut and Pennsylvania state courts (the State Court Cases) against certain Debtors and/or non-debtor defendants. Most of their claims are unliquidated.[2]

2. On or about January 11, 2025, Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the Debtors) in the above-captioned jointly administered chapter 11 cases (the Bankruptcy Case), filed

---

[2] Katie O'Connor's claims, Individually and as Administratrix of the Estate of Stephen M. O'Connor, were liquidated by settlement agreement prior to Debtors' bankruptcy cases. The settlement funds have not been distributed.

voluntary petitions for relief in the United States Bankruptcy Court for the Northern District of Texas (the Court) under chapter 11 of the Bankruptcy Code.

3. The Personal Injury Claimants filed proofs of claims in the Bankruptcy Case to preserve their claims against Debtors, while reserving their rights to adjudicate their claims by jury trial outside the administration of the Bankruptcy Case.[3]

4. On August 27, 2025, Debtors filed their Amended Plan. Certain terms of the Amended Plan remain uncertain—particularly with respect to Class 7 Insured Claims. The Amended Plan provides, in relevant part:

> Except to the extent that a Holder of an Insured Claim agrees to less favorable treatment, each Holder of an Insured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, the treatment provided in the Post-Confirmation Claims Resolution Procedures.
>
> Pursuant to the Post-Confirmation Claims Resolution Procedures, the Insurance Trustee and applicable Holder shall exchange offers to agree on the Allowed amount of such Holder's Insured Claim, which may be paid from the Insurance Trust and/or an Allowed General Unsecured Claim, and the remaining unpaid amount of such Holder's Insured Claim may be liquidated in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies. If the offer exchange procedures do not result in a consensual resolution of the Allowed amount of such Holder's Insured Claim, the Insurance Trustee and applicable Holder shall proceed to mediation under the terms of the Post-Confirmation Claims Resolution Procedures. If mediation is unsuccessful (or for any other reason described in the Post-Confirmation Claims Resolution Procedures), the applicable Holder can liquidate their Insured Claim in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies, and in the event that (A) the applicable Insurer denies the tender of defense or there are no applicable or available Insurance Policies, or (B) the proceeds from applicable and available Insurance Policies have been exhausted or are otherwise insufficient to pay in full a Holder's Allowed

---

[3] Certain claimants whose claims arose post-petition, will hold administrative claims and therefore are not required to file proofs of claim. Certain claimants assert claims solely against non-debtor defendants and accordingly did not file proofs of claims. Certain claimants were only recently retained and may require relief to permit the filing of late proofs of claims, which is currently the subject of discussions with the Debtors.

> Insured Claim, as determined by an order or judgment by a court of competent jurisdiction or under a settlement or compromise of such Holder's Allowed Insured Claim, then such Holder shall be entitled to its Pro Rata share of GUC Trust Interests as if such Holder was a member of Class 8 – General Unsecured Claims, based on the amount of an Allowed Claim equal to the amount of the Allowed Insured Claim less the amount of available proceeds paid on such Allowed Insured Claim from the applicable and available Insurance Policies (the "<u>Insured Deficiency Claim</u>").
> In no event shall any Holder of an Allowed Insured Deficiency Claim be entitled to receive more than one hundred percent (100%) of the Allowed amount of their respective Allowed Insured Deficiency Claim. In no event shall any Holder of an Allowed Insured Deficiency Claim receive payment from the GUC Trust on account of such Allowed Insured Deficiency Claim in an amount that exceeds the Pro Rata share of GUC Trust Interests such Holder would have received had the Holder's Claim been classified in Class 8.
>
> Some of the Insured Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Insured Claims, the Debtors may owe deductible or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Insured Claims for any deductible or self-insured retention obligations, and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 8 General Unsecured Claims, to the extent Allowed. In any event, the applicable Debtors are legally obligated to pay Allowed Insured Claims in their full face amount.

*See* Amended Plan, § III.B.7(b). At this time, these provisions do not clarify how distributions from the Insurance Trust will be allocated, how insurance settlements will affect non-settling carriers, or how claims adjudicated to final judgment or settlement outside the Bankruptcy Case will be recognized for Plan purposes. In addition, key information remains outstanding, including the identity of any Settling Insurers, the scope of Insurance Trust Assets, the terms of the Insurance Trust Agreement, and the Post-Confirmation Claims Resolution Procedures. The Personal Injury Claimants seek additional information relating to Connecticut Healthcare Insurance Company (CHIC), including but not limited to how or when the Debtors propose to winddown CHIC and any assignment of CHIC's rights relating to other carriers and reinsurers. Without this

PERSONAL INJURY CLAIMANTS' MOTION FOR RELIEF - 4

information, Class 7 claimants cannot know how judgments or settlements will be recognized, how the Insurance Trust will operate in practice, and whether recoveries will reflect the scope of available coverage.

5.      In addition, the Debtors recently filed an Emergency Motion [Dkt. 3335] to modify the automatic stay to permit personal injury claimants to liquidate their claims outside the Bankruptcy Case for purposes of recovery against available insurance coverage. The outcome of this Emergency Motion and any related relief may directly impact the administration of Class 7 claims under the Amended Plan and the scope of the Post-Confirmation Claims Resolution Procedures.

6.      The Amended Plan also includes provisions governing Assigned Causes of Action and the scope of releases. The Amended Plan defines "Assigned Estate Causes of Action" to include:

> . . . all Estate Causes of Action not released pursuant to this Plan, the DIP Orders, the Global Settlement Agreement and the PBGC Waiver, including any Estate Causes of Action against any parties included on the Non-Released Parties Schedule, except: (a) Causes of Action against the Debtors' current directors and officers; (b) Estate Causes of Action to enforce the Global Settlement Agreement; (c) Estate Causes of Action in respect of the Junior DIP Facility and Backstop Facility; and (d) to the extent the PhysicianCo Release Effective Date does not occur on or before the Effective Date, the PhysicianCo Causes of Action, if any, against PBGC.

*See* Amended Plan § I.A(9). The Amended Plan further provides that Assigned Estate Causes of Action will be transferred to the GUC Trust, with the GUC Trustee empowered to prosecute them. *See id.* § IV.H.

7.      At the same time, the Amended Plan provides for a broad release by the Debtors of claims against Released Parties, including derivative claims belonging to their estates, with carve-outs limited to post-Effective Date obligations, claims under the Amended Plan, and Causes of Action determined by Final Order to constitute actual

fraud, willful misconduct, or gross negligence. *See* Amended Plan. § VIII.A. The Amended Plan defines "Released Party" to include the Debtors, the DIP Lenders, MPT, Centerbridge, Blue Torch, PBGC, the Committee and its members, the Ombudsman, the Backstop Facility Lender, each current and former Affiliate of each Entity that is not included on the Non-Released Parties Schedule, and their respective "Related Parties." *See* Amended Plan § I.A(229). "Related Party" is defined broadly to include various affiliates, employees, professionals, equity holders, and advisors, among others. *See id*. § I.A(228). Taken together, these provisions leave ambiguity as to whether estate claims against former directors and officers, or other insiders not listed on the Non-Released Parties Schedule, are preserved or waived. Without clarification, there is a risk that viable estate claims may be foreclosed through overly broad release definitions. To avoid that result, and consistent with established principles of creditor protection, the Plan should make clear that such estate claims remain preserved, and that if the GUC Trustee declines to pursue them, parties in interest may seek authority from the Court to do so on behalf of the estate.

8. The Personal Injury Claimants have been, and will continue to be, engaged in constructive discussions with Debtors to address these open issues and ensure that the Plan ultimately provides clarity regarding the allowance, liquidation, and payment of personal injury claims both within and outside the Bankruptcy Case as well as the preservation of viable estate claims.

## II. ARGUMENT

9. For confirmation of the Amended Plan, Debtors must demonstrate by a preponderance of the evidence that the Amended Plan complies with section 1129 of the Bankruptcy Code. *See In re Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1165 (5th Cir. 1993).

Section 1129 requires Debtors to establish that the Amended Plan complies with all applicable provisions of the Bankruptcy Code, is proposed in good faith, and is not proposed by any means forbidden by law. *See* 11 U.S.C. § 1129(a)(1), (3). Currently, Debtors have not met their burden of proof.

10. At this time, the Amended Plan's treatment of Class 7 Insured Claims is uncertain. First, the Amended Plan provides that such claims may be liquidated outside the Bankruptcy Case, but "solely to recover only from the available insurance coverage under the applicable Insurance Policies." *See* Amended Plan § III.B.7(b). The Amended Plan does not similarly recognize that liquidation also establishes the allowed amount of the claim for purposes of distributions under the Amended Plan. The Personal Injury Claimants expressly reserve their rights to adjudicate their claims to final judgment or settlement outside the Bankruptcy Case for purposes of distributions under the Amended Plan. *See* 28 U.S.C. §§ 157(b)(2)(B), (b)(5), (c); 28 U.S.C. § 1411. Without this recognition, the Amended Plan risks depriving personal injury claimants of the binding effect of their judgments and undermining their statutory rights.

11. Second, the Amended Plan provides that Class 7 claims will be administered through Post-Confirmation Claims Resolution Procedures, but those procedures have not yet been disclosed. *See* Amended Plan, § III.B.7(b). Without the governing procedures, claimants cannot evaluate how claims will be liquidated, how final judgments outside the Bankruptcy Case will be recognized, or how distributions from the Insurance Trust will be allocated by policy year or coverage layer. Distributions here are critical as any insurance proceeds funding Class 7 recoveries are not property of the estate, and any distributions from those proceeds must conform to the contractual terms of the applicable policies, both as to coverage and allocation.

12.     Third, critical questions remain surrounding the insurance structure that will govern Class 7 recoveries. It is uncertain at this time who the Settling Insurers may be, what the terms of any settlements will provide, the contents of the Insurance Trust Agreement, the scope of Insurance Trust Assets, or the procedures that will apply.  In the absence of this information, material questions remain unanswered about the allowance, liquidation, and payment of Class 7 claims, making it impossible at this stage to determine whether the Amended Plan satisfies the requirements for confirmation.

13.     The Amended Plan also raises questions about the preservation of estate causes of action and the scope of the releases it provides.  Specifically, the Amended Plan provides an expansive release of claims by Debtors that could improperly waive viable claims that should otherwise be preserved for the benefit of creditors.  *See* Amended Plan, § VIII.A.  The Personal Injury Claimants therefore request that the Amended Plan include express terms preserving such estate claims and permitting parties in interest to seek authority from the Court to pursue them on behalf of the estate in the event the GUC Trustee declines to prosecute them.

14.     The Personal Injury Claimants timely opted out of the third-party releases under the Amended Plan.  The Personal Injury Claimants incorporate those opt outs herein, expressly opting out of any third-party releases or exculpations under the Amended Plan.  *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216–27 (2024); *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 424 (5th Cir. 2022).

15.     The Personal Injury Claimants objections and reservations stated herein apply equally to any further amended, modified, or restated plans filed by Debtors, unless expressly resolved by agreement or by order of the Court.  The Personal Injury Claimants reserve the right to supplement or renew their objections as necessary in response to any

subsequent amendments. The Personal Injury Claimants reserve the right to adopt and incorporate by reference any additional objections or responses filed by other parties with respect to the Amended Plan.

### III.  Prayer

WHEREFORE, the Personal Injury Claimants respectfully request the Court enter an order denying confirmation of the Amended Plan absent modifications to the Plan addressing the objections above and grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this 8th day of October 2025.

                                          */s/ Ryan E. Chapple*
                                          Ryan E. Chapple
                                          State Bar No. 24036354
                                          Email: rchapple@cstrial.com
                                          **CAIN & SKARNULIS PLLC**
                                          303 Colorado Street, Suite 2850
                                          Austin, Texas 78701
                                          512-477-5000
                                          512-477-5011—Facsimile

                                          ***ATTORNEY FOR PERSONAL INJURY CLAIMANTS***

### CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2025, a true and correct copy of the foregoing Objection has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF.

                                          */s/ Ryan E. Chapple*
                                          Ryan E. Chapple