**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered)<br>Rel. to Dkt. No. 3666 |

**DECLARATION OF PAUL RUNDELL IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) GRANTING RELIEF FROM THE CENTURION SALE ORDER AND (A) AUTHORIZING THE TRANSFER OF THE RHODE ISLAND HOSPITALS TO THE STATE OF RHODE ISLAND, OR (B) IN THE ALTERNATIVE, APPROVING THE CLOSURE OF THE RHODE ISLAND HOSPITALS; AND (II) GRANTING RELATED RELIEF**

I, Paul Rundell, hereby declare under penalty of perjury as follows:

1. I am the Chief Restructuring Officer ("CRO") of Prospect Medical Holdings, Inc. and its current hospital-related debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "HCo Debtors"), together with PHP Holdings, LLC and its physician-related debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "PCo Debtors"), and together with Chamber Inc, Ivy Holdings Inc., and Ivy Intermediate Holding Inc., as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "TopCo Debtors," and together with the HCo Debtors and the PCo Debtors, the "Debtors") and a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a turnaround management consulting firm. I have served as the CRO of the HCo Debtors since January 11, 2025, as the CRO of the PCo Debtors since July 7, 2025, and

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

1

as the CRO of the TopCo Debtors since September 19, 2025. I have more than twenty years of experience specializing in restructuring, and I have assisted clients with financial or operational challenges, including business strategy and planning, financial analysis and support, cash management, crisis management, turnaround consulting, market analysis and operational improvement. I have served various clients as interim chief executive officer and chief restructuring officer and held other positions in the restructuring context both in and out of court. Specifically, I advised and/or served as a senior executive for, among others, Sears Methodist Retirement System, Erickson Retirement Communities, LLC, Clare Oaks, Lincolnshire Campus, LLC, Naperville Campus, LLC, Hingham Campus, LLC, St. Vincent's Catholic Medical Centers, Sunwest Management Inc., 21st Century Oncology and the National Benevolent Association.

2. I am over the age of 18 years and am authorized to submit this declaration on behalf of the Debtors. If called to testify, I could and would testify competently to the facts set forth herein.

3. As CRO of the Debtors, I am familiar with and knowledgeable about the Debtors' day-to-day operations, business and financial affairs, and books and records, as well as the circumstances leading to the commencement of these chapter 11 cases. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Granting Relief From the Centurion Sale Order and (A) Authorizing the Transfer of the Rhode Island Hospitals to the State of Rhode Island, or (B) in the Alternative, Approving the Closure of the Rhode Island Hospitals; and (II) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith, which seeks to authorize the transfer of the Debtors' RI Hospitals to the State of Rhode Island or its designee, or in the alternative, effect the safe and orderly closure of the RI Hospitals.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

2

4. I am not being specifically compensated for this testimony other than through payments received by A&M as a professional retained by the Debtors.

5. Since A&M's restructuring group was initially engaged by the Debtors on October 8, 2024, I have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these Chapter 11 Cases. Consequently, I have developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these Chapter 11 Cases. Except where explicitly noted, all statements in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, business affairs, financial performance, and restructuring efforts, (b) information learned in my review of relevant documents, and (c) information I have been provided from other members of the Debtors' management or advisors. Based on this knowledge and as set forth in more detail below, I believe the Closure Plan outlined in the Motion and described herein provides a smooth and efficient closure process that minimizes disruptions to patients at the Debtors' RI Hospitals, should such a closure be required.

## **BACKGROUND**

6. The Debtors and their non-Debtor affiliates are significant providers of regional healthcare services in California, Connecticut, Rhode Island, and formerly Pennsylvania. The Company's business is primarily hospital operations, which consist of, among other things, the ownership and/or operation of acute care and behavioral hospitals, providing a wide range of inpatient and outpatient services spanning multiple states.

7. The Company owns and operates two hospitals in the State of Rhode Island, Roger Williams Medical Center and Our Lady of Fatima Hospital, along with other healthcare facilities associated with these RI Hospitals, which are the subject of the Motion.

3

## CLOSURE OF THE PENNSYLVANIA HOSPITALS WILL PROTECT THE SAFETY, PRIVACY, AND HEALTH OF PATIENTS

8. With the support of the Debtors' other officers, directors, and restructuring advisors, Alvarez & Marsal ("A&M") has been actively engaged in the effort to develop and implement the objectives, timelines, and milestones set forth in the Closure Plan (as defined and described in the Motion), particularly from the perspective of patient health, privacy, and safety.

9. The Closure Plan described in the Motion was developed to protect patient health, privacy, and safety, and I believe it will do so. An important element of the Debtors' Closure Plan includes the establishment of an incident command structure (the "Incident Command Structure") that will oversee the safe and orderly closure of the Debtors' impacted facilities.

10. The Incident Command Structure includes (i) an incident commander (the "IC"), who is responsible for overall incident management and decision-making, (ii) a command staff comprising a (a) Public Information Officer ("PIO"), who manages communication with the media and the public; (b) Safety Officer, who ensures the safety and well-being of responders, patients, and fixed assets; and (c) Liaison Officer, who coordinates with external agencies and organizations, and (iii) the general staff, who manage the operations, logistics, and finances of the closure management process.

11. The proposed Closure Plan contemplates a Proposed Closure Date of December 31, 2025. It is my opinion and belief this timeline is adequate to ensure the safety of admitted patients in such hospitals. Further, the time periods contemplated for closure of such hospitals' clinical operations are sufficient to ensure that the Debtors are able to complete all processes needed to safely close such hospitals. Once clinical operations cease within the relevant time frame, other aspects of the Closure Plan, such as the disposition of fixed assets, medical records and supply inventory, are expected to be completed soon thereafter.

## **CONCLUSION**

12. For all the foregoing reasons, I believe the Closure Plan outlined in the Motion and described herein provides a smooth and efficient closure process that minimizes disruptions to patients.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of October, 2025

                                          */s/ Paul Rundell*
                                          By: Paul Rundell
                                          Chief Restructuring Officer