Adi Goldstein (admitted *pro hac*)
Deputy Attorney General
Richard L. Gemma (admitted *pro hac*)
Special Assistant Attorney General
RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL
150 South Main Street Providence, RI 02903
Telephone: (401) 274-4400
Email:
agoldstein@riag.ri.gov
rgemma@riag.ri.gov

Andrew M. Troop (admitted *pro hac*)
Dania Slim (admitted *pro hac*)
Andrew V. Alfano (admitted *pro hac*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street New York, New York 10019
Telephone: (212) 858-1000
Email:
andrew.troop@pillsburylaw.com
dania.slim@pillsburylaw.com
andrew.alfano@pillsburylaw.com

K. Todd Phillips, Tex. Bar No. 24002767
Jason M. Rudd, Tex. Bar No. 24028786
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Email:
todd.phillips@wickphillips.com
jason.rudd@wickphllips.com

*Counsel to the State of Rhode Island*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**RHODE ISLAND'S PRELIMINARY STATEMENT
AND RESERVATION REGARDING DEBTORS'
<u>MOTION FOR RELIEF FROM THE CENTURION SALE ORDER [ECF NO. 3666]</u>**

To the Honorable Stacey G.C. Jernigan, Chief Bankruptcy Judge:

---

[1] A list of each of the debtors in these chapter 11 cases may be obtained on the website of the debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

Given the extraordinary relief sought in the Motion,[2] the Attorney General for, and on behalf of, the State of Rhode Island takes this opportunity, in advance of the Status Conference, to reiterate Rhode Island's unwavering position with respect to any transaction for the RI Hospitals (including the proposed Centurion transaction), underscore the State's active and continuing involvement in trying to facilitate a transition of the RI Hospitals to qualified non-profit operators, and emphasize the importance of preserving, to the fullest extent, the Hospital Fund for the work needed *after* a successful transition to help address the RI Hospitals' infrastructure and capital needs neglected by Prospect; without waiving or limiting, and subject to a full reservation of, substantive legal and factual responses to the Motion as and when they come due. This is not a substantive response to the Motion. In the absence of a consensual resolution, Rhode Island will oppose the Motion and, among other things, insist that Prospect fully comply with Rhode Island's statutory and regulatory closure requirements if that is the unfortunate and universally unwanted result of these chapter 11 cases.

## THE REGULATORY PRIORITIES ARE UNCHANGED

1.  Rhode Island's regulatory position has been consistent and clear not only since the commencement of Prospect's chapter 11 cases, but for years prior to that when Prospect first sought to transition the RI Hospitals to Centurion: facilitate a stable and responsible transition of the RI Hospitals to a qualified new operator, while protecting the health and welfare of Rhode Islanders. Accordingly, both before and since the chapter 11 filings, the State has engaged, and remains committed to engaging, with Centurion and any other party capable of achieving that

---

[2] *Debtors' Motion for Entry of an Order (I) Granting Relief From the Centurion Sale Order and (A) Authorizing the Transfer of the Rhode Island Hospitals to the State of Rhode Island, or (B) in the Alternative, Approving the Closure of the Rhode Island Hospitals; and (II) Granting Related Relief* [ECF No. 3666]. Capitalized terms used but not defined herein have the definitions ascribed in the Motion. Prospect Medical Holdings, Inc. and its affiliated debtors ("Prospect" or "Debtors") filed the Motion near midnight on Thursday, October 30, 2025, and simultaneously noticed a status conference on the Motion for November 4, 2025, at 9:30 a.m. (CT) (the "Status Conference").

2

outcome—so long as the proposed path forward protects both the public interest and fulfills the State's regulatory requirements.

2. Rhode Island's commitment to help facilitate a transition remains unchanged because the importance of the RI Hospitals to the communities they serve remains unchanged. These hospitals provide essential emergency, behavioral health, outpatient, and other specialized medical services to thousands of Rhode Islanders every year in mostly underinsured communities. *See Rhode Island's Informational Brief*, ECF No. 54, (describing the RI Hospitals and their position in the Rhode Island healthcare system).

3. The closure of the RI Hospitals would be catastrophic not only for proximate communities but for more distant communities as well. By way of just one example, RWMC has the State's *only* fully accredited bone marrow transplant unit and Level IV Alcohol & Drug Detoxification Program. *Id.*

4. Historically, the RI Hospitals see over 50,000 emergency room visits per year, provide approximately 25% of the State's behavioral health beds, and perform emergency and other surgeries daily. Transitioning these services to other hospitals is challenging as other hospitals are already overburdened and will necessarily reduce access to emergency and urgent care, emergency mental health and substance use services, and critical primary care services. *Id.*

5. In sum, the vital services provided by the RI Hospitals are not quickly or easily replaced or moved.

6. It was against this backdrop that Rhode Island's Attorney General and Department of Health (RIDOH) crafted the conditions under which Centurion could take over the RI Hospitals. Although a non-profit, Centurion has no demonstrated track record running acute care hospitals in Rhode Island or elsewhere nor does it have an independently strong balance sheet to fund RI

Hospital operations and capital needs. Rhode Island's original conditions, therefore, covered pre-transaction requirements for Prospect and post-transaction requirements for Centurion intended to maintain the hospitals and maximize the likelihood they would turnaround and continue providing services.

### THE CENTURION STAGE HAS CHANGED AND RHODE ISLAND HAS ADAPTED

7. In the nine months of this case, Centurion has been unable to raise the funds necessary to close the transaction and it claims it cannot contribute funds prior to closing to mitigate Prospect's alleged losses at the RI Hospitals while it tries to get to a transaction closing. To be fair, Centurion is pursuing financing, but whether it will be able to do so on a schedule or in a way that addresses Rhode Island's conditions and Prospect's stated requirement to stop funding RI Hospital losses as it addresses its own need to reduce unpaid administrative expenses by its confirmation hearing remains unknown.

8. Rhode Island has done its part to help Centurion finalize and obtain financing by extending concessions of certain of its conditions, as Prospect acknowledges in the Motion. More than once, Centurion came to Rhode Island seeking clarifications and limited concessions which it represented would result in its financing closing and otherwise permit it to comply with Rhode Island's transaction conditions. And Rhode Island agreed. Still, Centurion has not been able to obtain the necessary funds to close.

9. For these reasons and others, Prospect's complaint that it is being "held hostage" by the State's requirements is objectively wrong. Rhode Island is exercising its regulatory power responsibly for the benefit of its citizens, making thoughtful decisions about concessions that were represented by Centurion to be the ones necessary to raise funds while maintaining conditions critical to the RI Hospitals' ability to serve their communities going forward – like protecting the

4

integrity of the Hospital Fund. In contrast, there is no accounting of the steps that Prospect undertook to reverse or limit losses at the RI Hospitals, including over the many months Centurion has tried to raise financing. The projected losses in 2025 exceed the average annual losses at the RI Hospitals for the fiscal years 2015 – 2020. See [Prospect_Chamber_Ivy_AG_HCA_Decision.pdf](Prospect_Chamber_Ivy_AG_HCA_Decision.pdf) at page 27.

10. Furthermore, Centurion's challenges in obtaining financing have been known to Prospect for months. Unlike Rhode Island, whose role is limited to evaluating transactions presented to it and responding to requests for accommodation from transacting parties, Prospect is Centurion's contractual counterparty, and it never came to the State asking for an accommodation or to Centurion until very recently as it faces its own confirmation challenges regarding the amount of its administrative expenses. It did not terminate its agreement with Centurion. It did not seek an alternative transaction. It waited as Centurion tried to obtain financing.

## IMMEDIATE NEXT STEPS

11. Rhode Island understands that Centurion remains committed to closing on its acquisition of the RI Hospitals, and like Prospect, Rhode Island supports the closing of that transaction consistent with its modified conditions approving that deal, if Centurion performs promptly.

12. Rhode Island also understands that another operator recently commenced diligence on a going concern acquisition of the RI Hospitals, aware of the short timeline Prospect seeks to impose through the Motion. Prospect should pursue this alternative (or others) aggressively.

13. As it has to date, Rhode Island will do its part, including continuing to work with Prospect and other interested parties in the hope of addressing Prospect's concerns about funding current losses while a limited amount of additional time is extended, and exercising its regulatory

5

oversight and approval mandate thoughtfully, under the challenging circumstances of these chapter 11 cases, for any transaction that addresses its regulatory concerns sufficiently. Depleting the Hospital Fund, however, is not the solution or panacea Prospect implies. The Hospital Fund provides any buyer with more than $51 million for needed capital and infrastructure work at the RI Hospitals; work which Prospect was required to perform or should have performed but did not. Lessening the amount of those funds for post-transaction use by a buyer may diminish interest in, or the ability to close, a transaction.

14. Under these circumstances, Rhode Island urges the Court to consider the next steps for the Motion in a way that allows parties to focus on getting a transaction to close promptly. The transfer of the RI Hospitals to a qualified operator remains viable and should not be abandoned. Any modifications to the Centurion Order can be considered when there is a different transaction before the Court and parties.

### RESERVATION OF RIGHTS

15. This filing is submitted without prejudice to, and with a full reservation of, Rhode Island's rights to respond to the Motion on any basis, or to supplement this filing in writing or at any hearing or conference on the Motion.

[Signatures on following page]

6

Dated:  November 3, 2025

STATE OF RHODE ISLAND

PETER F. NERONHA

Attorney General of Rhode Island

By:

*/s/ Andrew M. Troop*

Adi Goldstein (admitted *pro hac)*
Deputy Attorney General
Richard L. Gemma (admitted *pro hac*)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
agoldstein@riag.ri.gov
rgemma@riag.ri.gov

Andrew M. Troop (admitted *pro hac*)
Dania Slim (admitted *pro hac*)
Andrew V. Alfano (admitted *pro hac*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
Fax: (212) 858-1500
andrew.troop@pillsburylaw.com
dania.slim@pillsburylaw.com
andrew.alfano@pillsburylaw.com
K. Todd Phillips, Tex. Bar No. 24002767
Jason M. Rudd, Tex. Bar No. 24028786
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue
Dallas, Texas 75204
Telephone: (214) 692-6200
todd.phillips@wickphillips.com
jason.rudd@wickphllips.com

*Counsel to the State of Rhode Island*

7

## Certificate of Service

I, Andrew M. Troop, certify that the foregoing was served on November 3, 2025, through the Court's ECF filing system.

                                              */s/ Andrew M. Troop*
                                              Andrew M. Troop