| | |
|---|---|
| SIDLEY AUSTIN LLP | SIDLEY AUSTIN LLP |
| Thomas R. Califano (24122825) | William E. Curtin (admitted *pro hac vice*) |
| Rakhee V. Patel (00797213) | Patrick Venter (admitted *pro hac vice*) |
| Maegan Quejada (24105999) | Anne G. Wallice (admitted *pro hac vice*) |
| 2021 McKinney Avenue, Suite 2000 | 787 Seventh Avenue |
| Dallas, Texas 75201 | New York, New York 10019 |
| Telephone: (214) 981-3300 | Telephone: (212) 839-5300 |
| Facsimile: (214) 981-3400 | Facsimile: (212) 839-5599 |
| Email: tom.califano@sidley.com | Email: wcurtin@sidley.com |
| rpatel@sidley.com | pventer@sidley.com |
| mquejada@sidley.com | anne.wallice@sidley.com |

*Attorneys for the Debtors
and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) APPROVING A SETTLEMENT AGREEMENT WITH THE CITY OF
WATERBURY AND MPT PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

> **Emergency relief has been requested. Relief is requested not later than December 1, 2025. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on December 1, 2025, at 9:30 a.m. (prevailing Central Time) in Courtroom #1, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Suite 1254, Dallas, Texas 75242. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. The meeting code is 2304 154 2638. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judgejernigans-hearing-dates.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Prospect Medical Holdings, Inc. ("PMH") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion (this "Motion").

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) approving the terms of the settlement agreement (the "Settlement Agreement"), attached as Exhibit 1 to the Order, between (i) the Debtors, (ii) the City of Waterbury, Connecticut (the "City of Waterbury"), and (iii) MPT of Waterbury PMH, LLC, a Delaware limited liability company ("MPT," and, together with the Debtors and the City of Waterbury, the "Parties"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (b) granting related relief.

2. In support of this Motion, the Debtors rely upon and incorporate the *Declaration of Paul Rundell in Support of the Debtors' Emergency Motion for Entry of an Order (I) Approving a Settlement Agreement With the City of Waterbury and MPT Pursuant to Federal Rule of*

2

*Bankruptcy Procedure 9019 and (II) Granting Related Relief* (the "Rundell Declaration"), filed contemporaneously herewith. The Debtors also rely on and incorporate by reference the *Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 41] (the "First Day Declaration").[2]

## PRELIMINARY STATEMENT

3.  The City of Waterbury, MPT, and the Debtors have reached an agreement to fully and finally resolve, compromise, and settle the disputes between them including, without limitation, any disputes arising out of or related to outstanding real property taxes, personal property taxes, and water or sewage bills at the Waterbury Hospital, located at 64 Robbins Street, Waterbury, Connecticut 06708 ("Waterbury Hospital"), whether payable by the Debtors or MPT, as well as the tax appeal pending in the Connecticut State Court at Docket No. UWY-CV-23-6070051-S between the Debtors and the City of Waterbury (the "State Court Action").

4.  The Settlement Agreement resolves and reduces over $21.7 million dollars in asserted priority and secured claims against the Debtors by the City of Waterbury, including $18,470,573.95 in real property tax liabilities (the "Real Estate Taxes"), $3,044,336.81 in personal property tax liabilities (the "Personal Property Taxes"), and $214,058.43 in water and sewer bills (the "Utility Bills") asserted against the Debtors' estates. The terms of the Settlement Agreement provide that, at the closing of the sale transaction for Waterbury Hospital and the underlying real estate (such closing, the "Closing" and such transaction, the "Waterbury Sale Transaction"):

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Rundell Declaration, First Day Declaration, or Settlement Agreement, as applicable.

3

(i) MPT will pay $7,650,000.00 to the City of Waterbury (the "MPT Settlement Payment") as full and final satisfaction of any and all real property taxes related to Waterbury Hospital, whether payable by MPT or the Debtors as lessee, that are outstanding or have accrued through the closing date of the Waterbury Sale Transaction (the "Closing Date");

(ii) the Debtors will pay $1,100,000.00 to the City of Waterbury (the "Prospect Tax Payment") as full and final satisfaction of any and all personal property taxes related to Waterbury Hospital, whether payable by MPT or by the Debtors as lessee or owner, that are outstanding or have accrued through the Closing Date; and

(iii) the Debtors will pay $100,000.00 to the City of Waterbury (the "Prospect Utility Payment" and, together with the Prospect Tax Payment, the "Prospect Settlement Payments") as full and final satisfaction of any and all water and sewer bills related to Waterbury Hospital, whether payable by MPT or by the Debtors as lessee, that are outstanding or have accrued through the Closing Date.

5. In addition to the financial benefits of the reduced claims, the Settlement Agreement provides resolution of the ongoing State Court Action between the Debtors and the City of Waterbury, allowing the Debtors and their advisors to better focus on other pressing issues in these chapter 11 cases, including confirmation of a chapter 11 plan. Also, it provides clarity to the Debtors and bidders in connection with the Waterbury Sale Transaction and prospectively resolves a likely objection from the City of Waterbury to that transaction.

6. As further described below, entry into and implementation of the Settlement Agreement is in the best interests of the Debtors and their estates and satisfies the requirements under Bankruptcy Rule 9019 and applicable law. The Settlement Agreement is the result of good-faith negotiations among the Debtors, MPT, and the City of Waterbury. The terms of the Settlement Agreement are fair and reasonable and the decision to enter into the Settlement Agreement represents a sound exercise of the Debtors' business judgment.

7. For these reasons, and as further described below, the Court should approve the Settlement Agreement.

4

**JURISDICTION AND VENUE**

8. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The legal predicates for the relief requested in this Motion are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Bankruptcy Rules.

10. The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**A.    General Background**

11. The Debtors and their non-Debtor affiliates (collectively, the "Company") are significant providers of coordinated regional healthcare services in California, Connecticut, Rhode Island, and formerly Pennsylvania. The Company's business is hospital operations, which consist of, among other things, the ownership and operation of acute care and behavioral hospitals, providing a wide range of inpatient and outpatient services spanning multiple states.

12. Beginning on January 11, 2025 (the "Petition Date"), each of the Debtors related to the HospitalCo business filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code in the Court. A detailed description of these Debtors and their business, and the facts and circumstances of the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declaration.

13. On January 29, 2025, the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases [Docket No. 295].

14. On January 30, 2025, the U.S. Trustee appointed Suzanne Koenig as the patient care ombudsman in the Debtors' chapter 11 cases [Docket No. 325].

15. On July 7, 2025 (the "PCo Petition Date"), each of the Debtors related to the PhysicianCo business filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

16. On September 19, 2025 (the "TopCo Petition Date"), certain additional entities related to the Debtors' holding companies filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

17. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 93, 2473, and 3474].

  **B. Ongoing Sale Process for the Waterbury Hospital**

18. On February 18, 2025, the Debtors submitted the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling Auction(s) and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof,*

*(II)(A) Authorizing the Sale of the Assets Free and Clear of all Encumbrances, and (B) Approving the Assumption and Assignment of the Assumed Contracts, and (III) Granting Related Relief* (the "Bidding Procedures Motion") [Docket No. 708], requesting approval of bidding procedures for certain of the Debtors' assets, including Waterbury Hospital. On March 19, 2025, the Court entered an order approving the Bidding Procedures Motion (the "Bidding Procedures Order") [Docket No. 1264].

19. The Bidding Procedures Order provides the Debtors with authority to, *inter alia*, conduct an auction to sell certain assets, including Waterbury Hospital and its related facilities, free and clear of all liens and encumbrances, designate a stalking horse bidder and back-up bidder for the Waterbury Sale Transaction, assume and/or assign executory contracts related to the Waterbury Sale Transaction, and take any other action reasonably necessary to effect the procedures outlined in the Bidding Procedures Order.[3] The Bidding Procedures Order also permits the Debtors to negotiate the terms of any stalking horse agreement for the Waterbury Sale Transaction in consultation with certain parties.[4]

20. The Debtors and their advisors engaged in an active marketing and sale process for Waterbury Hospital.[5] The Debtors entered into a stalking horse agreement for the sale of Waterbury Hospital and its related medical facilities, and filed a notice of a successful bid for these assets.[6]

---

[3]  *See* Bid. Proc. Ord. ¶¶ 12, 14, 26, 47.

[4]  *See id.* ¶ 18.

[5]  *See* Rundell Decl. ¶ 5; *see also* Hr'g Tr. 121-122: 22-1, August 20, 2025 ("There is an ongoing sale process in Connecticut under bid procedures approved by this Court to sell that hospital, and the goal and the intent is to sell those hospitals free and clear of liens, either with a consensual arrangement with the City of Waterbury, or otherwise using the tools under Section 363.").

[6]  *See* Rundell Decl. ¶ 5; *see also Notice of Designation of Stalking Horse Bidder* [Docket No. 3755]; *Notice of Successful Bidder for the Waterbury Sale Transaction* [Docket No. 3853].

## THE SETTLEMENT AGREEMENT

21. After arm's-length negotiations, the Parties reached an agreement in principle, embodied in the Settlement Agreement, to fully and finally resolve all disputes between the Debtors, MPT, and the City of Waterbury, including with respect to the Real Estate Taxes, Personal Property Taxes, Utility Bills, and the State Court Action, subject to the Court's approval of the Settlement Agreement.

22. The key terms of the settlement, as set forth in the Settlement Agreement, are as follows:[7]

| Provision | Summary Description |
|---|---|
| **MPT Settlement Payment** | Real Property Taxes. At the Closing, MPT will pay the City of Waterbury $7,650,000.00 as full and final satisfaction of any and all real property taxes related to Waterbury Hospital, whether payable by MPT, or by the Debtors as lessee, that are outstanding or have accrued through the Closing Date; *provided, however,* that this provision will not affect a prospective purchaser's potential tax liability for taxes that come due after the Closing. For the avoidance of doubt, the MPT Settlement Payment shall be first paid from the gross proceeds payable by the Purchaser at the Closing on a pro rata basis with the payment of other expenses deducted from such proceeds in accordance with the MPT DIP Order and the Settlement Agreement (as defined therein). |
| **Prospect Settlement Payments** | Personal Property Taxes. At the Closing, the Debtors will pay the City of Waterbury $1,100,000.00 as full and final satisfaction of any and all personal property taxes related to Waterbury Hospital, whether payable by MPT, or by the Debtors as lessee or owner, that are outstanding or have accrued through the Closing Date; *provided, however*, that this provision will not affect a prospective purchaser's potential tax liability for taxes that come due after the Closing.<br><br>Utility Bills. At the Closing, the Debtors will pay the City of Waterbury $100,000.00 as full and final satisfaction of any and all water/sewer bills related to Waterbury Hospital, whether payable by MPT, or by the Debtors as lessee, that are outstanding or have accrued through the Closing Date. |
| **Sale Order Terms** | The terms of the Settlement Agreement shall be memorialized in the sale order issued by the Court approving the Waterbury Sale Transaction (the "Sale Order"). |
| **Right to Terminate** | If the Closing does not occur by March 1, 2026, the City of Waterbury and MPT will each have the right to terminate the settlement. |

---

[7] The summary of the Settlement Agreement set forth in this section is qualified in its entirety by the provisions of the Settlement Agreement. To the extent there exist any inconsistencies between this summary and the Settlement Agreement, the Settlement Agreement shall govern.

| | |
|---|---|
| **Plan Amendments** | The Debtors shall amend their chapter 11 plan (the "Plan") to clarify that the third-party releases and injunctions in the Plan related to the above-referenced claims shall be conditioned on (i) the MPT Settlement Payment and the Prospect Settlement Payments and (ii) Closing occurring prior to March 1, 2026, or the parties opting not to terminate in the event of a later Closing Date. |
| **Stay and Withdrawal of State Court Action** | The City of Waterbury and Debtor Prospect Waterbury, Inc. will file a joint motion to stay the State Court Action, requesting that the Connecticut State Court stay the State Court Action until the earlier of: (i) the Closing Date, or (ii) the date on which MPT or Waterbury terminates the Settlement Agreement because the Closing did not occur by March 1, 2026. Subject to the occurrence of the Closing and the Settlement Agreement going effective (such date, the "Settlement Agreement Effective Date"), Debtor Prospect Waterbury, Inc. shall file a withdrawal of the State Court Action. |

23. The Debtors believe that the terms of the Settlement Agreement are fair and reasonable,[8] and the benefits of relieving the Debtors' estates of the tax liabilities outweigh the costs borne by the Debtors to effectuate this settlement.[9] Specifically, the Settlement Agreement will maximize distributions for all creditors by reducing asserted priority and secured claims by over $21.7 million dollars and avoiding further litigation, thereby preserving estate value.[10] Additionally, the Settlement Agreement provides clarity to the Debtors and bidders in connection with the Waterbury Sale Transaction.[11]

24. The Settlement Agreement is the product of arm's-length negotiations among the Parties and is well within the range of reasonableness for the Debtors to enter into the Settlement Agreement, represents a sound exercise of the Debtors' business judgment, and is in the best interest of the Debtors' estates.[12] Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

---

[8] See Rundell Decl. ¶ 6-7.

[9] See id. ¶ 6.

[10] See id. ¶ 6.

[11] See id. ¶ 6.

[12] See id. ¶ 7.

9

**BASIS FOR RELIEF REQUESTED**

25. The Debtors are seeking this Court's approval of the Settlement Agreement under section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."[13]

26. Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.[14]

27. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.[15] Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed

---

[13] *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc); *see also Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1116 (5th Cir. 1995) (stating that section 105(a) of the Bankruptcy Code "authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code").

[14] Fed. R. Bankr. P. 9019(a).

[15] *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); *see also Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980) (settlements are a "normal part of the process of reorganization" and "a desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly").

settlement is fair, reasonable, and in the best interest of the estate.[16] Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court."[17]

28. In making this determination, the United States Court of Appeals for the Fifth Circuit applies a three-part test, "with a focus on comparing 'the terms of the compromise with the rewards of litigation.'"[18] The Fifth Circuit has instructed courts to consider the following factors: "(1) the probability of success in the litigation, with due consideration for the uncertainty of law and fact, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise."[19]

29. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views."[20] Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."[21]

30. Generally, the bankruptcy court need not decide the issues in dispute when evaluating a settlement.[22] "In evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.'"[23]

---

[16] *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).

[17] *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

[18] *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop. by & through Mabey (In re Cajun Elec. Power Coop.)*, 119 F. 3d 349, 356 (5th Cir. 1997) (citing *Jackson Brewing*, 624 F.2d at 602).

[19] *Id.*

[20] *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

[21] *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

[22] *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).

[23] *Age Ref. Inc.*, 801 F.3d at 541 (quoting *Cajun Elec. Power Coop.*, 119 F.3d at 356).

Instead, the bankruptcy court "need only canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness."[24] Further, if the bankruptcy court determines that "a substantial controversy exists for which there is an uncertain outcome in litigation", that suffices to satisfy the Rule 9019 standard.[25]

31. After evaluating various alternatives, the Debtors have determined that the Settlement Agreement is fair, equitable, in the best interests of the Debtors' estates, and falls well within the range of reasonable outcomes.

32. *First*, the likelihood of the Debtors' success in litigation against the City of Waterbury in the State Court Action is uncertain, would be costly and time-consuming, and would distract from and delay the Debtors' ongoing sale process for Waterbury Hospital as well as their plan confirmation efforts. Had the Parties not settled, the Debtors would be forced to devote significant time, effort, and resources to preparing for a trial scheduled for December 11, 2025, and to manage the burdens of extensive discovery, including expert discovery, that such litigation would entail.

33. *Second*, the Settlement Agreement is the product of arm's-length negotiations between the Debtors, the City of Waterbury and MPT, each of which were represented by independent, sophisticated counsel and other advisors. As a result, the Settlement Agreement is truly a compromise between the Debtors, the City of Waterbury and MPT.

34. *Finally*, the Settlement Agreement is fair, reasonable, and in the best interest of the Debtors' estates. By resolving and reducing the asserted priority and secured claims of the City of Waterbury and avoiding further litigation, the Settlement Agreement preserves estate resources

---

[24] *In re Goodman Networks, Inc.*, No. 22-31641, 2024 WL 460478, at *8 (Bankr. N.D. Tex. Feb. 6, 2024) (internal quotations omitted).

[25] *Id.*

that may otherwise be spent on litigation and provides clarity to the Debtors and bidders in connection with the Waterbury Sale Transaction.

35. For these same reasons, entering into the Settlement Agreement is a sound exercise of the Debtors' business judgment.[26] The Settlement Agreement provides for the reduction of asserted priority and secured claims and provides certainty with respect to the impact of and outcome related to the City of Waterbury's claims regarding the Waterbury Sale Transaction.

36. Accordingly, for the reasons stated in this Motion, the Settlement Agreement should be approved.

## EMERGENCY CONSIDERATION

37. While Bankruptcy Rules 2002(a)(3) and 9019(a) ordinarily require 21-days' notice to creditors of a proposed settlement hearing, "Rule 2002(a)(3) allows the Court to dispense with notice altogether 'for cause shown' and Rule 9006(c)(1) provides that 'the bankruptcy court for cause shown may in its discretion with or without notice order the period reduced.'"[27] Cause exists for emergency consideration of this Motion. The Debtors are engaged in an ongoing sale process for the Waterbury Hospital. Prompt approval of the Settlement Agreement resolves the Debtors' ongoing disputes with the City of Waterbury, thereby providing certainty to bidders regarding the status of the Debtors' estates and assets. And, in light of the upcoming hearing to consider confirmation of the Debtors' proposed chapter 11 plan, the Debtors believe that immediate relief is necessary to avoid irreparable harm to the Debtors and their estates. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis to prevent further delay in resolving these actions.

---

[26] Rundell Decl. ¶ 5-7.

[27] *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 251, 550-51 (D.D.C. 2008) (citing Fed. R. Bankr. P. 2002(a)(3) and 9006(c)(1)).

13

**REQUEST FOR WAIVER OF STAY**

38. To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). The Debtors further seek the waiver of any other stay that may be applicable under the Bankruptcy Code or the Bankruptcy Rules. As discussed herein, the relief requested in this Motion is necessary immediately for the Settlement Agreement to become effective and binding among the Parties and for the settlement payments to be made, as necessary.

**NOTICE**

39. Notice of this Motion has been provided by email, facsimile, or first class mail to: (a) the Complex Service List [Docket No. 2190]; and (b) the City of Waterbury. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PREVIOUS REQUEST**

40. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of the page intentionally left blank*]

WHEREFORE, the Debtors respectfully requests the entry of the Order, granting the relief requested and granting such other and further relief as the Court deems just and proper.

Dated: November 17, 2025
Dallas, Texas

/s/ *Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:  (214) 981-3300
Facsimile:   (214) 981-3400
Email:         tom.califano@sidley.com
                   rpatel@sidley.com
                   mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:   (212) 839-5599
Email:         wcurtin@sidley.com
                   pventer@sidley.com
                   anne.wallice@sidley.com

*Attorneys for the Debtors and
Debtors in Possession*

## Certificate of Service

I certify that on November 17, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Thomas R. Califano*
Thomas R. Califano