

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 10, 2025**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

### STIPULATION AND AGREED ORDER
### BY AND AMONG THE DEBTORS AND FIRST INSURANCE FUNDING
### REGARDING THE INSURANCE PREMIUM FINANCING AGREEMENT

This stipulation and agreed order (this "Stipulation and Agreed Order") is made by and

among Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), MPT TRS

Lender PMH, LLC ("MPT"), in its capacity as lender under that certain Super-Priority Debtor-in-

Possession Loan and Security Agreement, dated as of March 20, 2025 (as amended, restated,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement"), FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("FIRST"). The Parties hereby stipulate and agree as follows:

## RECITALS

**WHEREAS**, beginning on January 11, 2025 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"); and

**WHEREAS**, in the ordinary course of business, the Debtors are required to maintain, in current effect, insurance policies that provide essential coverage for its operations and in many cases are required by various regulations, laws, and contracts governing the Debtors' business; and

**WHEREAS,** because it is not economically advantageous for the Debtors to pay the premiums for such insurance policies on an annualized basis, from time to time, the Debtors finance insurance premiums in the ordinary course of business; and

**WHEREAS**, pursuant to paragraph 5 of the Insurance Order,[2] the Debtors are authorized to enter into, renew, supplement, amend, extend, replace, or obtain new premium financing agreements in the ordinary course of business;

**WHEREAS,** FIRST is a division of a national bank engaged in the business of financing insurance premiums; and

**WHEREAS,** in furtherance of maintaining required insurance, the Debtors seek to enter into a premium financing agreement in the form attached hereto as Exhibit A (the "Financing Agreement") with FIRST pursuant to which FIRST, subject to the terms and conditions thereof,

---

[2] The "Insurance Order" means the *Order (I) Authorizing the Debtors to (A) Maintain Their Insurance Policies, Surety Bonds, and Letters of Credit, (B) Honor All Obligations Related Thereto; and (C) Amend, Renew, Supplement, Extend, or Replace Existing Coverage; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [Dkt. 96].

will provide financing to the Debtors for the purchase of certain insurance policies delineated in the Financing Agreement that are crucial for the Debtors' maintenance of adequate insurance; and

**WHEREAS**, under the Financing Agreement, the Debtors will become obligated to pay a down payment of a portion of the amounts owed, and then the remainder of the amounts owed will be paid in monthly installments (including interest); and

**WHEREAS,** as security for all obligations owing under the Financing Agreement (the "Indebtedness"), including late charges, attorneys' fees, and other costs, the Debtors grant to FIRST a first-priority lien on and security interest in the Financed Policies (as defined in the Financing Agreement) (including all returned and unearned premiums and all other collateral thereunder; collectively, the "Financing Agreement Collateral"); and

**WHEREAS**, pursuant to the DIP Credit Agreement and DIP Orders,[3] MPT has a first-priority lien in the Collateral (as defined in the DIP Credit Agreement), subject to the Carve-Out and the terms and conditions set forth in the DIP Credit Agreement and DIP Orders; and

**WHEREAS**, MPT consents to the Debtors' incurrence of the Indebtedness and the Debtors' grant of a first-priority lien on the Financing Agreement Collateral as provided in the Financing Agreement for so long as such Indebtedness remains outstanding;

**WHEREAS,** the Debtors, in their business judgment, have determined that entry into the Financing Agreement is in their best interest and any alternative would likely require considerable cash expenditure and be detrimental to the Debtors' restructuring efforts; and

---

[3] The "DIP Orders" are the *Final Order (A) Approving Settlement with MPT and Junior DIP and (B) Granting Related Relief* [Docket No. 1287], the *Final Order (I) Authorizing Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 2887], and the *Final Order (I) Authorizing (A) Additional Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 4087], and any subsequent orders authorizing debtor-in-possession financing by MPT.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.      The Debtors are authorized to enter into the Financing Agreement. The Debtors are authorized to timely make all payments under the Financing Agreement.  FIRST is authorized to receive and apply such payments to the Indebtedness as provided in the Financing Agreement.

2.      FIRST (or its successor or assigns) is granted a first-priority lien and security interest in the Financing Agreement Collateral and any additional premium required thereunder, including all returned premiums and unearned premiums and all other collateral defined in the Financing Agreement, for so long as the Indebtedness remains outstanding.  Without limitation, FIRST's liens, security interests and rights relating to the Financing Agreement Collateral granted: (i) are senior to (a) the liens of any lender providing DIP or cash collateral financing in these cases, and (b) to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b); and (ii) shall not be subject to avoidance, priming or surcharge.

3.      If additional premiums become due to insurance companies under the Financed Policies in the Financing Agreement, the Debtors and FIRST (or its successor or assigns) are authorized to modify the Financing Agreement as necessary to pay additional premiums, without the necessity of further hearing or order of the Court.

4.      FIRST is irrevocably appointed as attorney-in-fact in the event of default under the Financing Agreement.  If the Debtors do not timely make payments when due or are otherwise in default under the terms of the Financing Agreement, the stay of Section 362(a) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing coverage under the Financed Policies, to take all steps necessary and appropriate to: (i) cancel the Financed Policies; (ii) collect, recover, or return the Financing Agreement Collateral to FIRST; (iii) apply the Financing Agreement Collateral to the

Indebtedness; and (iv) take other remedial actions consistent with the terms of the Financing

agreement and applicable non-bankruptcy law. FIRST and/or third parties, including insurance

companies providing coverage under the Financed Policies, exercising such rights shall comply

with the notice provisions and other provisions of the Financing Agreement.

5.      The Financing Agreement and the liens and security interests in the Financing

Agreement Collateral granted to FIRST shall continue in full force and effect and the Indebtedness

under the Financing agreement shall remain owing notwithstanding: (i) the dismissal and/or

conversion of the Debtors' case; (ii) the discharge of the Debtors; or (iii) the confirmation of a plan

of reorganization or liquidation in the Debtors' case.  FIRST is extending credit in good faith and

is entitled to the protections of Section 364(e) of the Code.

6.      If any Indebtedness remains unpaid after application of the Financing Agreement

Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an

administrative expense claim pursuant to Section 503(b)(1) of the Code in the Debtors' case.

7.      If there are excess returned premiums, unearned premiums, or other Financing

Agreement Collateral after application of the Financing Agreement Collateral to the Indebtedness,

following an event of default or otherwise, the excess shall be turned over to the Debtors or any

trustee subsequently appointed (under Chapter 7 or 11) for the Debtors.

8.      If any insurance company needs to perform an audit on any of the Financed

Policies, the Debtors and/or any trustee subsequently appointed (under Chapter 7 or 11) for the

Debtors, shall cooperate therewith.

9.      The Debtors are authorized to take all such actions as are necessary or appropriate

to implement the terms of this Stipulation and Agreed Order.

10.     The terms of this Order will be immediately effective and enforceable upon entry.

11. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order.

**# # # END OF ORDER # # #**

**STIPULATED AND AGREED:**

*/s/ Thomas R. Califano*

SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          tom.califano@sidley.com
                rpatel@sidley.com
                mquejada@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

-and-

*/s/ Emil A. Kleinhaus*
**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Angela Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
51 W. 52nd Street
New York, NY 10019

Telephone:      (212) 403-1332
Email:          eakleinhaus@wlrk.com
                akherring@wlrk.com
                mhcassel@wlrk.com

*Attorneys for MPT TRS Lender PMH, LLC*

-and-

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email:          wcurtin@sidley.com
                pventer@sidley.com
                anne.wallice@sidley.com

*Jennifer Rojas*
Jennifer Rojas
Senior Vice President
Associate General Counsel
FIRST Insurance Funding