

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 15, 2025**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

### ORDER CONFIRMING THE AMENDED JOINT CHAPTER 11 PLAN
### OF PROSPECT MEDICAL HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect.  The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

The debtors and debtors in possession in the above-captioned chapter 11 cases having:[2]

a.  commenced these chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") for Prospect Medical Holdings, Inc. and its hospital-related debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "HCo Debtors"), together with PHP Holdings, LLC and its physician-related debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "PCo Debtors"), and together with Chamber Inc, Ivy Holdings Inc., and Ivy Intermediate Holding Inc., as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "TopCo Debtors" and together with the HCo Debtors and the PCo Debtors, the "Debtors"), on January 11, 2025 (the "HCo Petition Date"), July 7, 2025 (the "PCo Petition Date") and September 19, 2025 (the "TopCo Petition Date," and together with the HCo Petition Date and the PCo Petition Date, the "Petition Date"), respectively;

b.  continued to operate their businesses and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on January 13, 2025, the *Declaration of Paul Rundell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 41];

d.  obtained, on February 12, 2025, the *Order (I) Approving and Authorizing (A) the Asset Purchase Agreement, (B) the Sale of the Debtors' Assets Free and Clear of Interests, (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) the Assignment of Certain Permits; and (II) Granting Related Relief* [Docket No. 606], approving, among other things, the private sale of certain of the Debtors' assets and equity interests to Centurion Foundation, Inc.;

e.  filed, on February 18, 2025, the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling Auction(s) and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, (II)(A) Authorizing the Sale of the Assets Free and Clear of all Encumbrances, and (B) Approving the Assumption and Assignment of the Assumed Contracts, and (III) Granting Related Relief* [Docket

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Second Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 4182], attached hereto as **Exhibit A** (the "Second Amended Plan" and, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof and this Confirmation Order, including all exhibits and schedules thereto, the "Plan"), the *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2987], or the Voting Report (as defined herein), as applicable.  The rules of interpretation set forth in Section I.B of the Plan shall apply herein.

No. 708], seeking approval of procedures to sell the Debtors' California and Connecticut assets, which was approved by this Bankruptcy Court's order dated March 19, 2025 [Docket No. 1264];

f.  obtained, on February 18, 2025, the *Amended Final Order (I) Authorizing (A) Postpetition ABL Financing, and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 695] which, among other things, authorized the Debtors, on a final basis, to perform under the eCapital DIP ABL Credit Agreement;

g.  obtained, on March 20, 2025, the *Order (A) Approving Settlement with MPT and Junior DIP and (B) Granting Related Relief* [Docket No. 1287], which, among other things, approved the terms of the Global Settlement as set forth in that certain Settlement and Support Agreement by and between the Debtors, MPT, and the Committee;

h.  obtained, on May 22, 2025, the *Order (I) Approving and Authorizing (A) Assumption of Purchase Agreement, Entry into Releases by the Debtors, and Entry into Transaction Documents, (B) The RI Reorganization, (C) Sale of Assets Free and Clear of Interests, (D) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Certain Procedures Related Thereto, (E) Assignment of Certain Permits and Contracts; and (II) Granting Related Relief* [Docket No. 2057], approving, among other things, the sale of certain of the HCo Debtors' assets and equity interests to Astrana Health, Inc. and its affiliates;

i.  filed, on May 23, 2025, the

    i.  *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2094];

    ii.  *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2095]; and

    iii.  *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 2097];

j.  obtained, on July 3, 2025, the *Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and Sale of the Pennsylvania ASC/Imaging Sites Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) the Assignment of Certain Permits; and (II) Granting Related Relief* [Docket No. 2412], approving the sale of certain assets to Christiana Care Health System, Inc.;

k.  filed, on July 8, 2025, the *Declaration of Paul Rundell in Support of the PCo Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 2453];

l.  obtained, on July 9, 2025, the *Order (I) Applying Certain Orders in the HCo Debtors' Chapter 11 Cases to the PCo Debtors and (II) Granting Related Relief* [Docket No. 2475], authorizing the Debtors to file a notice of any additional orders or pending orders in the HCo Debtors' chapter 11 cases that should be made applicable to the PCo Debtors' jointly administered chapter 11 cases;

m.  filed, on July 23, 2025, the

> i.  *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2607];
>
> ii.  *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2608]; and
>
> iii.  *Notice of Filing of Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 2610];

n.  obtained, on August 5, 2025, the *Interim Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 2739];

o.  filed, on August 16, 2025, the

> i.  *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2843];
>
> ii.  *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2844]; and
>
> iii.  *Notice of Filing of Further Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 2846];

p.  filed, on August 19, 2025, the

> i.  *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2868];
>
> ii.  *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2869]; and

iii. *Notice of Filing of Third Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 2883];

q. obtained, on August 20, 2025, the *Final Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 2887];

r. filed, on August 27, 2025, the

i. *Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2986]; and

ii. *Disclosure Statement for the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 2987] (the "Disclosure Statement");

s. filed, on August 28, 2025, the *Notice of Filing of Fourth Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 2991];

t. obtained, on August 28, 2025, the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 3014] (the "Disclosure Statement Order"), approving the Disclosure Statement and approving the solicitation procedures and tabulation rules set forth in the Disclosure Statement Order (collectively, the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Packages");

u. obtained, on August 29, 2025, the *Order (I) Approving the Sale of the California Assets Free and Clear of all Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 3029], approving, among other things, the sale of certain of the Debtors' property to NOR Healthcare Systems Corp.;

v. caused, on or about September 4, 2025, the Solicitation Packages, including the notice of the hearing (the "Confirmation Hearing Notice") for confirmation of the Plan ("Confirmation") to be distributed in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, *see Affidavit of Service* [Docket No. 3190];

w. caused, on or about September 4, 2025, the: (a) *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan*; (b) *Notice of Non-Voting Status to Holders of Impaired Claims Conclusively Presumed to Reject the Plan*; (c) *Notice of Non-Voting Status to Holders of Disputed Claims*; and (d) the *Release Opt-Out Form* (collectively, the "<u>Notice of Non-Voting Status and Release Opt-Out Forms</u>" and, together with the Confirmation Hearing Notice, the "<u>Notices</u>") to be served on all Holders of Claims or potential Claims and Holders of Interests in the non-voting classes (except as noted herein), which informed recipients of (i) their status as Holders or potential Holders of Claims or Interests in non-voting classes, (ii) provided the full text of the Third-Party Release, (iii) included a form by which Holders could elect to opt out of the Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box, (iv) where applicable, provided information on how certain Holders could opt out electronically, and (v) provided the deadline for release opt outs, *see Affidavit of Service* [Docket No. 3190];

x. published the Confirmation Hearing Notice in the national edition of *USA Today* and the local editions of the *Los Angeles Times* and the *Orange County Register* on September 4, 2025, as evidenced by the *Proof of Publication* [Docket No. 3086] (the "<u>Publication Affidavit</u>");

y. filed, on September 19, 2025, the *Declaration of Paul Rundell in Support of the TopCo Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 3187];

z. filed, on September 21, 2025, the *Affidavit of Service* [Docket No. 3190], certifying the service of the Solicitation Packages (together with all the exhibits thereto) (the "<u>Solicitation Packages Affidavit</u>");

aa. filed, on October 1, 2025, the *Notice of Filing Plan Supplement* [Docket No. 3295] (the "<u>Plan Supplement</u>" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "<u>Plan</u>");

bb. filed, on October 8, 2025, the *Notice of Adjournment of Confirmation Hearing to November 4, 2025 at 9:30 A.M. (Prevailing Central Time)* [Docket No. 3397], adjourning the Confirmation Hearing to November 4, 2025, at 9:30 a.m. (prevailing Central Time);

cc. obtained, on October 14, 2025, the

    i. *Order (I) Approving a Settlement Agreement with YNHH and MPT Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 3480]; and

    ii. *Order (I) Applying Certain Orders in the HCo Debtors' and the PCo Debtors' Chapter 11 Cases to the Topco Debtors and (II) Granting Related Relief* [Docket No. 3475], authorizing the Debtors to file a notice of any additional orders or pending orders in the HCo Debtors' and PCo Debtors' chapter 11

cases that should be made applicable to the TopCo Debtors' jointly administered chapter 11 cases;

dd. obtained, on October 28, 2025, the *Order (I) Authorizing the Sale of the ECHN Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 3627];

ee. filed, on October 30, 2025, the *Notice of Adjournment of Confirmation Hearing to November 18, 2025 at 9:30 A.M. (Prevailing Central Time)* [Docket No. 3659], adjourning the Confirmation Hearing to November 18, 2025, at 9:30 a.m. (prevailing Central Time);

ff. filed, on November 14, 2025, the *Notice of Adjournment of Confirmation Hearing to December 12, 2025 at 9:30 A.M. (Prevailing Central Time)* [Docket No. 3830], adjourning the Confirmation Hearing to December 12, 2025, at 9:30 a.m. (prevailing Central Time);

gg. obtained, on November 18, 2025, the *Interim Order (I) Authorizing (A) Additional Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 3900];

hh. obtained, on November 24, 2025, the *Amended Order (I) Authorizing the Sale of the Waterbury Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 3963];

ii. filed, on December 3, 2025, the *Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 4048];

jj. obtained, on December 5, 2025 the *Final Order (I) Authorizing (A) Additional Postpetition Financing and (B) the Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; and (IV) Granting Related Relief* [Docket No. 4087];

kk. filed, on December 10, 2025, the *Declaration of Jeriad R. Paul of Omni Agent Solutions, Inc. Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4142] (the "Voting Report"), which accounts for ballots received up to the Voting Deadline (as defined below); and

ll. filed, on December 11, 2025, the

    i. *Debtors' Memorandum of Law in Support of Confirmation of the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4167] (the "Confirmation Brief");

ii. *Declaration of Frank Saidara in Support of Confirmation of the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4157] (the "<u>Saidara Declaration</u>");

iii. *Declaration of Jeremy Rosenthal in Support of Confirmation of the Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4158] (the "<u>Rosenthal Declaration</u>");

iv. *Declaration of Paul Rundell, Chief Restructuring Officer, in Support of Confirmation of the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4165] (the "<u>Rundell Declaration</u>");

v. *Supplemental Declaration of Paul Rundell, Chief Restructuring Officer, in Support of Confirmation of the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4167] (the "<u>Supplemental Rundell Declaration</u>"); and

vi. *Declaration of Frank Saidara in Support of Confirmation of the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4181] (the "<u>Supplemental Saidara Declaration</u>," and, together with the Voting Report, Saidara Declaration, Rosenthal Declaration, the Rundell Declaration, and the Supplemental Rundell Declaration, the "<u>Declarations in Support</u>"); and

mm. filed, on December 11, 2025, the *Second Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4182].

And this Bankruptcy Court having:

a. entered the Disclosure Statement Order on August 28, 2025;

b. set October 8, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for Holders of Claims in Classes 3 through 8 to accept or reject the Plan (the "<u>Voting Deadline</u>");

c. set October 8, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline to file and serve objections to the confirmation of the Plan (the "<u>Objection Deadline</u>");

d. set December 12, 2025, at 9:30 a.m. (prevailing Central Time) as the date and time for the commencement of the Confirmation Hearing;

e. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Solicitation Packages Affidavit, the Declarations in Support, the Confirmation Brief, the Confirmation Hearing Notice, and all Filed pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket in these Chapter 11 Cases;

f. held the Confirmation Hearing on December 12, 2025, at 9:30 a.m. (prevailing Central Time);

g. considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

h. overruled any and all outstanding objections to the Plan, Confirmation, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated;

i. taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced in these Chapter 11 Cases, and all arguments made at hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases; and

j. entered rulings on the record at the Confirmation Hearing.

NOW THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of approval of Confirmation and other evidence presented at the Confirmation Hearing and the record in these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052

and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.       This Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of whether the Plan complies with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

**C.      Eligibility for Relief.**

3.       The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.       On the Petition Date, each of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 93], the *Order (I) Directing the Joint Administration of the PCo Debtors' Chapter 11 Cases with the HCo Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 2473], and the *Order (I) Directing the Joint Administration of the TopCo Debtors' Chapter 11 Cases with the HCo Debtors' and PCo Debtors' Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 3474], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Bankruptcy Rule 1015-1.  The Debtors continue to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

**E.      Appointment of the Creditors' Committee and the Patient Care Ombudsman.**

5.      On January 29, 2025, the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 295].

6.      On January 30, 2025, the U.S. Trustee filed the *Notice of Appointment of Patient Care Ombudsman under 11 U.S.C. § 333* [Docket No. 325], appointing Suzanne Koenig of SAK Healthcare as the patient care ombudsman (the "Ombudsman").

**F.      Burden of Proof—Confirmation of the Plan**

7.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements under sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for Confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**G.      Judicial Notice.**

8.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**H.      Notice.**

9.     As evidenced by the Solicitation Packages Affidavit and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Disclosure Statement, the Plan, the Confirmation Hearing, and the opportunity to opt out of the Third-Party Release, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan.  Further, the Confirmation Hearing Notice was published in the national edition of *USA Today* and the local editions of the *Los Angeles Time* and the *Orange County Register* on September 4, 2025, in compliance with Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavit.  Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Local Bankruptcy Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

## I.     Disclosure Statement.

10.     On August 28, 2025, the Court entered the Disclosure Statement Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) approved the forms of ballots and notices in connection with confirmation of the Plan; (c) scheduled October 8, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for release opt-outs and the Objection Deadline; and (e) set October 14, 2025, at 9:30 a.m. (prevailing Central Time) as the date of the Confirmation Hearing (as adjourned to December 12, 2025).  The solicitation of votes on the Plan complied with the Disclosure Statement Order and the Solicitation Procedures, was appropriate and satisfactory in all respects based upon the circumstances of the Chapter 11 Cases, and was in compliance with sections 1125 and 1126 of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and any other applicable Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

**J.      Ballots.**

11.      Holders of Claims in Classes 3, 4, 5, 6, 7, and 8 are entitled to vote to accept or reject the Plan (the "Voting Classes").

12.      The forms of ballot attached as Exhibits 2A, 2B, 2C, 2D, 2E, and 2F to the Disclosure Statement Order (collectively, the "Ballots") that the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**K.      Solicitation.**

13.      As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

14.      As described in the Voting Report and the Solicitation Packages Affidavit, as applicable, the Solicitation Packages, including the Disclosure Statement (including the Plan and other exhibits thereto), the Solicitation Procedures, and the appropriate Ballot were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

15.     As set forth in the Voting Report and the Solicitation Packages Affidavit, the Solicitation Packages were distributed to the Holders in the Voting Classes that held a Claim as of August 20, 2025 (the "Voting Record Date").  The establishment and notice of the Voting Record Date were reasonable and sufficient.

16.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each Holder in a Voting Class to make an informed decision to accept or reject the Plan.

17.     Under sections 1126(f) and 1126(g) of the Bankruptcy Code, Holders of Claims or Interests in Classes 1, 2, 9, 10, 11 and 12 (the "Non-Voting Classes") are Unimpaired and/or Impaired and are conclusively presumed to have accepted and/or deemed to reject the Plan.

18.     The Debtors served the Notice of Non-Voting Status and Release Opt-Out Forms and the Confirmation Hearing Notice on all Holders of Claims or potential Claims in the Non-Voting Classes, *provided that* the Debtors were not required to service the Notices on (a) Holders of Claims that have already been paid in full during the Debtors' Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court or (b) Holders of Claims in Class 10 (Intercompany Claims) or Holders of Interests in Class 12 (Intercompany Interests).  Among other things, the Confirmation Hearing Notice provided the full text of the Debtor Release, Third-Party Release, the Exculpation (each as defined below), and the injunction provision.  The Notice of Non-Voting Status and Release Opt-Out Forms informed recipients of: (a) their status as Holders or potential Holders of Claims in non-voting classes; (b) provided the full text of the Third-Party Release and citations to the Debtor Release, the Exculpation, and injunction provisions set forth in the Plan; (c) included a form by which Holders could elect to opt out of the Third-Party Release included in the Plan by checking

a prominently featured and clearly labeled box; (d) where applicable, provided information on how certain Holders could opt out electronically; and (e) provided the deadline for release opt outs.

19.  The Notices adequately summarized the material terms of the Plan, including classification and treatment of Claims and Interests and the Third-Party Release. Further, because an opt out form was included in both the Ballots and the Notices, every known stakeholder was provided with the means by which to opt out of the Third-Party Release.

**L.    Voting.**

20.  As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement, and any applicable non-bankruptcy law. Classes 3, 4, 5, 6, and 8 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code. Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**M.    Plan Supplement.**

21.  On October 1, 2025, the Debtors filed the Plan Supplement with the Bankruptcy Court. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to its terms and in accordance herewith) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the facts and circumstances of these Chapter 11 Cases. The notice parties and Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement. No other or further notice is or will be required with respect to the Plan Supplement. The Plan

Supplement consists of the following documents: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Deferred Decision Schedule; (c) the Assigned Estate Causes of Action; (d) the Non-Released Parties Schedule; (e) the GUC Trust Documents; (f) the Backstop Credit Agreement; (g) the TSAs; (h) the identity and post-Effective Date compensation of the Plan Administrator; (i) the identity of any insider that will be employed or retained by the Plan Administrator; and (k) any other documentation necessary to effectuate the Plan or that is contemplated by the Plan. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan and this Confirmation Order, the Debtors shall have the right to alter, amend, update, or modify the Plan Supplement through the Effective Date; *provided* that, pursuant to the Plan, each of the Schedule of Assumed Executory Contracts and Unexpired Leases and the Deferred Decision Schedule may be altered, amended, updated, modified, or supplemented through the Deferred Decision Deadline; *provided further* that the Plan Supplement shall not be so amended, modified, or supplemented in any manner inconsistent with the Global Settlement Agreement, 9019 Order, the Supplemental MPT DIP Orders or Recovery Waterfall without the prior written consent of MPT and the Committee.

**N.      Plan Modifications.**

22.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan, including those set forth in the Plan filed on December 3, 2025, and in the Plan filed on December 11, 2025, and any additional modifications to the Plan set forth in this Confirmation Order or in any Plan filed prior to the entry of this Confirmation Order (collectively, the "<u>Plan Modifications</u>"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan. These Plan Modifications are consistent with the disclosures previously made pursuant to

the Disclosure Statement and Solicitation Packages served pursuant to the Disclosure Statement Order, and notice of these Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. Any modification, amendment, supplement, or clarification to the Plan, the Plan Supplement, the Sale Orders, or any related Definitive Documents, whether prior to or after entry of this Confirmation Order, that adversely affects any rights, remedies, liens, superpriority claims, consents, or protections of any DIP Lender, shall require the prior written consent of the applicable DIP Lender (for so long as any obligations under the relevant DIP Documents remain outstanding, other than any indemnification obligations and other obligations which by their terms expressly survive termination of such DIP Documents).

23.     In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**O.     Objections Overruled.**

24.     Any objections to Confirmation of the Plan that have not been withdrawn, waived, or settled are hereby **OVERRULED** and **DENIED** on the merits, with prejudice.

**P.     Plan Complies with Bankruptcy Code Requirements—Section 1129(a)(1).**

25.     The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof. Additionally, the Plan and all Plan Modifications are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).

**(a) Proper Classification—Sections 1122 and 1123.**

26. The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into twelve (12) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(b) Specified Unimpaired Classes—Section 1123(a)(2).**

27. The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) were Unimpaired and conclusively presumed to have accepted the Plan and were not entitled to vote to accept or reject the Plan, within the meaning of section 1124 of the Bankruptcy Code. Class 10 (Intercompany Claims) and Class 12 (Intercompany Interests) were Impaired/Unimpaired, presumed to accept or deemed to reject the Plan, and thus not entitled to vote pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Thus, the Plan therefore satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(c) Specified Treatment of Impaired Classes—Section 1123(a)(3).**

28. The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Class 3 (MPT Agreed Claims), Class 4 (MPT Note Claims), Class 5 (PhysicianCo Subordinated Secured Note Claims), Class 6 (PBGC Secured Claim), Class 7 (Insured Claims), Class 8 (General Unsecured Claims), Class 9 (Section 510(b) Claims), and Class 11 (Existing Equity Interests) were Impaired under the Plan. As previously

discussed, Class 10 (Intercompany Claims) and Class 12 (Intercompany Interests) were Impaired/Unimpaired, presumed to accept or deemed to reject the Plan, and thus not entitled to vote pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.

### (d) No Discrimination—Section 1123(a)(4).

29.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (e) Adequate Means for Implementation—Section 1123(a)(5).

30.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan provide in detail adequate and proper means for the Plan's implementation, including, among other things, regarding: (a) the consummation of the Plan, including the establishment of Reorganized PMH and the Wind-Down and dissolution of the Debtors; (b) creation of the GUC Trust and the appointment of the GUC Trust Trustee; (c) the sources of consideration for Plan distributions; (d) the appointment of the Plan Administrator; (e) the authorization for the Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, and the GUC Trust Trustee, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (f) the good faith compromise and settlement of Claims, Interests, or controversies; (g) the preservation and vesting of the Causes of Action in the Plan Administrator (other than the Assigned Estate Causes of Action); (h) the preservation of and vesting of the Assigned Estate Causes of Action in the GUC Trust; (i) the effectuation and implementation of documents and further transactions; (j) the

cancellation of existing securities and agreements; and (k) the authorization, approval, and entry of corporate actions under the Plan.

### (f) Non-Voting Equity Securities—Section 1123(a)(6).

31.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtors, including non-voting equity securities.

### (g) Directors and Officers—Section 1123(a)(7).

32.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.J of the Plan, as of the Effective Date, the existing directors and officers of the Debtors shall be deemed to have resigned without any further action required.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, *provided* that the Plan Administrator shall have no duties other than as expressly set forth in the Plan, this Confirmation Order, or any agreement governing the Plan Administrator's duties and responsibilities, as applicable.  The appointment of the Plan Administrator is consistent with the interests of creditors and with public policy.

### (h) Debtor Is Not an Individual—Section 1123(a)(8) and 1123(c).

33.    The Debtors are not individuals.  Accordingly, the requirements of sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

### (i) Impairment / Unimpairment of Classes—Section 1123(b)(1).

34. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims or Interests Impaired or Unimpaired.

### (j) Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).

35. The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases (excluding the Indemnification Obligations and the D&O Liability Insurance Policies) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, other than (a) the Global Settlement Agreement, and (b) those Executory Contracts or Unexpired Leases that are (i) identified (if any) on the Schedule of Assumed Executory Contracts and Unexpired Leases or the Deferred Decision Schedule; (ii) the subject of a motion to assume that is pending on the Confirmation Date; or (iii) the subject of an unresolved Cure dispute as of the Effective Date and shall be assumed, assumed and assigned, or rejected, as applicable, upon the resolution of such Cure dispute in accordance with any Sale Transactions.

36. The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

### (k) Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

37. In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits

provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. In addition, the compromises and settlements embodied in the Plan preserve value by enabling the Debtors to avoid extended, value-eroding litigation that could delay the Debtors' emergence from chapter 11, and the compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

38. **Debtor Release.** The release of Claims and Causes of Action by the Debtors, as described in Article VIII.A of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release"), represents a valid exercise of the Debtors' business judgment. The Debtor Release is integral to the Plan and is fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims or Interests. Also, the Debtor Release is: (a) reflective of the significant contributions the Released Parties made to a highly complex and contentious restructuring, including the negotiation, formulation, and the effectuation of the Sale Transactions and transactions contemplated in the Plan; (b) given, and made, after due notice and opportunity for a hearing; and (c) a bar to the Debtors asserting a Claim or Cause of Action released by Article VIII.A of the Plan. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. Moreover, the Debtor Release is appropriate in light of, among other things, the critical nature of the Debtor Release to the Plan.

39. The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process. Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases. The Debtor Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the

Debtors, supported the Plan and these Chapter 11 Cases, and actively participated in meetings and negotiations during these Chapter 11 Cases to facilitate the negotiation and consummation of the transactions contemplated by the Plan. Further, such parties may assert indemnification claims against the Debtors with respect to claims subject to the Debtor Release.

40. **Third-Party Release.** The release of Claims and Causes of Action by the Releasing Parties, as described in Article VIII.B of the Plan (the "Third-Party Release"), was consensually provided after due notice and an opportunity for a hearing and is an essential provision of the Plan. The Third-Party Release is a critical and integral component of the Plan, thereby preventing significant and time-consuming litigation regarding parties' respective rights and interests. The Third-Party Release provides finality for the Debtors, their Estates, the Plan Administrator, and the other Released Parties regarding the parties' respective obligations under the Plan and the transactions contemplated therein. The Third-Party Release was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' chapter 11 process by, among other things, supporting the Plan.

41. Notice of the Third-Party Release was provided to all Holders of Claims and Interests and such notice was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. The Confirmation Hearing Notice was sent to Holders of Claims and Interests and published in national edition of *USA Today* and the local editions of the *Los Angeles Times* and the *Orange County Register* on September 4, 2025, and the Ballots and Notices, as applicable, sent to Holders of Claims and Interests unambiguously stated that the Plan contains the Third-Party Release and that each such Holder of Claims or Interests may elect not to grant such Third-Party Release. The release provisions of the Plan were conspicuous and emphasized with

boldface type in the Plan, the Disclosure Statement, the Ballots, and the Notices. Further, opt-out information was provided in the Notices. The Third-Party Release provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.

42. The Third-Party Release is: (a) consensual; (b) a good faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (g) specific in language and scope; and (h) consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code. Therefore, the Third-Party Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

43. The only Holders of Claims and Interests that have opted out of the Third-Party Release are those set forth in the tabulation summary attached as Exhibit A to the Voting Report. The only non-voting parties that have opted out of the Third-Party Release are those set forth in the opt-out election summary attached as Exhibit B to the Voting Report.

44. **Exculpation.** The exculpation provision included at Article VIII.C of the Plan (the "Exculpation") is necessary and appropriate to the Plan. The Exculpation is narrowly tailored to protect estate fiduciaries from inappropriate litigation and to exclude actions found to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties subject to the Exculpation have, and upon entry of this Confirmation Order, will be deemed to have participated in good faith and in compliance with all applicable laws with regard to the negotiation and implementation of, among others, these Chapter 11 Cases, the Disclosure Statement, the Plan,

the Sale Transactions, or any aspect of the Liquidation Transactions, including any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or this Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the Sale Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is consistent with established practice in this jurisdiction and others.

45.     **Injunction.**   The injunction provision set forth in Article VIII.D of the Plan is essential to the Plan and necessary to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation, each as set forth in Articles VIII.A, VIII.B, and VIII.C of the Plan, respectively.

46.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, as described in Article VIII.G of the Plan (the "Lien Release") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claim and Interests.

47.     The releases, injunctions, and exculpations set forth in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and all Holders of Claims or Interests. The record at the Confirmation Hearing and in these Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article VIII of the Plan. Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (l)     Treatment of Rights of Holders of Claims—1123(b)(5)

48.     The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code. Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

### (m)     Additional Plan Provisions—Section 1123(b)(6).

49.     The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

## Q.     Debtors Complied with Bankruptcy Code Requirements—Section 1129(a)(2).

50.     The Debtors complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

    a.    is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

    b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

    c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and the Notice of Non-Voting Status and Release Opt-Out Forms, and

related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.      Plan Proposed in Good Faith—Section 1129(a)(3).**

51.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, the Sale Transactions, and the process leading to Confirmation, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Transactions for the maximum benefit of all parties in interest and to maximize the value of the Estates and the recoveries to Holders of Claims and Interests.

**S.      Payment for Services or for Costs and Expenses—Section 1129(a)(4).**

52.      The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**T.      Directors, Officers, and Insiders—Section 1129(a)(5).**

53.      Because the Plan provides for the dissolution of the existing board of directors of the Debtors and that any remaining directors or officers of the Debtors shall be dismissed, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies to the Plan Administrator or the GUC Trust Trustee, the Debtors have satisfied the requirements of this provision by, among other things, agreeing to disclose the identities of the Plan Administrator, and the GUC Trust Trustee.

**U.** **No Rate Change—Section 1129(a)(6).**

54. Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**V.** **Best Interest of the Creditors—Section 1129(a)(7).**

55. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis, attached as <u>Exhibit B</u> to the Disclosure Statement, and any other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations in Support or at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover more under the Plan on account of such Claim or Interest, as of the Effective Date, than such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**W.** **Acceptance by Certain Classes—Section 1129(a)(8).**

56. Classes 1 and 2 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 9 and 11 are Impaired under the Plan and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Classes 10 (Intercompany Claims) and 12 (Intercompany Interests) are Impaired/Unimpaired and presumed to accept or deemed to reject the Plan, and thus not entitled to vote pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Classes 3, 4, 5, 6, and 8 are Impaired under the Plan and have voted to accept the Plan pursuant to

section 1126(c) of the Bankruptcy Code. Nevertheless, because the Plan has not been accepted by Classes 7 and 9 through 12, the Debtors seek Confirmation under section 1129(b), solely with respect to Classes 7 and 9 through 12, rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to Classes 7 and 9 through 12, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 7 and 9 through 12 and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**X.      Treatment of Claims Entitled to Priority under Section 507(a)—1129(a)(9).**

57.      The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. The treatment of Allowed Administrative Claims, Professional Compensation Claims, DIP Claims, Backstop Facility Claims, and Priority Tax Claims under Article II of the Plan and of Other Priority Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

**Y.      Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

58.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced in the Voting Report, Classes 3, 4, 5, 6, and 8 voted to accept the Plan by the requisite numbers and amounts of interests specified under section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**Z.     Feasibility—Section 1129(a)(11).**

59.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Plan may be implemented and has a reasonable likelihood of success; (e) establishes that the Debtors, the Plan Administrator, and the GUC Trust Trustee, as applicable, will have sufficient funds available to meet their obligations under the Plan; and (f) establishes that the Plan Administrator or the GUC Trust Trustee, as applicable, will have the financial wherewithal to satisfy their obligations following the Effective Date.

**AA.     Payment of Statutory Fees—Section 1129(a)(12).**

60.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article II.F of the Plan provides for the payment of all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

**BB.     Continuation of Employee Benefits—Section 1129(a)(13).**

61.      The Debtors do not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases and the Plan.

**CC.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

62.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    "Cram Down" Requirements—Section 1129(b).**

63.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.

64.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding that Classes 7 and 9 through 12 were deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect to the rejecting classes.  The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the rejecting classes.  Third, the Plan does not discriminate unfairly with respect to the rejecting classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.  As set forth in the Plan, the Holders of Allowed Claims

in the rejecting classes are all receiving equal treatment, as is required. Therefore the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**EE. Only One Plan—Section 1129(c).**

65. The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in these Chapter 11 Cases.

**FF. Principal Purpose of the Plan—Section 1129(d).**

66. The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG. No Small Business Case—Section 1129(e).**

67. The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**HH. Good Faith Solicitation—Section 1125(e).**

68. The Debtors acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**II. Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

69. Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX.B of the Plan.

**JJ.    Implementation.**

70.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law. The Debtors, the Plan Administrator, and the GUC Trust Trustee, as applicable, are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**KK.    Disclosure of All Material Facts.**

71.    The Debtors disclosed all material facts regarding the Disclosure Statement, the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors, the Plan Administrator, or the GUC Trust Trustee, as applicable.

**LL.    Satisfaction of Confirmation Requirements.**

72.    Based on the foregoing, the Declarations in Support, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

73.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

74. **Confirmation of the Plan.** The Plan, attached hereto as **Exhibit A**, as and to the extent modified by this Confirmation Order, is approved and **CONFIRMED** in its entirety pursuant to section 1129 of the Bankruptcy Code. All Plan documents necessary for implementation of the Plan, including those in the Plan Supplement, are hereby approved and incorporated herein by reference as an integral part of this Confirmation Order. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of this Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

75. **Headings**. Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

76. **Objections**. All objections (including any reservations of rights contained therein) to approval of Confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, are **OVERRULED** and **DENIED** on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

77. **Deemed Acceptance of Plan.** In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan, as

modified by the Plan Modifications and this Confirmation Order. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of any Plan Modifications.

78. **No Action Required**. Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

79. **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, the Holders of Claims or Interests, the Released Parties, and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

80. Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before this Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, the GUC Trust, and the GUC Trust Trustee, as applicable, and their respective successors and assigns.

81.     **Classification and Treatment.**  The Plan's classification scheme is approved.  The terms of the Plan shall govern the classification and treatment of Claims and Interests for purposes of the distributions to be made thereunder.

82.     **Subordination of Claims.**  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, the GUC Trust Trustee, or the Plan Administrator (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto, subject in all respects to the Plan, the Global Settlement Agreement, the eCapital DIP ABL Order, and the MPT DIP Orders.

83.     **Insurance.**  Notwithstanding anything to the contrary in the Plan, if any Claim (other than an Insured Claim, which shall receive such treatment as a Class 7 Insured Claim) is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.  Claims under workers' compensation policies shall continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and, relatedly, any insurers providing workers' compensation coverage may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course and pursuant to the terms of the such Insurance Policies and applicable non-bankruptcy law; *provided* that Debtors, the Wind-

Down Debtors, Reorganized PMH, or the estates shall have no obligation outside of the terms of this Plan to remit payment to pre-petition workers' compensation claimants for such claims.

84.     **Reorganized PMH.**  On the Effective Date, PMH shall take any actions as may be necessary or appropriate to establish Reorganized PMH, including the Debtors' assumption of the Sale Transaction TSAs and assignment to Reorganized PMH.  Nothing in the Plan shall modify the Plan Administrator's authority to implement the Sale Transactions pursuant to the Plan.  The Wind-Down Budget shall provide for reasonable costs and expenses to operate Reorganized PMH and comply with Reorganized PMH's obligations under the assumed Sale Transactions TSAs.

85.     **Liquidation Transactions.**  On or before the Effective Date, the Debtors or the Plan Administrator shall enter into and take any actions that may be necessary or appropriate to effectuate the Sale Transactions or the Wind-Down, as applicable, including:  (a) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan; (c) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (d) any and all other actions that the Debtors or the Plan Administrator determine are necessary or appropriate to effectuate the Plan.

        a.     <u>Wind-Down.</u>  Following the Effective Date, the Plan Administrator shall Wind-Down the business affairs and operations of the Debtors.  The responsibilities and authority of the Plan Administrator shall include the following:  (a) preserving and liquidating the Debtors' assets remaining after consummation of the Sale Transactions, if any; (b) considering, litigating, or resolving disputed Claims; (c) distributing the Distributable Cash and other assets of the Debtors' Estates pursuant to the terms of the Plan to Holders of Allowed Claims and Interests; (d) administering the

Professional Fee Reserve Account, the Administrative Tort Claim Account, and the Wind-Down Reserve on the terms set forth in the Plan; (e) procuring the necessary insurance to facilitate the Wind-Down, including appropriate D&O Liability Insurance Policies; (f) administering and paying taxes, including, among other things, (i) filing tax returns (to the extent not the obligation of any Purchaser), and (ii) representing the interest and account of the Debtors before any taxing authority in all matters; (g) retaining and paying, without the need for retention or fee applications, professionals in connection with the Plan Administrator's performance of its duties under the Plan; (h) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (i) complying with any continuing obligations under the Purchase Agreements, as applicable, the Global Settlement Agreement, the Plan, and the MPT DIP Orders; (j) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (k) making distributions to Professionals for Allowed Professional Compensation Claims from the Professional Fee Reserve Account; (l) coordinating with the GUC Trust in accordance with the GUC Trust Agreement; and (m) performing such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan or an order of the Bankruptcy Court (including this Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

b.  <u>Dissolution of TopCo</u>.  The TopCo Debtors have no ongoing operations or employees and very limited assets and liabilities.  To the extent there are any Allowed Claims Filed against the TopCo Debtors, such claims shall be subject to the provisions of the Plan.  Following the Effective Date, the Plan Administrator shall (a) file a certificate of dissolution for any TopCo Debtor, together with all other necessary corporate and company documents, to effect the dissolution of such TopCo Debtor under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the TopCo Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the TopCo Debtors or their Estates for any tax incurred during the administration of such TopCo Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any applicable TopCo Debtor's certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of PMH or any of its Affiliates, and without further order of the Bankruptcy Court.

86. **Sources of Consideration for Plan Distributions.** Subject to the provisions of the Plan concerning the Professional Fee Reserve Account and the Wind-Down Reserve, the Debtors, the Plan Administrator, or the GUC Trust Trustee (as applicable) shall fund distributions under and in accordance with the express terms of the Plan from (a) the Net Proceeds, (b) the proceeds of the GUC Trust, (c) the MPT GUC Advance (if applicable), (d) the Backstop Facility (if applicable), (e) the Debtors' Cash on hand, and (f) the Administrative Tort Claim Account (if applicable).

87. **Vesting of Assets.** Except as otherwise provided in the Plan, the Global Settlement Agreement, the MPT DIP Orders, or the Sale Orders, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (a) all property in each Debtor's Estate (other than the GUC Trust Assets, including the Assigned Estate Causes of Action and all other assets, if any, transferred (or to be transferred) to the GUC Trust) and any property acquired by the Debtors under or in connection with the Plan, including the equity interests in CHIC, shall vest in each respective Wind-Down Debtor or Reorganized PMH, as applicable, and (b) the GUC Trust Assets, including the Assigned Estate Causes of Action and all other assets, if any, transferred to the GUC Trust, shall vest in the GUC Trust, in each case free and clear of all Claims, Liens, encumbrances, charges, Causes of Action, or other interests. Subject to the terms of the Plan, on or after the Effective Date, the Plan Administrator may use, acquire, and dispose of property, and may prosecute, compromise, or settle any Claims and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Confirmation Order.

88.     On the Effective Date, the attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities (collectively, "Privileges") belonging to the Debtors or their Estates that concern or in any way relate to any of the Remnant Assets or the GUC Trust Assets, or that would apply to communications, documents, or records recorded in magnetic, optical, or other form of electronic medium concerning or in any way relating to any Remnant Assets or the GUC Trust Assets, shall vest in the Wind-Down Debtors, Reorganized PMH, or the GUC Trust, as applicable. The Plan Administrator or the GUC Trust Trustee, as applicable, shall have the sole right to waive Privileges that concern or in any way relate to any of the Remnant Assets or the GUC Trust Assets, as applicable, or that would apply to communications, documents, or electronic records concerning or in any way relating to any Remnant Assets or the GUC Trust Assets, as applicable. The Plan Administrator or the GUC Trust Trustee, as applicable, shall have the sole right to waive Privileges that concern or in any way relate to any of the assets vesting in the Wind-Down Debtors, Reorganized PMH, or the GUC Trust, as applicable, or that would apply to communications, documents, or electronic records concerning or in any way relating to any such assets.

89.     **Preservation of Causes of Action.** Except as otherwise provided in the Plan, the Global Settlement Agreement, the MPT DIP Orders, or the Sale Orders, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (other than the Assigned Estate Causes of Action) that are not otherwise transferred or sold pursuant to the Sale Transactions or distributed or transferred pursuant to the Plan, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action

released by the Debtors and their Estates pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and their Estates as of the Effective Date. Except for any Cause of Action to enforce the Plan or any right under the 9019 Order or PBGC Waiver (to the extent the PhysicianCo Release Effective Date does not occur prior to or on the Effective Date), no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.

90.     **Corporate Action.** On the Effective Date, the Debtors shall not be dissolved unless and until the Plan Administrator determines that dissolution will not have any adverse impact on the value of the Debtors' assets; *provided* that neither the Debtors nor any party released pursuant to Article VIII of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further* that nothing in the Plan shall be construed as relieving the Debtors or the Plan Administrator (as applicable) of their duties to pay Statutory Fees as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Debtors' Chapter 11 Cases or the cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code. The Plan Administrator shall submit with the appropriate governmental agencies a copy of this Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the applicable Secretary of State or equivalent body.

91.     Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors shall be deemed to have resigned in favor of the ongoing administration of the Debtors' affairs by the Plan Administrator.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Debtors' Estates, provided that the Plan Administrator shall not have duties other than as expressly set forth in the Plan or this Confirmation Order.

92.     **Cancellation of Existing Securities and Agreements.**  Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, the Global Settlement Agreement, and the Sale Orders, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator.  The Holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

93.     **Effectuating Documents; Further Transactions.**     Upon entry of this Confirmation Order, the Debtors or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may

be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtors or the Plan Administrator, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

94. **Section 1146 Exemption from Certain Taxes and Fees.** To the extent permitted by section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments, or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property pursuant to the Plan, (iv) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument or transfer under, in furtherance of, or in connection with, the Plan, including this Confirmation Order, shall not be subject to any document recording tax, deed tax, stamp tax, conveyance fee, intangibles other or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment, and as directed by and upon entry of this Confirmation Order, the appropriate U.S. federal, state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

95. **Sale Orders.** Notwithstanding anything to the contrary in the Plan, nothing in the Plan or the Plan Supplement shall affect, impair or supersede the Sale Orders or Sale Transactions

Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan or the Plan Supplement.

96.     **DIP Orders.**  Notwithstanding anything to the contrary in the Plan, nothing in the Plan or the Plan Supplement shall affect, impair, or supersede the DIP Orders, each of which remains in full force and effect and governs (to the extent there are any obligations remaining under the relevant DIP Documents) in the event of any inconsistency with the Plan or the Plan Supplement.

97.     Nothing in the Plan, the Plan Supplement, this Confirmation Order, or any document approved hereby shall impair, modify, prime, subordinate, or otherwise adversely affect any rights, remedies, liens, superpriority administrative expense claims, or other protections afforded to eCapital under the DIP Orders and the eCapital DIP Documents (for so long as any obligations under the relevant DIP Documents remain outstanding, other than any indemnification obligations and other obligations which by their terms expressly survive termination of such DIP Documents).

98.     Nothing in the Plan, the Plan Supplement, this Confirmation Order, or any document approved hereby shall impair, modify, prime, subordinate, or otherwise adversely affect any rights, remedies, liens, superpriority administrative expense claims, or other protections afforded to MPT under the DIP Orders and the MPT DIP Documents (for so long as any obligations under the relevant DIP Documents remain outstanding, other than any indemnification obligations and other obligations which by their terms expressly survive termination of such DIP Documents).

99.     **Authority to Act.**  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the

stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state(s) in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

100.     **Separate Plans.**  Notwithstanding the combination of separate chapter 11 plans for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still confirm the Plan with respect to any other Debtor that satisfies the Confirmation requirements of section 1129 of the Bankruptcy Code.

101.     **General Settlement of Claims and Interests.**  Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Claims or Interests, and is fair, equitable, and reasonable.

102. **Assumption and Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided in the Plan (which exclusion includes the Indemnification Obligations and the D&O Liability Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than (a) the Global Settlement Agreement and (b) those Executory Contracts or Unexpired Leases that are (1) identified (if any) on the Schedule of Assumed Executory Contracts and Unexpired Leases or the Deferred Decision Schedule; (2) the subject of a motion to assume that is pending on the Confirmation Date; or (3) the subject of an unresolved Cure dispute as of the Effective Date and shall be assumed, assumed and assigned, or rejected, as applicable, upon the resolution of such Cure dispute in accordance with any Sale Transactions. Any Deferred Decision Contract or Deferred Decision Lease removed from the Deferred Decision Schedule prior to the Deferred Decision Deadline and not otherwise identified on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed rejected effective as of the date set forth in the applicable Deferred Decision Rejection Notice.

103. Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Transactions Documents or the Plan, and payment of any Cures relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

104.    Any objection to the proposed assumption or Cure amount by a counterparty to an Executory Contract or Unexpired Lease must be Filed by no later than 4:00 p.m. (prevailing Central Time) on the date that is fourteen (14) calendar days after the service of the applicable notice of assumption, Confirmation Order or any other order of the Bankruptcy Court establishing the date by which such objections must be Filed.  Notwithstanding anything to the contrary in the Plan, the Debtors, as applicable, reserve the right to alter, amend, modify, or supplement Schedule of Assumed Executory Contracts and Unexpired Leases, in each case, at any time through and including the Deferred Decision Deadline, which such amended Schedule of Assumed Executory Contracts and Unexpired Leases shall be Filed with the Bankruptcy Court; *provided*, *however*, that any Deferred Decision Leases on the Deferred Decision Schedule shall be subject to the consent of the applicable landlord; *provided, further* that after the Confirmation Date, the Debtors may not subsequently reject any Executory Contract or Unexpired Lease, other than a Deferred Decision Contract or Deferred Decision Lease, previously designated as assumed or assumed and assigned absent the consent of the applicable contract counterparty, or an order of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have assented to such assumption or Cure claim.

105.    **Claims Based on Rejection of Executory Contracts or Unexpired Leases.**  If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Bankruptcy Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30)

days of (a) the Effective Date, (b) service of any Deferred Decision Rejection Notice, or (c) the Deferred Decision Deadline, as applicable.

106.     The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions in the Plan.

107.     **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of (a) the Effective Date, (b) service of any Deferred Decision Rejection Notice, or (c) the Deferred Decision Deadline, as applicable, will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties.**

108.     **Indemnity Obligations.**  Each of the Debtors' Indemnification Obligations shall not be discharged, impaired, or otherwise affected by the Plan.  The Indemnification Obligations shall be deemed Executory Contracts assumed by the Debtors under the Plan, solely to the extent necessary to recover and have access to insurance proceeds.  Any Indemnification Obligations shall be treated as General Unsecured Claims against the applicable Debtors to the extent Allowed.

109.     **Insurance Policies.**  Each Insurance Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or

assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code.

110.     Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies.  In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

111.     **Employee Compensation and Benefits.**  With the exception of the Pension Plans, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.  Class Members may pursue recovery under the applicable Fiduciary Liability Insurance Policy.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan or in this Confirmation Order shall be deemed or construed as a finding that the Pension Plans are Executory Contracts, nor shall the Pension Plans be deemed rejected or rejectable pursuant to the Plan or otherwise, it being expressly understood that Title IV of ERISA provides the exclusive means for terminating the Pension Plans, 29 U.S.C. § 1341(a)(1).

112. **Employment Agreements.** Any Employment Agreement not assumed and assigned pursuant to the Sale Transactions Documents as part of the Sale Transactions shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code on the Effective Date of the Plan.

113. **Distributions.** The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or in this Confirmation Order, the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, the Plan Supplement, or this Confirmation Order, as applicable. To the extent the Plan does not specify the recipient of any Estate assets or property (including in the event that the Claim of the specified recipient of such Estate assets or property is paid or otherwise satisfied in full), such Estate assets or property shall be turned over to the applicable Disbursing Agent for distribution to Holders of Claims in accordance with the claims and priority waterfall set forth in the Plan.

114. **Professional Compensation.** All requests for payment of Professional Compensation Claims (other than from OCPs) for services rendered and reimbursement of expenses incurred through the Effective Date shall be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims (subject to the Approved Budget) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. Objections to Professional Compensation Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Compensation Claims. Following such twenty-one (21) day period, if no objections have been filed, the Court may enter an order approving the payment of such Professional Compensation Claims, absent a hearing. Upon entry of any such order, the Plan

Administrator shall make all payments for any such approved Professional Compensation Claims in accordance with Article II.D.3 of the Plan. To the extent any Cash is remaining in the Professional Fee Reserve Account following irrevocable payment in full of all Allowed Professional Compensation Claims (including Allowed Professional Compensation Claims arising after the Confirmation Date), such Cash shall be transferred to the Wind-Down Debtors.

115. **Return of Deposits.** All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the GUC Trust Trustee promptly following the occurrence of the Effective Date, if not returned or applied earlier.

116. **Compliance with Tax Requirements.** In connection with the Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state, or local taxing authority. In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (a) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (b) pay the withholding tax using its own funds and retain such withheld property. The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to the Plan and

remitted to the appropriate Governmental Unit shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

117.     Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator or GUC Trust Trustee, as applicable, the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator or GUC Trust Trustee, as applicable, to reduce or eliminate any required U.S. federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator for distribution to the GUC Trust and any Claim in respect of such distribution under the Plan shall be discharged and forever barred from assertion against such Debtor or the Plan Administrator or its respective property.  PBGC shall not be required to deliver any IRS Form or other tax forms or documentation in order to receive any distribution to which it may be entitled under the Plan.

118.     Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

119.     **Procedures for Resolving Disputed Claims.**     The procedures governing resolution of disputed or unliquidated claims contained in Article VII.H of the Plan shall be, and hereby are, approved in their entirety.  As set forth therein, all Claims held by Persons or Entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under

sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. A Claim deemed Disputed pursuant to Article VII.H of the Plan shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors, the Plan Administrator, or GUC Trust Trustee, as applicable, from such Holder have been paid.

120. Except as provided in the Plan, on or after the Effective Date, without the prior authorization of the Bankruptcy Court, the Debtors, the Plan Administrator, or the GUC Trust Trustee, as applicable, a Claim may not be Filed or amended, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

121. If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

122. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Wind-Down Debtors, Reorganized PMH, or the GUC Trust Trustee, as applicable, shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan, unless otherwise provided by order of the Bankruptcy Court. No interest shall accrue or

be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim unless the Plan provides otherwise.

123. **Adjustment to Claims or Interests Without Objection.** Any Claim that has been paid, satisfied, or assumed by the Purchaser(s) in the Sale Transactions, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Plan Administrator, GUC Trust Trustee, as applicable, without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

124. The Debtors' Notice and Claims Agent is directed to adjust or expunge such Claims in the Claims Register, as applicable.

125. **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Sale Orders, the Plan Supplement, the Disclosure Statement, or other papers filed with the Bankruptcy Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

126. **Debtor Release, Third-Party Release, Exculpations, Injunction, and Related Provisions under the Plan.** The discharge, releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.

127.   **Debtor Release.  Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, Reorganized PMH, the Wind-Down Debtors, and their Estates, (as applicable), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, Reorganized PMH, the Wind-Down Debtors, and their Estates, (as applicable), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that any of the Debtors, Reorganized PMH, the Wind-Down Debtors, and their Estates, (as applicable) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, this Confirmation Order, the 9019 Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Claim or obligation arising under the Plan, or (c) any Claims or Causes of Action that are**

determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

128.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, Reorganized PMH, the Wind-Down Debtors, and their Estates, (as applicable) asserting any claim or Cause of Action released pursuant to the Debtor Release.

129.     **Third-Party Release**.  Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising in law, equity, contract, tort, or otherwise, including any derivative claims or Causes of Action asserted or assertable on behalf of the Debtors or their Estates, that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor-Related Matters.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, the 9019 Order, this Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) actual fraud, willful misconduct, or gross negligence as determined by a Final Order, or (c) any Claim or obligation arising under the Plan.

130. **Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the claims or Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

131. **Notwithstanding anything to the contrary in the Plan, nothing therein shall release, impair or otherwise affect any party's, including MPT's (a) rights to enforce the Global Settlement Agreement and the MPT DIP Orders, (b) rights, liens, security interests or obligations in respect of the HospitalCo Intercreditor Agreement, or (c) claims or Causes of Action of any kind against any non-Debtor subsidiaries of Prospect Medical Holdings, Inc.**

132.     Subject to the terms of the Plan, the Third-Party Release shall not preclude (a) a Holder of an Insured Claim from pursuing an action against one or more of the Debtors in a nominal capacity to liquidate such Holder's Insured Claim in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies or to determine the amount of an Insured Deficiency Claim; and (b) a Class Member from pursuing an action against one or more of the Debtors in a nominal capacity to liquidate such Class Member's Claim in a forum other than this Court, but solely to recover from the available insurance coverage under the Fiduciary Liability Insurance Policies.

133.     **Exculpations.**     Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or this Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from any claim or Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date in connection with, relating to, or arising out of the Debtor-Related Matters, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (a) any obligations arising pursuant to or after the Effective Date of any party

or Entity under the Plan, this Confirmation Order, the Global Settlement Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any Assigned Estate Causes of Action.

134.  **Injunction.**  Except as otherwise expressly provided in the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests or Causes of Action, as applicable, that have been released, discharged, satisfied, stayed, or terminated or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Plan Administrator, Reorganized PMH, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties (as applicable):  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable;  (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable;  (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable;  (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable, unless such Holder has Filed a motion requesting the right to perform such setoff, subrogation, or recoupment on or before the Effective Date or expressly preserved its right to setoff, subrogation, or recoupment in a timely filed Proof of Claim,

*provided*, *however*, that notwithstanding anything to the contrary in the Plan, nothing in this clause **(d)** shall impair any setoff, subrogation or recoupment rights of any Governmental Unit; and **(e)** commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action, as applicable, released or settled pursuant to the Plan.

135.     Subject to the terms of the Plan, the injunction shall not preclude (a) a Holder of an Insured Claim from pursuing an action against one or more of the Debtors in a nominal capacity to liquidate such Holder's Insured Claim in a forum other than this Court, but solely to recover only from the available insurance coverage under the applicable Insurance Policies or to determine the amount of an Insured Deficiency Claim; and (b) a Class Member from pursuing an action against one or more of the Debtors in a nominal capacity to liquidate such Class Member's Claim in a forum other than this Court, but solely to recover from the available insurance coverage under the Fiduciary Liability Insurance Policies.

136.     Subject to the terms of the Plan, Holders of Administrative Tort Claims shall retain the right to liquidate such claims to final judgment or settlement in a forum other than this Court. Any such claim, once liquidated, may be asserted against the applicable Debtor as an Administrative Claim under 11 U.S.C. § 503(b)(1)(A) up to the applicable Postpetition Insurance Amount solely, subject to the relevant terms of the Plan, and any amounts in excess of the applicable Postpetition Insurance Amount may be asserted against any available insurance coverage, including primary, excess, or umbrella policies.

137.     Upon the Bankruptcy Court's entry of this Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates,

**shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in this Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.**

138.    Article VIII.D shall not operate as a discharge under section 1141(d)(3) of the Bankruptcy Code.

139.    **PBGC Release & Exculpation Carve-Out.**  Nothing in these Chapter 11 Cases, the Disclosure Statement, the Plan, or this Confirmation Order shall be construed to discharge, release, limit, or relieve any individual from any claim by the PBGC or the Pension Plans for breach of any fiduciary duty under ERISA, with respect to the Pension Plans, subject to any and all applicable rights and defenses of such parties, which are expressly preserved.[3]  The PBGC and the Pension Plans shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the Plan, Confirmation Order, Bankruptcy Code, or other document filed in these Chapter 11 Cases.  Except to the extent otherwise specifically set forth in the Plan, and without constituting an opt-out of the Third-Party Release, or in any other agreements between the Debtors and the PBGC, the Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to the Pension Plans.

---

[3]    This provision does not affect or alter any release provided to MPT, its affiliates or associated individuals or entities pursuant to the 9019 Order or PBGC Waiver.

140. **Gatekeeper Provision.** No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Exculpated Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to Article VIII.A, Article VIII.B, Article VIII.C, and Article VIII.D without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against any of the Exculpated Parties and is not a Claim that the Debtors released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (b) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against any Exculpated Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action. Nothing in the Plan shall apply to any action by MPT or PBGC to enforce the Global Settlement Agreement or the 9019 Order (including the PBGC Waiver).

141. **Release of Liens**. Except as otherwise provided in the Plan, the DIP Orders, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is

Allowed as of the Effective Date in accordance with the terms of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

142. If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the date such Holder has been satisfied in full pursuant to the Plan, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

143. **Term of Injunctions or Stays.** Except as otherwise provided in the Plan (including with respect to Insured Claims), to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date this Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during the Chapter

11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a final order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a final order of the Bankruptcy Court. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect indefinitely.

144. **Nonseverability of Plan Provisions.** Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the Plan, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (c) nonseverable and mutually dependent.

145. **Notice of Subsequent Pleadings.** Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) any party known to be directly affected by the relief sought by such pleadings; and (c) any party that specifically requests additional notice after the Effective Date in writing to the Debtors or the Plan Administrator or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Debtors' Notice and Claims Agent shall not be required to file updated service lists.

146. **Post-Confirmation Reports.** After entry of this Confirmation Order, each of the Debtors and the Plan Administrator, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy

Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

147.   **Post-Confirmation Modifications.**   Following the entry of this Confirmation Order, the Debtors or the Plan Administrator may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided* that the Plan shall not be so amended, modified, or supplemented in any manner inconsistent with the Global Settlement Agreement, 9019 Order, the Supplemental MPT DIP Orders or Recovery Waterfall without the prior written consent of MPT and the Committee.  In addition, no post-confirmation modification shall be implemented to the extent it would materially and adversely affect the rights of the DIP Lenders under the DIP Orders or the DIP Documents, without the applicable DIP Lender's prior written consent (for so long as any obligations under the relevant DIP Documents remain outstanding, other than any indemnification obligations and other obligations which by their terms expressly survive termination of such DIP Documents).

148.   **Governing Law.**   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

149.     **Applicable Non-Bankruptcy Law.**  The provisions of this Confirmation Order, the Plan, the Plan Supplement, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

150.     **Government Approvals Not Required.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

151.     **Reporting.**  After entry of this Confirmation Order, the Debtors or the Plan Administrator, as applicable, shall have no obligation to file with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date); *provided* that the Debtors or Plan Administrator, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.

152.     **Notice of Effective Date.**  The Debtors or the Plan Administrator, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of appliable deadlines (the "Notice of Effective Date") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Confirmation Hearing within seven (7)

Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

153.    The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

154.    **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

155.    **Dissolution of the Committee.** On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases except in connection with final fee applications of Professionals for services rendered prior to the Effective Date and appeals to which the Committee is a party.

156.    **Termination and Discharge of Patient Care Ombudsman.** To the extent not already addressed in any order of this Bankruptcy Court prior to the Effective Date, the duties, responsibilities, and obligations of the Ombudsman in connection with the Chapter 11 Cases, and

the retention or employment of the Ombudsman's attorneys, financial advisors, and other agents, shall be terminated on the Effective Date. Upon termination, the Ombudsman shall dispose of any documents provided to her in the course of her reporting with the exception of any documents the Ombudsman may be required to retain in accordance with any applicable policies or law. The Ombudsman and her professionals shall be entitled to file final fee applications for allowance and payment of any fees and expense incurred to and including the Effective Date.

157. Prior to issuing or serving upon the Ombudsman or her professionals any formal or informal discovery request, including, but not limited to, any subpoena, request for production of documents, requests for admissions, interrogatories, subpoenas duces tecum, requests for testimony, or any other discovery of any kind whatsoever in any way related to the Debtors, the Chapter 11 Cases, the Ombudsman's evaluation, or her reports (collectively, the "Discovery"), any creditor or party-in interest in the Chapter 11 Cases must first file an appropriate pleading with this Bankruptcy Court to request permission to initiate the Discovery.

158. **Effect of Conflict.** This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

159. **Police and Regulatory Powers**. Nothing in the Plan or this Confirmation Order, shall affect or impair the exercise of the United States' or any state or local authority's police and regulatory powers.

160. **Upsize**. The HCo Debtors are authorized to increase the New DIP Commitments and the Incremental Backstop Tranche, each as defined, and subject to the terms and conditions set forth, in the draft of the *Amended and Restated Upsize Superpriority DIP Term Sheet*, attached

hereto as **Exhibit B**, dated as of December 11, 2025 (the "<u>Upsize DIP Term Sheet</u>"), on the terms set forth therein and herein. The HCo Debtors are further authorized to enter into amendments to the MPT DIP Credit Agreement, and, as applicable, the other MPT DIP Documents, to provide for, in addition to the Initial New DIP Loan and Minimum Cash Need Advance (each as defined in the Upsize DIP Term Sheet), an additional delayed draw, secured new money term loan in an aggregate principal amount of up to $5,000,000 (the "<u>CT DIP Loan</u>"), which MPT, in its capacity as DIP Lender, will fund after the closing of the Connecticut ECHN Sale Transaction solely out of the proceeds of the closing of such sale transaction and payable to MPT under Tranche 6 in a single draw. The HCo Debtors are authorized to incur the CT DIP Loan on the terms set forth in the Upsize DIP Term Sheet. The CT DIP Loan shall be governed by the rights and obligations set forth in the MPT DIP Orders and the other MPT DIP Documents, as modified by the Upsize DIP Term Sheet. The Amended DIP Term Loan Agreement (as defined in the Upsize DIP Term Sheet) is hereby approved in all respects.

161. Contemporaneously with the Effective Date, the Backstop Facility Lender (as defined in the Upsize DIP Term Sheet) will enter into the Amended Backstop Credit Agreement (as defined in the Upsize DIP Term Sheet), which shall provide for, in addition to the $30,000,000 single draw, secured new money term loan already committed by the Backstop Facility Lender as set forth in the Plan (together with, if applicable, the MPT GUC Advance, the "<u>Original Backstop Facility</u>"): (a) delayed draw, secured new money term loans in an aggregate principal amount of $25,000,000 (the "<u>A/R Backstop Facility</u>"), plus (b) a secured term loan in an amount equal to the outstanding New DIP Obligations (as defined in the Upsize DIP Term Sheet) on the Effective Date (the "<u>DIP Rolled Facility</u>"), plus (c) a single draw, secured new money term loan in an amount of $3,000,000, funded solely from certain PhysicianCo Assets consisting of cash otherwise payable

to MPT on the Effective Date (the "PCo-Based Facility", and together with the A/R Backstop Facility and the DIP Rolled Facility, the "Incremental Backstop Tranche," and the Incremental Backstop Tranche together with the Original Backstop Facility, the "Backstop Facility"). The HCo Debtors are authorized to enter into to the Backstop Facility (including the Incremental Backstop Tranche) on the terms set forth the Upsize DIP Term Sheet and herein.

162. The Backstop Facility Lender will fund term loans under the A/R Backstop Facility solely out of the proceeds (net of collection fees) of accounts receivables related to the Waterbury, Manchester, and Rockville hospital sale transactions arising prior to the closing of each such Acceptable CT Operations Disposition (as defined in the Upsize DIP Term Sheet) and payable to MPT under Tranche 6 of the Recovery Waterfall pursuant to the Plan (the "CT Accounts Receivables Proceeds") in three draws. The first A/R Backstop Facility advance will be in an amount equal to $5,000,000, the second A/R Backstop Facility advance will be in an amount equal to $12,500,000, and the third A/R Backstop Facility advance will be in an amount equal to $7,500,000.

163. Substantially concurrently with the Effective Date, the GUC Trust will assume all of the Debtors' obligations under the Backstop Facility, and the Debtors shall be wound down pursuant to the Plan.

164. If/when the borrower(s) under the Backstop Facility pay, for any reason (including, but not limited to, payment upon maturity, any optional prepayment, or any mandatory prepayment, whether or not after the occurrence of an Event of Default (as defined in the Backstop Credit Agreement) or after acceleration, including in connection with the commencement of any insolvency proceeding), all or any part of the principal balance of any term loans outstanding under the Incremental Backstop Tranche at any time on or after the six month anniversary of the Effective

Date, the borrower(s) under the Backstop Facility shall pay to the Backstop Facility Lender a premium (the "Payment Premium") on the amount so repaid or prepaid in an amount that would result in the Backstop Facility Lender having received cash payments in an amount equal to at least the MOIC Threshold (as defined in the Upsize DIP Term Sheet).

165. The Incremental Backstop Tranche's availability shall be subject, inter alia, to (a) entry of this Confirmation Order and (b) the condition that each of the Connecticut ECHN Sale Transaction, the Connecticut Waterbury Sale Transaction, the Acceptable CA Operations Disposition (as defined in the Upsize DIP Term Sheet) and the residual Acceptable PA Operations Disposition (as defined in the Upsize DIP Term Sheet) shall have been consummated and the Net Proceeds thereof distributed consistent in all respects with the Amended DIP Term Loan Agreement (as defined in the Upsize DIP Term Sheet), Global Settlement Agreement and Recovery Waterfall. Interest on the term loans (a) advanced under the Original Backstop Facility shall accrue at a rate equal to 14% per annum and (b) advanced under the Incremental Backstop Tranche shall accrue at a rate equal to 17% per annum, in each case, payable in kind (capitalizing at the end of each fiscal quarter) and shall have a 5-year maturity (the "Backstop Maturity Date") with mandatory repayment provisions upon the earlier of the Backstop Maturity Date or recovery of the Backstop Facility through application of Net Proceeds under the Recovery Waterfall as set forth below.

166. Notwithstanding anything to the contrary in the Global Settlement Agreement or otherwise, Net Proceeds of the Assigned Estate Causes of Action (paid only from proceeds of the Assigned Estate Causes of Action (excluding any PhysicianCo Cause of Action) (after satisfaction of Tranches 1 through 4b of the Recovery Waterfall)) shall be used by the Debtors (a) first, to repay any and all amounts (including interest) owed in connection with the Original Backstop

Facility, in full in cash, (b) second, to repay any and all amounts (including interest) owed in connection with the Incremental Backstop Tranche, in full in cash, and (c) only thereafter, to fund distributions in accordance with the Plan, Global Settlement Agreement and Recovery Waterfall, including the GUC Trust Expenses and distributions to Holders of General Unsecured Claims (including any MPT Deficiency Claims (it being understood that, after repayment in full of the Backstop Facility and then all priority claims payable under the Plan, the MPT Deficiency Claims shall share pro rata in all distributions to Holders of General Unsecured Claims based on the Claim amount)).

167.     Except as otherwise expressly provided herein, all terms and provisions of the 9019 Order and MPT DIP Orders, including without limitation all findings of fact and conclusions of law, all grant of liens and superpriority claims, and all adequate protection obligations, are incorporated herein by reference and shall apply to and be deemed part of this Confirmation Order as if set forth fully herein.  To the extent necessary or desirable in furtherance of the CT DIP Loan, the HCo Debtors are authorized to enter into additional agreements for any purpose not inconsistent with the 9019 Order and this Confirmation Order, provided that reasonable notice be given to counsel for the Committee prior to the effectiveness of any such additional agreement.

168.     **Backstop Lien.**  To secure all amounts owing by the Debtors under the Backstop Facility, the Backstop Facility Lender is granted, effective immediately upon entry of this Confirmation Order and subject only to the execution of the Backstop Credit Agreement, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first-priority security interests in and liens on the proceeds of Assigned Estate Causes of Action and all other assets, if any, transferred (or to be transferred) to the GUC Trust.  The Backstop Facility Lender shall have no obligation to make any loan or advance under the Backstop Facility Documents

unless (a) all of the conditions precedent and other terms under the Backstop Facility Documents have been satisfied in full or waived by the Backstop Facility Lender (in its sole discretion) and (b) no Event of Default (as defined in the Backstop Credit Agreement) under the Backstop Facility Documents has occurred and is continuing. The Debtors shall be permitted to use loans, extensions of credit and any other financial accommodations available under the Backstop Facility only for the purposes specifically set forth in the Backstop Facility Documents, including this Confirmation Order. The Backstop Facility Lender shall not have any obligation or responsibility to monitor any Debtor's use of the Backstop Facility, and the Backstop Facility Lender may rely upon each Debtor's representation that the use of the Backstop Facility at any time is in accordance with the requirements of the Backstop Facility Documents. The Debtors and the Backstop Facility Lender are hereby authorized to implement, in accordance with the terms of the Backstop Facility Documents, any modifications to the Backstop Facility Documents without further notice, motion or application to, order of or hearing before, this Bankruptcy Court. This Confirmation Order shall be sufficient and conclusive evidence of the creation, validity, perfection and priority of all liens granted in the Backstop Facility Documents and herein without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Backstop Lien or to entitle the Backstop Facility Lender to the priorities granted hereunder. Notwithstanding the foregoing, the Backstop Facility Lender is authorized, but not required, to file, as it deems necessary or advisable, such financing statements, security agreements, deposit account control agreements, mortgages, notices of liens and other similar documents to perfect or otherwise evidence the Backstop Lien in

accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Backstop Lien. The Backstop Facility Lender may, in its sole discretion, file an electronic copy or photocopy of this Confirmation Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors and the Backstop Facility Lender to accomplish the transactions contemplated by this paragraph and the other Backstop Facility Documents. On or about the Effective Date, the GUC Trust shall assume all of the Debtors' obligations under the Backstop Facility as contemplated under the Backstop Facility Documents, and such assumption is hereby approved.

169.     **Certain Commercial Payors**.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all defenses of setoff and/or recoupment of UnitedHealth Group Inc. and its direct and indirect subsidiaries (collectively, the "UHC Entities") are hereby preserved, and it shall not be necessary for the UHC Entities to seek any court order or other relief to be able to assert any such existing defenses in any litigation or arbitration with the GUC Trust, the GUC Trust Trustee, the Debtors, or any of their successors or assigns, to the extent applicable. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the deadline for the Debtors to object to any Administrative Claims filed by a UHC Entity that arose prior to the Confirmation Date shall be 365 days following the Administrative Claims Bar Date or such later date that is approved by order of the Bankruptcy Court. To the extent that Debtors reject any contracts by and between the Debtor(s) and UHC Entities, by which any Debtor provides

healthcare services to members of health plans insured or administered by the UHC Entities (each a "UHC Network Contract") under the terms of the Plan, the Debtors agree to provide the UHC Entities with 45 days' prior written notice of the rejection of such UHC Network Contracts.

170. **United States.** As to the United States, its agencies or any instrumentalities thereof, including the IRS (collectively, the "United States"), notwithstanding anything contained in the Plan, Plan Supplement, or this Confirmation Order to the contrary, nothing shall:

a. discharge, release, exculpate, impair or otherwise preclude: (i) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (ii) any Claim of the United States arising on or after the Confirmation Date; or (iii) any liability owed to the United States, including but not limited to any liabilities arising under the federal environmental, criminal, civil or common law, or the IRC, by any non-Debtor; provided, however, that the foregoing shall not diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code;

b. enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (a); provided, however, that the non-bankruptcy and bankruptcy rights and defenses of all Persons with respect to (i)–(iii) in clause (a) are likewise fully preserved;

c. confer exclusive jurisdiction upon the Bankruptcy Court except to the extent set forth in 28 U.S.C. §§ 157 and 1334 (as limited by any other provisions of the United States Code);

d. authorize the assumption, assignment, sale or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations, (xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or (xxv) any other interests belonging to or granted by the United States (collectively, "Federal Interests") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law;

e. be interpreted to set cure amounts related to any Federal Interests or to require the United States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

f. constitute or be deemed an approval or consent by the United States;

g. waive, alter, or otherwise limit the United States' property rights; or

h.   modify the scope of section 525 of the Bankruptcy Code.

171.   For the avoidance of doubt, (i) the United States opts out of any Third-Party Release, as provided in Article VIII, and is not a Releasing Party, as defined in the Plan, (ii) the United States' setoff and recoupment rights are preserved pursuant to Article VIII.D of the Plan, and (iii) the United States reserves all rights with respect to any liability, Claim, or Cause of Action of the United States.

172.   The IRS may amend its Proof of Claim and/or Administrative Claim to increase or decrease the amount and/or include a tax period(s), whether or not previously listed on a Proof of Claim and/or Administrative Claim following the filing of a tax return(s) for said tax period(s), and such amendment shall be treated as a time-filed claim.   The IRS will receive interest on Allowed Priority Tax Claims after the Effective Date in accordance with section 511 and 1129(a)(C) of the Bankruptcy Code.

173.   **Elevance**.   Notwithstanding anything herein to the contrary, nothing contained in this Confirmation Order shall extinguish, impair, or otherwise affect any defenses of Elevance Health Companies, Inc. and its affiliates, including, without limitation, Anthem Health Plans, Inc. (CT); Anthem Blue Cross Life and Health Insurance Company; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Wellpoint Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.; Blue Cross of California dba Anthem Blue Cross; Community Insurance Company; Anthem HealthChoice Assurance, Inc.; Anthem Insurance Companies, Inc.; Beacon Health Options, Inc.; and Carelon Medical Benefits Management, Inc. f/k/a Carelon Post Acute Solutions (collectively, "Elevance") to any claim or right of payment asserted by the Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, or any Purchaser to the extent validly enforceable against the applicable Debtors or (solely to the extent accruing post-closing) against the applicable Purchaser, including any applicable defense of recoupment or

setoff; *provided, however,* that other than with respect to any preserved rights pursuant to the *Limited Objection of the Elevance Health Companies, Inc. and Affiliates to the Debtors' Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 1858]*, the Supplemental Objection of the Elevance Health Companies, Inc. and Affiliates to the (A) Debtors' Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts; and (B) Limited Objection to Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Procedures, (C) Establishing Bid Deadlines and Scheduling Auction(s) and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner and Notice Thereof, (II) (A) Authorizing the Sale of the Assets Free and Clear of All Encumbrances and (B) Approving the Assumption and Assignment of the Assumed Contracts, and (III) Granting Related Relief* [Docket No. 2975], and the *Limited Objection of the Elevance Health Companies, Inc., on Behalf of Itself and its Affiliates to the Debtors' (A) Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Costs; and (B) Notice of Filing Plan Supplement* [Docket No. 3318] (collectively, the "Elevance Cure Objection") as provided herein, or Elevance's proofs of claim, this paragraph shall not preserve any other applicable affirmative right of recovery or claim of Elevance against Debtors or Purchaser and this paragraph shall not extinguish, impair, or otherwise affect any applicable rights, defenses, or responses that the Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, or any Purchaser may have.

174. Additionally, notwithstanding anything herein to the contrary, nothing contained in this Confirmation Order shall extinguish, impair or otherwise affect any assertion by Elevance, the

Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, or the Purchaser that any agreement identified in the Schedule of Assumed Executory Contracts and Unexpired Leases or the Deferred Decision Schedule is in fact an Executory Contract or Unexpired Lease capable of assumption.

175. **Texas Comptroller of Public Accounts**. Notwithstanding any term in the Plan or this Confirmation Order to the contrary: (i) the setoff rights, if any, of the Texas Comptroller of Public Accounts (the "Texas Comptroller") are preserved under section 553 of the Bankruptcy Code; (ii) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment of any amounts coming due to the Texas Comptroller post-petition for any Claims covered by section 503(b)(1)(B) or (C) of the Bankruptcy Code; (iii) any and all delinquent tax returns shall be filed with the Texas Comptroller no later than 180 calendar days following entry of the Confirmation Order, including, but not limited to, any final franchise tax returns; (iv) the Texas Comptroller shall be allowed to amend its proofs of claim without leave of the Bankruptcy Court, including to reflect returns received or resolution of audit liabilities or any other tax liabilities owed by Debtors to the Texas Comptroller; and (v) the bankruptcy shall have no effect on the Texas Comptroller's rights as to non-Debtor third parties. In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Texas Comptroller, Debtors, the Wind-Down Debtors, Reorganized PMH, Plan Administrator, GUC Trust Trustee, as applicable, are preserved.

176. The Texas Comptroller specifically opts out of the Third-Party Release and is not a Releasing Party.

177. All Allowed Priority Tax Claims of the Texas Comptroller, if any, shall be treated in accordance with the terms set forth in section 1129(a)(9)(c) of the Bankruptcy Code beginning on the Effective Date. Interest on any Administrative Claim or Priority Tax Claim of the Texas Comptroller shall accrue pursuant to section 511 of the Bankruptcy Code. All defenses, claims, counterclaims, affirmative defenses, and other rights thereto that exist under applicable law in favor of the Texas Comptroller, Debtors, Reorganized PMH, the Wind-Down Debtors, the Plan Administrator, or the GUC Trust Trustee, as applicable, are expressly preserved. The Texas Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as set forth in the Plan.

178. **Compass Parties**. Morrison Management Specialists, Inc., Compass Group USA, Inc. by and through its subsidiary Crothall Healthcare, Inc., and Crothall Healthcare, Inc. (collectively, the "Compass Parties") reserve any valid defenses, if any, of setoff and recoupment against the Debtors, the Estates, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates; provided, however, that the rights and defenses of the Debtors, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates as applicable, with respect thereto are fully preserved.

179. **Med-Metrix Parties**. Healthcare Receivable Specialists, LLC, LLC, f/k/a Healthcare Receivable Specialists, Inc., on behalf of itself and its affiliates and Med-Metrix, LLC on behalf of itself and its subsidiaries and affiliates (collectively, the "Med Metrix Parties") reserve any valid defenses, if any, of setoff and recoupment against the Debtors, the Estates, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates; provided, however, that the rights and defenses of the Debtors, the Plan

Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates as applicable, with respect thereto are fully preserved.

180.    **Walter P. Moore and Associates, Inc.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the remaining balance owed by the Debtors to Walter P. Moore and Associates, Inc. ("WPM") shall be paid in accordance with the *Stipulation and Agreed Order Resolving Walter P. Moore and Associates, Inc.'s Motion to Set Cure Amount and Cure Schedule* [Docket No. 2323] and the *Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 3029].

181.    **Atlantic Specialty Insurance Company.**  Atlantic Specialty Insurance Company ("ASIC") has issued certain surety bonds (collectively, the "Surety Bonds" and, each individually, a "Surety Bond") on behalf of certain of the Debtors.  ASIC issued the Surety Bonds pursuant to one or more indemnity agreements executed by one or more of the Debtors (collectively, the "Indemnity Agreements").  The Debtors' obligations to ASIC under the Surety Bonds and the Indemnity Agreements are secured by a letter of credit and cash collateral currently held by ASIC (the "ASIC Collateral").

182.    Nothing in this Confirmation Order, the Plan, the Sale Orders, the Purchase Agreements, or any document, agreement, or other instrument contemplated by or related to the foregoing or the Sale Transactions shall be deemed to be a sale, transfer, assumption, or assumption and assignment of any Surety Bonds, any Indemnity Agreements, any collateral agreement in respect of any ASIC Collateral, and/or any other agreements between the Debtors and ASIC (collectively, the "Surety Agreements").  All ASIC Collateral shall remain in place to secure all payment and/or performance obligations of the Debtors under the Surety Bonds or for obligations

arising under the Indemnity Agreements.  Nothing in this Confirmation Order or the Plan shall be deemed to apply to the ASIC's claims or rights to pursue the ASIC Collateral, nor shall these provisions be interpreted to bar, impair, prevent, or otherwise limit ASIC from exercising its valid rights, if any, under or with respect to any of the Surety Agreements, or applicable law, including the common law of suretyship.

183.     Nothing herein shall be deemed to (i) obligate ASIC to replace, renew, continue, or issue new Surety Bonds, (ii) provide ASIC's consent to the involuntary substitution of any principal under any Surety Bond, or (iii) stay, enjoin, alter, limit, expand, modify, release, waive, prime, or prejudice (a) any rights, remedies, and/or defenses, if any, of any party under the Surety Bonds, (b) any rights of any party under the Surety Agreements, (c) any rights of any party in any collateral, or (d) any rights of any party in connection with any of the Chapter 11 Cases.

184.     For the avoidance of doubt, ASIC has opted out of the Third-Party Release contained in the Plan and shall not be deemed a Releasing Party or Released Party under the Plan or this Confirmation Order.

185.     Upon the release of all Surety Bonds and full satisfaction of all obligations under the Surety Agreements, including, without limitation, the reimbursement of losses, expenses, and unpaid premiums thereunder (which for the avoidance of doubt, ASIC may reimburse or satisfy from the ASIC Collateral without the need to seek relief from the stay and/or from any injunction or discharge provision under the Plan), ASIC shall return any remaining ASIC Collateral to the Debtors, the Wind-Down Debtors, Reorganized PMH, or the Plan Administrator, as applicable.

186.     **Delaware County**.  Notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall modify the existing defenses, if any, of Delaware County, Pennsylvania (the "County") to assert any right of setoff or recoupment that the County may have

under applicable bankruptcy law or non-bankruptcy law, including, but not limited to, the (a) assertion of existing defenses of setoff or recoupment, if any, in connection with Claims reconciliation, or (b) setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Plan Administrator, or GUC Trust Trustee.

187.     Notwithstanding anything in the Plan or this Confirmation Order, the Debtors will provide written notice to the County if the County receives a payment or other satisfaction of its Claim other than through the Debtors, the Plan Administrator, or the GUC Trust Trustee (as applicable) on account of such Claim and (1) such Claim is reduced by the amount of such payment or satisfaction without an objection to such Claim having been Filed, or (2) such Claim is disallowed as a result of such payment or satisfaction and any recovery in excess of a single recovery in full is paid over to the Plan Administrator or the GUC Trust Trustee (as applicable).  Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court, the Debtors, the Plan Administrator, or the GUC Trust Trustee, as applicable, any new or amended Claim Filed on behalf of County shall be deemed disallowed in full and expunged after giving at least fourteen (14) days prior written notice to County (or County's counsel) without any further action or objection having to be filed and without further notice to or action, order, or approval of the Bankruptcy Court.

188.     **Stryker Corporation**.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order (as either or both may be modified, supplemented, or amended), all (1) defenses (including, without limitation, setoff, subrogation, recoupment, or affirmative defenses of any kind or nature) of Stryker Corporation and its divisions, affiliates, subsidiaries, successors and assigns (collectively, "<u>Stryker</u>") against the Debtors, the Plan Administrator, the GUC Trust, GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates,

and (2) rights, if any, to object to the Debtors' proposed Cure amounts regarding the assumption of an Executory Contract or Unexpired Lease of Stryker, in each case, in accordance with the applicable Cure notice (including any proposed Cure amount contained in the Schedule of Assumed Executory Contracts and Unexpired Leases), are fully preserved; provided, however, that the rights and defenses of the Debtors, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates as applicable, with respect to the foregoing are also fully preserved.

189. **Varian Medical Systems, Inc.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order (as either or both may be modified, supplemented, or amended), all (1) defenses (including, without limitation, setoff, subrogation, recoupment, or affirmative defenses of any kind or nature) of Varian Medical Systems, Inc. ("Varian") against the Debtors, the Plan Administrator, the GUC Trust, GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates, and (2) rights, if any, to object to the Debtors' proposed Cure amounts regarding the assumption of an Executory Contract or Unexpired Lease of Varian, in each case, in accordance with the applicable Cure notice (including any proposed Cure amount contained in the Schedule of Assumed Executory Contracts and Unexpired Leases), are fully preserved; provided, however, that the rights and defenses of the Debtors, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates as applicable, with respect to the foregoing are also fully preserved.

190. **HealthSmart Matters**. Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or the Plan Supplement, nothing shall impair HealthSmart Management Services Organization, Inc.'s ("HealthSmart") objections to the Debtors' proposed Cure amounts, filed at Docket No. 1746; provided that all of the rights and defenses of the Debtors,

the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, the GUC Trust, the GUC Trust Trustee, and any other successors or assigns of the Debtors or the Estates, as applicable, with respect thereto are fully preserved.

191.    If the Debtors and the applicable Purchaser seek to have any Executory Contract of HealthSmart assumed and assigned as part of a Sale Transaction, assumption, assignment, and Cure shall be resolved by agreement between HealthSmart, the Debtors, and the applicable Purchaser without further order of the Bankruptcy Court or, if no agreement can be reached, by further order of the Bankruptcy Court.

192.    **Cigna Health and Life Insurance Company**.  Cigna Health and Life Insurance Company and certain of its affiliates (collectively, "Cigna") and the Debtors are parties to various third-party payor contracts ("Cigna Payor Contracts") pursuant to which the Debtors, through the healthcare facilities they operate, provide covered healthcare services to eligible participants within the Cigna Provider Network.  Notwithstanding anything in the Plan, this Confirmation Order, or any subsequent contract notices to the contrary, the Debtors shall, no later than fifteen days prior to the Effective Date, or as otherwise agreed to between Cigna and the Debtors, provide to Cigna, through its counsel, written notice of Debtors' irrevocable (subject to the occurrence of the Effective Date) decision as to whether the Debtors propose to assume, assume and assign, or reject each of the Cigna Payor Contracts.

193.    **Local Initiative Health Authority for Los Angeles County.**  Nothing in this Confirmation Order, the Plan, or any related document shall limit or impair the ability of Local Initiative Health Authority for Los Angeles County, operating and doing business as L.A. Care Health Plan ("L.A. Care"), a California public agency, to assert or exercise existing setoff, recoupment, or subrogation against the Plan Administrator, Reorganized PMH, the Wind-Down

Debtors, the Estates, or any successors or assigns of the Debtors or Estates; provided, however, that the rights and defenses of the Debtors, Plan Administrator, Reorganized PMH, the Wind-Down Debtors, the Estates, and any successors of assigns of the Debtors or Estates, as applicable, with respect thereto are preserved. Notwithstanding anything in this Confirmation Order or the Plan to the contrary, L.A. Care shall not be required to obtain leave of the Bankruptcy Court prior to asserting any defense, including setoff, recoupment, or subrogation, in any litigation or other proceeding filed or pending against it.

194. **RGW Restoration LLC d/b/a Servpro of Norristown, Manayunk and Chestnut Hill.** Nothing in this Confirmation Order authorizes or permits the applicable Disbursing Agent, or any other applicable party, to administer or distribute through the Plan (a) any property that is not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code and (b) any insurance proceeds paid to the Debtors on account of any prepetition restoration services performed by RGW Restoration LLC d/b/a Servpro of Norristown, Manayunk and Chestnut Hill ("RGW") at Crozer-Chester Medical Center ("CCMC"), pursuant to the applicable service agreement between RGW and CCMC, that are determined to be subject to payment over, including turnover, to RGW in connection with the adjudication or other resolution of the *Complaint to Declare Insurance Proceeds as Non-Estate Property* [Docket No. 3333] filed by RGW in these Chapter 11 Cases. The Debtors dispute that they possess any such insurance proceeds or that any such insurance proceeds would be subject to payment over or turnover to RGW. RGW believes such proceeds are held in trust and subject to payment to RGW.

195. **Travelers**. As more fully described in Proof of Claim No. 581 ("Travelers Proof of Claim") filed by The Travelers Indemnity Company and those certain of its property casualty insurance affiliates (collectively, "Travelers") and Travelers' Objection to the Plan [Docket No.

3594], Travelers is holding $350,000 ("Travelers Security") as security for the Debtors' obligations to Travelers in connection with an insurance program pursuant to which Travelers issued certain insurance policies for the Debtors (the "Travelers Policies"). Due to the loss-sensitive nature of the Debtors' obligations under certain of the Travelers Policies, Travelers' losses, including the Debtors' premium and loss reimbursement obligations, remain subject to adjustment. Accordingly, for purposes of Article VIII(G) of the Plan, the Allowed amount of Travelers' Secured Claim with respect to the Travelers Security shall be determined in the ordinary course of business consistent with past practice of Travelers and the Debtors and the terms of the Travelers insurance programs. If Travelers' Secured Claim is less than the Travelers Security, then Travelers shall promptly remit the balance of the Travelers Security to Reorganized PMH (or its successor or assign) in accordance with the terms of the insurance programs. Travelers, the Debtors, and Reorganized PMH (and its successors and assigns) reserve all rights and remedies vis-à-vis each other regarding any subsequent disputes that may arise pertaining to Travelers' Secured Claim or the Travelers Security.

196. **Global Healthcare Exchange Matters**. Global Healthcare Exchange, LLC ("GHX") and certain Debtor and non-debtor entities in California and Rhode Island are parties to certain agreements pursuant to which GHX provides a suite of online services to help facilitate the transfer of money, information, goods, and services in the medical and healthcare equipment, products, services, and supplies markets between suppliers of such information, goods, and services, and their customers. In California, the relevant agreement is the United States Purchaser User Agreement dated November 7, 2022 and Order Form dated August 6, 2024 (the "Alta Hospitals User Agreement"), and in Rhode Island, the relevant agreement is the Purchaser User Agreement dated December 31, 2022 and Order Form dated December 31, 2022 (the "Prospect

CharterCARE User Agreement," and together with the Alta Hospitals User Agreement, the "User Agreements"). Upon entry of this Confirmation Order, the User Agreements between GHX and the Debtor entities in California and Rhode Island are hereby rejected effective immediately and the services thereunder terminated. No other or further notice is or shall be required.

197. **Robert Half**. Notwithstanding anything herein to the contrary, nothing contained in this Confirmation Order shall extinguish, impair or otherwise affect any assertion by Robert Half, the Debtors, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, or the Purchaser that any agreement identified in the Schedule of Assumed Executory Contracts and Unexpired Leases or the Deferred Decision Schedule is or is not in fact an Executory Contract or Unexpired Lease capable of assumption or rejection.

198. **Safety National Casualty Corporation**. The Debtors' and Safety National Casualty Corporation's respective rights are reserved with respect to assumption and cure matters.

199. **Deferred Decision Contracts and Leases**. Until a Deferred Decision Contract is assumed or rejected, the Debtors, Reorganized PMH, or the Plan Administrator, as applicable, will continue to perform all obligations under such Deferred Decision Contract in the ordinary course of business. Until a Deferred Decision Lease is assumed or rejected, the Debtors, Reorganized PMH, or the Plan Administrator, as applicable, will timely perform all obligations thereunder consistent with section 365(d)(3) of the Bankruptcy Code.

200. **Final Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

201.    **Retention of Jurisdiction.**   The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

### ### END OF ORDER ###

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               rpatel@sidley.com
               mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         wcurtin@sidley.com
               pventer@sidley.com
               anne.wallice@sidley.com


*Attorneys for the Debtors*
*and Debtors in Possession*