IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |
| | Related to Dkt. No. 4338 |

**DECLARATION OF PAUL RUNDELL
IN SUPPORT OF THE DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE DISPOSAL OF
CERTAIN BURDENSOME PATIENT RECORDS AT THE CLOSED
PENNSYLVANIA FACILITIES AND (II) GRANTING RELATED RELIEF**

I, Paul Rundell, pursuant to section 1746 of title 28 of the United States Code hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer ("CRO") of Prospect Medical Holdings, Inc. and debtor affiliates (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases, and a Managing Director of Alvarez & Marsal North America, LLC ("A&M"), a turnaround management consulting firm. I have served as the CRO of the Debtors since January 11, 2025.

2. As CRO of the Debtors, I am familiar with and knowledgeable about the Debtors' day-to-day operations, business and financial affairs, and books and records, as well as the circumstances leading to the commencement of these chapter 11 cases. I submit this declaration (this "Declaration")[2] in support of the *Debtors' Motion for Entry of an Order (I) Authorizing the*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] This Declaration incorporates by reference the *Supplemental Declaration of Paul Rundell in Support of Debtors' Emergency Motion for Entry of an Order (I) Approving the Closure of the Pennsylvania Hospitals; and (II) Granting Related Relief* (the "Rundell Supplemental Closure Declaration") [Docket No. 1575].

1

*Disposal of Certain Burdensome Patient Records at the Closed Pennsylvania Facilities and (II) Granting Related Relief* (the "Patient Records Disposal Motion")[3] filed contemporaneously herewith, which seeks approval of an order (a) dispose of certain patient records associated with the Closed Pennsylvania Facilities (such patient records, the "Burdensome Patient Records") in the manner set forth in section 351 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) granting related relief.

3. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors, my opinion based on experience, knowledge, and information concerning the Debtors' operations and financial condition, or from my discussions with the Debtors' advisors. If called upon to testify, I would and could testify competently to the facts set forth in this Declaration.

**THE DISPOSAL PROCEDURES SHOULD BE APPROVED**

**A.    Closure of the Pennsylvania Facilities**

4. Following an unsuccessful marketing and sale process for several of the Debtors' Pennsylvania hospital entities, the Debtors sought approval to close such hospitals (the "Closing Hospitals"). On April 23, 2025, the Court entered the *Order (I) Approving the Closure of Certain of the Pennsylvania Hospitals; (II) Approving the Pennsylvania Asset Sale Procedures; and (III) Granting Related Relief* [Docket No. 1613] (the "Closure/Sale Order"), which, among other things, approved the closure of Closing Hospitals on an expedited basis and approved the

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Patient Records Disposal Motion.

Pennsylvania Asset Sale Procedures to govern the sale and auction of the Pennsylvania ASC/Imaging Sites.

5. On July 3, 2025 the Court entered the *Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and Sale of the Pennsylvania ASC/Imaging Sites Free and Clear of Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) the Assignment of Certain Permits; and (II) Granting Related Relief* [Docket No. 2412], which attached, thereto, as Exhibit 1, an Asset Purchase Agreement (the "ASC/Imaging Sites APA").

6. On August 1, 2025, the closing of the Pennsylvania ASC/Imaging Sites sale transaction to Christiana Care Health System, Inc. occurred in accordance with the Closure/Sale Order.

7. By May 2, 2025, all Closing Hospitals except the ASC/Imaging Sites had ceased clinical operations (such facilities, the "Closed Pennsylvania Facilities").

8. In accordance with Section 10.2 of the ASC/Imaging Sites APA, all patient records maintained at the Pennsylvania ASC/Imaging Sites will be stored by Christiana Care for seven years following the closing of the Pennsylvania ASC/Imaging Sites sale transaction and shall be accessible by patients upon reasonable request.

**B.    The Debtors' Efforts to Preserve and Transition Patient Records Related to the Closed Pennsylvania Facilities**

9. Prior to the cessation of clinical operations at the Closed Pennsylvania Facilities, such facilities collected and maintained patient records for approximately 470,000 patients in connection with their ordinary-course business operations. These records included, without limitation, treatment records, reports, test results, referrals, prescriptions, charge capture, and billing to commercial, governmental, and individual payors.

10. Following entry of the Closure/Sale Order, the Debtors worked closely with the Patient Care Ombudsman, the Pennsylvania Department of Health, and local authorities to ensure orderly patient transfers and to keep emergency and labor-and-delivery services staffed through the final closure dates. After inpatient services ceased, local public-health officials, including the Delaware County Health Department and the City of Chester Bureau of Health, began coordinating with the Debtors regarding the disposition of patient records for former patients at the Closed Pennsylvania Facilities.

11. While the Closed Pennsylvania Facilities were still operating, the Debtors provided patient records at no cost to patients because insurance carriers reimbursed various patient records custodians, including Iron Mountain Information Management, LLC ("Iron Mountain"), Datavant, and Healthmark, directly. Once the hospitals closed, the Debtors continued, at their own expense, to engage these patient records custodians to preserve and maintain free access to tens of thousands of patient records. I believe that arrangement was economically impracticable for the Debtors and, as such, the Debtors began to evaluate alternative records management vendors.

12. In early June 2025, the Debtors retained Morgan Records Management, LLC ("Morgan Records") to replace Iron Mountain under a *cost-basis-only* arrangement covering copying and transmission services. The Debtors informed the Court that they had budgeted approximately $2.4 million to provide access to and transition patient records, which included already-incurred custodian costs. While the Debtors worked to finalize the records transfer from Iron Mountain to Morgan Records, free access to the patient records under the Debtors' existing custodian contract expired on July 3, 2025, after which patients would be charged fees of $35 per electronic-copy request and $75 per USB copy.

4

13. On July 15, 2025, the Court received a letter (the "July 15 Letter") from the City of Chester Bureau of Health, the Chester Education Foundation, and faculty representatives of Neumann University raising concerns about the fees being charged for access to patient records.[4] As the Debtors informed the Court at the July 23, 2025 status conference, however, this arrangement was not financially sustainable and, as such, the Debtors were evaluating alternative, less expensive records management vendors. The Court noted section 351 of the Bankruptcy Code as a potential framework should the estate be unable to afford long-term storage and access to patient records, and Debtors' counsel stated that the Debtors were evaluating patient records disposal under section 351 but first sought to implement an orderly transition to a cost-only custodian to avoid further disruption to patients.

14. At the August 20, 2025 hearing, the Debtors announced that they had finalized a settlement with The Foundation for Delaware County (PA) f/k/a Crozer-Keystone Community Foundation and f/k/a Crozer-Chester Foundation (the "Foundation") and CKHS, Inc. f/k/a Crozer-Keystone Health System ("CKHS," and together with the Foundation, the "Foundation Parties") to resolve the patient-records access issue precipitated by the July 15 Letter and the July 23, 2025 status conference (such settlement, the "Foundation Settlement"). On August 22, 2025, the Court entered the *Order (I) Approving a Settlement Agreement with the Foundation Parties Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* [Docket No. 2920], pursuant to which the Foundation paid $500,000 to Iron Mountain and $2,500,000 to Morgan Records Management (the "Foundation Settlement Payment") to ensure that the Debtors' approximately 470,000 patients in Delaware County would be able to access their medical records at no additional costs for an extended period. The Foundation Settlement Payment will provide

---

[4] *See Correspondence to court regarding Crozer Patient Records Fee filed by Courtroom Deputy* [Docket No. 2532].

for approximately one year of record storage from the date the payment was remitted to Morgan Records.

15. In connection with the Foundation Settlement, on September 17, 2025, the Court entered the *Joint Stipulation and Agreed Order by and Among the Debtors and Iron Mountain Information Management, LLC Regarding the Retrieval of Records in the Crozer Accounts* [Docket No. 3154] (the "Iron Mountain Joint Stipulation"), pursuant to which the Debtors permanently withdrew certain medical records related to the Crozer-Chester Medical Center and Taylor Hospital from storage with Iron Mountain and named Morgan Records Management, LLC ("Morgan Records") as the responsible party to retrieve and maintain such records going forward for retrieving the records from Iron Mountain and maintaining such records going forward. The Debtors have paid an additional $897,000 to Iron Mountain after the entry of the Iron Mountain Joint Stipulation for retrieval of all records at the Closed Pennsylvania Facilities and the ASC/Imaging Sites.

16. Although the Foundation Settlement Payment provides limited support, that funding is restricted in scope and duration and cannot sustain retention of the Burdensome Patient Records as required by Pennsylvania law and applicable regulations indefinitely. Since the Closed Pennsylvania Facilities ceased clinical operations on May 2, 2025, the Debtors have continued to incur $30,000 per month to store at least 470,000 Burdensome Patient Records in order to comply with relevant Pennsylvania state law. Absent the relief requested in the Patient Records Disposal Motion, the Debtors project that continued storage of these records will cost approximately $350,000 annually, imposing a substantial and unnecessary administrative burden on the Debtors' estate.

### C. Proposed Disposal Procedures of the Burdensome Patient Records

17. I believe that following the closure of the Closed Pennsylvania Facilities, the Debtors have undertaken extensive efforts to preserve and maintain free access to patient records for former patients. However, I believe that these patient records, while historically maintained in the ordinary course of business, no longer serve an operational purpose and instead, impose significant and continuing costs on the Debtors' estate. Given the Debtors' current financial circumstances, the permanent closure of the Closed Pennsylvania Facilities, and the absence of any ongoing business justification for retention, continued storage of the Burdensome Patient Records is neither practicable nor in the best interests of the Debtors' estate.

18. Therefore, the Debtors have proposed the following procedures to dispose of the Burdensome Patient Records (such procedures, the "Disposal Procedures"):

   a. Within five (5) business days after entry of the proposed Order, the Debtors will publish a notice of disposal (the "Publication Notice"), substantially in the form attached to the Order as Exhibit 1, once in the national edition of the *USA Today*, or a similar national publication, and in the local edition of *the Philadelphia Inquirer*, or a similar local publication.

   b. Within 180 days after entry of the proposed Order, the Debtors will attempt to directly notify:

      i. each patient that is the subject of a Burdensome Patient Record by sending via first class mail a notice of disposal (the "Notice of Disposal"), substantially in the form attached to the Order as Exhibit 2, to the most recent known address of the patient, or a family member or contact person for that patient, as applicable;

      ii. the appropriate insurance carrier for each affected patient regarding the disposal of the Burdensome Patient Records; and

      iii. the Attorney General of the State of Pennsylvania.

   c. To the extent that any Burdensome Patient Records are not claimed before the first anniversary of the publication of the Publication Notice, the Debtors shall request in a writing mailed by certified mail (each, a "Request") to (i) the Pennsylvania Department of Health ("PDH") to

    accept deposit of the Burdensome Patient Records constituting protected health information ("PHI") that it take deposit of any Burdensome Patient Records constituting PHI and (ii) any other appropriate Federal agency that it take deposit of any Burdensome Patient Records.

d. The Debtors shall be authorized to destroy all unclaimed Burdensome Patient Records by shredding or burning written Burdensome Patient Records, or destroying electronic Burdensome Patient Records in a manner that prevents such Burdensome Patient Records from being retrieved upon the earlier of (i) notification from the PDH or any other appropriate Federal agency declining to accept deposit of any Burdensome Patient Records or (ii) 30 days after the mailing of the Request.

    19.     I believe implementing the Disposal Procedures will allow the Debtors to eliminate the significant and ongoing expenses associated with record storage and conserve scarce resources for the benefit of creditors and other stakeholders, while still providing patients and governmental agencies a fair opportunity to claim or assume custody of the records. Accordingly, the Court should approve the proposed Disposal Procedures set forth in the Patient Records Disposal Motion.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: December 31, 2025

    */s/ Paul Rundell*
    Paul Rundell
    Chief Restructuring Officer