## Exhibit B

## Initial Demand Letter

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

415.774.2943 direct
nghazni@sheppardmullin.com

December 18, 2025

VIA EMAIL

NOR Healthcare System Corp.
Attention: Faisal Gill
505 North Brand Blvd
Suite 1200
Glendale, CA 91203
Email: fgill@amhealthsystems.com

Re:   Demand for Payment and Compliance with Agreements

Dear Mr. Gill,

    Prospect Medical Holdings, Inc. ("PMH") hereby issues this formal and urgent demand for payment in accordance with (i) that certain Amended and Restated Asset Purchase Agreement, dated as of September 12, 2025, by and among NOR Healthcare Systems Corp. ("NOR"), PMH, and certain Affiliates of PMH (the "Purchase Agreement"), approved through the *Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* (the "Sale Order") entered on August 29, 2025 as Docket Number 3029 in In re Prospect Medical Holdings, Inc. et al.'s chapter 11 cases, (ii) that certain Transition Services Agreement, dated December 5, 2025 (the "TSA"), and (iii) that certain Interim Management Agreement, dated December 5, 2025 (the "IMA", and collectively with the Purchase Agreement and TSA, the "Agreements") by and between NOR and/or certain of its Affiliates, on the one hand, and PMH and/or certain of its Affiliates, on the other hand.  Capitalized terms used and not otherwise defined herein have the meanings set forth in the Purchase Agreement.

    Since December 5, 2025 (the "Closing Date"), NOR has repeatedly failed to comply with its clear and undisputed obligations under the Agreements, and in doing so, has failed to remit certain amounts payable to PMH pursuant to the Agreements.  These breaches and persistent non-payment, if not resolved immediately, will materially jeopardize PMH's ability to continue to (a) support NOR and the Transferred Assets, as well as PMH's other existing operations in Connecticut and Rhode Island, and (b) provide the ongoing transition services contemplated in the TSA.  The implications of NOR's blatant disregard for the negotiated terms of the Agreements may ultimately adversely impact the quality of patient care at the California hospitals, as well as other existing PMH hospitals, an outcome that PMH is simply unwilling to accept.

    Please also be advised that NOR's continued failure to comply with the Purchase Agreement not only constitutes a breach of contract, but is also a direct violation of the Bankruptcy Court's Sale Order, which governs NOR's post-closing obligations.  PMH cannot advance estate funds to subsidize NOR's operations in contravention of the Sale Order and the Agreements. Should NOR fail to immediately cure the breaches described herein and remit all outstanding

**SheppardMullin**

December 18, 2025
Page 2

amounts by the applicable Payment Deadline (as hereinafter defined), PMH will be compelled to seek appropriate relief from the Bankruptcy Court, including an order compelling compliance and such other remedies as may be necessary to safeguard estate assets. Furthermore, NOR's conduct interferes with PMH's ability to administer estate assets in accordance with the *Second Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* (the "Plan") (Docket No. 4230-1), confirmed on December 15, 2025 (Docket No. 4230), and violates the injunction set forth in Article VIII.D of the Plan and Paragraphs 134–137 of the Confirmation Order, which expressly prohibit actions interfering with implementation or consummation of the Plan. *See* Docket No. 4230.

As set forth in the TSA, no Person, other than PMH or as otherwise expressly authorized by PMH, is permitted to place any order for Inventory, goods, supplies, or other like items unless and until PMH receives full payment in advance therefor from NOR. Since the Closing Date, NOR has not consistently complied with these prepayment obligations. If such noncompliance persists, PMH is prepared to exercise all of its rights and remedies under the TSA and applicable law, up to and including discontinuation of some or all of the transition services contemplated in the TSA. Despite Medline not being listed as an accessible supplier in the TSA, we understand that NOR continues to place orders with Medline, which, at present, is not authorized under any Agreement. The exclusion of Medline from the TSA was at NOR's specific request. PMH is willing to discuss revising the TSA to include Medline in the transition services offered by PMH, but access to Medline and the ability to place orders with Medline will be subject to the aforementioned prepayment terms. Please let us know immediately if NOR needs continued access to Medline under the TSA.

**In light of the foregoing, PMH demands payment for (1) those pre- and post-Closing accounts payable summarized herein and (2) those amounts due under the Purchaser Agreement in connection with the eCapital Healthcare Corp. ("eCapital") arrangements, in each case, on or before the applicable Payment Deadline.** If NOR does not make payment for the amounts described herein on or before the applicable Payment Deadline, PMH reserves full rights to discontinue the transition services under the TSA and pursue all available recoveries and remedies under the Agreements and applicable law.

1. **Outstanding Accounts Payable**

Pursuant to Section 2.3 of the Purchase Agreement, "Purchaser shall, effective as of the Closing, assume and agree to pay, discharge and perform in accordance with their terms all Liabilities of the Seller Parties arising from or related to the Business or the Transferred Assets as the same shall exist on the Closing Date and irrespective of whether the same shall arise prior to, on or after the Closing Date, including *all post-petition accounts payable and accrued expenses of the Seller Group to the extent related to the Business, arising out of or related to the purchase of goods, materials or services in the ordinary course of business prior to the Closing* by or on behalf of the Seller Group (but excluding any professional fees related to the Transactions and/or restructuring efforts), not to exceed the amount of accounts payable and accrued expenses outstanding on the Effective Date". Purchase Agreement § 2.3(c) (*emphasis added*). NOR's obligation under the Purchase Agreement is undisputed, regardless of when such Liabilities were

**SheppardMullin**

December 18, 2025
Page 3

incurred. The following amounts remain outstanding and PMH requests payment thereof on or before the corresponding Due Dates set forth below or in <u>Exhibit A</u>, attached hereto.

| # | Category | Amt | Due Date |
|---|---|---|---|
| 1 | Medline | $ 188,020 | 12/18/2025 |
| 2 | PMH Past Due | 1,889,976 | 12/23/2025 |
| 3 | Alta Past Due | 1,690,628 | See Exhibit A for Invoice Detail |
| 4 | Current AP | 4,258,095 | See Exhibit A for Invoice Detail |
| **Total CA AP as of 12/5** | | **$8,026,718** | |

Notwithstanding anything herein to the contrary, the outstanding payable figures set forth above and in <u>Exhibit A</u> (including, without limitation, the "Total CA AP as of 12/5") represents a preliminary calculation of those post-petition accounts payable due from NOR to PMH or the appropriate third party under the Agreements as of the date hereof. PMH reserves all rights to update or revise such figures in good faith where appropriate and to reflect accrued expenses, which will continue to be added to the post-petition accounts payable amounts as invoices are received.

**2. eCapital Amount Due**

Pursuant to <u>Section 2.9</u> of the Purchase Agreement, PMH was to receive a cash payment to reflect the cash available (under a borrowing base consistent with the Effective Date of the Purchase Agreement) through midnight on the Closing Date. On December 10, 2025, eCapital confirmed that prior to the Closing Date, $950,000.00 of cash was restricted from PMH and provided to NOR (the "<u>eCapital Amount Due</u>") in order to satisfy the Assignment Fee under NOR's credit agreement with eCapital. The eCapital Amount Due constitutes a material component of the Purchase Price due to PMH under the Purchase Agreement. As such, PMH requests payment of the eCapital Amount Due on or before the Payment Deadline.

**3. <u>Demand for Payment</u>**

PMH demands that NOR remit full payment under the Agreements for the following amounts to PMH, or the applicable third party, by no later than 5 p.m. Pacific Time on the applicable Due Date, as set forth below or in <u>Exhibit A</u> (each, a "<u>Payment Deadline</u>").

| Category | Amount Due from NOR | Due Date |
|---|---|---|
| **Outstanding Accounts Payable -** Medline | $188,020.00 | December 18, 2025 |
| **eCapital Amount Due** | $950,000.00 | December 18, 2025 |
| **Outstanding Accounts Payable –** PMH Past Due | $1,889,976.00 | December 23, 2025 |
| **Total Due** | **$3,027,996.00** | |

**SheppardMullin**

December 18, 2025
Page 4

Failure to comply will result in PMH taking all available actions and pursuing all available remedies under the Agreements and applicable law, including, without limitation:

1. Seeking immediate relief from the Bankruptcy Court (compelling compliance; injunctive relief);

2. Discontinuing transition and support services under the TSA;

3. Pursuing damages for breach of contract and violation of Bankruptcy Court Orders; and

4. Preserving and protecting estate assets pursuant to the confirmed Second Amended Joint Chapter 11 Plan.

PMH remains committed to resolving this matter efficiently and without court intervention, and protecting the continuity of patient care and operations. Accordingly, please contact Dan Martin immediately at 312-462-6414 to schedule a call to discuss and confirm arrangements for payment. Your prompt attention and direct engagement are required to avoid further disruption.

PMH expressly reserves all rights, remedies, and defenses available to it under the Agreements, applicable law, and orders of the Bankruptcy Court, none of which are waived, limited or affected by this correspondence.

We look forward to your immediate response and resolving these issues so we can continue working together for the success of the California hospitals and the communities they serve.

Sincerely,

*Nioura F. Ghazni*

Nioura Ghazni
for Sheppard, Mullin, Richter & Hampton LLP

*Encls.*