**Exhibit D**

**NOR Response**



505 N. Brand Blvd, Suite 1200
Glendale, CA  91208

January 9, 2026

VIA EMAIL

Sidley Austin LLP
Attn: Thomas Califano, Esq.
2021 Mckinney Ave Suite 2000
Dallas, TX 75201

**Re: Response to Demands for Payment dated December 18, 2025 and January 6, 2026**

Mr. Califano:

NOR Healthcare Systems Corp. ("NOR" or the "Purchaser") writes in response to your December 18, 2025 and January 6, 2026 correspondence (the "Demand Letter") on behalf of Prospect Medical Holdings, Inc. ("PMH"). Prior to addressing the substance of your arguments, it is NOR's desire to operate the hospitals and take care of its patients.  NOR does not want to get into a legal battle that will distract our staff from bringing these hospitals to financial viability and patient safety.  As such, I recommend that we get a small group of people to see if we can resolve this matter prior to a Court hearing.

NOR categorically disputes that the amounts stated in Exhibit A of the Demand Letter are "clear," "undisputed," or presently due under the Amended and Restated Asset Purchase Agreement dated September 12, 2025 (the "APA"), the Transition Services Agreement (the "TSA"), the Interim Management Agreement (the "IMA"), or the Sale Order entered by the Bankruptcy Court on August 29, 2025.  Under NOR calculations there are some monies owed to vendors, capitation and PMH by NOR.  However, these amounts are more than setoff by the amounts owed by PMH and Alta to NOR.  Under our calculation listed in Exhibit 1, Debtors owe NOR $9,948,000.03.

Next, PMH asserts that NOR has made representations that it has not complied with to make timely payments or followed through on what it stated it was going to do.  That is categorically false. When NOR believes that it may not be able to comply we reach out to PMH representatives and requession a deviation of the agreement.  As an example, for the January 2, 2026 TSA fee, NOR reached out and requested that instead of paying the two week amount for the TSA, we be allowed to pay it weekly, as was done in December 2025.

NOR received an email from PMH representatives allowing NOR to pay the one-week amount of approximately $1,051,000. The remaining payment will be made today, Friday January 9, 2026. At that time, NOR will be caught up with the TSA fees. Thus, I am not quite sure what you are referring to when you state that NOR has stated it will make timely payment and then has not done so.

Next, you state the obligations PMH believes that NOR owes. In Exhibit A, you state that NOR owes nearly $15 million. This is simply not true. Not only are your amounts not correct but the monies are not owed to PMH. But rather, it is owed for capitation and to vendors.

In response to your demand that NOR pay PMH for the eCapital Assignment Fee, it is clear that NOR is not obligated to pay this amount for PMH. First, your interpretation of NOR's obligation under Section 2.9 of the APA is incorrect. Under the Purchase Price obligation, if NOR entered into its own agreement with eCapital (which occurred), NOR would only owe an amount in cash if there was a positive difference between the the "eCapital Borrowing Base" and any remaining liability or amount due under the eCapital Line of Credit after application of the "eCapital Payoff".

This argument improperly relies on the notion that Exhibit C of the APA provided a specific agreed upon amount that made the "eCapital Borrowing Base" or that the number of the borrowing base at the time of the Effective Date of the APA was the number that the parties agreed to for this number. However, as the language of the APA shows, neither is the case. Exhibit C merely shows the "historical practices" of **calculating** the Borrowing Base. eCapital at any time could change the borrowing base for PMH while they were under their line of credit agreement and nowhere in the APA did NOR agree to pay any difference in PMH borrowing ability during the term of their agreement with eCapital. Thus, PMH's argument that the borrowing base shown in Exhibit C is in fact the exact number agreed upon by the parties in the APA is false. Such an agreement would have been shown through direct language stating that fact.

In other sections of the APA when the Parties agreed on specific amounts, those amounts were specifically listed. For example, the Parties agreed to a specific amount of $8.5 million for the deposit. That $8.5 amount is specifically listed in Section 2.9(a)(i). Another example is Section 2.3(c) which specially states that NOR's assumed AP was "not to exceed the amount of accounts payable and accrued expanses outstanding on the effective date." While these examples show PMH agreeing to a specific amount for certain terms of the APA, the parties did no such thing by specifying an amount in Section 2.9 for the borrowing base.

Nowhere in Section 2.9 does it state that NOR is responsible for the exact borrowing base stated in Exhibit C. In fact, the word amount is not even used. When eCapital raised its reserves, it used the historical practices as shown in Exhibit C to change the borrowing base for PMH. This Borrowing Base was then matched by the payoff amount given to PMH by NOR and eCapital. Thus, NOR owes nothing to PMH regarding the Assignment Fee, since it was then subsequently paid by NOR.

**CAPITATION**

Next, PMH argues that there are capitation overages that NOR owes. As stated in Exbibit 1, the amounts are not correct. Additionally, NOR does not understand why these amounts are owed to PMH. At this time, NOR has assumed the capitation contracts and thus will deal directly with the MSOs on what is owed and at what time. I do not see how this creates any liability on PMH.

NOR is in the process of opening new accounts for the disbursements of the claims and capitation. NOR has also reached out to the MSOs and are changing the accounts from which electronic transfers are done.

**Vendors**

PMH's demand for payment to the vendors for past due AP is once again incorrect. In Section 2.3(c) NOR only assumed post-petition liabilities which arose out of the "ordinary course of business". Section 2.3(c) states:

> "all post-petition accounts payable and accrued expanses of the Seller Group to the extent related to the Business, arising out of or related to the purchase of goods, materials or services, in the ordinary course of business prior to the closing by or on behalf of the Seller Group."

Thus any payable which has a due date prior to December 5, 2025 needed to be paid by PMH, as paying on the due date is the ordinary course of business. Under our calculation, $12,070,000 of the AP listed in your Exhibit A was due on December 5, 2025 or prior. As such, that is PMH responsibility. PMH need to provide NOR with that amount so that these liabilities can be paid.

Additionally, once again, these liabilities, as adjusted based on the arguments above, are now assumed by NOR. As such, NOR must be allowed to negotiate with the vendors and pay those debts in the terms NOR negotiates. If there is a particular vendor that is demanding payment from PMH, please identify that vendor and NOR will resolve the issue. Either way, the APA only requires NOR pay the liabilities in a timely manner and NOR is taking steps to do just that with each vendor.

**Supply orders and Restricted Cash**

Nor has no disputes regarding this issue.  NOR agrees that it will pay for all supplies in accordance with the TSA.  NOR will pay for the supply orders that it placed.  To the extent that PMH had to pay for those orders, please identify which vendors PMH paid on NOR's behalf and NOR will reimburse PMH.

NOR has no disputes regarding the Restricted cash.  As you can see in Exhibit 1, we have listed that as a payment.

We are ready to discuss this matter with you in order to resolve any disputes.  As stated, NOR is owed over $9 million and we would like to work with you to resolve this amicably.  I can be reached at 645-240-5504.

Sincerely,

Faisal Gill
Chief Legal Officer

fgill@hsahospitals.com