Rachael L. Smiley
Texas Bar No. 24066158
FERGUSON BRASWELL FRASER KUBASTA PC
2500 Dallas Parkway, Suite 600
Plano, TX 75093
Telephone: (972) 378-9111
Facsimile:  (972) 378-9115
Email:  rsmiley@fbfk.law

-and-

Eric S. Goldstein, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile:  (860) 251-5218
egoldstein@goodwin.com

*Counsel to UnitedHealthcare Insurance Company*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Prospect Medical Holdings, Inc., *et al.*[1] | : | Case No. 25-80002-SGJ |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

**MOTION OF UNITEDHEALTHCARE INSURANCE COMPANY FOR ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75208, BEFORE CLOSE OF BUSINESS ON **FEBRUARY 3, 2026,** WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

1

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN

UnitedHealthcare Insurance Company, on behalf of itself and its parents, affiliates, and subsidiaries (collectively, "United"), are creditors and parties in interest in the above captioned bankruptcy cases of Prospect Medical Holdings, Inc. ("Prospect") and certain of its debtor affiliates (each a "Debtor" and collectively, the "Debtors"). United, by and through its undersigned counsel, submits this *Motion for Allowance and Payment of Administrative Expense Claim* (the "Motion"), seeking an order of this Court allowing and ordering payment of an administrative expense claim totaling $1,226,862.52 (as such amount may be further liquidated from time to time) for unreimbursed overpayments for claims submitted to United by the Debtors for services rendered to United's members on and after the Petition Date (as defined below). In support thereof, United states as follows:

**I.      JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334(b). This Court can hear and determine this matter in accordance with 28 U.S.C. § 157 and the standing order of reference of bankruptcy cases and proceedings in this District. This matter is a core proceeding, and venue for this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**II.      RELEVANT BACKGROUND**

**A.      United's Health Insurance Plans and Agreements with Providers**

2.      United provides health insurance benefits to members insured under its, or its affiliates', fully insured group medical policies through a network of providers who contract with

2

United to render medical services to members.  United also administers self-insured health plans of third parties, by which the members of those self-insured plans may also access medical care through United's network of providers.[2]  United's contracts with such third parties to administer self-funded insurance plans expressly authorize United to pursue any and all overpayments administered by United and paid by such third parties.  United also provides health insurance benefits to members under certain governmental plans, including managed Medicaid in certain states and Medicare Advantage plans.

3. United's network providers agree to provide services to United's members, to accept reimbursement at specific fixed rates for those services, and to not bill United's members for any other amounts (except under limited circumstances).  United's network providers are also required to refer United's members only to other in-network providers or to use reasonable commercial efforts to direct United members only to other in-network providers.  In exchange, United's network providers receive certain benefits, including access to members of United's health insurance plans as a source of patients.

4. Out-of-network (or "non-network") providers have not entered into any provider agreement with United.  United has not agreed to pay out-of-network providers any predetermined amounts for services provided to United's members, and out-of-network providers have not agreed to refrain from charging United members for the balance of whatever portion of the provider's charges United does not pay.  Out-of-network providers must either bill the member directly for services rendered or obtain an assignment of the member's health plan (to the extent assignable)[3]

---

[2] United's fully insured plans and governmental plans, and the third-party self-insured plans administered by United (together and separately) are referred to herein as being United health insurance plans, with their members referred to as being United's members.

[3] Certain health plans expressly prohibit assignment of plan benefits.  United reserves all of its rights concerning the propriety of any purported assignment of health plan benefits to the Debtor.

3

and bill United directly for its services standing in the shoes of the member under the terms of the members' health plan. United members are subject to being billed by their out-of-network providers for the difference between the provider's charges and the amount of reimbursement paid by United. This is in addition to the cost-sharing amounts United members must pay under their plan.

5. Claims submitted by a non-network provider must conform to the terms of the United health plan, and claims submitted under governmental plans must also conform to relevant state and federal statutes and regulations. No matter the type of plan at issue, a service rendered to a United member must have been actually rendered and covered under the terms of the member's health plan for it to be at all compensable. Further, United's plans generally provide that if a claim is paid in error, it must be refunded to United.

**B.    United's Relationship with the Debtors and the Overpayments**

6. Certain of the Debtors and United are parties to numerous facility participation agreements and medical group agreements (collectively, the "Agreements"), by which certain of the Debtors are network providers with United (the "In-Network Debtors").[4]

7. Certain of the Debtor's facilities are not governed by the Network Agreements and are therefore out-of-network (the "Non-Network Debtors").

8. The Agreements set forth the procedures by which claims for services rendered to United's members are submitted, paid, audited and, if overpaid, recovered. This includes the

---

[4] The Agreements contain United's highly confidential and sensitive commercial information. While the Debtors should have copies of the Agreements, other parties in interest may request copies of the Agreements by written request to United's counsel and upon the entry into either an acceptable confidentiality agreement or the entry of an appropriate protective order. If requested by the Court, United will provide a copy of the Agreements to it for *in camera* review.

4

procedures by which United adjudicates and pays claims to the In-Network Debtors based on the limited information available with claim submissions.

9. In connection with paying claims submitted by the Debtors, United may periodically overpay a claim for a variety of ordinary course reasons that arise in the day-to-day operations of United and the Debtors. Examples of "ordinary course" reasons giving rise to such overpayments include, but are not limited to, the following: not following United policies and/or protocols, lack of prior notification or prior authorization when required, untimely filing, lack of coverage under the member's health plan, lack of medical necessity, where other health insurance coverage has primary responsibility, or the submission was not in compliance with HIPAA standard data set requirements. United generally has up to twelve months (and longer under certain circumstances) to identify overpayments. Once United identifies an overpayment, United has the right to be reimbursed by the Debtors for such overpayments through payment or offset.

10. Based on reporting generated by United as of approximately December 23, 2025, the Debtors have received overpayments for claims services rendered to United's members from the Petition Date through November 25, 2025, as described further herein and in the accompanying exhibits.

11. **Exhibit A** sets forth the names of the applicable Debtors and the corresponding amounts of the pending post-petition overpayments as of approximately December 23, 2025.

12. A spreadsheet showing the post-petition overpayments for all applicable Debtors, as of approximately December 23, 2025, is attached hereto as **Exhibit B**.[5]

---

[5] The descriptions of the overpayment reasons are sent to the Debtors in the ordinary course of business but have been redacted in **Exhibit B** to protect member personal information. United can make this information available to the Debtors at their request, to any parties in interest subject to the Court's entry of an appropriate protective order, and to the Court for its *in camera* review to the extent necessary.

5

13. The amount of the post-petition overpayments sought as described herein is subject to change and revision for a number of reasons. First, claims are likely still being submitted by the Debtors for services rendered on a post-petition basis, which claims will then be adjudicated and potentially paid by United. The payment on such claims may result in an overpayment if a later review determines that such claims were not properly payable or were otherwise overpaid. Second, the time for United to complete its review of claim payments for services rendered on a post-petition basis, has not yet expired under the Agreements (as applicable for the In-Network Debtors) and United health insurance plans (as applicable for the Non-Network Debtors). Third, pursuant to the *Final Order (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Refund Programs, and (B) Pay and Honor Related Prepetition Obligations, and (II) Granting Related Relief* [Docket No. 604] (the "Refund Programs Order") the Debtors are authorized "to maintain and administer the Refund Programs and pay and honor related prepetition obligations under the Refund Programs, consistent with prior practice and in the ordinary course of business . . . ." In accordance with the Refund Program Order, United has been working with the Debtors to identify and seek recovery of overpayments arising from claims paid for pre- and post-petition dates of service in the ordinary course of business. Accordingly, for this additional reason, the amounts identified herein are subject to further modification, including those Debtors currently showing with no pending overpayments.

14. Given the foregoing, United reserves the right to amend this Motion as the amounts of the post-petition overpayments are further liquidated.

**D.     The Debtor's Bankruptcy**

15.     On January 11, 2025 (the "Petition Date"), the Debtors filed for bankruptcy under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Northern District of Texas (the "Court").

16.     After the Petition Date, the Debtors continued to operate their business as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

17.     After the Petition Date, the Debtors continued to provide services to United's members and United continued to pay the Debtors in connection with the provision of such services to members in accordance with the Agreements and/or United health insurance plans (as applicable).

18.     On December 15, 2025, the Court entered the *Order Confirming the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* (the "Confirmation Order") [Dkt. No. 4230], confirming the Debtors' Plan of Reorganization. The "Effective Date" under the Plan of Reorganization has not yet occurred.

**III.    REQUESTED RELIEF**

19.     United is entitled to an allowed administrative expense claim under 11 U.S.C. § 503(b) in the amount of $1,226,862.52 (as such amount may be further liquidated).

20.     Section 503(b)(1)(A) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the state." "[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefitted the estate." *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 441 (5th Cir. 2019) (quoting *In re*

*Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)). The "bankruptcy court enjoys broad discretion" in making a determination whether 503(b) is applicable. *In the Matter of DP Partners Ltd. P'ship,* 106 F.3d 667, 674 (5th Cir. 1997); *accord In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995).

21. Here, United easily satisfies this test. First, the overpayments made by United for the payment of claims for services to its members on and after the Petition Date arise out of post-petition transactions between United and the Debtors. Specifically, the overpayments are the result of (i) the services the Debtors rendered to United's members on a post-petition basis, and (ii) United's provision of payment in exchange for those post-petition services, which also occurred after the Petition Date. Indeed, the payments that gave rise to the post-petition overpayments that have been identified as of approximately December 23, 2025, were paid between February 5, 2025 and December 12, 2025.

22. Second, the Debtors' bankruptcy estates undoubtedly benefited under the Agreements after the Petition Date. In particular, the Debtors benefited from remaining in-network providers for United's members on a post-petition basis, and the Debtors received the direct benefit of United's continued provision of payments under the Agreements.

23. Thus, the post-petition overpayments are an actual and necessary expense of the Debtors' successful administration of their bankruptcy estates. As a result, United is entitled to allowance and payment of an administrative expense claim in the amount of the Overpayments under 11 U.S.C. § 503(b)(1)(A). *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is

obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract." (citations omitted)).

## IV. RESERVATION OF RIGHTS

24. For all the reasons descried above, United is still receiving claims for services rendered post-petition to its members, processing such claims, paying such claims, and reviewing the validity of the payment of such claims under the terms of the Agreements and/or the United health insurance plans. Moreover, overpayments are continuously being resolved under the terms of the Refund Programs Order. Thus, United reserves the right to supplement this Motion to further liquidate all overpayments made to the Debtors between the Petition Date and the Plan's Effective Date.

## V. CONCLUSION

WHEREFORE, United respectfully requests that this Court enter an order granting United (i) an administrative expense claim against the Debtors in the aggregate amount of $1,226,862.52 (as may be supplemented or modified for the reasons set forth herein); and (ii) such other and further relief as the Court deems just and appropriate.

January 13, 2026

By: /s/ *Rachael L. Smiley*
Rachael L. Smiley
Texas Bar No. 24066158
Ferguson Braswell Fraser Kubasta PC
2500 Dallas Parkway, Suite 600
Plano, Texas 75093
Telephone: (972) 378-9111
Facsimile: (972) 378-9115
Email: rsmiley@fbfk.law

- and -

>Eric S. Goldstein, Esq.
>Shipman & Goodwin LLP
>One Constitution Plaza
>Hartford, CT 06103-1919
>Telephone: (860) 251-5000
>Facsimile: (860) 251-5218
>Email: egoldstein@goodwin.com

*Counsel to UnitedHealthcare Insurance Company*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served this 13th day of January, 2026, via CM-ECF notification upon all parties to this matter entitled to receive such notification, including counsel for the Debtors, the Committee and the Office of the United States Trustee.

>/s/ *Rachael L. Smiley*
>Rachael L. Smiley