Alejandra Garcia Castro (State Bar No. 24131325)
HUSCH BLACKWELL LLP
1900 Pearl St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email: alejandra.garciacastro@huschblackwell.com

Jeffrey C. Wisler (DE #2795)
CONNOLLY GALLAGHER LLP
1201 N. Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 757-7300
Facsimile: (302) 658-0380

Caleb T. Holzaepfel (TN BPR #33356)
*(Admitted Pro Hac Vice)*
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone: (423) 266-5500
Facsimile: (423) 266-5499
Email: caleb.holzaepfel@huschblackwell.com

*Counsel for Cigna Health and Life Insurance Company*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>Prospect Medical Holdings, Inc., *et al.*[1],<br><br>Debtors. | Chapter 11<br>Case No. 25-80002 (SGJ)<br>Jointly Administered |

**REQUEST OF CIGNA FOR ALLOWANCE AND
PAYMENT OF ADMINISTRATIVE CLAIM**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTYFOUR (24) DAYS AFTER THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NOT MORE THAN TWENTYFOUR (24) DAYS AFTER THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232

Cigna Health and Life Insurance Company and certain of its affiliates (collectively, "Cigna"), by and through their undersigned counsel, hereby submit this request for allowance and payment of administrative claim, and respectfully state as follows:

## BACKGROUND FACTS

1. As of the January 11, 2025 petition date ("Petition Date"), Cigna and the above-captioned debtors (collectively, "Debtors") were parties to various contracts, as amended (collectively, the "Cigna Contracts"), pursuant to which the Debtors, through their healthcare facilities (collectively, the "Facilities"), provided covered healthcare services to eligible members within the Cigna Provider Network. Under the Cigna Contracts, Cigna paid eligible healthcare claims of its members submitted to Cigna by the Debtors and provided network and related services to the Debtors (collectively, the "Payments and Services") on and after the Petition Date, through December 15, 2025 (the "Post-Petition Period").

2. The case-by-case nature of healthcare services makes the process of determining a patient's healthcare benefits coverage particularly complex. If third-party payors such as Cigna conducted a full audit of each healthcare claim submitted by a healthcare provider before that claim was paid, the delay could be harmful to the provider's operations. Therefore, Cigna conducts an initial review of each healthcare claim submitted by the Facilities, and pays claims that appear eligible. Subsequently, a secondary, more thorough review of each healthcare claim is undertaken. This secondary review routinely identifies prior claim payments as excess payments that overpaid the Debtors for healthcare services and/or supplies ("Overpayments"). Overpayments typically result from input errors, duplicate billing, coordination of benefits among multiple insurers, and participant eligibility changes.

3. Overpayments are routine for healthcare providers and third-party payors, and are addressed in third-party payor contracts, including the Cigna Contracts. Typically, Overpayments are identified 60 to 90 days after the date that the healthcare provider was paid for a healthcare claim, but some Overpayments are not identified until several months thereafter. Once Overpayments are identified, the Debtors are notified and are required to refund the Overpayments.

4. During the Post-Petition Period, Debtors received payments from Cigna in an undetermined amount that are Overpayments. In addition, healthcare claims of Cigna members incurred during the Post-Petition period continue to be submitted by the Facilities to Cigna, Cigna continues to pay those healthcare claims, and Overpayments will continue to be identified.[2]

5. Under the Cigna Contracts, the Debtors are obligated to Cigna for all unpaid Overpayments made during and on account of the Post-Petition Period (collectively, the "Claim"). The Debtors are liable to Cigna for the full amount of the Claim.

**BASIS FOR RELIEF**

6. Pursuant to Section 503(b)(1) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including "the actual, necessary costs and expenses of preserving the estate." Cigna is entitled to an administrative priority claim in the full amount of the Claim pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).

7. To qualify as an administrative expense, the expense must arise from a post-petition transaction with the Debtors, the expense must have benefited the Debtors in the operation of their business, and the expense must have been actual and necessary. *See, e.g., In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001); see also *Nabors Offshore Corp. v. Whistler*

---

[2] Under the terms of the Cigna Contracts, Debtors have 180 days from the date of service to submit a claim for payment. Cigna cannot identify Overpayments for claims not yet submitted by the Debtors, paid by Cigna, or reviewed by Cigna's overpayment vendors.

*Energy II, L.L.C.* (*In re Whistler Energy II, L.L.C.*), 931 F.3d 432, 442 (5th Cir. 2019) ("Administrative priority serves 'to encourage third parties to provide necessary goods and services to the debtor-in-possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid'").

A. **The Claim Arose from Post-Petition Transactions with the Debtors.**

8. Cigna provided the Payments and Services to Debtors under the Cigna Contracts on and after the Petition Date. The Debtors accepted those Payments and Services. Accordingly, the Claim arose from transactions with the Debtors. *See*, *NLRB v. Bildisco*, 465 U.S. 513, 531 (1984) (If the debtor-in-possession elects to continue to receive benefits from the non-debtor party to an executory contract, the debtor-in-possession is obligated to pay for the reasonable value of those services).

B. **The Post-Petition Payments and Services Were Actual and Necessary and Benefited the Debtors in the Operations of their Businesses**.

9. The Debtors needed the Payments and Services provided by Cigna to support the ongoing operation of the Facilities. The Debtors could not have operated without the Payments and Services, and the Payments and Services allowed the Debtors to continue as a going concern post-petition, for the benefit of all creditors.

10. Because the Payments and Services provided by Cigna were necessary to the Debtors' business operations and were used by the Debtors, Cigna directly and substantially benefited the estates, and must be compensated therefor. The estates not only received benefits that can be measured by the Payments and Services, but the estates also received the ability to continue to conduct business as usual. *Id*.; *see also In re Coastal Carriers*, 128 B.R. 400, 404 (Bankr. Md. 1991); *Kimzey v. Premium Casing Equipment, LLC*, Civ. A. No. 16-C-01490, 2018

4

WL 1321971, at *3 (W.D. La. March 14, 2018). Accordingly, Cigna is entitled to an allowed administrative claim under 11 U.S.C. § 503(b)(1) in the full amount of the Claim.

**C.     Reservation of Rights.**

11.     Cigna reserves the right to assert any and all other claims of whatever kind or nature that it has, or it may have, against the Debtors arising pre or post-petition, including claims arising after December 15, 2025. The filing of this Request is not (i) a waiver or release of any claims or rights of Cigna against any other person or entity relating to the Cigna Contracts; (ii) an election of remedies; or (iii) a waiver of any past, present or future defaults.

WHEREFORE, for the foregoing reasons, Cigna, respectfully requests that the Court enter an order: (i) allowing the Claim in its full amount against the Debtors; (ii) granting the Claim administrative priority status pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2); (iii) directing the Debtors to pay Cigna's Claim in full within ten (10) days of the date of such order; and (iv) granting such other and further relief to Cigna as the Court deems is just and equitable.

Dated: January 14, 2026                 HUSCH BLACKWELL

/s/Caleb T. Holzaepfel
Caleb T. Holzaepfel (admitted *pro hac vice*)
736 Georgia Avenue, Suite 300
Chattanooga, TN  37402
Telephone: (423) 266-5500
Facsimile: (423) 266-5499
Email:  caleb.holzaepfel@huschblackwell.com

Alejandra Garcia Castro
State Bar No. 24131325
1900 N. Pearl, Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email:  Alejandra.garciacastro@huschblackwell.com

and

                CONNOLLY GALLAGHER LLP
Jeffrey C. Wisler (#2795)
1201 North Market Street, 20th Floor
Wilmington, DE  19801
Telephone: (302) 757-7300
Facsimile: (302) 658-0380
jwisler@connollygallagher.com

*Counsel for Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system.

*/s/Caleb T. Holzaepfel*
Caleb T. Holzaepfel