

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 1, 2026**

_____
United States Bankruptcy Judge

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

**STIPULATION AND AGREED ORDER**
**BETWEEN THE DEBTORS AND NOR HEALTHCARE**
**SYSTEMS CORP. FOR PAYMENT OF OUTSTANDING LIABILITIES**
**UNDER THE CA SALE TRANSACTION AGREEMENTS**

This stipulation and agreed order (this "Stipulation and Agreed Order") is entered into between the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

NOR Healthcare Systems Corp. ("NOR," and together with the Debtors, the "Parties" and each, a "Party"). The Parties hereby stipulate and agree as follows:

**WHEREAS**, beginning on January 11, 2025, each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court");

**WHEREAS**, on March 19, 2025, the Court entered the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling Auction(s) and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, (II)(A) Authorizing the Sale of the Assets Free and Clear of All Encumbrances, and (B) Approving the Assumption and Assignment of the Assumed Contracts, and (III) Granting Related Relief* [Docket No. 1264] (the "Bidding Procedures Order") approving, among other things, the bidding procedures to be used in connection with one or more sales of all or substantially all the Debtors' assets in California (such sale, the "CA Sale Transaction," and such assets, the "CA Assets");

**WHEREAS**, on August 3, 2025, (i) the Debtors selected NOR to act as the stalking horse bidder for the CA Assets and (ii) executed an asset purchase agreement by and among certain of the Debtors and NOR for the CA Sale Transaction, as supplemented by that certain Confirmation of Purchaser Obligations letter, dated December 5, 2025, executed by certain of the Debtors and NOR (collectively, the "California APA");

**WHEREAS**, on August 26, 2025, the Debtors held an auction (the "Auction") for the CA Assets. Following the conclusion of the Auction, the Debtors, after consultation with the Consultation Parties (as defined in the Bidding Procedures Order), designated NOR as the

successful bidder for the CA Sale Transaction [Docket No. 2989];

**WHEREAS**, on August 29, 2025, the Court entered the *Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 3029] (the "Sale Order");[2]

**WHEREAS**, on December 5, 2025, the Debtors and NOR entered that certain (i) Transition Services Agreement, dated December 5, 2025 (the "TSA") which, among other things, includes certain post-closing obligations of NOR for the provision of transition services to the Debtors; and (ii) Interim Management Agreement, dated December 5, 2025 (the "IMA", and, collectively with the California APA and the TSA, the "Agreements");

**WHEREAS**, on December 5, 2025, all the operations and Transferred Assets transferred to NOR, other than the MPT Real Property, and, on December 15, 2025, the MPT Real Property was transferred to NOR (the "Closing");

**WHEREAS**, on December 15, 2025, the Court entered the *Order Confirming the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates* [Docket No. 4230] (the "Confirmation Order"), pursuant to which the Debtors' chapter 11 plan (the "Plan") was confirmed;

**WHEREAS**, on January 11, 2026, the Debtors filed the *Debtors' Emergency Motion Seeking Entry of an Order Enforcing the Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 4393] (the "Enforcement

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Order or the Motion, as applicable.

Motion");

**WHEREAS**, on January 19, 2026, NOR filed *NOR Healthcare Systems Corp.'s Response to Debtors' Emergency Motion Seeking Entry of an Order Enforcing the Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 4493] (the "Response");

**WHEREAS**, on January 20, 2026, the Debtors filed the *Reply and Supplement in Further Support of Debtors' Emergency Motion Seeking Entry of an Order Enforcing the Order (I) Authorizing the Sale of the California Assets Free and Clear of All Encumbrances, (II) Approving the Assumption and Assignment of the Assigned Contracts, and (III) Granting Related Relief* [Docket No. 4510] (the "Reply," and together with the Enforcement Motion, the "Motion");

**WHEREAS**, on January 21, 2026, the Court held a hearing addressing the Motion and the Response. During the hearing, the Debtors and NOR came to an agreement regarding the resolution of NOR's outstanding obligations under the Agreements (the "Initial Settlement"). The Initial Settlement provided that, by January 29, 2026:

a. NOR would pay to the Debtors $11,324,700 in satisfaction of its outstanding obligations as of the filing of the Motion;

b. NOR would either (i) fund the Alta Account with a $3.5 million weekly reserve to satisfy the weekly capitation claim disbursements or (ii) open its own account from which capitation payments would be drawn; and

c. NOR would either (i) pay the $5.5 million of outstanding liabilities owed to vendors with respect to the assumed postpetition accounts payable or (ii) obtain and produce

4

acknowledgements from the vendors releasing the Debtors from all liability with respect to the assumed postpetition accounts payable.

**WHEREAS**, the Initial Settlement further provided that, should NOR fail to pay the agreed-upon amounts, the Debtors would return to the Court on January 29, 2026, at 1:30 p.m. (prevailing Central Time) to seek the relief requested in the Motion, including sanctions and the payment of the Debtors' professional costs and fees related to the enforcement of NOR's obligations;

**WHEREAS**, the Parties desire to modify the terms of the Initial Settlement and to specify terms and conditions for the resolution of NOR's obligations under the Agreements; and

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1. Each of the Recitals set forth above is incorporated by reference into this Stipulation and Agreed Order.

2. NOR acknowledges and agrees that it owes all amounts set forth in this Stipulation and Agreed Order and on **Schedule A**[3] hereto either as Assumed Liabilities under the California APA or as payments to the Debtors. NOR shall pay such amounts by the applicable deadline, as set forth in this Stipulation and Agreed Order. Except as set forth in this Agreement, NOR waives all actions, defenses, and set-offs with respect to the amounts set forth on **Schedule A**.

3. NOR shall comply with all existing terms of the Agreements. Upon the satisfaction of all outstanding NOR obligations under the Agreements and NOR's continuing compliance with the terms set forth herein, the Debtors shall grant NOR's request to pay the TSA Fee on a weekly

---

[3] **Schedule A** reflects amounts outstanding as of January 27, 2026. These amounts may be subject to change based on the Parties' reconciliation report and ongoing discussions with the applicable vendors of the amount due and owing. The Debtors reserve the right to supplement or modify the amounts set forth in **Schedule A** at any point to reflect any additional obligations or liabilities incurred by NOR, regardless of whether such additional obligations or liabilities arose prior to or after the execution of this Stipulation and Agreed Order. Nothing in this Stipulation and Agreed Order shall affect any caps on NOR's assumed Liabilities as set forth in section 2.3(c) of the California APA.

basis beginning in February 2026. Once weekly TSA Fee payments are approved, and beginning on February 2, 2026, NOR shall pay the TSA Fee every Monday. Consistent with the terms of the TSA, NOR shall also pay any obligations that may arise with respect to the TSA True-Ups for the prior calendar month. NOR acknowledges these obligations and commits to paying such obligations to the PMH Account within ten (10) days of receipt of an invoice from the Debtors setting out such TSA True-Up obligations.

4. In accordance with section 4.5(a) of the TSA, the Parties shall discuss in good faith and agree upon a mutually-acceptable termination schedule; *provided* that (a) the Parties shall only terminate services listed on Schedule A-5 of the TSA after the Parties mutually agree that such services are no longer needed [4] and (b) termination of specific services with respect to Schedules A-4 and A-6 shall only occur upon the Debtors' receipt of (i) proof of transfer of such services to a NOR account and (ii) a written release confirming that the Debtors are fully released from any liability to the vendor arising from or related to the CA Assets and/or NOR's operation of the California hospitals.

5. On or before January 28, 2026, NOR shall pay to the Debtors an aggregate of $7,827,803, which shall be divided as follows:

    a. $4,347,317 to the Alta Account in satisfaction of (a) the underfunded capitation claim payments as of January 22, 2026, (b) the outstanding liabilities for purchase orders made pursuant to the Supported Supply Chain Contracts and the Excluded Contracts as of January 22, 2026, (c) NOR's use of the Debtors' restricted cash, and (d) minimum cash sufficient to cover NOR's estimated capitation check clearances for the next week.

---

[4] The Parties agree that such services shall no longer be needed once NOR has transitioned the services and has provided proof to the Debtors that the services have been transitioned to a third party.

b. $3,480,486 to the PMH Account in satisfaction of (a) the outstanding assumed postpetition accounts payable that are to be paid to the vendors by the Debtors directly, subject to further reconciliation between the Debtors and NOR with respect to any disputed accounts payable balances, and (b) the amount owed to the Debtors due to the incremental reserve placed on the Debtors' eCapital borrowing base for the payment of the assignment fee under NOR's credit agreement with eCapital. Upon receipt of the funds relating to the postpetition accounts payable, the Debtors shall promptly disburse the funds to the applicable vendors in satisfaction of the outstanding postpetition accounts payable.

6. NOR acknowledges that there may be additional incremental amounts owed with respect to the categories set forth in paragraph 5 above. The Parties agree to meet each week to discuss in good faith the reconciliation of any additional incremental amounts. The reconciliation method used for such additional incremental amounts shall be consistent with the methodology used to generate the account payable figures set forth in this Stipulation and Agreed Order. Upon meeting and agreement of the Parties of any amount owed by NOR to such incremental amounts, NOR shall remit to the PMH Account funds sufficient to cover any incremental amounts owing within three (3) business days of such agreement by the Parties. Nothing in this paragraph 6 shall amend any caps on NOR's assumed Liabilities as set forth in section 2.3(c) of the California APA.

7. On or before January 28, 2026, NOR shall establish one or more bank account(s) in a form acceptable to the relevant Management Services Organizations, as applicable, for the disbursement of all future capitation payments. Within 48 hours of establishment of the accounts, NOR shall provide the Debtors with written acknowledgements from all applicable Management

Services Organizations that NOR's bank account(s) are acceptable and that the Management Services Organizations will take all commercially reasonable efforts to switch to the NOR bank account(s).

8. On or before January 28, 2026, NOR shall request a report from the applicable Management Services Organizations of all post-Closing outstanding capitation checks for the Alta Account. Following confirmation from the Management Services Organizations that the Alta Account will no longer be used for the payment of capitation claims, the Debtors and NOR will mutually agree on a revised weekly funding amount based on the remaining outstanding checks. On or before January 28, 2026, NOR shall also fund to the Alta Account a minimum cash amount of $1,680,508 as an estimate for projected check clearances for the next week. In the event that the weekly capitation payments exceed the funded cash reserve, NOR shall, within 24 hours of written notice by the Debtors,[5] fund the Alta Account with an amount sufficient to prevent the Alta Account from going negative on a pro-forma basis after accounting for the Debtors' restricted cash and scheduled disbursements.

9. In the event that NOR is unable to meet its obligations in paragraph 7 regarding the transition of capitation payments to NOR bank accounts, the Parties shall determine an appropriate cash reserve to cover any capitation checks which continue to be issued from the Alta Account; *provided* that, so long as capitation checks continue to be issued from the Alta Account, on the first business day of each such week, NOR shall fund the Alta Account with a cash reserve sufficient to cover the estimated weekly capitation check clearance activity. Such weekly funding shall continue until NOR provides an alternative account for the payment of capitation claims, which shall, in no event occur after February 21, 2026.

---

[5] Email notice by the Debtors shall constitute sufficient written notice.

10. Effective immediately, NOR shall strictly comply with the terms of the Agreements, including the requirement to prefund the Alta Account payment for all purchase orders made under the Supported Supply Chain Contracts or Excluded Contracts prior to the submission of the order to the vendor. The Debtors shall have no obligation to process such purchase orders until corresponding payment is received. NOR assumes responsibility for any operational disruptions that may arise with respect to its failure to comply with the terms of this paragraph 10. Upon termination of the requested services from Schedules A-4 and A-6 of the TSA, as mutually agreed-upon between the Debtors and NOR and subject to the conditions set forth in this Stipulation and Agreed Order and the agreed-upon termination schedule, NOR will no longer utilize the Alta Account to process payments and the Supported Supply Chain Contracts or Excluded Contracts will no longer be utilized by NOR.

11. NOR shall enter into new contracts (the "New Contracts") with each of the vendors under the Supported Supply Chain Contracts and the Excluded Contracts by February 11, 2026, or by some other date as determined by written agreement of the Parties acting in good faith and at their sole discretion. Payment for any purchase made under the New Contracts shall be funded directly and solely through a NOR bank account.

12. On or before February 21, 2026, and subject to paragraph 13 below, NOR shall fund directly to the applicable vendors an aggregate $5,493,623 in satisfaction of the assumed outstanding postpetition accounts payable as reported by invoices received as of the closing of the sale on December 5, 2025; *provided* that, in lieu of payment to an applicable vendor, NOR may provide written confirmation to the Debtors from the applicable vendor acknowledging that (a) any outstanding liabilities with respect to the relevant postpetiton account payable have been transferred to NOR and (b) the Debtors are fully released from any liability to the vendor arising

from or related to the CA Assets and/or NOR's operation of the California hospitals.

13.    The obligations owed by NOR with respect to each vendor with a postpetition account payable relating to paragraph 12 above are set out in **Schedule B** hereto.  NOR acknowledges that there may be additional incremental amounts owed with respect to the assumed postpetition accounts payable.  The Parties also acknowledge that certain amounts with respect to the postpetition accounts payable are currently in dispute. The Parties will continue to reconcile invoices as they are received by the Debtors or NOR, and any disputed accounts payable will be addressed by NOR once the dispute is finalized.  NOR shall pay to the applicable vendors funds sufficient to cover any incremental amounts owing or settled disputed amounts upon the latter of (a) February 21, 2026 or (b) within three (3) business days of NOR's receipt of notice of such outstanding obligations unless otherwise disputed by NOR.

14.    The Debtors reserve the right to supplement or modify the amounts set forth in this Stipulation and Agreed Order at any point to reflect (a) any additional obligations or liabilities incurred by NOR, regardless of whether such additional obligations or liabilities arose prior to or after the execution of this Stipulation and Agreed Order, or (b) any decrease in the obligations or liabilities incurred by NOR with respect to the Agreements.  The Debtors shall provide NOR with a reconciliation report reflecting any such changes in the amounts owed by NOR with respect to the Assumed Liabilities and any other NOR obligations under the Agreements.  The reconciliation method used for the reconciliation report shall be consistent with the methodology used to generate the figures set forth in this Stipulation and Agreed Order.  Upon receipt of the reconciliation report, NOR shall provide any disputes to the reconciliation report to Debtors within two business days.  Upon receipt of such dispute, paragraph 13 of this Stipulation and Agreed Order shall apply.  NOR shall pay to the Debtors or the applicable vendor, as applicable, any amounts that are not subject

to dispute within three (3) business days of NOR's receipt of a reconciliation report.

15. Should NOR fail to timely perform its obligations under the Agreements or this Stipulation and Agreed Order, NOR shall reimburse the Debtors for any professional fees and expenses incurred on or after December 5, 2025, in relation to NOR's defaults under the Agreements; *provided* that (a) NOR shall have three days to cure such breach and (b) such breach and the Debtors' professional fees and expenses shall be proven at Court prior to NOR's obligation to pay. Following Court approval of the Debtors' expenses and fees, the Debtors shall provide to NOR a statement setting out an itemized list of the relevant professional fees and expenses. NOR shall remit to the Debtors payment for such professional fees and expenses within two business days of receipt of the statement.

16. In the event that NOR breaches one or more provisions of this Stipulation and Agreed Order or any other term in the Agreements, subject to the Court's availability, the Debtors shall be entitled to seek an emergency hearing on three days' notice and NOR shall be deemed to have consented to an emergency hearing on such timeline.

17. This Stipulation and Agreed Order shall be binding upon and shall inure to the benefit of the Parties and each of their respective executors, heirs, successors, and assigns, including in the case of the Debtors, any chapter 11 or chapter 7 trustee, and any liquidation trustee or litigation trustee. Each Party acknowledges that it has participated in and jointly consented to the drafting of this Stipulation and Agreed Order and that any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

18. This Stipulation and Agreed Order is subject to the approval of the Court and shall be of no force and effect unless and until an order approving the same is entered.

19. This Stipulation and Agreed Order may be executed by the Parties in separate

counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument. This Stipulation and Agreed Order may be executed by exchange of facsimile or electronic signatures (in PDF or comparable format), which shall be deemed original signatures.

20. Each person who executes this Stipulation and Agreed Order on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation and agrees to the terms set forth in this Stipulation and Agreed Order.

21. The Court retains exclusive jurisdiction with respect to matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order and with respect to any other issues that may arise with respect to the CA Sale Transaction and the Agreements.

# # # END OF ORDER # # #

**STIPULATED AND AGREED ON JANUARY 30, 2026 BY:**

*/s/ Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
Email: tom.califano@sidley.com
      rpatel@sidley.com
      mquejada@sidley.com

**SIDLEY AUSTIN LLP**
William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: wcurtin@sidley.com
      pventer@sidley.com
      anne.wallice@sidley.com

*Attorneys for the Debtors and Debtors in Possession*

*/s/ Ross Spence*
**ROSS SPENCE, P.C.**
Ross Spence (18918400)
4582 Elm Street
Bellaire, TX 77401
Telephone: (713) 201-0878
Email: ross@rossspence.com

**CHIEF LEGAL OFFICER, NOR HEALTHCARE SYSTEMS CORP**.
Faisal Gill (admitted *pro hac vice*)
505 North Brand Boulevard, Suite 1200
Glendale, CA 91203
Telephone: (818) 408-6669
Email: fgill@amhealthsystems.com

*Attorneys for NOR Healthcare Systems Corp**.***

## Schedule A

## Outstanding NOR Liabilities

| Fee | Bank Account to Fund | Amount[1] | Due Date |
|---|---|---|---|
| Capitation Claims | Alta Account (*0039) | $1,966,187 | January 28, 2026, at 1:30 p.m. (prevailing Central Time) |
| Outstanding Purchase Orders | Alta Account (*0039) | $172,666 | January 28, 2026 |
| Restricted Cash Reimbursement | Alta Account (*0039) | $527,956 | January 28, 2026 |
| Capitation Reserve | Alta Account (*0039) | $1,680,508 | January 28, 2026 |
| Subtotal (Funded to Alta Account) | | $4,347,317 | |
| Postpetition Accounts Payable (Paid to Debtors) | PMH Account (*5080) | $2,530,486 | January 28, 2026 |
| eCapital Amount Due | PMH Account (*5080) | $950,000 | January 28, 2026 |
| Subtotal (Funded to PMH Account) | | $3,480,486 | |
| Total Funded to Debtors | | $7,827,803 | |
| Postpetition Accounts Payable (Paid to Vendors) | Alta Account (*0039) or Paid Directly to Vendor by NOR | $5,493,623 | February 21, 2026 |
| Total Outstanding NOR Obligations | | $13,321,426 | |

---

[1] **Schedule A** reflects amounts outstanding as of January 27, 2026. These amounts may be subject to change based on the Parties' reconciliation report and ongoing discussions with the applicable vendors of the amount due and owing. The Debtors reserve the right to supplement or modify the amounts set forth in **Schedule A** at any point to reflect any additional obligations or liabilities incurred by NOR, regardless of whether such additional obligations or liabilities arose prior to or after the execution of this Stipulation and Agreed Order. Nothing in this Stipulation and Agreed Order shall affect any caps on NOR's assumed Liabilities as set forth in section 2.3(c) of the California APA.

**Schedule B**

**Postpetition Accounts Payable**

**[To be Filed Under Seal]**