JAIN LAW & ASSOCIATES PLLC
Kristin H. Jain (Bar No. 24010128)
400 East Las Colinas Blvd., Suite 680
Irving, Texas 75039
Tel: 214.446.0330
khjain@jainlaw.com

FRANKLIN SOTO LEEDS LLP
Paul J. Leeds (Cal. Bar. No. 214309)
(*Pro Hac Vice Forthcoming*)
Shelby A. Poteet (Cal. Bar No. 297621)
(*Pro Hac Vice Forthcoming*)
444 West C Street, Suite 300
San Diego, California 92101
Tel: 619.872.2520
pleeds@fsl.law
spoteet@fsl.law
dnoceda@fsl.law

Attorneys for Creditor VisiQuate, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002-sgj-11 |
| Debtors. | Jointly Administered |

## VISIQUATE, INC.'S MOTION TO COMPEL
## PAYMENT OF ADMINISTRATIVE CLAIM

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST FILE A RESPONSE IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE**

---

[1] A complete list of each of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

**ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A
WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED
BY THE CLERK AND FILED ON THE DOCKET NO MORE
THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS
MOTION WAS FILED.   OTHERWISE, THE COURT MAY
TREAT THE PLEADING AS UNOPPOSED AND GRANT THE
RELIEF REQUESTED.**

VisiQuate, Inc. ("VisiQuate"), a creditor in the above-captioned Chapter 11 cases, hereby moves for an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), compelling the Plan Administrator for Prospect Medical Holdings, Inc. ("PMH" or "Debtor") to immediately pay VisiQuate's administrative expense claim of $428,090.53 (this "Motion"). In support of this Motion, VisiQuate states as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Northern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).   VisiQuate consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal bases for the relief sought herein are sections 503(b)(1)(A) and 507(a)(2) of title 11 of the United States Code (as amended, the "Bankruptcy Code").

## FACTUAL BACKGROUND

### A. The Parties And Their Pre-Petition Contractual Relationship

4.      VisiQuate is a SaaS-based healthcare analytics and data management company.[2]

---

[2] In support of this Motion, VisiQuate attaches hereto and incorporates by reference as if set forth in full herein the following:

1. **Exhibit B**: Declaration of Sean Kirby in Support of Visiquate, Inc.'s Motion to Compel Payment of Administrative Claim; and

2. **Exhibit C**:  Declaration of Sven P. Zabka, Esq., in Support of VisiQuate, Inc.'s Motion to Compel Payment of Administrative Claim.

On April 17, 2018, PMH entered into a Master SaaS Agreement ("Master Agreement") and SaaS Agreement – Service Level Agreement (SLA) ("Service Agreement") with VisiQuate. ("Creditor"). On April 17, 2018, PMH and VisiQuate entered into SaaS Statement of Work #01 ("SOW 1"), which incorporates the Master Agreement.

5.      Under the Master and Service Agreements and the SOW 1, VisiQuate agreed to provide certain services, including data maintenance and access and various analytic SaaS solutions, to PMH in exchange for initial set up and implementation fees plus subsequent monthly subscription fees. Under SOW 1, the monthly subscription fee was $75,347 subject to an increase of 3% each year starting in 2018. On July 15, 2021, PMH and VisiQuate entered into a VisiQuate SOW Change Request Form ("Change Request"). Under the terms of the Change Request, PMH agreed to pay, among other amounts, an additional $4,000 per month for additional services. The Master Agreement, Service Agreement, SOW 1, and Change Request are collectively referred to as "VisiQuate Contracts". Pursuant to the VisiQuate Contracts, VisiQuate provided PMH with subscription-based access to VisiQuate's proprietary data analytics platform.

6.      VisiQuate was PMH's sole platform for consolidating and standardizing data from its various markets into a unified reporting system. VisiQuate's platform's reports, dashboards, data extracts, and analytics were utilized by PMH personnel to monitor revenue, collections, payer performance, claim denials, underpayments, and other key financial metrics, as well as to support month-end and year-end financial reporting.

7.      Access to VisiQuate's platform was critical to Debtor's operations pre-petition and continued to serve an important function during Debtor's bankruptcy. PMH personnel accessed and utilized VisiQuate's services throughout the Chapter 11 case.  VisiQuate provided a direct benefit to the bankruptcy estate by helping Debtor preserve, recover, and maximize cash and receivables after the petition date.

**B.  The Bankruptcy**

8.      On January 11, 2025, Debtor filed this voluntary Chapter 11 Bankruptcy case in this Court, bearing Case No. 25-80002-sgj11.   (Doc 1; *see also* Doc 93).

9.      On February 3, 2025, VisiQuate filed Proof of Claim No. 213 in the amount of $485,069.85. Debtor filed a Chapter 11 Plan as well as subsequent amendments and supplements.

10.     On October 1, 2025, Debtor filed a Plan Supplement (Doc 3295), on which they identified the VisiQuate Contracts in a Deferred Decision Contracts Schedule. The provisions in Article IV and elsewhere in the Plan provide the means for the Plan's implementation, including, among other things: (a) the consummation of the Plan, including the establishment of Reorganized PMH and the Wind-Down and dissolution of Debtor; (b) creation of the GUC Trust and the appointment of the GUC Trust Trustee; (c) the appointment of the Plan Administrator; (e) the authorization for Debtor, the Wind-Down Debtors, Reorganized PMH, the Plan Administrator, and the GUC Trust Trustee, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan.

11.     On December 15, 2025, the Court confirmed the Second Amended Joint Chapter 11 Plan of Reorganization (Dkt. No. 4230) (the "Plan"). Under the Plan, the VisiQuate Contracts were placed on the Deferred Decision Schedule (Dkt. No. 4079-1), exempting them from automatic rejection on the Effective Date. The Deferred Decision Deadline, as defined in the Plan, did not expire until June 6, 2026.

12.     On January 31, 2026, while the VisiQuate Contracts were still on the Deferred Decision Contracts Schedule, Debtor filed a Notice of Rejection of Executory Contracts (Doc 4599), seeking authority to reject the VisiQuate Contracts effective January 31, 2026 (the "Rejection Notice").

13.     On March 2, 2026, VisiQuate filed an Administrative Claim and Rejection Damages Claim.   (Claim No. 2937).

14.     On March 6, 2026. Debtor filed its Notice of Occurrence of Effective Date of Second Amended Joint Plan of Prospect Medical Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code ("Effective Date Notice"). (Doc 4791).

15.     On April 6, 2026, the Court entered an order authorizing the rejection of, among other contracts, the VisiQuate Contracts.   (Doc 4944).

16.     On May 6, 2026, VisiQuate timely filed its Amended Administrative Claim and Rejection Damages Claim, asserting an administrative expense of $428,090.53 and rejection damages of $1,210,020.61.   (Amended Claim No. 2937).

C. **Debtor's, Plan Administrator's and/or GUC Trustee's Continued Use of VisiQuate's Services**

17.     Throughout the entirety of Debtor's bankruptcy case, through the Effective Date, VisiQuate has continued to provide uninterrupted services to Debtor and its representatives under the VisiQuate Contracts. At no point during the pendency of the bankruptcy case did Debtor request that VisiQuate cease performance. To the contrary, Debtor and its representatives (including its financial advisors and legal counsel to the GUC Trustee) continued to access the data hosted by VisiQuate and even requested additional access to VisiQuate's platform for Debtor's personnel. That usage continues to this day.

18.     From December 2025 to March 2026, PMH personnel logged into the VisiQuate platform 238 times, opened 18,895 data objects and received 43,280 subscriptions, respectively, demonstrating significant usage and ongoing reliance of VisiQuate's platform and services.

19.     After the confirmation of the Plan, and after the Rejection Notice, VisiQuate received a number of requests for continued access by PMH and its representatives.

20.     On February 17, 2026, despite noticing their intended rejection of the VisiQuate Contracts seventeen days earlier, PMH's consultant, Alvarez and Marshal ("A&M"), requested VisiQuate continue to maintain PMH's data on VisiQuate's platform.   Pursuant to that request, VisiQuate has continued to maintain PMH's data and provide access to its services, which to date

has included providing additional access credentials at the request of PMH (and its successors) to new personnel for purposes of, among others, A/R collection and closing month end financials.

21.     On March 23, 2026, VisiQuate confirmed with A&M that it continued to retain PMH's data and provide platform access to authorized PMH users as well as provide additional access credentials at the request of PMH (and its successors) to new personnel, in accordance with the terms of the VisiQuate Contracts. As recently as April and May 2026, PMH personnel logged into the VisiQuate platform 32 and 28 times, opened over 3,700 and 3,300 data objects, and received over 10,400 and 8,900 subscriptions, respectively, demonstrating significant usage and ongoing reliance of VisiQuate's services.

22.     Despite the ongoing usage and access, on May 6, 2026, Kimberly Lumia, on behalf of the Plan Administrator, advised VisiQuate that the VisiQuate Contracts were included in the rejected contracts and that outstanding invoices would not be paid by the PMH Estate.

23.     On May 7, 2026, Sills Cummins & Gross PC, counsel to GUC Trustee - Steve Balasiano, further requested that VisiQuate maintain all of PMH's data in its possession until they could determine how to best gain access thereto and/or transfer thereof in connection with litigation they were handling for the GUC Trustee.

24.     As recent as May 28, 2026, Bartko Pavia LLP, legal counsel to PMH and now to the GUC Trustee, has further requested assurance from VisiQuate that it will not delete PMH's data from its servers and platform, which deletion is otherwise required pursuant to the terms of the VisiQuate Contracts and HIPAA if such contracts have indeed been rejected or otherwise terminated.

D. **Amounts Currently Due**

25.     Post-petition, but before the purported rejection of the VisiQuate Contracts, Debtor incurred monthly subscription fees due to VisiQuate.   The monthly subscription fees were paid in full for the period from the Petition Date through September 30, 2025.   For the period from October 1, 2025 through the Effective Date, VisiQuate invoices totaling $591,761.28 have not

6

been paid in full.   Specifically, VisiQuate invoiced the Debtor for $291,508.03 on Invoice #036533, dated October 1, 2025, and a $300,253.25 charge on Invoice #036534, dated January 1, 2026.   VisiQuate received a partial payment on Invoice #036533. As of the date of the filing of this Motion, a balance of $428,090.53 remains to be paid on these invoices.

//

//

//

## BASIS FOR RELIEF

### A.  VisiQuate is Entitled to Payment of Its Administrative Expense Claim

26.      Under 11 U.S.C. § 503(b)(1)(A), the actual and necessary costs and expenses of preserving the estate incurred after the commencement of the case are allowable as administrative expenses. VisiQuate has provided continuous, uninterrupted SaaS platform services to Debtor since the Petition Date (January 11, 2025).

27.      Where the debtor and its estate actually use or receive the benefit of third parties' goods and services, that third party is entitled to both hold an allowed administrative expense for the value of the goods and services and to be paid in accordance with the terms of the underlying contracts. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531 (1984) (citing *Philadelphia Co. v. Dipple*, 312 U.S. 168, 174 (1941)). A debtor's receipt of benefits pursuant to a contract pending rejection or assumption, obligates the debtor to pay a reasonable value of the services.  *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010). Where a contract exists, the reasonable value of services standard creates a presumption that the contractual rate is the reasonable value of services. *Id.* at 741 (citing *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003)).

28.      VisiQuate is entitled to immediate payment of all post-petition balances remaining due under the VisiQuate Contracts, at the contractual amounts.   Since the petition date, VisiQuate has continued to provide services and products via software that are necessary to Debtor's

operations and the preservation of the estate.   Debtor has utilized VisiQuate's services throughout the post-petition period, even despite the purported rejection of the VisiQuate Contracts.   Due to Debtor's continued use of VisiQuate's platform and services, Debtor is required to pay the contractual amounts for such services.   That amount totals $428,090.53 in balances remaining due from the October 2025 and January 2026 Invoices.

29.      Accordingly, VisiQuate respectfully requests the Court enter an order, substantially in the form of the Proposed Order, compelling Debtor to immediately pay VisiQuate's administrative expense claim of $428,090.53.

**B.  VisiQuate is Entitled to Payment of Post-Effective Date Amounts Due**

30.      Debtor purportedly rejected the VisiQuate effective January 31, 2026.   However, the continued demand for performance by Debtor and its representatives (which persist to date), the ongoing usage by Debtor and its representatives, all show that Debtor's purported rejection was illusory.

31.      A debtor cannot reject an executory contract while simultaneously continuing to receive the benefits of that contract, as well as expect and require the provider to bear the burden of ongoing risk, without paying for those benefits and burdens as an administrative claim. *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 444 (5th Cir. 2019) (finding amounts incurred after the rejection of a contract qualify as an administrative expense if the expense arose from actions taken by the debtor-in-possession and benefitted the estate and remanding to the bankruptcy court for further determination); *In re Mirant Corp.*, 197 F. App'x 285, 294–95 (5th Cir. 2006) (quoting *Schokbeton Indus., Inc. v. Schokbeton Prods. Corp.,* 466 F.2d 171, 175 (5th Cir.1972)) ("the universally accepted rule that a trustee [or debtor] cannot accept the benefits of an executory contract without accepting the burdens as well.").

32.      To the extent a debtor continues to receive services that benefit the estate, the non-party is entitled to an administrative expense even absent a clearly defined post-petition

8

relationship. *Whistler*, 931 F.3d at 442-43.

33.     Here, Debtor and its representatives have continued to demand and use the services provided under a purportedly rejected contract, making the purported rejection illusory. Debtor's financial advisor, the Plan Administrator, and the GUC Trust have all (1) requested preservation, and (2) accessed VisiQuate's platform, which contains detailed patient-account, claims, payer, charge, payment, adjustment, denial, underpayment, accounts receivable, bad debt, emergency throughput, and collection-related data. Such data can be analyzed by market, facility, payer, service line, encounter, patient account, transaction, and other operational dimensions, which allows PMH to understand both overall financial performance and the specific underlying causes of cash delays, reimbursement shortfalls, denials, and revenue leakage. This information can, among other uses, be used by PMH's operations and finance teams to manage revenue cycle performance, monitor and forecast cash collections, prioritize accounts receivable follow-up, identify collectible revenue, evaluate payer behavior and underpayments, and support financial reporting and decision-making.

34.     Access to VisiQuate's platform was critical to Debtor's operations pre-petition and continued to serve an important function during Debtor's bankruptcy. VisiQuate provides a direct benefit to the bankruptcy estate by helping Debtor preserve, recover, and maximize cash and receivables after the petition date.

35.     Accordingly, VisiQuate respectfully requests the Court enter an order, substantially in the form of the Proposed Order, compelling the Plan Administrator to immediately pay VisiQuate's administrative claim of $428,090.53.

## **RESERVATION OF RIGHTS**

36.     The filing of this Motion is not (1) a waiver, release, or other limitation of any claims, rights, remedies, or interests held by VisiQuate, (2) an election of remedies, or (3) a waiver of any defaults past, present, or future. VisiQuate reserves all its rights, including but not limited

to, (1) the right to amend or supplement the Claim at any time and (2) to assert any claims that may be based on or relate to any or all of Debtor's obligations to VisiQuate.

//

//

//

//

//

//

WHEREFORE, VisiQuate respectfully requests the entry of the Order, granting the relief requested above, and granting such other and further relief the Court deems just and property.

Dated: July 2, 2026                                        Respectfully submitted,

                                                           */s/ Kristin H. Jain*
                                                           Kristin H. Jain

                                                           JAIN LAW & ASSOCIATES
                                                           400 East Las Colinas Blvd., Suite 680
                                                           Irving, Texas 75039
                                                           Tel: 214.446.0330
                                                           khjain@jainlaw.com

                                                           *and*

                                                           Paul J. Leeds, Esq.
                                                           *(Pro Hac Vice Forthcoming)*
                                                           FRANKLIN SOTO LEEDS LLP
                                                           444 West C. Street, Suite 300
                                                           San Diego, CA 92101
                                                           Telephone: 619.872.2523
                                                           Email: pleeds@fsl.law

                                                           *Attorneys for VisiQuate, Inc.*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 9007-1(e), undersigned counsel certifies that counsel for VisiQuate, Inc. attempted to confer with counsel for Debtor regarding the relief requested in this Motion.

On June 11, 2026, counsel for VisiQuate, Inc. sent a written demand letter to Debtor and GUC Trustee requesting payment of VisiQuate's administrative expense claim and seeking to resolve the matter without court intervention.  Counsel for VisiQuate did not receive a response thereto. Accordingly, VisiQuate assumes the Motion is opposed.

*/s/ Paul J. Leeds*
Paul J. Leeds

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 2, 2026, a true and correct copy of the foregoing document was served upon the Debtor, counsel for the Debtor, and all parties receiving or entitled to notice via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Kristin H. Jain*
Kristin H. Jain
