The Law Office of Vincent P. Slusher
Vincent P. Slusher (00785480)
2121 N. Akard St., Suite 250
Dallas, Texas 75201
Telephone: (214) 478-5926
Email: vince.slusher@proton.me

*Counsel to the Plan Administrator*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Reorganized PMH and Wind-Down Debtors. | (Jointly Administered) |
| | Rel. to Dkt. No. 5182 |

**POST-EMERGENCE DEBTORS' OBJECTION TO VISIQUATE, INC.'S
MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE CLAIM**

The estates of Prospect Medical Holdings, Inc. and certain of its affiliates and related entities (collectively, prior to the effective date of their chapter 11 plan, the "Debtors" and currently, the "Post-Emergence Debtors")[2] submit this objection (this "Objection") to *Visiquate, Inc.'s Motion to Compel Payment of Administrative Claim* [Docket No. 5182] (the "Motion") filed by Visiquate, Inc. (the "Movant"). In support of this Objection, the Post-Emergence Debtors respectfully state as follows:

---

[1] A complete list of each of the Post-Emergence Debtors in these chapter 11 cases may be obtained on the website of the Post-Emergence Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Post-Emergence Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2] For the avoidance of doubt, references herein to the Debtors shall, with respect to periods on and after the Effective Date, be deemed to refer to the Post-Emergence Debtors, and references to the Post-Emergence Debtors shall, with respect to periods prior to the Effective Date, be deemed to refer to the Debtors, in each case, as the context requires.

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested in this Objection are sections 105(a), 503, and 1141(a) of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure 9006(b), 9013 and 9014 (the "Bankruptcy Rules"), Local Bankruptcy Rule for the Northern District of Texas 9014-1 (the "Local Bankruptcy Rules"), and the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures").

3.      The Post-Emergence Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion and this Objection in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

4.      Beginning on January 11, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (such cases, these "Chapter 11 Cases").

5.      Since prior to the Petition Date, the Movant provided certain services (the "Services") to certain Debtors as governed by the applicable agreements (collectively, the "Agreements").

6.      Throughout these Chapter 11 Cases, the Movant filed and/or amended several proofs of claim (collectively, the "Proofs of Claim") with respect to the Agreements.

7.      On December 15, the Court entered the *Order Confirming the Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates* [Docket No. 4230] (the "Confirmation Order").  The Confirmation Order established the administrative claims bar date as January 14, 2026 (the "Administrative Claims Bar Date").

8.      On January 14, 2026 (the Administrative Claims Bar Date), the deadline to file any administrative claims expired.

9.      On January 31, 2026, the Debtors filed the *Notice of Rejection of Executory Contracts* [Docket No. 4599], seeking the rejection of certain Agreements (the "Rejection Notice").

10.     On March 6, 2026, the Debtors filed the *Notice of Occurrence of Effective Date of Second Amended Joint Chapter 11 Plan of Prospect Medical Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4791].  Accordingly, on March 6, 2026 (the "Effective Date"), the Effective Date of these Chapter 11 Cases occurred.

11.     On April 6, 2026, the Court's entered the *Order (I) Authorizing Rejection of Certain Executory Contracts and Unexpired Leases of Nonresidential Real Property, and (II) Granting Related Relief* [Docket No. 4944] (the "Rejection Order"), which confirmed the rejection of the Post-Emergence Debtors' rejection of the applicable Agreements with the Movant (such agreements, the "Rejected Agreements"), effective as of January 31, 2026.

12.     On July 2, 2026, the Movant filed the Motion, seeking payment of certain purported administrative claims (the "Asserted Claims").

**OBJECTION**

**I.    The Asserted Claims Are Time-Barred.**[3]

13.    For the reasons set forth below, the Post-Emergence Debtors assert that the Asserted Claims were not timely nor properly requested by the Administrative Claims Bar Date and do not satisfy the "excusable neglect" standard.

**A.    The Asserted Claims Were Not Properly Requested.**

14.    The Asserted Claims were not properly pleaded with the Court.  "The way for a creditor to make a request on an administrative claim is to file an application requesting allowance and payment of an administrative-expense claim in the court's docket."  *In re Taco Bueno Restaurants, Inc.*, No. 18-33678-SGJ, Mem. Op. at 13, [Docket No. 388] (Bankr. N.D. Tex. Aug. 23, 2019) (the "Taco Bueno Order").  As the Court has previously clarified, filing a proof of claim is simply insufficient for a creditor to satisfy its obligation under section 503(a) of the Bankruptcy Code to timely file and serve a request for payment of an administrative claim by an Administrative Claims Bar Date.  *See* Taco Bueno Order at 13 ("The way for a creditor to make a request on an administrative claim is to file an application requesting allowance and payment of an administrative-expense claim in the court's docket.  But a creditor filing a proof of claim containing an administrative expense in the court's claims register is not and cannot constitute a request for allowance and payment on an administrative claim.").

15.    The Motion presupposes the conclusion that the Asserted Claims are allowed administrative claims in these Chapter 11 Cases.  However, no application requesting allowance of the Asserted Claims has been made by the Movant to date.  Instead, the Motion is seeking to

---

[3]    To the extent applicable, the Post-Emergence Debtors restate any arguments made in other sections of this Objection, which are incorporated by reference in Section I of this Objection.

compel payment with respect to an unestablished administrative claim, well after the Administrative Claims Bar Date. The Movant, through the Proofs of Claim or otherwise, failed to make a proper request for an administrative expense claim with respect to the Asserted Claims prior to the Administrative Claims Bar Date and have neither properly sought nor established satisfaction of any standard applied under applicable bankruptcy law to justify an untimely request of an administrative claim. Therefore, the Motion does not comply with the administrative claims procedures established by the applicable bankruptcy law and the Confirmation Order and cannot serve as a substitute for a properly and timely filed administrative claim.

16.     In short, merely filing the Proofs of Claim does not constitute a sufficient request for an administrative expense claim as it relates to the Asserted Claims and therefore, the Movant did not file a proper request with the Court with respect to the Asserted Claims.

**B.     The Asserted Claims Are Untimely.**

17.     The Asserted Claims were introduced as potential claims via motion after the Administrative Claims Bar Date of January 14, 2026, as set by the Confirmation Order. Accordingly, the Asserted Claims are untimely and should be disallowed in their entirety.

18.     Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). The legislative history to section 503(a) of the Bankruptcy Code indicates that Congress decided to leave to the Federal Rules of Bankruptcy Procedure "the task of filling in the particulars as to 'the time, the form and the method of such a filing.'" *Deere Credit, Inc. v. Wiley* (*In re Wiley*), 2014 WL 294330, at *4 (Bankr. S.D. Ga. Jan. 24, 2014) (citing H.R. Rep. No. 95-595, at 355 (1977); S. Rep. No. 95-989, at 66 (1978)). However, as noted by the Fifth Circuit, the Federal Rules of Bankruptcy Procedure do not prescribe

time limits for the filing of requests for administrative claims.  *Hall Fin. Grp., Inc. v. DP Partners, Ltd. P'ship* (*In re DP Partners Ltd. P'ship*), 106 F.3d 667, 671–72 (5th Cir. 1997).  Accordingly, bankruptcy judges "have, for some time, been accorded discretion in setting administrative-claim bar-dates."  *Id.* at 672 (citing 3 Collier on Bankruptcy ¶ 503.1, at 503-4 n.2c (Lawrence P. King ed., 15th ed. 1994)).

19.     Through the Plan and the Confirmation Order, the Court exercised that discretion and established the Administrative Claims Bar Date in these Chapter 11 Cases.  Upon the filing of the Confirmation Order, the Administrative Claims Bar Date was established as January 14, 2026.  *See* Plan, Art. I.A.5.  In accordance with the Plan and Confirmation Order, any party that makes a request for an Administrative Claim after the Administrative Claims Bar Date of January 14, 2026 shall be "forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Plan Administrator, the Estates, or the Debtors' assets and properties, and any Administrative Claims shall be deemed disallowed as of the Confirmation Date unless otherwise ordered by the Bankruptcy Court."  Plan, Art. II.A.

20.     To date, the Movant has not filed an application requesting allowance of an administrative claim with respect to the Asserted Claims.  Accordingly, the Asserted Claims should be disallowed in their entirety on that basis alone.  However, even if the Motion is deemed a request for allowance of an administrative claim (which the Post-Emergence Debtors dispute), the Motion was not filed until July 2, 2026—nearly 6 months after the Administrative Claims Bar Date.  Especially given that the Agreements were in place since prior to the commencement of these Chapter 11 Cases and that the Rejection Order was entered over three months ago, the Asserted Claims are time barred and should be disallowed entirely.

21.     The Movant failed to file a proper, required request for any of the Asserted Claims prior to the Administrative Claims Bar Date, including those that actually arose or any protective claims, notwithstanding the fact that the Agreements were in place prior to the commencement of these Chapter 11 Cases.  Allowing creditors such as the Movant—who waited until nearly 6 months after the Administrative Claims Bar Date and approximately 5 months after the filing of the Rejection Notice to file the Motion—to gain administrative priority on untimely claims would potentially threaten (i) the success of these Chapter 11 Cases, (ii) the Debtors' ability properly administer these Chapter 11 Cases, including processing distributions to its creditors and parties in interest in accordance with the Plan, and (iii) the Debtors' administrative solvency.

22.     Accordingly, the Asserted Claims are untimely and should be disallowed in their entirety.

### C.     The Movant Cannot Satisfy Their Burden of Proving Excusable Neglect.

23.     The Movant cannot rely on excusable neglect with respect to the Asserted Claims. Bankruptcy Rule 9006 provides that "the court may—at any time and for cause—extend the time to act if . . . on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect."  Fed R. Bankr. P. 9006(b).  "The party seeking an extension of time bears the burden of proving excusable neglect." *See In re Lehman Bros. Holdings Inc., et al.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d. Cir. 2005)).  "[T]he burden of establishing excusable neglect is quite onerous.  Inadvertence, ignorance of the rules or mistakes in construing the rules do not usually rise to the level of excusable neglect." *In re Heartland Mem'l Hosp., LLC*, 473 B.R. 897, 901 (Bankr. N.D. Ind. 2012); *see also In re Residential Capital, LLC*, No. 12-12020 (MG), slip op. at 8 (Bankr. S.D.N.Y. June 22, 2018) ("The Second Circuit has noted that 'the equities will rarely if ever favor a party who fail[s] to

follow the clear dictates of a court rule,' and that 'where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'") (citations omitted). "Although excusable neglect is a flexible concept, courts require unique and/or extraordinary circumstances to excuse a creditor's failure to file by the bar date." *Buttes Gas & Oil Co. v. Cal. Reg'l Water Quality Control Board (In re Buttes Gas & Oil Co.)*, 182 B.R. 493, 501 (Bankr. S.D. Tex. 1994) (internal alterations and quotation marks omitted).

24.     The Supreme Court has construed "excusable neglect" as an equitable determination, "taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395 (1993).  In deciding whether to enlarge the time for filing a claim under Rule 9006(b), courts consider four factors: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.  *See id*.

25.     The first *Pioneer* factor weighs heavily in favor of the Post-Emergence Debtors. The Movant is seeking compel payment for a sizable administrative claim, which would directly prejudice the Debtors and their estates, along with the parties in interest in these Chapter 11 Cases. *See In re Enron Corp.*, 419 F.3d 115, 130 (2d Cir. 2005) ("[T]he size of the claim cannot be irrelevant to the analysis, and some courts have taken into account whether allowance of a particular late claim would 'jeopardize the success of the reorganization,' by, for example, 'forc[ing] the return of . . . amounts already paid out under the confirmed Plan, or affect[ing] the distribution to creditors and equity holders.'").  Even if the claims sought by the Movant would not constitute a large percentage of the value of the Debtors' bankruptcy as a whole, in analyzing prejudice to the estate resulting from a late-filed claim, courts do not view the claim in isolation.

8

*See In re Asarco, LLC*, No. 05-21207, slip op. at 4 (Bankr. S.D. Tex. Oct. 3, 2008) ("The Court

must not consider a claim in isolation. 'Even if [a] claim is negligible relative to the total size of

[the debtor's] bankruptcy, the more relevant question is whether allowing one such claim would

lead to 'a mountain of such claims.'") (citation omitted). If allowing one claim "could open

the proverbial flood gate of similar claims," such fact weighs in favor of finding prejudice to

the debtor. *In re Seadrill Ltd.*, No. 17-60079, 2019 WL 7580175, at *3 (Bankr. S.D. Tex. Dec. 19,

2019); *In re Kmart Corp.*, 381 F.3d 709, 714 (7th Cir. 2004) ("[I]f the bankruptcy court allowed

all late-filed claims of nearly a million dollars where a simple 'innocent mistake'. . . was to blame

for the tardiness of the proof of claim, we think [the debtor] could easily find itself faced with a

mountain of such claims, with a corresponding price tag in the millions of dollars.").

26.     As this Court has previously noted, the Debtors were and are entitled to look at

the court's docket and see what administrative-expense claims had been filed thereon as of

the Administrative Claims Bar Date, and know "here is our universe of potential expenses that

have to be paid in cash in full." Taco Bueno Order at 21; *see also In re Enron Corp.*, 419 F.3d

115, 128 (2d Cir. 2005) ("we have explained that bar dates [] 'serve[] the important purpose of

enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of

those making claims against the bankruptcy estate and the general amount of the claims, a

necessary step in achieving the goal of successful reorganization.'") (citation omitted).[4]   If

---

[4] *See also* Taco Bueno Order at 20-21 (citations omitted):

[D]ebtors and reorganized debtors have a keen interest in obtaining finality sooner rather than later
with regard to administrative-expense claims. The reason debtors have an interest in such finality
derives from the special treatment afforded to administrative expenses. An administrative-expense
claimant is generally entitled to cash in full on the effective date of a plan. It is a very important
event in the bankruptcy case for the debtor and reorganized debtor to have a deadline for
administrative-expense claims because administrative claims pose a significant feasibility issue for
plans. Most business entities . . . have many vendors and many landlords. The debtor and
reorganized debtor need to be able to ascertain an amount such entities must have in cash due to pay

the Debtors cannot rely on the Court's docket in this way, the Debtors would be significantly and directly prejudiced in their ability to properly administer these Chapter 11 Cases, including processing distributions to its creditors and parties in interest in accordance with the Plan.

27.    The potential danger of opening the "floodgates" to similarly situated claimants is one category of prejudice that cannot be overlooked and weighs strongly in favor of denying the Asserted Claims.    Deeming the Movant's late-filed claims timely would prejudice the Post-Emergence Debtors, as it opens the door for other creditors who have also filed untimely claims (or who have not yet filed claims) to assert their claims long after the Administrative Claims Bar Date. *In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) ("[P]ermitting this late claim could open the floodgates to other similarly situated creditors."); *In re Enron Corp.*, 419 F.3d 115, 132 n.2 (2d Cir. 2005) (recognizing that "courts in this and other Circuits regularly cite the potential 'flood' of similar claims as a basis for rejecting late-filed claims"); *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 1577763, at *6 (Bankr. S.D.N.Y. May 30, 2007) (rejecting a late-filed claim and noting that the "floodgates argument is a viable one."). Additionally, permitting the Asserted Claims (and consequently, other potential new administrative claims) to proceed as if timely filed would effectively render the Administrative Claims Bar Date meaningless. *See Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir. 2005) (a strict bar date was intended to "facilitate the equitable and orderly intake of those claims" and allowing a creditor to file late claims could "render the bar date meaningless").

administrative expenses and must ensure the availability of an amount in cash to pay existing creditors on the effective date of the plan or soon thereafter.  By having a different place on the docket than proofs of claim, companies may quickly look at a docket from the time of the effective date until after the administrative claims bar date, find those requests for payment of administrative-expense claims, and ascertain their potential administrative exposure.

10

28.    Therefore, despite the Debtors' efforts to emerge from these Chapter 11 Cases expeditiously to reduce administrative costs (among other things), permitting the Movant to recover on its purported administrative claim by filing the Motion—which the Post-Emergence Debtors assert is not even a proper request for an administrative claim—nearly six months after the Administrative Claims Bar Date would not only undermine the finality of the Confirmation Order but also greatly prejudice the Post-Emergence Debtors and other parties in interest who relied upon the claims process established under the Plan.  This is because (i) the Post-Emergence Debtors would no longer be able to rely on the Court's docket to understand the scope of administrative claims asserted against them, rendering the Administrative Claims Bar Date effectively meaningless, (ii) the Post-Emergence Debtors would likely be receiving numerous newly-asserted administrative claims, which would require that the Post-Emergence Debtors to potentially pay additional claims with administrative priority and separately incur additional fees responding to and litigating such newly-asserted claims, further impacting the recoveries and distributions under the Plan, including for stakeholders that complied with applicable bankruptcy law and the Court's binding orders, and (iii) new uncertainty would be created for the Debtors' stakeholders as it relates to these Chapter 11 Cases.

29.    As to the second *Pioneer* factor, the length of delay and its potential impact on judicial proceedings is meaningful.  As discussed herein, the Movant has not yet, to date, properly submitted a request for the Asserted Claims, notwithstanding the Administrative Claims Bar Date. The length of delay is not only inexcusably long, but would also have an impact on these Chapter 11 Cases.  The Post-Emergence Debtors would need to re-evaluate the new total pool of Administrative Claims and assess the Post-Emergence Debtors' ability and approach to remitting distributions on account of the value of the new pool of Administrative Claims.  This assessment

11

would cause the Post-Emergence Debtors to incur professional fees to the detriment of the Debtors, their estates, and all of their parties in interest.

30.     The third *Pioneer* factor weighs heavily in favor of the Post-Emergence Debtors and should carry substantial weight in the Court's consideration of the Asserted Claims.  *See Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 134 (3d Cir. 2005) ("We rely . . . primarily on the third Pioneer factor."); *In re Enron Corp.*, 419 F.3d at 122 ("[W]e and other circuits have focused on the third factor . . ."); *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("The four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import."); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (reason for the delay is the "key" to an analysis of excusable neglect); *In re Lehman Bros.*, 433 B.R. at 127 ("The reason for the delay remains the central focus in determining excusable neglect."). "[T]he evaluation of lateness should, at least to some extent, also take into account the creditor's explanation for the delay. . . [W]here an explanation is nonexistent or not credible, *both* the 'reason for the delay' and the 'length of the delay' factors might weigh in favor of the debtor, even if the delay is, in absolute terms, quite short."  *In re Enron*, 419 F.3d 115, 129 (2d. Cir. 2005) (citations omitted) (emphasis in original).

31.     As of the date hereof, the Movant has yet to properly file with the Court the required documentation with respect to the Asserted Claims.  The Movant's delay in seeking allowance of the Asserted Claims as administrative claims should not be viewed in a vacuum.

32.     Although the reasoning behind the Movant's delay in seeking allowance of the Asserted Claims has not been clarified by the Movant to date, such purported justification almost certainly falls demonstrably short of the high standard for excusable neglect adopted by

courts, particularly in large cases with substantial claims at issue.  Despite the fact that the Asserted Claims arose well before the Administrative Claims Bar Date (as the Agreements were in place prior to the commencement of these Chapter 11 Cases), and notwithstanding the fact that the Movant filed the Proofs of Claims (therefore evidencing awareness of the Asserted Claims), it seems that the Movant simply forgot to file a proper request for allowing an administrative claim on the docket in these Chapter 11 Cases, including any protective claim, which would at least provide the Debtors and the Court with notice of such claims in a timely manner in alignment with the purpose of the Administrative Claims Bar Date, prior to the Administrative Claims Bar Date. Unfortunately, inattention and disregard do not support a finding of "excusable neglect" and the Movant has fallen short of its considerable evidentiary burden.

33.     Additionally, as set forth herein, there are no notice problems as it relates to the Administrative Claims Bar Date, which defeats any related equitable argument that the Movant might have raised.  *See* Taco Bueno Order at 22.  The Movant cannot deny that it had actual notice of the Administrative Claims Bar Date, as they received notice of the Administrative Claims Bar Date during these Chapter 11 Cases.  Nor can they deny that the Confirmation Order is a binding order as entered by the Court.  *See Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170–71 (5th Cir. 1992) (Section 1141(a), however, provides that the provisions of a confirmed plan bind the debtor and any creditor.).  Fifth Circuit courts have held that upon mere *constructive* notice of a bankruptcy filing, creditors are on notice as to all matters in the bankruptcy and have a duty to monitor the docket.  *See In re Profco, Inc.*, 339 B.R. 614, 618 (Bankr. S.D. Tex. 2005) (internal citations omitted) (a creditor with constructive or inquiry notice "ignores the proceedings to which the notice refers at its own peril").  At its core, the Movant cannot satisfy the standard for excusable neglect because having received *actual* notice of the Administrative Claims Bar Date, and given

13

the facts surrounding the Asserted Claims, the understanding that a timely claim filing was necessary was well within the Movant's reasonable control.

34.     Additionally, the Movant cannot credibly assert that there were equitable arguments that it was an unsophisticated party that might not have appreciated the content of the notices. *See* Taco Bueno Order at 23. A significant fact defeating any such equitable argument is that the Movant had an attorney involved at all relevant times, *see id.*, including its in-house counsel that assisted with the filing of the Proofs of Claim.

35.     Given when the Asserted Claims actually arose (*i.e.*, when the Movant could have and should have asserted the Asserted Claims), coupled with the fact that the Movant received actual notice of the Administrative Claims Bar Date, the Movant cannot credibly argue that it did not need to file the necessary pleadings with respect to the Asserted Claims. This type of argument—whether attributable to ignorance or misunderstanding of law or fact—has long been rejected by courts as grounds for excusable neglect. *See In re Lehman Bros.*, 433 B.R. at 127 ("Parties are held to a high standard of care and only the slightest flexibility is available for 'rights lost because they have been slept on.'") (citation omitted); *In re Best Prods. Co.,* 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992) ("Even ignorance of one's own claim does not constitute excusable neglect."); *In re Investors & Lenders, Ltd.*, 169 B.R. 546, 551 (Bankr. D. N.J. 1994) ("Generally, courts have not found excusable neglect when the reason for the delay was merely ignorance or misconstruction of the rules of procedure."); *In re Hopkins*, 326 B.R. 42, 46 (Bankr. W.D.N.Y. 2005) ("Ignorance of the law does not constitute excusable neglect"). Courts have rejected these types of arguments because they fundamentally disregard the critical function served by claims bar dates in the context of chapter 11 case administration. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38 (Bankr. D. Del. 2012) ("The establishment and enforcement of a bar date for

filing claims furthers the policy of finality designed to protect the interests of a debtor and his diligent creditors and the expeditious administration of the bankruptcy case. Furthermore, to allow the debtor to be continually pursued by his creditors ad infinitum . . . would be to sanction a form of slow torture contrary to the spirit and purposes of the bankruptcy laws.") (citations and quotations omitted).

36. Accordingly, the *third*, and most important *Pioneer* factor, clearly weighs in favor of the Debtors.

37. As it relates to the fourth and final *Pioneer* factor, given the facts and the Movant's awareness of the Administrative Claims Bar Date and the existence of the Asserted Claims prior to the Administrative Claims Bar Date, it is, as best, inconclusive whether the Movant acted in good faith. What is clear, however, is that the Movant were not "so careful or vigilant as to overcome the weight of the previous three factors." *See In re Am. Classic Voyages*, 405 F.3d at 134.

38. There are no unique or extraordinary circumstances here. The Movant was provided sufficient notice of the Administrative Claims Bar Date, and the Movant failed to timely file a proper request for the Asserted Claims by the Administrative Claims Bar Date as required by the applicable bankruptcy law and the Confirmation Order. Accordingly, equity demands the denial of the Asserted Claims in light of these objective realities, and the Asserted Claims should be disallowed.

**II.      The Asserted Claims Should Be Disallowed On Their Merits.**[5]

39.      Even if the Asserted Claims were not time barred, such claims should be disallowed on their merits.

40.      First, to the extent the Asserted Claims are based on the time period following the effective date of the rejection of the Rejected Agreements pursuant to the Rejection Order, which confirmed the rejection of the Rejected Agreements effective as of January 31, 2026, such claims should be disallowed entirely.  Prior to the Debtors' rejection of the Rejected Agreements, the Movant was notified of the Debtors' intention to reject the contracts.  The Debtors' desire to reject the applicable contracts was based on the lack of value such Agreements provided the Debtors at that stage and would provide going forward.  Upon entry of the Rejection Order, the Movant should have discontinued to provide access to its services.  The Movant's failure to do so is not the fault of the Post-Emergence Debtors and the Post-Emergence Debtors should not carry that expense to the detriment of its estates and the parties in interest in these Chapter 11 Cases.

41.      Second, it is unclear to the Post-Emergence Debtors who actually has been purportedly accessing the services under the Rejected Agreements or has requested access to the services under the Rejected Agreements, especially to the degree claimed by the Movant. Critically, after the various sales throughout these Chapter 11 Cases, including those leading up the Effective Date, the Post-Emergence Debtors have no employees remaining and only very few contractors left.  To the extent third parties (including buyers under the sales consummated in these Chapter 11 Cases and/or the GUC Trustee, among others) accessed the services under the Rejected Agreements, requested access to such services, or otherwise requested that the Movant continue

---

[5]      To the extent applicable, the Post-Emergence Debtors restate any arguments made in other sections of this Objection, which are incorporated by reference in <u>Section II</u> of this Objection.

to maintain certain data, that is between the Movant and the relevant third parties and should be dealt with directly between the relevant parties. Given the Rejection Order effectuated the rejection of the Rejected Agreements, that was the Post-Emergence Debtors' desired ending with respect to the Rejected Agreements, which provide no longer provide any benefit to the Post-Emergence Debtors' estates.

42. Third, to the extent there was a request to continue storing certain data related to the Rejected Agreements (which the Post-Emergence Debtors have no use for), that does not equate to a request for the continuation of the full scope of services that were previously provided under the Rejected Agreements (which would be in contravention of the Rejection Order). It is unreasonable for a request for data storage for a temporary period of time to cost several hundreds of thousands of dollars, especially given the limited financial resources available to the Post-Emergence Debtors.

## III. Conclusion.

43. In summary, the Movant is not entitled to an allowed administrative claim with respect to the Asserted Claims because the Movant failed to timely request relief under section 503(a) of the Bankruptcy Code and the Confirmation Order; accordingly, the Movant is barred from asserting the Asserted Claims, which shall be deemed disallowed in accordance with the terms of the Confirmation Order. *See, e.g.*, *Wiley*, 2014 WL 294330, at *6 (holding that "Deere Credit is barred from requesting payment for administrative expenses by the binding effect of the Debtor's confirmed plan" because Deere Credit did not timely file its administrative claim by the deadline established in the plan); Taco Bueno Order at 24 (barring an administrative claim because the claimant "failed to demonstrate any potential 'cause' for the tardily-filed Application requesting payment on its Administrative Claim under the second clause of § 503(a)").

17

Additionally, for the reasons set forth herein, the Post-Emergence Debtors assert that the Motion fails substantively as well. Therefore, the Post-Emergence Debtors respectfully request that the Court holds that the Asserted Claims are time-barred and disallowed in their entirety.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Post-Emergence Debtors respectfully request that the Court disallow the Asserted Claims in their entirety, determine that they may not be asserted in connection with the Motion or otherwise in these Chapter 11 Cases, and order any further relief as is just and proper.

Dated: July 27, 2026
Dallas, Texas

/s/ *Vincent Slusher*

The Law Office of Vincent P. Slusher
Vincent P. Slusher (00785480)
2121 N. Akard St., Suite 250
Dallas, Texas 75201
Telephone:     (214) 478-5926
Email:             Vincent.slusher@proton.me

*Counsel to the Plan Administrator*

**<u>Certificate of Service</u>**

I certify that on July 27, 2026, I caused a copy of the foregoing document to be served by

the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District

of Texas.


*/s/ Vincent Slusher*
Vincent P. Slusher